EVAN C. NELSON (SBN 172957)
LAW OFFICE OF EVAN C. NELSON
1990 N. CALIFORNIA BLVD., 8TH FLOOR
WALNUT CREEK, CA  94596
Telephone: (925) 323-1991
Email:  evancnelson.law@gmail.com

*Attorneys for Plaintiff Peter Colombo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **PETER COLOMBO,**<br><br>                                    Plaintiff,<br><br>        **v.**<br><br>**PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN, Individually and as Superintendent for PAUSD, LISA HICKEY, Individually and as Director of Certificated Human Resources for PAUSD, AMANDA BARK, Individually and as Manager, Policy and Legal Compliance for PAUSD, KEN DAUBER, Individually and as School Board President for PAUSD, MICHELE DAUBER, AND DOES 1-25,**<br><br>                                    Defendants. | Case No. 5:24-cv-909<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**1.  Violation of Equal Protection-14th Amend.**<br>**2.  Violation of Fifth Amendment-Takings**<br>**3.  Violation of Procedural Due Process**<br>**4.  Violation of Substantive Due Process**<br>**5.  State Created Danger-14th Amendment**<br>**6.  Discrimination (Gender and Disability)**<br>**7.  False Light/Defamation**<br>**8.  Malicious Prosecution/Wrongful Use of Administrative Processes**<br>**9.  False Imprisonment** |

Plaintiff alleges the following Complaint:

## INTRODUCTION

1.    This case is based on Defendants', and each of their, participation in a conspiracy to

target Plaintiff Peter Colombo, a tenured certificated teacher and coach, denying him equal

protection of the laws through discrimination relating to a known disability (alcoholism, which

had been controlled for more than a decade and that had never impacted his work with students)

and based on gender (depriving male teachers of due process rights when accused of sexual

1  assault, even when falsely accused), intentionally and maliciously portraying him in a false light

2  (including defamatory comments), suppressing exculpatory evidence while attempting to

3  fabricate false evidence, violating Plaintiff's due process rights (procedural and substantive),

4  depriving him of property (salaries, stipends, etc.) without due process, and through malicious

5  prosecution and wrongful use of administrative processes by sponsoring an uncorroborated false

6  accusation that is discredited by evidence Defendants concealed and/or suppressed.

7      2.    Defendant's violations of Plaintiff's rights under color of state law (as a public school

8  district, school district supervisors/managers, school board president and/or as co-conspirators)

9  resulted in reasonably certain and intended consequences including placing Plaintiff in a state

10  created danger (known severe physical abuse of, and high suicide rates for, incarcerated accused

11  child sex offenders), false imprisonment (solitary confinement in prison, home detention, and

12  continued forced home confinement and prohibiting return to work), wrongful termination

13  (constructive discharge) of employment, and interference with his career making it impossible for

14  Plaintiff to seek or obtain employment as a school teacher and coach.

15                              **PARTIES**

16      3.    Plaintiff Peter Colombo is a resident of the State of California who at all relevant

17  times worked as a tenured, certificated teacher and coach for PAUSD in Santa Clara County.

18      4.    Defendant PAUSD resides and operates in Santa Clara County.

19      5.    Defendant Don Austin is, and all relevant times was, Superintendent at PAUSD and

20  lives and works in Santa Clara County.

21      6.    Defendant Lisa Hickey worked at relevant times as Director of Certificated Human

22  Resources for PAUSD in Santa Clara County.

23      7.    Defendant Amanda Bark is, and at all relevant times was Manager, Policy and Legal

24  Compliance at PAUSD in Santa Clara County.

25      8.    Defendant Ken Dauber was PAUSD School Board President in Santa Clara County at

26  times relevant to the instant action and he resides in Santa Clara County.

27      9.    Defendant Michele Dauber resides and works, and at all relevant times resided and

28  worked, in Santa Clara County.

Complaint for Damages; Demand for Jury Trial

10.  At all times herein mentioned, Defendants, and each of them, were the supervisors, agents, servants, employees, and joint venturers of each of the remaining Defendants, and were at all times herein mentioned acting within the course, scope, and purpose of said agency, employment, business, and joint venture.

11.  To the extent that the conduct and omissions alleged herein were perpetrated by one or more of the Defendants, the remaining Defendants confirmed and ratified said conduct and omissions. All allegations made in this complaint to any act or omission on the part of a Defendant or Defendants shall also be deemed to refer to the act and/or omission of each Defendant. At all relevant times, Defendants and each of them were the knowing agents and/or alter egos of one another.

12.  Defendants and each of their officers, directors and managing agents directed, approved and/or ratified the conduct of each other and of their co-defendants, agents and employees.

## JURISDICTION

13.  This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343 under federal question jurisdiction. Supplemental jurisdiction over the related state law claims is appropriate through application of Title 28 of the United States Code, Section 1367 in order to conform with "values of judicial economy, convenience, fairness and comity." *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 715 (9th Cir. 1990).

14.  The unlawful acts and practices alleged herein occurred in the County of Santa Clara, which is within this judicial district.

## VENUE

15.  Plaintiff and Defendants reside and/or work or operate within Santa Clara County. Venue is proper in the United States District Court for the Northern District of California.

## DIVISIONAL ASSIGNMENT

16.  This action should be assigned to the San Jose Division, pursuant to Civ. L.R. 3-2 subds. (c) and (e), as this action arises in Santa Clara County.

1

**COMMON FACTS**

2      17.   Defendant PAUSD is a state actor and has adopted informal policies to discriminate

3   against male teachers accused of sexual assault, including through actions designed to deprive

4   them of due process mandated under the Education Code and board policies.

5      18.   Defendant Austin (Superintendent), Defendant Hickey (Director of Certificated

6   Human Resources), Defendant Bark (Manager, Policy and Legal Compliance), and Defendant

7   Ken Dauber (School Board President) were all state actors in supervisorial/managerial positions

8   for Defendant PAUSD.

9      19.   Defendant Michele Dauber was a state actor through her participation with the state

10   actor defendants in a common theme or conspiracy to violate Plaintiff's civil rights.

11      20.   Defendants, and each of them, determined to intentionally target Plaintiff, based on

12   improper bias and ill-will towards Plaintiff as a male tenured teacher of 26 years at PAUSD and

13   28 years as a successful teacher/coach. In so doing, Defendants and each of them breached their

14   duty as public officers to exercise the powers conferred on them with "disinterested skill, zeal,

15   and diligence" (*Clark v. City of Hermosa Beach*, 48 Cal. App. 4th 1152, 1170 (1996) citing *Noble*

16   *v. City of Palo Alto*, 89 Cal. App. 47, 51 (1928)), and also violated the common law, which

17   prohibits public officials from placing their private or personal interests in conflict with their

18   official duties (64 Ops. Cal. Atty. Gen. 795, 797 (1981)).

