1  Eugene B. Elliot, State Bar No. 111475
2  Ethan M. Lowry, State Bar No. 278831
   Benjamin I. Oreper, State Bar No. 329480
3  BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
   2749 Hyde Street
4  San Francisco, California 94109
   Telephone: (415) 353-0999
5  Facsimile:  (415) 353-0990
   Email:      eelliot@bfesf.com
6              elowry@bfesf.com
7              boreper@bfesf.com

8  Attorneys for Defendants
9  PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN,
   AMANDA BARK, and LISA HICKEY
10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13 PETER COLOMBO,                          Case No. 5:24-cv-00909-NC

14        Plaintiff,                       **DEFENDANTS PALO ALTO UNIFIED SCHOOL**
                                           **DISTRICT, DON AUSTIN, AMANDA BARK,**
15 v.                                      **AND LISA HICKEY'S MOTION TO DISMISS**
                                           **PLAINTIFF'S COMPLAINT**
16                                         **[FRCP RULE 12(b)(6)]**
   PALO ALTO UNIFIED SCHOOL DISTRICT,
17 et al.,                                 Date:    July 10, 2024
                                           Time:    11:00 a.m.
18        Defendants.                      Dept.:   Courtroom 5, 4th Floor
19
                                           **Hon. Nathanael M. Cousins**
20

21

22

23

24

25

26

27

28

---

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No.: 5:24-cv-00909-NC

# **TABLE OF CONTENTS**

NOTICE ..............................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED ................1

II.     PLAINTIFF'S ALLEGED FACTS ................................................................................2

III.    LEGAL ARGUMENT ................................................................................................5

        A.      The Complaint is Subject to Dismissal Under FRCP Rule 12(b)(6) ...................5

        B.      Plaintiff Has Stipulated to Dismissal of his First, Second, Seventh, Eighth, and
                Ninth Causes of Action and to Amendment of his Fifth and Sixth Causes of Action........5

        C.      The DISTRICT is Subject to Eleventh Amendment Sovereign Immunity as to
                Plaintiff's §1983 Claims, as are the Individual District Defendants in their Official
                Capacities ........................................................................................................6

        D.      Plaintiff's Substantive and Procedural Due Process Claims Fail to Plead
                Deprivation of a Protected Property or Liberty Interest by Defendants ...........................7

                1.      Plaintiff's Allegations Fail to Establish a Protected Property or Liberty
                        Interest..............................................................................................7

                2.      Plaintiff Fails to Plausibly Allege the Deprivation of any Interest by the
                        DISTRICT.........................................................................................9

        E.      The Individual Defendants are Entitled to Qualified Immunity from Plaintiff's
                §1983 Claims ..................................................................................................12

IV.     CONCLUSION......................................................................................................17

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Cases</u>**

3

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009).............................................................................................5, 9

4

*Baker v. Racansky,*
    887 F.2d 183 (9th Cir. 1989) ...........................................................................................13

5

6

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1988) .............................................................................................5

7

*Belanger v. Madera Unified School District,*
    963 F.2d. 248 (9th Cir. 1992) ............................................................................................6

8

9

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).............................................................................................................9

10

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,*
    149 F.3d 971 (9th Cir. 1998...........................................................................13, 14, 15, 16

11

12

*Butz v. Economou,*
    438 U.S. 478 (1978).........................................................................................................12

13

*C.A. v. William S. Hart Union High School Dist.,*
    53 Cal.4th 861 (2012) .....................................................................................................16

14

15

*Carmen v. San Francisco Unified Sch. Dist.,*
    982 F.Supp. 1396 (N.D. Cal 1997) ...................................................................................7

16

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ...............................................................................................5

17

18

*Clemes v. Del Norte Cty. Unified Sch. Dist.,*
    843 F. Supp. 583 (N.D. Cal. 1994) ...................................................................................7

19

*Cooper v. Cate,*
    No. 10-CV-899-AWI-DLB, 2011 WL 5554321 (E.D. Cal. Nov. 15, 2011) ....................14

20

*Davis v. Scherer,*
    468 U.S. 183 (1984).................................................................................................12, 13

21

22

*Doe v. White,*
    440 F. Supp. 3d 1074 (N.D. Cal. 2020) ..........................................................................13

23

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ...........................................................................................5

24

25

*Engquist v. Oregon Dep't of Agric.,*
    478 F.3d 985 (9th Cir. 2007) .........................................................................................7, 8

26

*Garrett v. Governing Bd. of Oakland Unified Sch. Dist.,*
    583 F. Supp. 3d 1267 (N.D. Cal. 2022) ..............................................................7, 8, 13, 14

27

28

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)................................................................................................12

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) ................................................................................5

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)................................................................................................14

*Moody v. Cty. of Santa Clara,*
    No. 5:15-CV-04378-EJD, 2019 WL 6311406 (N.D. Cal. Nov. 25, 2019) ................8, 13

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers,*
    795 F3d 1124 (9th Cir. 2015) ................................................................................12

*Nunez v. City of Los Angeles,*
    147 F.3d 867 (9th Cir. 1998) ................................................................................7

*Portman v. Cnty. of Santa Clara,*
    995 F.2d 898 (9th Cir. 1993) ................................................................................7

*Richter v. Ausmus,*
    No. 19-CV-08300-WHO, 2020 WL 1429758 (N.D. Cal. Mar. 24, 2020)................7, 13

*Sato v. Orange County Dept. of Education,*
    861 F.3d 923 (9th Cir. 2017) ................................................................................6

*Sinaloa Lake Owners Ass'n v. City of Simi Valley,*
    70 F.3d 1095 (9th Cir.1995) ................................................................................14