19      21.   The false accusation against Plaintiff, which Defendants sponsored, lacked objective

20   credibility and stemmed from an alleged sexual assault that took place two decades prior at

21   Jordan Middle School (which is now Greene Middle School), during the 2001-2002 school year,

22   and the accuser repeatedly admitted she did not see or hear her alleged assailant.

23      22.   Defendants concealed the relevant 2001-2002 class lists for Jordan (Greene), which

24   likely would have shown the accuser was in a 6th grade PE class taught by a different PE teacher,

25   Bill Giardano, who taught PE at Jordan (Greene) in 2001-2002 and was convicted in 2006 on

26   several counts of rape of a student at Jordan (Greene). Mr. Giardano was known to have had other

27   victims during his tenure at Jordan (Greene) with a described *modus operandi* similar to other

28   specifics of the claim asserted by the accuser.

4

23.  To the contrary, Plaintiff never had a claim of such behavior made against him, other than this single false report, which the DA and CTC both summarily dismissed due to lack of evidence after prolonged and prejudicial delays that have harmed Plaintiff and were caused by Defendants' sponsoring of the false accusation, including through concealment and suppression of exculpatory evidence while attempting to fabricate false evidence and publicly defaming Plaintiff and otherwise portraying Plaintiff in a false light.

24.  After concealing the class lists, Defendants sponsored the accuser's claim by producing yearbooks and arguing the accusation had merit because she was in 6th grade at Jordan (Greene) during the 2001-2002 school year.

25.  Defendants suppressed exculpatory facts readily available to them, including the facts that (a) Plaintiff taught 6th grade PE at a different school, Terman Middle School (now Fletcher), during the 2001-2002 school year, and (b) Plaintiff was teaching one or more classes of 7th grade PE at Jordan (Greene). Even without the class lists that Defendants concealed, available evidence tended to exculpate Plaintiff. Rather than reporting they found no corroborating evidence to support the false accusation against Plaintiff while confirming her account significantly matched the known conduct of Bill Giardano, Defendants suppressed the readily available exculpatory evidence to exert undue influence on the DA to file false charges against Plaintiff.

26.  Not content simply to suppress the exculpatory evidence favorable to Plaintiff, Defendants also embarked on a "false light" media campaign, in violation of Plaintiff's due process rights that required Defendants to remain neutral and to not comment about ongoing investigations. The media campaign was aimed at fabricating false evidence while presenting Plaintiff in a false light through use of private information concerning a disability (alcoholism), which was both protected from disclosure and immaterial to the false allegation against him.

27.  Defendants collaborated/conspired with Embarcadero Media and its Palo Alto Weekly Online publication to generate a vituperative article titled "Unfit to Teach", which was not a neutral reporting of relevant information, but used the misinformation discussed above combined with defamatory statements and comments from Defendants. This was done maliciously to create a false light, to foment and to incite public opinion against Plaintiff, rather

5

than remaining neutral and/or silent through the process, as mandated by official board policies.

28.  Upon information and belief, Defendants PAUSD and Amanda Bark conspired, along with Defendants Ken Dauber and Michele Dauber, to release irrelevant and protected private records to Embarcadero Media to support the "Unfit to Teach" hit piece against Plaintiff that was published on February 17, 2023. This discriminatorily biased article was intentionally timed in an attempt to improperly influence the preliminary hearing scheduled for March 21, 2023. In response to Embarcadero Media's California Public Records Act request, no care was taken by Defendants PAUSD and Amanda Bark to protect Plaintiff's privacy through the required "balancing test" and his entire employment file was produced, including protected information about irrelevant past actions relating to Plaintiff's disability (alcoholism) that never impacted his work at school or with students. It should also be noted that Plaintiff has been completely sober for almost a decade and a half, thereby rendering any alcohol-related "charges" illegitimate under the Education Code and/or board policies, which preclude any attempt to take actions on alleged alcohol-related conduct that is more than four years stale.

29.  Defendant Don Austin violated board policies by not maintaining neutral silence regarding ongoing investigations and instead volunteered false light/defamatory statements that were published maliciously to harm Plaintiff. Defendant Michele Dauber published personal comments to the online articles including reference to her husband, Defendant Ken Dauber as PAUSD School Board President (implying that she had access to "inside information") while holding herself out as an expert (Stanford Law Professor intimately involved in the Brock Turner case and engineer of Judge Persky's recall) and purporting to convict Plaintiff through comments made with conscious disregard of the absence of credible evidence to support the accusation.

30.  Plaintiff further alleges, upon information and belief, that Defendant Michele Dauber assisted in drafting the "Unfit to Teach" traducement, in a manner similar to what has been reported to have been her involvement in drafting "Emily Doe's" letter in the Brock Turner case.

31.  Defendants' conspiracy against Plaintiff included suppression of exculpatory evidence and, upon information and belief, undue influence exerted on the District Attorney's Office. Defendant Ken Dauber, who was the PAUSD School Board President, and his spouse,

Complaint for Damages; Demand for Jury Trial

Michele Dauber, have reportedly been intimately involved in exerting undue pressures at the Santa Clara County District Attorney Office, at Stanford University and at PAUSD, in a manner that negatively and discriminatorily impacts due process rights of men accused of sexual assault.

32.   Defendants' evidence tampering resulted in false imprisonment and malicious prosecution/wrongful use of administrative processes involving the uncorroborated false accusation against Plaintiff that is substantially refuted by exculpatory evidence readily available to Defendants, which they concealed, suppressed and did not report. Based on Defendants' malicious misconduct, criminal charges were filed on June 16, 2022. Plaintiff was incarcerated and placed in solitary confinement (due to known safety concerns for persons accused of child sexual assault) and was placed on home detention with an ankle monitor until the preliminary hearing on March 21, 2023, when the court heard the lack of credible evidence to support the accusation against Plaintiff and immediately ordered the ankle monitoring be removed.

33.   On April 24, 2023, after Plaintiff had been wrongfully forced to endure more than ten months of the worst forms of emotional distress imaginable, Defendants finally relented and the DA reported that the charges would be dropped due to "insufficiency of evidence."