*Thompson v. City of Los Angeles,*
    885 F.2d 1439 (9th Cir. 1989) ................................................................................6

*Tuuamalemalo v. Greene,*
    946 F.3d 471 (9th Cir. 2019) ................................................................................13

*Weisbuch v. Cty. of Los Angeles,*
    119 F.3d 778 (9th Cir. 1997) ................................................................................5

*Western Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981) ................................................................................5

*White v. Pauly,*
    137 S. Ct. 548 (2017)................................................................................................13

*Will v. Michigan Dept. of State Police,*
    491 U.S. 58 (1989................................................................................................6, 7

*Woods v. City of Greensboro,*
    855 F.3d 639 (4th Cir. 2017) ................................................................................9, 10

**Statutes**

California Government Code Section 7920, et seq.................................................................11

California Penal Code Section 11166, et seq.................................................................9

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on July 10, 2024, in Courtroom 5, 4th Floor of the Federal District Court, located at 280 South 1st Street, San Jose, California, defendants PALO ALTO UNIFIED SCHOOL DISTRICT (the "DISTRICT"), DON AUSTIN, LISA HICKEY, and AMANDA BARK (collectively "Defendants") will and hereby do move this Court for a dismissal of the claims specified below pursuant to FRCP 12(b)(6), and this Memorandum of Points and Authorities, because the Complaint fails to allege facts sufficient to state claims against Defendants upon which relief can be granted.  This motion is based on the pleadings on file herein, and on such oral and documentary evidence as may be adduced at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES TO BE DECIDED**

Plaintiff PETER COLOMBO, a teacher and coach employed by the PALO ALTO UNIFIED SCHOOL DISTRICT ("the DISTRICT"), brings suit against the DISTRICT and several named DISTRICT employees alleging an expansive civil conspiracy to "unlawfully force him out of his career" following the DISTRICT's receipt of an allegation that COLOMBO had forcibly raped a student in a locker room during the 2001-2002 school year at Jordan Middle School within the DISTRICT.  Plaintiff filed his Complaint on February 14, 2024.  It alleged nine claims against all Defendants: (1) Violation of Fourteenth Amendment Equal Protection (42 U.S.C. § 1983); (2) Violation of Fifth Amendment Takings (42 U.S.C. § 1983); (3) Violation of Procedural Due Process (42 U.S.C. § 1983); (4) Violation of Substantive Due Process (42 U.S.C. § 1983); (5) State-Created Danger (42 U.S.C. § 1983); (6) Gender and Disability Discrimination under Title VII, the ADA, and FEHA; (7) False Light/Defamation; (8) Malicious Prosecution/Wrongful Use of Administrative Processes; and (9) False Imprisonment.

On May 30, 2024, Plaintiff voluntarily dismissed defendants Ken Dauber (the DISTRICT's former Board President) and his wife Michele Dauber.  Following meet and confer discussions between counsel for the Parties, Plaintiff stipulated to dismissal of his First, Second, Seventh, Eighth, and Ninth claims.  Plaintiff further agreed to amend his Fifth and Sixth claims.  Accordingly, the Parties agreed that Defendants' instant motion would address only Plaintiff's remaining Third and Fourth claims.

Dismissal of Plaintiff's Third and Fourth claims is warranted because:

1

1.    The DISTRICT is subject to Eleventh Amendment Sovereign Immunity as to Plaintiff's §1983 claims, as are the individual Defendants in their official capacities;

2.    Plaintiff's Substantive and Procedural Due Process claims fail to adequately plead deprivations of a protected property or liberty interest by Defendants, as they fail to establish the existence of such protected interests nor their deprivation as the result of any conduct by Defendants;

3.    The individual Defendants in their individual capacities are subject to qualified immunity from Plaintiff's §1983 claims.

## II.    PLAINTIFF'S ALLEGED FACTS

Plaintiff is a teacher and coach for the DISTRICT who was accused by a female former DISTRICT student of sexually assaulting her "two decades prior" during the 2001-2002 school year at Jordan Middle School.  (Complaint, Dkt. No. 1-1 at 2:16-17, 4:19-22.)  Plaintiff alleges that following their being apprised of the sexual assault allegation against Plaintiff, Defendants "determined to intentionally target Plaintiff, based on improper bias and ill-will."  (*Id.* at 4:11-13.)  Plaintiff alleged that the "allegation . . . lacked objective credibility," that "the accuser repeatedly admitted she did not see or hear her alleged assailant," and that Defendants "should have known that the false accusation . . . was not credible[.]"  (*Id.* at 4:19-22; 9:2-3.)  Plaintiff was criminally charged related to the alleged sexual assault on June 16, 2022, and was arrested and incarcerated.  (*Id.* at 7:7-10.)  Following a preliminary hearing on March 21, 2023, the criminal charges against Plaintiff were dropped by the District Attorney on April 24, 2023.  (*Id.* at 7:10-15.)

Plaintiff alleges that Defendants "sponsored" the allegation against him by "conceal[ing] the relevant 2001-2002 class lists for Jordan (Greene) which likely would have shown the accuser was in a 6th grade PE class taught by a different PE teacher;" by "producing yearbooks and arguing the accusation had merit because [the accuser] was in 6th grade at Jordan (Greene) during the 2001-2002 school year;" and by "suppress[ing] exculpatory facts readily available to them, including the facts that Plaintiff taught 6th grade PE at a different school . . . during the 2001-2002 school year, and Plaintiff was teaching one or more classes of 7th grade PE at Jordan (Greene)."  (*Id.* at 4:19, 4:22-25, 5:7-9, 5:10-13.)  Plaintiff contends Defendants "suppressed" this information "to exert undue influence on the DA to file false charges against Plaintiff," and that Ken and Michele Dauber "have reportedly been intimately involved in

exerting undue pressures at the Santa Clara County District Attorney Office . . . in a manner that negatively and discriminatorily impacts due process rights of men accused of sexual assault." (*Id.* at 5:16-17; 6:28-7:3.)