34.   Had Defendants remained neutral instead of sponsoring the false accusation, had they reported the exculpatory evidence instead of concealing it to pressure filing of charges, the false charges would never have been filed, there would have been no arrest, no incarceration, no assassination of Plaintiff's character, no loss of his career, etc.

35.   Even after dismissal of the false charges based on insufficiency of evidence, Defendants continued to harass and retaliate against Plaintiff due to his disability and gender. Defendant Don Austin, PAUSD's Superintendent, again breached formal board policies and provided non-neutral statements to Embarcadero Media that were published in April 2023 and renewed the false light that Plaintiff was somehow "unfit to teach", even though the criminal charges based on the false accusation and witch hunt were being dropped for lack of evidence to support them and every objective criteria along with two decades-plus of stellar performance reviews dictate the contrary, that Plaintiff is extremely well fit to teach and coach.

36.   Defendant Austin referenced a "big investigation" that PAUSD intended to pursue

Complaint for Damages; Demand for Jury Trial

1    against Plaintiff that would purportedly factor all of Plaintiff's "history" into the determination of

2    whether to reinstate him to his teaching and coaching positions, implicitly referencing all of the

3    fabricated irrelevant misinformation published in the "Unfit to Teach" hit piece, including the

4    discriminatory publication of Plaintiff's disability that was not germane to the false accusation.

5        37.   Defendants Austin and Hickey further violated Plaintiff's due process by delaying

6    PAUSD's "big investigation" and by not providing Plaintiff with the authority for, and/or the

7    actual scope of, the open-ended PAUSD investigation Defendant Austin described to the press.

8        38.   Defendants hid behind a CTC "investigation" relating to renewal of Plaintiff's

9    credential following CTC's reinstatement of his credential after dismissal of the criminal charges.

10   In light of substantial similarities between "Unfit to Teach" and the CTC "investigation" report,

11   including CTC violation of governing Education Code sections by raising alcohol-related

12   allegations that were more than four years old, Plaintiff alleges that Defendants continued their

13   conspiracy by injecting their discriminatory biases into the CTC process and/or through

14   surreptitiously initiating the CTC investigation as part of renewal of Plaintiff's credential after

15   CTC had already reinstated Plaintiff's credential following dismissal of the criminal charges.

16       39.   Stark similarities also exist between the instant circumstances involving CTC's

17   "investigation" and Defendant Ken Dauber's surreptitious reporting to the Office of Civil Rights

18   (OCR) of alleged PAUSD Title IX violations, which has been previously chronicled.

19       40.   Defendant Lisa Hickey drove to Sacramento to appear at the CTC hearing, even

20   though she was not permitted by law to provide testimony or evidence and could not report about

21   the confidential hearing. Plaintiff alleges Defendant Hickey's in person attendance was an attempt

22   to influence CTC to improperly further delay renewal of Plaintiff's credential due to the false

23   allegation and PAUSD's discriminatory harassment based on Plaintiff's gender and disability.

24       41.   As reward for her participation in the conspiracy, Defendant Hickey was elevated to

25   Superintendent at Millbrae school district, beginning in January of 2024. As a reward for his

26   participation, Defendant Austin was retained as Superintendent at PAUSD for four more years.

27       42.   Notwithstanding Defendants' attempted improper influence and interference, CTC

28   renewed Plaintiff's credential in October of 2023 after unwarranted delay caused by Defendants'

8

1   continued sponsorship of the false accusation against Plaintiff.

2         43.   Defendants, and each of them, knew or should have known that the false accusation

3   against Plaintiff was not credible based on the concealed exculpatory class lists, suppressed

4   exculpatory evidence showing Plaintiff's actual work assignments, readily available testimony of

5   the three female PE teachers in charge of the girls' locker room at Jordan (Greene) in 2001-2002,

6   Plaintiff's stellar performance reviews and the complete lack of any substantial corroborating

7   evidence for the accuser's false identification of Plaintiff, where Mr. Giardano (the known and

8   convicted – in 2006 – child sex offender who was teaching 6th grade PE at Jordan/Greene in

9   2001-2002), had more probably committed any sexual assault as reported by the accuser's details.

10        44.   In December of 2023, eight months after purported initiation of their unlawfully

11  open-ended investigation, after the DA and CTC had already determined there was no credible

12  substance to the false accusation against Plaintiff and in response to Plaintiff's letter and notice of

13  claims, Defendant PAUSD further retaliated by demanding an estimated three-hour investigation

14  interview with Plaintiff. Shortly before the scheduled interview was to occur, the actual scope of

15  the purported investigation was finally provided and was limited to the single, false allegation of

16  sexual assault. Defendant PAUSD still cited no authority for either the investigation and/or the

17  substantial and unwarranted delay in completion of the investigation beyond the time limits set

18  forth in any potentially applicable board policy or Education Code section. PAUSD expressly

19  denied Plaintiff's request for them to confirm that the investigation was proceeding under Title IX

20  or any other specific investigation protocol authorized under board policy, and refused to provide

21  relevant authority for the investigation, the scope of which was finally limited to the single, false

22  accusation that the DA and CTC had already found lacking in evidentiary support.

23        45.   The demanded three-hour interview of Plaintiff lasted fewer than 30 minutes, as the

24  investigator admitted there still was no credible evidence to support the false accusation. More

25  than eight months after the "investigation" had allegedly begun, PAUSD's "big investigation"

26  still had not involved contacting the three female PE teachers in charge of the girls' locker room

27  in 2001-2002 (where the alleged assault was claimed to have taken place) and the investigator

28  was unaware that each of these three witnesses had written letters of recommendation for CTC to

Complaint for Damages; Demand for Jury Trial

1    reinstate/renew Plaintiff's teaching credential. PAUSD also did not provide its investigator the

2    exculpatory evidence including the 2001-2002 class lists, Plaintiff's consistently stellar

3    performance reviews, the information about Plaintiff teaching 6th grade PE at a different school in

4    2001-2002 and teaching 7th grade PE at Jordan (Greene), or any other critically relevant facts.

5         46.  PAUSD's "independent" investigator also used the same misspelling of Plaintiff's

6    last name ("Columbo" instead of "Colombo") that Defendant Michele Dauber had used in her

7    defamatory/false light comments posted online. Accordingly, Plaintiff alleges upon information

8    and belief that Defendants Ken Dauber and/or Michele Dauber continued to exert improper

9    influence into the PAUSD investigation, similar to their previously reported surreptitious

10   activities involving due process interference and gender discrimination associated with

11   investigations and prosecutions of alleged sexual assaults by the Santa Clara County DA's Office

12   and at Stanford University and PAUSD.