Plaintiff further alleges that Defendants "embarked on a 'false light' media campaign . . . aimed at fabricating false evidence while presenting Plaintiff in a false light through use of private information concerning a disability (alcoholism), which was both protected from disclosure and immaterial to the false allegations against him." (*Id.* at 5:18-23.)  The DISTRICT released records related to Plaintiff in response to a California Public Records Act ("PRA") request by Embarcadero Media.  (*Id.* at 6:6-7.) Embarcadero Media published an article regarding the criminal charges against Plaintiff on February 17, 2023.  (*Id.* at 6:2-5.)  Plaintiff contends that in its response to the PRA request, the DISTRICT and BARK did not take care to protect Plaintiff's privacy "through the required 'balancing test' and his entire employment file was produced, including protected information about irrelevant past actions relating to Plaintiff's disability (alcoholism)." (*Id.* at 6:7-10.)  Plaintiff had already been arrested and charged with sexual assault of a minor on or about June 15, 2022, and contends that the article "was intentionally timed in an attempt to improperly influence the preliminary hearing scheduled for March 21, 2023." (*Id.* at 6:5-6, 7:7-10.)

DISTRICT Superintendent DON AUSTIN allegedly "volunteered false light/defamatory statements that were published maliciously to harm Plaintiff."  (*Id.* at 6:15-17.) Michele Dauber published "personal comments to the online articles including reference to her husband, Ken Dauber[1], as PAUSD School Board President (implying that she had access to 'inside information') while holding herself out as an expert . . . and purporting to convict Plaintiff through comments made with conscious disregard of the absence of credible evidence to support the accusation." (*Id.* at 6:17-22.)  Michele Dauber assisted in drafting the hit piece against Plaintiff.  (*Id.* at 6:23-25.)  In April 2023, AUSTIN "again . . . provided non-neutral statements to Embarcadero Media . . . and renewed the false light that Plaintiff was somehow 'unfit to teach,'" even though "every objective criteria . . . dictate the contrary, that Plaintiff is extremely well fit to teach and coach." (*Id.* at 7:22-27.)

---

[1] As of the date of filing of this motion, defendants Ken and Michele Dauber have been voluntarily dismissed from this action by Plaintiff.

Don Austin "referenced" a personnel investigation of Plaintiff to "determine[e] whether to reinstate him to his teaching and coaching positions[.]" (*Id.* at 7:28-8:2.)   AUSTIN and HICKEY delayed this investigation and did not "provide Plaintiff with the authority for and/or the actual scope of," the investigation. (*Id.* at 8:5-7.)  In December of 2023, the DISTRICT "demand[ed}" Plaintiff sit for "an estimated three-hour investigation interview," prior to which "the actual scope of the purported investigation was finally provided and was limited to the single, false allegation of sexual assault." (*Id.* at 9:10-16.)  The interview lasted fewer than 30 minutes and the investigator "admitted there was still no credible evidence to support the false accusation." (*Id.* at 9:23-24.)   The DISTRICT did not cite authority for the investigation or the "unwarranted delay" in its completion, and "expressly denied Plaintiff's request for them to confirm that the investigation was proceeding under Title IX or any other specific investigation protocol authorized under board policy[.]" (*Id.* at 9:16-20.)  The investigator "used the same misspelling of Plaintiff's last name ('Columbo' instead of 'Colombo') that Defendant Michele Dauber had used in her defamatory/false light comments posted online," and Plaintiff "accordingly . . . alleges upon information and belief that Defendants Ken Dauber and/or Michele Dauber continued to exert improper influence into the PAUSD investigation[.]" (*Id.* at 10:5-9.)

The California Commission on Teacher Credentialing ("CTC") also initiated an investigation of Plaintiff relating to renewal of his teaching credential following its suspension after his arrest and criminal charging, and its reinstatement after the dismissal of the charges against him. (*Id.* at 8:8-9.)  Plaintiff alleges Defendants 'hid behind" the CTC investigation; that the CTC violated governing Education Code sections "by raising alcohol-related allegations that were more than four years old;" and that Defendants "continued their conspiracy by injecting their discriminatory biases into the CTC process and/or through surreptitiously initiating the CTC investigation as part of renewal of Plaintiff's credential[.]" (*Id.*at 8:8-15.)  HICKEY "drove to Sacramento to appear at the CTC hearing, even though she was not permitted by law to provide testimony or evidence and could not report about the confidential hearing," which Plaintiff "alleges . . . was an attempt to influence CTC to improperly further delay renewal of Plaintiff's credential due to the false allegation and [the DISTRICT]'s discriminatory harassment based on Plaintiff's gender and disability." (*Id.* at 8:19-23.)  The CTC renewed Plaintiff's credential in October of 2023. (*Id.* at 8:27-28.)

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No.: 5:24-cv-00909-NC

## III.   LEGAL ARGUMENT

**A.   The Complaint is Subject to Dismissal Under FRCP Rule 12(b)(6)**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." (*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).)  In ruling on a motion to dismiss, the Court need not accept as true, conclusory allegations, unreasonable inferences, legal characterizations or unwarranted deductions of fact or legal conclusions couched as facts.  (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994); *Western Mining Council v. Watt*, 643 F.2d 618, 630 (9th Cir. 1981).)  Even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his ... claim."  (*Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997).)