13                    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14        47.  Plaintiff need not exhaust administrative remedies prior to filing his 42 U.S.C § 1983

15   claims. *Monroe v. Pape*, 365 U.S. 167, 183 (1961) (rev'd on other grounds); *McNeese v. Board of*

16   *Education*, 373 U.S. 668 (1963); *Patsy v. Florida Board of Regents*, 457 U.S. 496 (1982).

17        48.  Right to Sue Letters have been obtained from both federal (EEOC/DOJ) and state

18   (DFEH/CRD) agencies relating to Plaintiff's discrimination claims, and compliance with other

19   government notice of claims procedures are not required. *Williams v. Horvath*, 16 Cal. 3d 834,

20   842 (1976); *Shah v. County of L.A. Dep't of Health Servs.*, 2008 WL 2676533 (C.D. CA 2008)

21   (citing *Williams v. Horvath*).

22        49.  Notwithstanding Paragraphs 35 and 36, Plaintiff' submitted a Notice of Claims to

23   PAUSD within 6 months of accrual of his claims upon renewal of his credential in October 2023

24   and more than 45 days prior to filing herein. Defendants did not respond to the Notice of Claims.

25                          **STATUTE OF LIMITATIONS**

26        50.  Section 1983 claims, such as those asserted herein, are governed by the two-year

27   statute of limitations for personal injury claims as set forth in California Code of Civil Procedure

28   section 335.1. *Maldonado v. Harris*, 370 F. 3d 945, 954-55 (9th Cir. 2004).

Complaint for Damages; Demand for Jury Trial

1    51.   The continuing violation doctrine also applies to extend the statutes of limitations

2    here, as Plaintiffs have alleged (1) a policy and practice of discrimination and/or (2) a series of

3    related discriminatory acts. See *Green v. L.A. County Superintendent of Sch.*, 883 F. 2d 1472,

4    1480 (9th Cir. 1989).

5    52.   Plaintiff's claims accrued upon reinstatement and renewal of his teaching credential

6    by CTC in October of 2023.

7    53.   Plaintiff's defamation/false light claims are based on the maligning traducement titled

8    "Unfit to Teach" published February 17, 2023 and "updated" without noticeable change on

9    January 24, 2024. The instant claims are being filed within 1 year of the initial publication.

10                                            **CONSPIRACY**

11    54.   Defendants, and each of them, shared in the common objectives of the conspiracy to

12    target Plaintiff for discrimination-based violations of his civil rights and for the conduct giving

13    rise to the other claims alleged herein.

14    55.   It is not relevant that any particular Defendant did not know all the details of the

15    conspiracy, or that they did not take part in some of the due process violations. *United*

16    *Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540–41 (9th Cir. 1989) (en banc) (It

17    is sufficient that Defendants "share[d] the common objective of the conspiracy.")

18                                            **STATE ACTOR**

19    56.   Each Defendant is, and at all relevant times was, a state actor as a local government

20    agency or a state or local government official; and further, since each Defendant conspired with

21    other government officials to deprive Plaintiff of his constitutional rights, they acted under color

22    of state law in doing so. *Tower v. Glover*, 467 U.S. 914, 920 (1984); *Dennis v. Sparks*, 449 U.S.

23    24, 27–28 (1980); *Lugar v. Edmondson*, 457 U.S. 922 (1982). The individual Defendants are sued

24    both in their official and in their individual capacities.

25                                            **IMMUNITY**

26    57.   Defendants are not entitled to absolute immunity, since they conspired with state

27    officials to deprive Plaintiff of his constitutional rights. *Tower v. Glover*, 467 U.S. 914 (1984).

28    58.   In addition, potential immunity for a state actor in a civil rights action under 42

                                                  11

United States Code section 1983 is dependent on the specific function performed by a defendant that gives rise to the claims for liability. *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003).

59.  The supervisorial or investigative functions at issue here are not entitled to immunity. *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003); *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004) (parole officials not entitled to immunity for supervision of parolees as opposed to determining whether to revoke parole); *Meyers v. Contra Costa County Department of Social Services*, 812 F.2d 1154 (9th Cir. 1987) (officers of the court are not immune for the investigatory function leading up to quasi-prosecutorial decisions); *Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908-09 (9th Cir. 2008) (concluding that immunity does not apply to "investigatory conduct").

**FIRST CLAIM**

42 U.S.C. § 1983-Fourteenth Amendment Equal Protection

[Against All Defendants and DOES 1-25]

60.  Plaintiff re-alleges and incorporates Paragraphs 1-59, as though set forth herein.

61.  Under Title 42, section 1983, Plaintiff asserts a violation of the Fourteenth Amendment, since Defendants denied Plaintiff equal protection of the laws both as a male teacher accused of sexual assault and as a "class of one" when they targeted Plaintiff by sponsoring a false allegation of sexual assault against him, which resulted in his being treated differently than non-male teachers and/or non-targeted teachers. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Squaw Valley Dev. Co. v. Goldberg,* 375 F.3d 936 (9th Cir. 2004).

62.  As also set forth above, Defendants conspired to target Plaintiff due to animosity and personal agendas rather than from any impartial, neutral investigation and prosecution process in compliance with due process procedures mandated by both US and California Constitutions, the California Education Code and adopted PAUSD official board policies.

63.  As a direct, legal and proximate result of Defendants' improper denial of equal protection to Plaintiff, through their conspiracy to target him, Plaintiff has suffered damages in an amount to be proven at trial.

64.  Each individual Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights as set forth above.

**SECOND CLAIM**

42 U.S.C. § 1983-Fifth Amendment Takings

[Against All Defendants and DOES 1-25]

65.  Plaintiff re-alleges and incorporates Paragraphs 1-50, as though set forth herein.

66.  Under Title 42, section 1983, Plaintiffs assert a violation of the Fifth Amendment to the United States Constitution, as depriving Plaintiff of property without due process.

67.  Each of the individual Defendants, acting in their individual capacities and as state or local government authorities, conspired with other government officials to affect the taking of Plaintiff's property without providing him the requisite due process.

68.  Defendant PAUSD utilized informal policies and procedures to conceal and suppress exculpatory evidence and to deliberately fabricate a veneer of false evidence to force filing of charges based on a false accusation of a sexual assault against a male teacher that was totally lacking in credible evidentiary corroboration.