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  (*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).)  However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." (*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).)

**B.   Plaintiff Has Stipulated to Dismissal of his First, Second, Seventh, Eighth, and Ninth Causes of Action and to Amendment of his Fifth and Sixth Causes of Action**

Following meet and confer discussions between the parties, on May 30, 2024, Plaintiff's counsel stipulated to dismissal of the above-identified claims.  (Declaration of Benjamin I. Oreper ("Oreper Decl.") at ¶3.)  Accordingly, Defendants' motion does not address these claims.  In the same communication, Plaintiff agreed to amend his Fifth and Sixth claims to address the deficiencies Defendants identified during meet and confer discussions.  Plaintiff neither specified what amendments would be made, nor agreed to file an amended complaint in advance of Defendants' responsive pleading deadline (and did not agree to extend that deadline pending his filing an amended complaint).  Accordingly, Defendants agreed that they would not address Plaintiff's Fifth and Sixth claims in this

5

1  motion.  (Oreper Decl. at 4.)  Defendants expressly reserve the right to challenge these claims upon

2  Plaintiff's filing of an amended complaint.  Alternatively, in the event that Plaintiff does not file an

3  amended complaint, Defendants likewise reserve their right to challenge those claims based on Plaintiff's

4  representation that he would amend those causes of action.  (Oreper Decl. at 4.)

5
   **C.**    **The DISTRICT is Subject to Eleventh Amendment Sovereign Immunity as to Plaintiff's**
6          **§1983 Claims, as are the Individual District Defendants in their Official Capacities**

7          Plaintiff brings his third and fourth claims, alleging violations of procedural and substantive due

8  process, respectively, pursuant to 42 U.S.C. §1983.  Section 1983 provides a private right of action

9  against every "person" who, under color of state law, deprives the plaintiff of constitutional rights,

10 privileges, or immunities.  (*Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64 (1989).)  The term

11 "person" does not apply to state officials or "arms of the state," such as state agencies and their

12 constituent employees, sued in their official capacities.  (*Id.,* at 68-69, 71.)  In order to determine whether

13 an entity or official is an "arm of the state," and not a "person" defined by Section 1983, courts look to

14 whether the entity or official would be entitled to Eleventh Amendment immunity from suit in federal

15 court.  (*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989) ["since [the University of

16 California] is an arm of the state under the Eleventh Amendment, it follows from *Will* that [the

17 University of California] is not a 'person' within the meaning of § 1983" (internal citations omitted)].)

18         Consistently, courts have treated school districts in California as arms of the state and concluded

19 that they are entitled to Eleventh Amendment immunity from suits for damages or injunctive relief in

20 federal court.  (*Belanger v. Madera Unified School District*, 963 F.2d. 248, 251, 254 (9th Cir. 1992)

21 [school district is "arm of the state" because a money judgment against the district would be satisfied out

22 of state funds]; *Sato v. Orange County Dept. of Education*, 861 F.3d 923, 928-29 (9th Cir. 2017)

23 ["School districts . . . in California remain arms of the state and cannot face suit"]; "the relevant inquiry

24 is whether [the state] will be legally required to satisfy any monetary judgment obtained against the

25 [d]istrict," not whether state funds will actually be used.")  In both *Belanger* and *Sato*, the Ninth Circuit

26 Court of Appeals held that California's "unique" system "resulted in the state's legal liability for

27 judgments against school districts," making them arms of the state and immune from suit.  (*Sato*, supra,

28 861 F.3d at 928-30; *Belanger*, 963 F.2d at 250-51.)  As such, the DISTRICT not only enjoys Eleventh

1   Amendment immunity from Section 1983 claims, but is also not subject to Section 1983 claims because

2   it is not a "person" within the meaning of the statute.  (*Carmen v. San Francisco Unified Sch. Dist.*, 982

3   F.Supp. 1396, 1402-3 (N.D. Cal 1997).)

4   Likewise, the individual defendants are arms of the state in their capacity as DISTRICT

5   employees, and cannot be sued in their official capacities.  (*Will*, 491 U.S. at 68-69; See also *Clemes v.*

6   *Del Norte Cty. Unified Sch. Dist.*, 843 F. Supp. 583, 593 (N.D. Cal. 1994) ["The individual defendants[,

7   as School District Officials,] also clearly fall within the scope of the Eleventh Amendment[, as s]tate

8   officials sued in their official capacity enjoy the same eleventh amendment protection as is afforded to

9   states"].)  As such, the individual defendants are immune from liability under the Eleventh Amendment

10  for actions taken in their official capacities.

11
12  **D.    Plaintiff's Substantive and Procedural Due Process Claims Fail to Plead Deprivation of a**
       **Protected Property or Liberty Interest by Defendants**

13         **1.    Plaintiff's Allegations Fail to Establish a Protected Property or Liberty Interest**

14  To state a claim for violation of procedural due process, the plaintiff must show: (1) a liberty or

15  property interest protected by the Constitution; (2) a deprivation of the interest by the government, and

16  (3) lack of process."  (*Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).)  "The Due

17  Process Clause does not create substantive rights in property; the property rights are defined by reference

18  to state law."  (*Id.*)  Likewise, to establish a substantive due process claim, a plaintiff must as a threshold

19  matter show a government deprivation of life, liberty, or property.  (*Nunez v. City of Los Angeles*, 147