69.  Defendant PAUSD also utilized informal policies to unlawfully place Plaintiff on unpaid admin leave for three months of the "big investigation" in violation of the Education Code mandate that this admin leave shall be paid leave. Defendant PAUSD's refusal to retroactively remedy this due process violation is contrary to representations made by its own counsel.

70.  As a direct, legal and proximate result of Defendants' conduct, Plaintiff has suffered damages including lost three-months of salary, lost coaching and summer school stipends, and lost career as well as other damages in an amount according to proof at trial.

71.  Each individual Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights as set forth above.

**THIRD CLAIM**

42 U.S.C. § 1983-Procedural Due Process

[Against All Defendants and DOES 1-25]

72.  Plaintiff re-alleges and incorporates Paragraphs 1-71, as though set forth herein.

73.  Under 42 U.S.C. § 1983, Plaintiff asserts violations of the 5th and 14th Amendments to the US Constitution, as depriving Plaintiff of due process of law (procedural due process).

Complaint for Damages; Demand for Jury Trial

74.  Plaintiff was entitled to a presumption of innocence and to not be discriminatorily prosecuted based on a false accusation totally lacking in evidentiary support.

75.  Defendants' concealment of class lists and suppression of other exculpatory evidence and attempts to fabricate false evidence are *per se* violations of Plaintiff's due process rights because of their undue influence and deleterious impact on his right to a fair trial and fair proceedings. *Richards v. County of San Bernadino*, 39 F. 4th 562, 572 (9th Cir. 2022) affirms a right under the Fourteenth Amendment when a plaintiff has been denied their due process right to a fair trial, which is implicated by concealment or suppression of favorable (exculpatory) evidence and/or fabrication of false evidence, and/or when the state actors act in such a way that prejudicial or unequal treatment results. *See also Nicholson v. County of Stanislaus*, 2010 U.S. Dist LEXIS 23424; 2010 WL 92329 (ED CA 2010, Case No. CV F 09 - 01941 AWI SMS).

76.  Plaintiff was entitled to be informed, at the outset, regarding the scope of any PAUSD investigation and the authority under which such investigation was proceeding.

77.  Plaintiff is entitled to unbiased, neutral investigations relating to the false accusation, which includes PAUSD and its key supervisorial/managerial employees and board members to remain neutrally silent regarding ongoing investigations.

78.  As set forth above, Defendants did not remain neutrally silent. To the contrary, Defendants sponsored the false allegation against Plaintiff, by:

    a.    Concealing and otherwise suppressing exculpatory evidence, including but not limited to (i) class lists showing who actually taught the alleged victim's 6th grade PE class at Jordan (Greene); (ii) Plaintiff's actual work assignments during the 2001-2002 school year involving teaching three 6th grade PE classes at a different school and teaching 7th grade PE at Jordan (Greene); (iii) testimony from the three female teachers in charge of the girls' locker room in 2001-2002, which tend to exculpate Plaintiff and cast further doubt on the credibility of the accuser's identification of Plaintiff; (iv) Plaintiff's uniformly stellar performance reviews, and (v) Mr. Giardano's known sexual assaults at Jordan (Greene) involving numerous victims during the relevant timeframe, including details consistent with the accuser's account of her assault and his conviction relating to

14

1    the same.

2          b.    Conspiring to produce a media campaign aimed at fabricating false evidence

3    through misinformation involving irrelevant details concerning Plaintiff's disability and

4    openly defamatory statements and comments all designed to place Plaintiff in a false light

5    and to maliciously incite public opinion to convict him in the public eye with a conscious

6    disregard for the complete lack of sufficient evidence to allow even a finding of "more

7    probable than not" relating to the accuser's identification of Plaintiff instead of Mr.

8    Giardano.

9          c.    Doubling down when the criminal charges were dismissed at the preliminary

10   hearing stage and again violating the neutral silence mandate by stating that a "big

11   investigation" of Plaintiff would be pursued into his entire "history" suggesting further

12   harassment would ensue due to Plaintiff's disability that never impacted his work as a

13   teacher or coach and implying again, falsely, that Plaintiff was "unfit to  teach."

14         d.    Other conduct as alleged previously.

15   79.  As a direct, legal and proximate result of Defendants' conduct, false charges were

16   initiated against Plaintiff without credible evidence to support them, he was placed in danger

17   through incarceration, was forced to endure solitary confinement, has lost salaries and stipends,

18   was forced to pay attorneys' fees, has been portrayed in a most despicable false light in the

19   community in addition to other damages to be proven at trial.

20   80.  Each individual Defendants' conduct was malicious, oppressive or in reckless

21   disregard of Plaintiff's rights, as set forth above.

22                              **FOURTH CLAIM**

23                     42 U.S.C. § 1983-Substantive Due Process

24                     [Against All Defendants and DOES 1-25]

25   81.  Plaintiffs re-allege and incorporate Paragraphs 1-80, as though set forth herein.

26   82.  Under Title 42, section 1983, Plaintiff asserts violations of the 5th and 14th

27   Amendments to the United States Constitution, as depriving Plaintiff of rights that are

28   fundamental, and "implicit in the concept of ordered liberty."  This includes the protection against

                                      15

"certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

83.    The discriminatory, vindictive conduct by Defendants is a violation of substantive due process as they (a) intentionally targeted Plaintiff as a male teacher with a known disability that was controlled and never impacted his work as a teacher and coach; (b) sponsored the false accusation; (c) ignored and suppressed exculpatory evidence; (d) turned a blind eye to lack of any credible evidence to support the heinous accusation levied against him; (e) conspired to generate a false light media campaign against Plaintiff designed to wrongfully convict him in the public eye; (f) knowingly placed him into incarceration where his life and physical well-being were placed in grave danger; (g) knowingly generated extreme psychological and emotional harm, including a substantially increased risk for suicide that is well understood by Defendants to occur in suspects and victims involved in child sex crimes; (h) continuing to harass and retaliate against Plaintiff through additional unwarranted investigations designed to delay restoring Plaintiff to his positions as teacher and coach; and (i) Defendants' other heinous conduct described herein.

84.    As a direct, legal and proximate result of Defendants' conduct, Plaintiff has suffered lost salary, lost stipends, irreversible damage to his reputation. He has lost the remainder of his extremely promising career as a teacher and coach with all of the compensations, benefits and psychological benefits such brought. And, he has suffered extreme emotional and psychological distress. The compensatory value of these losses and damages will be proven at trial.