20  F.3d 867, 871 (9th Cir. 1998).)  "No Supreme Court or Ninth Circuit case has held that substantive due

21  process protects the right to a particular public employment position."  (*Garrett v. Governing Bd. of*

22  *Oakland Unified Sch. Dist.*, 583 F. Supp. 3d 1267, 1280 (N.D. Cal. 2022).)  Indeed, "most courts" have

23  in fact "rejected the claim that substantive due process protects the right to a particular public

24  employment position, and we have yet to decide the issue."  (*Engquist v. Oregon Dep't of Agric.*, 478

25  F.3d 985, 996–97 (9th Cir. 2007).)  Courts in the Northern District "have accordingly found it 'unclear'

26  whether there is any substantive due process right in continued employment."  (*Garrett*, supra, 583

27  F.Supp.3d at 1280, citing *Richter v. Ausmus*, No. 19-CV-08300-WHO, 2020 WL 1429758, at *4 (N.D.

28  Cal. Mar. 24, 2020) ("Courts have found that it is unclear whether a substantive due process right in

7

continued employment exists" (citations and punctuation omitted)) and *Moody v. Cty. of Santa Clara*, No. 5:15-CV-04378-EJD, 2019 WL 6311406, at *5 (N.D. Cal. Nov. 25, 2019) ("[W]hether a substantive due process right in continued employment even exists is unclear.").)  In *Garrett,* Plaintiffs alleged that they were disciplined and terminated by a school district "in violation of their federal Equal Protection and Substantive and Procedural Due Process rights under the U.S. Constitution." (*Garrett*, supra, 583 F.Supp.3d at 1279.)  The Court found that they failed to state plausible substantive due process claims because they failed to "cite any precedent establishing a substantive due process right to continued employment [in their particular positions] – nor could they." (*Id.,* at 1280.)  The Court further found that they failed to plead deprivation of a protected liberty interest, because "[w]hile the Ninth Circuit has recognized a substantive due process right to occupational liberty, this narrow right only protects against government employer actions that foreclose access to a particular profession to the same degree as government regulation." (*Id*.)  A substantive due process claim based on the violation of this right is limited to "extreme cases," such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." (*Id.*, citing *Engquist*, supra, 478 F.3d 985 at 998.)

Here, Plaintiff likewise fails to adequately plead a protected property or liberty interest that was violated by the actions of Defendants.  To the extent that Plaintiff alleges a substantive right to continue his current employment in his particular position, no binding precedent exists to support such an assertion.  Further, unlike the Plaintiffs in *Garrett*, Plaintiff was not terminated from his position, and remains on paid administrative leave, which Plaintiff fails to allege occurred without process, nor constitutes a deprivation in any event.  None of Plaintiff's other allegations sufficiently identify any alternative protected property interest.  To the extent that Plaintiff alleges the violation of a protected liberty interest, his allegations are likewise insufficient, as he has neither adequately nor plausibly alleged actions by Defendants "foreclosing access" to his profession "to the same degree as government regulation" or the "circulat[ion]" of a "government blacklist."  As discussed below, Plaintiff also fails to sufficiently allege any causal link between the alleged deprivation of any liberty interest and conduct by the DISTRICT or its employees.  To the extent that Plaintiff contends being accused of rape constituted

such foreclosure or blacklisting, the accusation did not come from the DISTRICT, and its "sponsorship" as alleged consisted of the DISTRICT's mandatory reporting of the allegation to law enforcement upon its receipt[2].  To the extent that Plaintiff alleges deprivation of a protected liberty interest as a result of his arrest, criminal charging, or incarceration, none of these are plausibly alleged to have resulted from the conduct of Defendants.  Rather, Plaintiff was accused of rape by a former DISTRICT student, and the decision to arrest, charge, and incarcerate him was made by law enforcement at its exclusive discretion.  Similarly, the allegedly defamatory news article discussed in the Complaint was not published by the DISTRICT, and Plaintiff in any event fails to plead sufficient facts to support a plausible inference that the publication itself foreclosed his access to his profession to the same degree as a government blacklist or regulation.

### 2. Plaintiff Fails to Plausibly Allege the Deprivation of any Interest by the DISTRICT

Even if Plaintiff had adequately identified a protected property or liberty interest, he further fails to adequately – and plausibly – allege causation as to Defendants' deprivation of those interests.  Under *Twombly*, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." (*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).)  In *Ashcroft v. Iqbal*, the U.S. Supreme Court further held that mere conclusory statements are not sufficient to support a cause of action.  (*Iqbal*, 556 U.S. at 678.)

The Fourth Circuit's discussion of the pleading standard applicable in federal courts in light of *Twombly* and *Iqbal*, specifically in the employment context, is instructive here.

> *Twombly* required that allegations must be more than conclusory.  In addition, under *Twombly*, allegations must be sufficient "to raise a right to relief above the speculative level," including sufficient facts to state a claim that is "plausible on its face." . This requires that the plaintiff do more than "plead[ ] facts that are 'merely consistent with' a defendant's liability;" the facts alleged must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In *Iqbal*, the Court made clear that this heightened standard applied to all civil actions, including claims of discrimination.
>
> (*Woods v. City of Greensboro*, 855 F.3d 639, 646-648 (4th Cir. 2017) [internal citations omitted].)

---

[2] California Penal Code Section 11166(a) (the Child Abuse and Neglect Reporting Act, or "CANRA") compels the DISTRICT and its employees to report, within 36 hours of its receipt, information relating to a child being the victim of abuse or neglect.  Under Section 11166(c), "A mandated reporter who fails to report an incident of known or reasonably suspected child abuse or neglect as required by this section is guilty of a misdemeanor."