85.    Each individual Defendants' conduct was also malicious, oppressive or in reckless disregard of Plaintiff's rights, as set forth above.

**FIFTH CLAIM**

42 U.S.C. § 1983 – 14th Amendment – State-Created Danger

[Against All Defendants and DOES 1-25]

86.    Plaintiff realleges and incorporates Paragraphs 1 to 85 as though set forth herein.

87.    Under the Fourteenth Amendment, a person has the constitutional right to be free from a government employee affirmatively placing that person in a position of actual, particularized danger (or in a situation of actual, particularized danger that is more dangerous than

16

the position that the person already faced) if the government employee acted with deliberate indifference to a known or obvious danger. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133-35 (9th Cir. 2018), *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-65 (9th Cir. 2006) and *Murguia v. Langdon*, 61 F.4th 1096, 1110-17 (9th Cir. 2023) confirm the right a person has to be free from unsafe conditions created by state actors that threaten human life.

88.   As set forth above, specifically including but not limited to Paragraph 83, Defendants conspired to deprive Plaintiff of equal protection and due process based on discrimination (gender and disability) and manipulated evidence to sponsor the false allegation against Plaintiff by concealing and suppressing exculpatory evidence while turning a blind eye to the evidence strongly suggesting that if the accuser's claim of a sexual assault had any credibility it matched the details of Bill Giardano's known conduct and convictions with no evidence support to the purported identification of Plaintiff as her attacker.

89.   By so doing, Defendants knowingly forced Plaintiff into incarceration where his life and physical well-being were placed in grave danger and knowingly generated extreme psychological and emotional harm, including a substantially increased risk for suicide that is well understood by Defendants to occur in both suspects and victims involved in child sex crimes.

90.   Accordingly, Defendants' conduct created an actual, particularized danger to cause injury to Plaintiff that was foreseeable and that is also continuing.

91.   Defendants disregarded a known/obvious consequence of their actions – they know that something will happen, in fact their scheme is designed to ensure it happens, but ignored the substantial risk of injury and exposed Plaintiff to that risk.

92.   As a direct, legal and proximate result of Defendants' conduct, Plaintiff has suffered lost salary, lost stipends, and irreversible damage to his reputation. He has lost the remainder of his extremely promising career as a teacher and coach with all of the compensations, benefits and psychological benefits such brought. And, he has suffered extreme emotional and psychological distress. The compensatory value of these losses and damages will be proven at trial.

93.   Each individual Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights, as set forth above.

17

Complaint for Damages; Demand for Jury Trial

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIXTH CLAIM

Discrimination (Gender and Disability) – Title VII, ADA and FEHA

[Against All Defendants and DOES 1-25]

94.   Plaintiff realleges and incorporates Paragraphs 1 to 93 as though set forth herein.

95.     *Freedman v. Maryland*, 380 U.S. 51, 59 (1965) defined a person's right to be free from acts of deterrence, such as harassing and retaliatory conduct, intended to chill exercise of constitutional rights such as rights to non-discriminatory employment and due process; and, actionable "chilling" conduct includes (1) abusive investigative activities that result in reputational damage (*Riggs v. City of Albuquerque*, 916 F.2d 582 (10th Cir. 1990); (2) use of threats of prosecution (*Polykoff v. Collins*, 816 F.2d 1326, 1331 (9th Cir. 1987)); and (3) use of discretionary governmental actions (*Smith v. Brady*, 972 F.2d 1095, 1097-98 (9th Cir. 1992)).

***Title VII Gender Discrimination***

96.   Plaintiff was discriminated against, denied due process, prosecuted on false charges lacking any quantum of credible evidentiary support, has been repeatedly subject to open-ended continuous "investigations", has not been returned to positions as a teacher and coach and has been constructively discharged from his employment.

97.   Plaintiff's gender was a motivating factor and/or cause of Defendants' conspiracy to discriminate against him, deny due process, portray him in a false light, prosecute on false charges lacking any quantum of credible evidentiary support, to repeatedly subject him to open-ended continuous "investigations", to not return him to his positions as a teacher and coach and to create an atmosphere so intolerable as to constructively discharge Plaintiff from his protected employment position as a tenured, credentialed teacher and successful coach.

98.   Plaintiff was qualified for his positions as a teacher and coach as demonstrated by his exemplary performance reviews and accolades.

99.   Similarly situated non-male individuals are not discriminated against, denied due process, prosecuted on false charges lacking any quantum of credible evidentiary support, repeatedly subject to open-ended continuous "investigations" and are not deprived of their right to return to positions as a teacher and coach.

*Title VII Retaliation*

100.  Plaintiff opposed an unlawful employment practice, that is discrimination against him based on his gender and known disability.

101.  Defendants' employer, including all Defendants as supervisorial/managerial employees of Defendant PAUSD as Plaintiff's employer (and/or as co-conspirators with PAUSD and the other Defendants) subjected Plaintiff to adverse employment action, including placing him on paid and unpaid admin leaves and refusing to return him to his teaching and coaching positions and creating an atmosphere so intolerable that it has resulted in a constructive discharge of Plaintiff from his protected position as a tenured, credentialed teacher and successful coach, all through the pretext of sponsoring the false accusation levied against Plaintiff in the manner described herein.

102.  Plaintiff was subjected to adverse employment action after he opposed an unlawful employment practice, that is discrimination against him based on his gender and known disability.

*ADA Disability Discrimination*

103.  Plaintiff has a record of an inactive physical/mental impairment of alcoholism.

104.  When active, such physical or mental impairment substantially limited one or more major life activities.

105.  Plaintiff's disability never impacted his ability to perform his normal duties as a teacher or coach and he has been completely sober for more than a decade.

106.  Plaintiff was discriminated against, denied due process, prosecuted on false charges lacking any quantum of credible evidentiary support, has been repeatedly subject to continuous "investigations", has not been returned to his positions as a teacher and coach and has been constructively discharged from his employment because of his actual or perceived disability.

*FEHA Discrimination*

107.  Defendant PAUSD is, and at all relevant times was, an employer governed by California's Fair Employment and Housing Act ("FEHA").

108.  Plaintiff is, and all relevant times was, employed by Defendant PAUSD.

109.  Defendants' employer, including all Defendants as supervisorial/managerial

employees of Defendant PAUSD (and/or as co-conspirators with PAUSD) subjected Plaintiff to adverse employment action, including placing him on paid and unpaid admin leaves and refusing to return him to his teaching and coaching positions and creating an atmosphere so intolerable that it has resulted in a constructive discharge of Plaintiff from his protected position as a tenured, credentialed teacher and successful coach, all through the pretext of sponsoring the false accusation levied against Plaintiff in the manner described herein.