As noted in *Woods*, the Supreme Court "deemed Iqbal's claims of discrimination implausible in light of the fact that the September 11 attacks 'were perpetrated by 19 Arab Muslim hijackers.' 'As between that 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.'" (*Woods*, 855 F.3d at 647 (internal citations omitted).)

Here, Plaintiff's allegations that the deprivations of rights he suffered – his arrest, charging with sexual assault of a minor, and incarceration – were caused by the conduct of Defendants in service of a wide-ranging conspiracy to target Plaintiff, without any stated reason for doing so, is similarly implausible given the obvious alternative explanations that a former student of the DISTRICT reported that Plaintiff had raped her in a locker room on school grounds on or around the 2001-2002 school year; that the DISTRICT reported that allegation to law enforcement as required under CANRA; and that law enforcement independently reached a determination as to arresting, charging, and incarcerating Plaintiff based on its own investigation into the allegation.  Even if Plaintiff's conclusory allegations that Defendants "concealed" or "suppressed" evidence are taken as true, he fails to allege sufficient facts from which a plausible inference can be drawn that this conduct caused the deprivation of any right.  The Complaint is bereft of any specific allegations regarding what evidence considered by law enforcement, nor the specific manner in which any evidence was "concealed" or "suppressed."  Rather, the Complaint merely speculates as to what the "concealed" evidence "likely would have shown," and further speculates that this evidence would have been "exculpatory."  Elsewhere, Plaintiff in fact alleges that "[e]ven without the class lists that Defendants concealed, available evidence tended to exculpate Plaintiff," even though the law enforcement decision to arrest and charge him was ostensibly based on this "exculpatory" evidence.

Similarly, Plaintiff's allegations that Defendants impermissibly released his personal information to the media in a bid to influence his criminal proceedings is implausible on its face, given that Plaintiff was arrested, charged, and incarcerated nearly a year before Plaintiff alleges the "defamatory traducement" was published.  Plaintiff further alleges no facts from which any plausible inference can be drawn that the DISTRICT's disclosure of information in response to public records act requests was in service of a conspiracy to impact Plaintiff's criminal proceedings, in light of the obvious alternative

1  explanation that the DISTRICT was merely fulfilling its legal obligation to respond to such requests[3].

2  The California Public Records Act ("PRA"), Government Code Section 7920 *et seq*., legally compels the

3  production of specified requested materials.

4       Plaintiff's other allegations of deprivations caused by the DISTRICT reach the same result:

5  Plaintiff's allegations that the DISTRICT conspired with the CTC to target him for investigation based

6  on "discriminatory bias" and "ill-will" is implausible in light of the obvious alternative explanation that

7  the DISTRICT was legally required to report Plaintiff's arrest and charging to the CTC under California

8  Education Code Section 44940(d)(1); that the CTC was likewise obligated to automatically suspend

9  Plaintiff's teaching credential upon such notification under California Education Code Section

10  44940(d)(2); and that both the CTC and the DISTRICT held off on their own investigations of the

11  allegation against Plaintiff pending resolution of the criminal case against him.  Plaintiff's allegation that

12  LISA HICKEY "drove to Sacramento" in an "attempt to influence CTC to improperly further delay

13  renewal of Plaintiff's credential" is implausible in light of the obvious alternative explanation that, as

14  Plaintiff's Complaint alleges, HICKEY was the DISTRICT's Director of Certificated Human Resources

15  and appeared at the hearing in accordance with the responsibilities of that role.  Plaintiff further does not

16  specifically allege the manner in which HICKEY did or intended to influence the outcome of the CTC

17  hearing, which is particularly relevant given Plaintiff's allegation that HICKEY "was not permitted by

18  law to provide testimony or evidence" at the hearing.

19       Plaintiff's allegations that the DISTRICT "targeted" Plaintiff for an independent personnel

20  investigation of the allegation against him as part of the "conspiracy," and that the investigator's

21  misspelling of his name is evidence of that conspiracy, is implausible in light of the obvious alternative

22  explanation that the DISTRICT was compelled to initiate this investigation due to the gravity of the

23  allegations against Plaintiff, and regardless of the outcome of his criminal proceeding given the

24  significantly lower bar for civil liability; that the DISTRICT waited until the criminal proceedings had

25  concluded prior to initiating its investigation in order not to interfere with any investigation by law

---

[3] The California Public Records Act ("PRA"), Government Code Section 7920 et seq., legally compels the production of specified requested materials.  Further, Section 7921.300 provides that "[t]his division does not allow limitations on access to a public record based upon the purpose for which the record is being requested, if the record is otherwise subject to disclosure.

11

1  enforcement; and that the misspelling was unintentional and without a tendency to support any

2  allegations of conspiracy.

3      Plaintiff's conspiracy allegations themselves also fail to meet the requisite plausibility bar.  "It is

4  not enough merely to include conclusory allegations that certain actions were the result of a conspiracy;

5  the plaintiff must allege facts that make the conclusion plausible."  (*Name.Space, Inc. v. Internet Corp.*

6  *for Assigned Names & Numbers,* 795 F3d 1124, 1129 (9th Cir. 2015).)  Nowhere in the Complaint does

7  Plaintiff allege such facts, and Plaintiff indeed fails as a threshold matter to allege the basis for any

8  coordinated conspiracy against him, beyond conclusory allegations of "discriminatory bias" and "ill

9  will."  In the absence of such facts, any allegations of conspiracy are implausible by default, and

10 particularly so in light of the obvious alternative explanations discussed in detail above.