110.   Plaintiff's gender and known disability were each a substantial motivating reason for subjecting Plaintiff to adverse employment action, including placing him on paid and unpaid admin leaves and refusing to return him to his teaching and coaching positions and creating an atmosphere so intolerable that it has resulted in a constructive discharge of Plaintiff from his protected position as a tenured, credentialed teacher and successful coach, all through the pretext of sponsoring the false accusation levied against Plaintiff in the manner described herein.

111.   As a direct, legal and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered lost salary and stipends, irreversible damage to his reputation, extreme emotional distress, and loss of the remainder of his teaching/coaching career with concomitant compensation and benefits, all of which will be proven at trial.

112.   Each individual Defendants' conduct was malicious, oppressive or in reckless disregard of Plaintiff's rights, as set forth above.

**SEVENTH CLAIM**

False Light/Defamation

[Against All Defendants and DOES 1-25]

113.   Plaintiff realleges and incorporates Paragraphs 1 to 112 as though set forth herein.

***False Light***

114.   As described above, Defendants, and each of them, took actions that resulted in public disclosure of protected information regarding Plaintiff's known disability and made statements and comments all of which was designed to, and which did, show Plaintiff in a false light – that he was guilty of the false accusation made against him and was "unfit to teach".

115.   The false light created by Defendants would be highly offensive to any reasonable

20

1 person, as a recognized stellar teacher and successful coach with no history of conduct that would

2 lend support to the unsupported false charge of the heinous crime of child sexual assault.

3   116.  The evidence set forth above is clear and convincing that each Defendant either

4 knew the disclosure would create a false impression about Plaintiff, acted in reckless disregard for

5 the truth and/or was negligent in determining the truth of the information or whether a false

6 impression would be created by its disclosure. In fact, the false impression is precisely the effect

7 that Defendants, and each of them, intended.

8   117.  Plaintiff was harmed financially, emotionally and psychologically as set forth above.

9   118.  Plaintiff sustained harm to his property, reputation, professional career and

10 occupation as a result of the false light in which Defendants' knowingly placed him.

11   119.  Defendants', and each of their, conduct including the conspiracy to create these

12 precise harms to Plaintiff, was a substantial factor in causing those harms to Plaintiff.

13 ***Defamation***

14   120.  Defendants conspired to make and/or did make the following false, defamatory *per*

15 *se*, statements that were published by and/or on Embarcadero Media platforms for public

16 circulation, clearly understood to be about Plaintiff, which were reasonably understood by readers

17 to mean that Plaintiff was "unfit to teach" and/or had committed the sexual assault for which he

18 was falsely accused and which Defendants knew or should have known to be false:

19   a. Defendant Austin – "A teacher with that record today wouldn't be allowed to

20 keep their job."

21   b. Defendant Austin – "There's a point to where there's enough of a pattern of

22 behavior where some people should not have that right of working with students."

23   c. When asked why the district retained Colombo as a teacher after the purported

24 string of criminal and disciplinary problems, Defendant Austin stated, "There's literally not a

25 person that would have been involved in that decision that still works in our school district."

26   d. Defendant Austin "We expect the current allegation from long ago to be presented,

27 heard, and judged in the court of law. Until that happens, unpaid leave is our only option."

28   e. Defendant Michele Dauber – "Once again, PAUSD has failed to appropriately

address sexual harassment." [Posted shortly after the hit piece was published online.]

        g.    Defendant Michele Dauber – "I have been sober 34 years and have never seen this jerk in a meeting, and he better hope I never do."

        h.    Defendant Michele Dauber – "Sobriety is not a cure for sexual harassment or abuse and people should stop equating them. AA treats alcoholism, not rape."

        i.    Defendant Michele Dauber – "I was really disturbed by the number of people claiming to be Palo Altans defending this guy. Then I remembered how many of you supported Mike Airo, Mr. G, and even Brock Turner. There is a segment of this community that believes rape myths and blames victims. Mostly affluent, mostly older, mostly lawyers, mostly Stanford affiliated. Mostly wrong. Mostly jerks." [Previously posted comment, "Maybe he can be in the cell next to Mike Airo and they can talk about how much they both loved children."]

        j.    Defendant Michele Dauber – "I can only imagine young women who have been assaulted or abused reading this bulls— and thinking 'If that's sobriety I want nothing to do with it.' So thanks but no thanks save your lectures for the other bleeding Deacons on your soapbox."

        k.    Defendant Michele Dauber – "I am quite certain that the victim knew exactly who assaulted her by the time Columbo [sic] was charged." [Implying she has inside information either from her husband, the PAUSD School Board President and/or from working with the accuser in the same manner that she previously worked with "Emily Doe".]

        l.    Defendant Michele Dauber – "The idea that this was mistaken identity is anti-survivor . . . I hope this survivor receives justice."

    121.  Defendant Michele Dauber holds herself out as having inside information from her husband, Defendant Ken Dauber, who was PAUSD's School Board President ["Ken and I have both stood up for the rights of survivors, publicly using our own names"] and holds herself out as an expert on sexual assault allegations as a Law Professor at Stanford University, due to her work with "Emily Doe" in the Brock Turner case, and as architect behind the recall of Judge Persky.

    122.  The above defamatory statements were intended to, and actually did, create the false impression that Plaintiff was both unfit to teach and had committed the heinous crime for which he was falsely accused, even though Defendants knew or should have known no evidence existed

22

1    sufficient to support the identification of Plaintiff as the attacker, even with a more likely than not

2    standard, particularly in light of the details matching Mr. Giardano's *modus operandi* combined

3    with exculpatory evidence that was readily available to Defendants, and each of them.

4         123.  As a result of the defamation, Plaintiff suffered damages including but not limited to

5    harms to his property, profession, and occupation; expenses that Plaintiff had to pay as a result of

6    the defamatory statements; harm to his reputation; and, mortification. Damages will be proven at

7    the time of trial or harms will be presumed and reasonable damages sought from the trier of fact.

8                                       **EIGHTH CLAIM**

9                     Malicious Prosecution/Wrongful Use of Administrative Processes

10                           [Against All Defendants and DOES 1-25]

11        124.  Plaintiff realleges and incorporates Paragraphs 1 to 123 as though set forth herein.