11     Plaintiff's conclusory allegations that these actions were intended to cause him to suffer

12 deprivations do not "nudge [his] claims across the line from conceivable to plausible."

13 **E.    The Individual Defendants are Entitled to Qualified Immunity from Plaintiff's §1983**

14 **Claims**

15     As discussed above, given that the DISTRICT itself and its employees sued in their official

16 capacities are immune from suit under the Eleventh Amendment, Plaintiff's remaining alleged bases for

17 liability are solely against the individual defendants in their individual capacities.  Although individual

18 DISTRICT employees acting in their individual capacities may not be entitled to Eleventh Amendment

19 Immunity, they are entitled to qualified immunity as to federal claims under Section 1983.  (*Harlow v.*

20 *Fitzgerald,* 457 U.S. 800, 807 (1982).)  Under this form of immunity, government officials are not

21 subject to damages liability for the performance of their discretionary functions when "their conduct does

22 not violate clearly established statutory or constitutional rights of which a reasonable person would have

23 known."  (*Id.,* at 818.)  In most cases, qualified immunity is sufficient to "protect officials who are

24 required to exercise their discretion and the related public interest in encouraging the vigorous exercise of

25 official authority."  (*Butz v. Economou*, 438 U.S. 478, 506 (1978).)  Whether an official may prevail in

26 his qualified immunity defense depends upon the "***objective reasonableness*** of [his] conduct as measured

27 by reference to clearly established law[.] No other "circumstances" are relevant to the issue of qualified

28 immunity.  (*Davis v. Scherer*, 468 U.S. 183, 191 (1984) [emphasis added])  The plaintiff shoulders the

1  burden of proving that the rights he claims are "clearly established." (*Id.,* at 197.)

2        "The Supreme Court has made clear that qualified immunity provides a protection to government

3  officers that is quite far-reaching.  Indeed, it safeguards 'all but the plainly incompetent or those who

4  knowingly violate the law.... [I]f officers of reasonable competence could disagree on th[e] issue

5  [whether a chosen course of action is constitutional], immunity should be recognized.'" (*Brewster v. Bd.*

6  *of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 977 (9th Cir. 1998).)  "[I]f the existence of a right

7  or the degree of protection it warrants in a particular context is subject to a balancing test, the right can

8  rarely be considered "clearly established" at least in the absence of closely corresponding factual and

9  legal precedent." (*Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989).)  "A Government official's

10  conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of

11  [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is

12  doing violates that right.'" (*Doe v. White*, 440 F. Supp. 3d 1074, 1082 (N.D. Cal. 2020), aff'd, 859 F.

13  App'x 76 (9th Cir. 2021).)  To be clearly established, "existing precedent must have placed the statutory

14  or constitutional question beyond debate." (*White v. Pauly*, 137 S. Ct. 548, 551 (2017).)  "The right must

15  be settled law, meaning that it must be clearly established by controlling authority or a robust consensus

16  of cases of persuasive authority." (*Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).)  Where

17  no binding precedent addresses the issue in question and other circuits' decisions are in conflict, qualified

18  immunity is appropriate because the law was not "clearly established." (*Doe v. White*, supra, 440

19  F.Supp.3d at 1083.)

20        As discussed, Plaintiff has failed to state a claim for violation of his substantive or procedural due

21  process rights, as no precedent establishes a due process right to continued employment, and no Supreme

22  Court or Ninth Circuit case has held that substantive due process protects the right to a particular public

23  employment position.  (*Garrett*, 583 F. Supp. 3d at 1280.)  Courts in the Northern District "have

24  accordingly found it 'unclear' whether there is any substantive due process right in continued

25  employment." (*Garrett*, supra, 583 F.Supp.3d at 1280, citing *Richter*, supra, No. 19-CV-08300-WHO,

26  2020 WL 1429758, at *4 ("Courts have found that it is unclear whether a substantive due process right in

27  continued employment exists" (citations and punctuation omitted)) and *Moody* , supra, No. 5:15-CV-

28  04378-EJD, 2019 WL 6311406, at *5 ("[W]hether a substantive due process right in continued

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No.: 5:24-cv-00909-NC

employment even exists is unclear.").)

As a result, "[i]t follows that even if Plaintiffs could state plausible substantive due process claims based on their property interests in continued employment, the Individual Defendants would be shielded from such claims by the doctrine of qualified immunity. That is so because the conduct alleged would not violate a 'clearly established' constitutional right under Supreme Court (or even Ninth Circuit) case law." (*Garrett*, supra, 583 F.Supp.3d at 1280.)  As the *Garrett* court noted, in *Cooper v. Cate*, No. 10-CV-899-AWI-DLB, 2011 WL 5554321, at *5 (E.D. Cal. Nov. 15, 2011), the court found under analogous circumstances that "[i]n light of the circuit split and the silence of the Ninth Circuit, a reasonable official in the Defendants' positions would not have known that their conduct violated the Fourteenth Amendment's substantive due process protections."  The *Garrett* court concluded it could "thus determine from the face of the complaint that Plaintiffs have not pled and cannot plead a substantive due process claim against the Individual Defendants for deprivation of their property interests in continued employment" due to the application of qualified immunity.