12   ***Malicious Criminal Prosecution***

13        125.  Defendants, and each of them, were actively involved in causing Plaintiff to be

14   arrested and prosecuted, as set forth above.

15        126.  The criminal proceeding ended in Plaintiff's favor through dismissal of all charges

16   at the preliminary hearing due to lack of evidence to support the false allegations.

17        127.  No reasonable person in Defendants' circumstances would have believed that there

18   were grounds for causing Plaintiff to be arrested and prosecuted, due to the known and readily

19   available exculpatory evidence (class lists, Plaintiff's actual job locations and assignments, etc.)

20   and the more likely fit of the details of the claim with Mr. Giardano's known sexual assaults.

21        128.  Defendants acted primarily for selfish political purposes and to try to force Plaintiff

22   to abandon his tenured position, rather than to properly seek justice.

23        129.  Plaintiff was harmed substantially through lost salary, lost benefits, a lost career,

24   being incarcerated and placed on home detention with an ankle monitoring device and suffered

25   extreme emotional distress, all according to proof at the time of trial.

26        130.  Defendants, and each of their, conduct described above was a substantial factor

27   contributing to the cause of Plaintiff's harms.

28

Complaint for Damages; Demand for Jury Trial

1    ***Wrongful Use of Administrative Proceedings***

2          131.   Defendants, and each of them, were actively involved in bringing or continuing the

3    CTC and PAUSD administrative proceedings;

4          132.   Neither CTC nor PAUSD conducted an independent investigation, because

5    Defendants, and each of them, improperly influenced the processes by injecting discriminatory

6    (gender and disability) biases into the "investigations"; both proceedings were extended beyond

7    legally prescribed time limits; and neither investigation ever produced or considered the readily

8    available exculpatory evidence (class lists, Plaintiff's actual work sites and class assignments,

9    testimony from the three female PE teachers in charge of the girl's locker room at Jordan

10   (Greene) in 2001-2003 and the lack of any corroborating evidence to support the identification of

11   Plaintiff as opposed to the more likely fit of the details of the assault with Mr. Giardano.)

12         133.   PAUSD's investigator used a misspelling of Plaintiff's last name that had been used

13   by Defendant Michele Dauber in her comments posted on Embarcadero Media sites, which

14   appears to indicate she was not truly independent and calls into question where she was obtaining

15   facts or evidence, since she didn't have the exculpatory evidence or information.

16         134.   Despite Defendants attempts to unduly influence the CTC "investigation", the CTC

17   proceeding ended in Plaintiff's favor with reinstatement and then renewal of his credential.

18         135.   Defendant PAUSD investigator stated that the investigation was concluding with the

19   interview of Plaintiff and that the interview was so short because there was no evidence to

20   support the accusation.  Based on the investigator's comments, the investigation should have

21   already concluded in Plaintiff's favor. Indeed, there is no authority for Defendant PAUSD's

22   investigation to exceed time limits set by board policies and/or to still be continuing at this late

23   date and the PAUSD investigation was a farce and a pretext  to continue harassing Plaintiff.

24         136.   No reasonable person in Defendants' circumstances would have believed that there

25   were grounds for bringing proceedings against Plaintiff, due to the known and readily available

26   exculpatory evidence (class lists, Plaintiff's actual job locations and assignments, etc.) and the

27   more likely fit of the details of the claim with Mr. Giardano's known sexual assaults.

28         137.   Defendants acted primarily for selfish and political purposes, and to try to force

Plaintiff to abandon his tenured position or to accept an artificially deflated settlement for the harms Defendants have caused, rather than to properly seek justice.

138.  Plaintiff has been harmed according to proof at the time of trial.

139.  Defendants, and each of their, conduct described above was a substantial factor contributing to the cause of Plaintiff's harms.

<u>**NINTH CLAIM**</u>

False Imprisonment

[Against All Defendants and DOES 1-25]

140.  Plaintiff realleges and incorporates Paragraphs 1 to 139 as though set forth herein.

141.  Defendants, and each of them, intentionally deprived Plaintiff of his freedom of movement by use of threats and unreasonable duress, as described above.

142.  The restraint/confinement forced on Plaintiff by Defendants, and each of them, compelled Plaintiff to stay home and to not go to his work locations.

143.  Plaintiff did not knowingly or voluntarily consent to the restraint/confinement but did so only under threat of further financial harm being thrust upon him through termination of his employment and/or other improper consequences.

144.  Plaintiff was harmed by being placed on home detention and ankle monitoring without probable cause, as evidenced by the Judge's summarily removing his ankle monitoring after the preliminary hearing where no evidence was presented sufficient to sustain the false criminal charges and/or the continued home confinement and ankle monitoring.

145.  Plaintiff was also harmed by not being able to leave the area (even though Defendants would not allow him to visit his worksites, he was warned that he had to be "on call" and prepared to immediately report for work if/when Defendants gave him a work assignment.

146.  Plaintiff suffered economic and non-economic damages due to Defendants' false imprisonment, according to proof at the time of trial.

147.  Defendants' conduct was a substantial factor in causing Plaintiff's harms.

25

1

**PRAYER FOR RELIEF**

2

Wherefore, Plaintiff prays for judgment against Defendants as follows:

3

1.    Economic damages (special damages) to recover compensation for lost salaries,

4

stipends, benefits, etc. for the remainder of Plaintiff's now destroyed teaching/coaching career

5

and to recover attorneys' fees expended in defending against the Defendants-sponsored false

6

criminal charges and wrongful use of administrative proceedings;

7

2.    Non-economic damages (emotional distress, compensation for rights violations, etc.);

8

3.    Exemplary damages against all Defendants except Defendant PAUSD;

9

4.    Prejudgment and post-judgment interest;

10

5.    Attorneys' fees, expert fees and all costs of litigation, pursuant to 42 U.S.C. § 1988;

11

6.    Costs of suit; and

12

7.    Such other relief as the Court deems just and proper.

13

Dated: February 15, 2024                Respectfully submitted,

14

LAW OFFICE OF EVAN C. NELSON

15

16

By:_____

17

EVAN C. NELSON
Attorneys for Plaintiffs

18

19

**REQUEST FOR JURY TRIAL**

20

Plaintiff requests a jury trial.  Fed. R. Civ. Proc. 38(b).

21

22

Dated: February 15, 2024                Respectfully submitted,

23

LAW OFFICE OF EVAN C. NELSON

24

25

By:_____

26

EVAN C. NELSON
Attorneys for Plaintiff

27

28

Complaint for Damages; Demand for Jury Trial