Similarly, "[w]hile the right to due process is 'clearly established' by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard." (*Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100 (9th Cir.1995).)  Rather, "because procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims "can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent." (*Brewster, supra*, 149 F.3d 971 at 983.)  In *Brewster*, the Ninth Circuit found that "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context" and necessitates the application of the test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (*Brewster*, supra, 149 F.3d 971 at 983.)  The Court observed that the application of the *Mathews* test was "perhaps even less amenable to the discovery of clearly established law than are the *Pickering* test[4] and other multifactor balancing tests that arise in constitutional jurisprudence," and that "[n]ot only

---

[4] In analyzing the *Pickering* test, the Court had previously opined that because the test "requires particularized balancing on the unique facts presented in each case" and involves "a fact-sensitive, context-specific balancing of competing interests," the law "will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity under *Harlow* and its progeny.") (*Brewster*, supra, 149 F.3d 971 at 980, citing *Moran v. Washington,* No. 96-36129, slip op. at 5313, 5331 (9th Cir. June 2, 1998).)

14

does the *Mathews* inquiry require a delicate balancing of several competing interests, it requires that balancing at several separate stages of the procedural due process calculus." (*Id*., at 983.)

Accordingly, the operative inquiry here with respect to the application of qualified immunity is whether Defendants' actions were objectively reasonable with respect to clearly established law, and whether *no* official of reasonable competence in the position of the Defendants would disagree that these actions would violate Plaintiff's "clearly established rights," based on binding precedent and "beyond debate."  Here, Plaintiff has not been terminated from his position or from the DISTRICT, nor does he so allege.  He alleges that the DISTRICT violated his right not to be "targeted" via the DISTRICT's reporting to law enforcement of an allegation that he had raped a female student.  However, not only does Plaintiff not have a clearly-established right to not have allegations by a student that he sexually assaulted her reported to law enforcement, but the DISTRICT is in fact legally obligated to report such allegations to law enforcement, and its failure to do so constitutes a misdemeanor under the statute.  Accordingly, the DISTRICT's reporting was objectively reasonable under clearly established law, and any official of reasonable competence would agree that the making of such a report does not constitute a violation of the accused's clearly-established rights by the DISTRICT.

Plaintiff further alleges the DISTRICT violated his rights by placing him on mandatory unpaid leave following his arrest and charging by law enforcement.  Here again, the DISTRICT's action was compelled by applicable law, as Sections 45304(b), 44940, and 44010 of the Education Code identify the charges against Plaintiff as "mandatory leave of absence offenses" and require that the DISTRICT place an employee charged with such offenses on a mandatory leave of absence.  As above, the DISTRICT's reporting was objectively reasonable under clearly established law, and any official of reasonable competence would agree that compliance with the express requirements of the education code does not constitute a violation of Plaintiff's clearly established rights by the DISTRICT.  As discussed above in Section D.1., Plaintiff's being placed on paid administrative leave does not constitute a deprivation of Plaintiff's substantive rights.

Plaintiff further alleges the DISTRICT violated his rights by disclosing his personnel information to the media in response to requests propounded pursuant to the Public Records Act.  As above, the disclosure of documents responsive to lawful PRA requests in the possession of the entity to whom such

1   requests are properly propounded is compelled by law and thus objectively reasonable.  Compliance with

2   that applicable law cannot constitute a violation of Plaintiff's clearly established rights based on binding

3   precedent.  Further, Plaintiff contends that the DISTRICT did not perform, or misapplied, "the required

4   'balancing test" prior to disclosure.  As discussed in *Brewster*, where the determination of whether a right

5   is clearly established "essentially boils down to an ad hoc balancing inquiry," it "can rarely be considered

6   'clearly established' in the absence of closely corresponding legal and factual precedent."  (*Brewster*,

7   supra, 149 F.3d 971 at 983.)  If, as Plaintiff contends, the DISTRICT was required to apply a balancing

8   test to determine the appropriate extent of disclosure in response to PRA requests, it cannot be said that

9   Plaintiff's right to the nondisclosure of any particular information was "clearly established," nor can

10  Plaintiff present closely corresponding legal and factual precedent supporting such a conclusion.

11          Finally, Plaintiff can cite to no binding precedent supporting his assertion that the DISTRICT's

12  performing an independent personnel investigation of the sexual assault allegation against him following

13  the resolution of his criminal case was violative of any clearly established rights.  Rather, the DISTRICT

14  was compelled to initiate an investigation in order to address its legal obligation to act with due care in

15  response to receipt of an allegation of sexual assault against a minor student.  The DISTRICT could face

16  civil liability for failure to investigate allegations of this nature.  (*C.A. v. William S. Hart Union High*

17  *School Dist.*, 53 Cal.4th 861 (2012) [District liable where it knew or should have known of dangerous

18  propensities of employee who sexually harassed the Plaintiff].)   Nor does any clearly-established,

19  binding precedent entitle Plaintiff to the provision of any particular procedures antecedent to such an

20  investigation.  Accordingly, even if it is taken as true that the DISTRICT's investigation constituted a

21  violation of Plaintiff's rights, an official of reasonable competence could disagree that his right to be free

22  of such investigation was not "clearly established" and that the initiation of such an investigation was

23  well within the DISTRICT's reasonable discretion and thereby subject to qualified immunity.

24

25

26  //

27  //

28  //

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No.: 5:24-cv-00909-NC

1

## IV.    CONCLUSION

2          In light of the foregoing, Defendants respectfully submit that their motion should be granted

3   accordingly.

4

5   Dated:  June 3, 2024                          BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

6

7                                               By:    _/s/ Benjamin Oreper_____

8                                                  Eugene B. Elliot
                                                   Ethan M. Lowry
9                                                  Benjamin I. Oreper
                                                   Attorneys for Defendants
10                                                 PALO ALTO UNIFIED SCHOOL DISTRICT, DON
                                                   AUSTIN, AMANDA BARK, and LISA HICKEY
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No.: 5:24-cv-00909-NC