EVAN C. NELSON (SBN 172957)
LAW OFFICE OF EVAN C. NELSON
1990 N. CALIFORNIA BLVD., 8TH FLOOR
WALNUT CREEK, CA 94596
Telephone: (925) 323-1991
Email: evancnelson.law@gmail.com

*Attorneys for Plaintiff Peter Colombo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER COLOMBO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN sued individually and in his capacity as Superintendent at PAUSD, LISA HICKEY sued individually and in her capacity as Director HR Certificated Employees at PAUSD, and AMANDA BARK sued individually and in her capacity as Manager Policy and Legal Compliance at PAUSD,<br><br>　　　　Defendants. | Case No. 5:24-cv-00909-NC<br><br>**PLAINTIFF PETER COLOMBO'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR SUMMARY JUDGMENT**<br><br>**FED. RULES CIV.PROC., RULE 56**<br><br>DATE:　　　JULY 10, 2024<br>TIME:　　　11:00 AM<br>LOCATION:　COURTROOM 5, 4th FLOOR<br><br><br>JUDGE:　HON. NATHANAEL M. COUSINS |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

*TABLE OF AUTHORITIES*_____*ii*

*NOTICE OF MOTION AND MOTION* _____ *1*

*STATEMENT OF ISSUES FOR SUMMARY JUDGMENT*_____*1*

*MEMORANDUM OF POINTS AND AUTHORITIES* _____ *2*

   I.   **INTRODUCTION** _____ **2**

   II.   **STATEMENT OF MATERIAL UNDISPUTED FACTS** _____ **4**

      A.   Defendants' Liability for Unlawful Adverse Employment Actions _____ 4

      B.   Colombo's Career and Character _____ 7

          1.   *Colombo's Stellar Teaching Career* _____ 7

          2.   *Colombo's Outstanding Coaching Career* _____ 8

          3.   *Colombo Remains Highly Recommended by Those Who Know Him* _____ 8

      C.   Defendants' Investigator, a Female Former Sheriff, Exonerated Colombo _____ 8

   III.   **SUMMARY JUDGMENT STANDARD** _____ **9**

   IV.   **LEGAL ARGUMENT** _____ **10**

      A.   PAUSD is not an Arm of the State for Its Local Employment Role _____ 10

          1.   *Discussion of Newly Applicable Arm of the State Test from Kohn*_____ 10

          2.   *Defendants Fail to Cite Applicable Law in their Rule 12(b)(6) Motion*_____ 11

          3.   *Immunity Doesn't Attach to Defendants in Their Individual Capacities*_____ 12

      B.   PAUSD is not Entitled to Qualified Immunity_____ 13

      C.   Defendants are not Entitled to Qualified Immunity _____ 13

      D.   PAUSD is Liable Under *Monell* for Approving or Ratifying the Conduct_____ 14

      E.   PAUSD is Liable Under *Monell* for its Discriminatory Policies_____ 15

      F.   Defendants Violated FEHA with Adverse Employment Actions on an Arrest_____ 16

      G.   Misandrist Adverse Employment Actions Also Violate Title VII _____ 18

      H.   Defendants Conduct Caused Constructive Termination of Colombo's Career _____ 19

      I.   Defendants' Caused in Excess of $5,201,739 in Economic Damages _____ 20

   IV.   **CONCLUSION** _____ **21**

NOTICE AND MOTION FOR MSJ; MEMO OF PTS. & AUTH.
Case No.: 5:24-cv-00909-NC

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) _____ 12

*Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992)_____ 14

*Brady v. Maryland*, 373 U.S. 83, 87, (1963) _____ 4

*Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc) _____ 18

*Carrillo v. Cnty. of L.A.*, 798 F.3d 1210, 1219 (9th Cir. 2015) _____ 15

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) _____ 12

*Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) _____ 17

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) _____ 17

*Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008)_____ 15

*Connick v. Thompson*, 563 U.S. 51, 61 (2011) _____ 18

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) _____ 20

*Danielson v. Inslee*, 945 F.3d 1096, 1097 (9th Cir. 2019) _____ 15

*Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013)_____ 18

*Endy v. County of Los Angeles*, 975 F.3d 757, 769 (2020)_____ 18

*Fry v. Board of Education*, 17 Cal.2d 753 (1941) _____ 13

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) _____ 15

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994) _____ 12, 14

*Holbrook v. Board of Education*, 37 Cal.2d 316 (1951)_____ 13

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737-38 (1989) _____ 17

*Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (2023) (*en banc*). _____ 4, 13, 14

*Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) _____ 17

*Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018) _____ 15

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978) _____ 17

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) _____ 12, 14

*Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024)_____ 20

*Owen v. Independence*, 445 U.S. 622, 638 (1980) _____ 15

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) _____ 12, 14

*Richards v. County of San Bernadino*, 39 F.4th 562, 572 (9th Cir. 2022) _____ 16

*Richardson v. Board of Education*, 6 Cal.2d 583 (1936) _____ 13

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 885 (9th Cir. 2022) _____ 17

*Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017) _____ 14

*Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995) _____ 15

*Tennison v. City & Cnty. of S.F.*, 570 F.3d 1078, 1087, 1089 (9th Cir. 2009) _____ 15

*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989) _____ 18

*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238 _____ 21

*Vergara v. State of California*, 246 Cal.App.4th 619 (2016) _____ 22

*Whitehall v. County of San Bernardino*, 17 Cal.App.5th 352 (2017) _____ 20

**Statutes**

42 U.S.C. § 1983 _____ 14

42 U.S.C. § 2000e *et seq.* _____ 20

California Code of Regulations Title 5, section 80306 _____ 8

California Education Code § 44955 _____ 22

California Education Code § 44929 _____ 21

California Education Code § 44934 _____ 21

California Education Code § 44938 _____ 21

California Education Code § 44944 _____ 21

California Code of Regulations, Title 2, section 11017.1 _____ 8, 19

California Government Code §§ 12900 *et seq.* _____ 18

**Other Authorities**

Ninth Circuit Manual of Model Civil Jury Instructions _____ 14

Smith, F., *Local Sovereign Immunity*, Columbia L. Rev. Vol. 116:409-487 (2016) _____ 12

**Rules**

Federal Rules of Civil Procedure, rule 56(a) _____ 12

Federal Rules of Civil Procedure, rule 12(b)(6) _____ 14

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE that on July 10, 2024 at 11:00 a.m.** or as soon thereafter as the Court may hear this matter in Courtroom 5, 4th Floor of the Robert F. Peckham Federal Building & United States Courthouse located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Peter Colombo will, and hereby does, move for summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56 based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities including Statement of Material Undisputed Facts with evidentiary citations, the concurrently filed Declaration of Evan C. Nelson and Exhibits and other matters properly presented to the Court.

## STATEMENT OF ISSUES FOR SUMMARY JUDGMENT

The matters on which moving party is seeking summary judgment are as follows:

1.      Defendants are local government actors not entitled to sovereign immunity under *Kohn*.

2.      Defendant Palo Alto Unified School District is not entitled to qualified immunity.

3.      Defendants Austin, Hickey and Bark are not entitled to qualified immunity.

4.      Defendant Palo Alto Unified School District is subject to *Monell* liability for approval or ratification of the conduct of others, including Defendants Austin, Hickey and Bark.

5.      Defendant Palo Alto Unified School District is subject to *Monell* liability for harmful conduct in conformance with its policies.

6.      Defendants violated California's Fair Employment and Housing Act ("FEHA").

7.      Defendants conduct constitutes violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §§ 2000e, *et seq*.

8.      Defendants' conduct caused constructive termination of Plaintiff's employment.

9.      Plaintiff is entitled to a judgment against Defendants for economic damages in the amount of $5,201,739 or an amount determined by the evidence submitted.

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

"Our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87, (1963) (authored by William O. Douglas, Associate Justice (1939 – 1975) Supreme Court of the United States). This precept is certainly no less true when the accused is innocent of a false rape charge based on an alleged incident from two decades ago and his employer uses the arrest, without a conviction or even an adverse factual finding, to discriminate and constructively terminate his employment. When that state actor employer failed to remain neutral through the criminal investigation and suppressed favorable evidence and/or deliberately fabricated false evidence, liability attaches.

Through application of the three-pronged "arm of the state" analysis recently adopted by the Ninth Circuit for determining whether sovereign immunity applies[1], Defendants should be found to not be immune as local state actors filling a local employment function where the intent, control and funding are all local and liability would not impact the state's dignity or solvency.

Employment law principles under both Title VII and FEHA mandate that an arrest without a conviction must not be discriminatorily used as the basis for any adverse employment action, particularly where, as occurred here, the criminal charges were dropped due to lack of credible substantiating evidence and two subsequent administrative investigations also determined there was no credible substantiation of the false accusation. At most, an arrest may be used as the basis for an investigation to determine whether there is evidence of any bad conduct. But when three separate investigations all result in the same conclusion of innocence, the employer should fairly publicize the exonerating findings, rather than concealing its own investigator's factual findings, and must not take adverse employment  actions amounting to constructive termination against a dedicated and tenured teacher.

The claims in this action are bought by Plaintiff Peter Colombo ("Plaintiff" or "Colombo"), a tenured teacher in good standing with 27 years of stellar teaching and coaching history, almost entirely within the Palo Alto Unified School District ("PAUSD"). Over those years of teaching and coaching thousands of students, Colombo always received good, even stellar performance reviews and only had

---

[1] In *Kohn v. State Bar of California*, 87 F.4th 1021 (2023).

NOTICE AND MOTION FOR MSJ; MEMO OF PTS. & AUTH.
Case No.: 5:24-cv-00909-NC

1  three negative written reports, each minor and nothing involving anything of a sexual nature. Then, out of

2  the blue in January of 2022, the husband of NT, a former 6th grader at Jordan Middle School, emailed a

3  false accusation asserting that Colombo had brazenly raped her during lunch in the girl's locker room in

4  2001, more than two decades prior. Essential details of the false claim raised extreme improbabilities, if

5  not outright impossibilities, but Defendants utilized widespread misandrist policies to deny Colombo his

6  due process, including presumption of innocence, and treated him as guilty without any credible

7  substantiating evidence. They also tampered with evidence, suppressing NT's grade report that might have

8  shown Colombo was not even her PE teacher and fabricating false evidentiary inferences in an attempt to

9  create an illusion of guilt to replace the presumption of innocence that due process demands.

10      On January 25, 2024, eight months after the criminal prosecution had concluded with dismissed

11  charges and another administrative investigation by CTC also ended in Colombo's favor, Defendants' own

12  investigator – a female, former sheriff – stated unequivocally that "obviously, there's no way the facts

13  support a finding that there was any type of sexual assault or sexual impropriety" not even to a

14  preponderance of the evidence standard. Rather than using these objective findings to exonerate Colombo

15  after he had been unfairly vilified in the press for two years, Defendants unlawfully told their investigator

16  to not issue a report of her findings and kept their investigation open. Undeterred by overwhelming,

17  objective facts showing that Colombo has done nothing wrong, Defendants continue discriminatory,

18  harassing and retaliatory adverse employment actions such as (1) keeping their investigation open beyond

19  any reasonable time limit, (2) not exonerating Colombo in the press with the investigation findings, and

20  (3) abusively administering Colombo's admin leave, including by (i) not paying his regularly earned

21  stipends for coaching and summer school teaching, (ii) denying him salary increases and bonuses provided

22  to every other active teacher in the District, (iii) refusing to pay him for 3 months of statutorily mandated

23  paid leave, (iv) falsely imprisoning him by forcing him to stay home to collect his salary and (v) denying

24  him career growth through creation of a District-wide hostile work environment.

25      As demonstrated herein, although this case has only been active for a little over three months,

26  Plaintiff has been able to discover enough evidence, more readily available to Defendants, through

27  California Public Records Act ("CPRA") requests and investigations to show there is no reasonable

28  factual dispute that is material.

-3-

## II.   STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.   Defendants' Liability for Unlawful Adverse Employment Actions

1.      The claims in this action are brought by Plaintiff Peter Colombo, a tenured teacher in good standing with 27 years of stellar teaching and coaching history, almost entirely within the Palo Alto Unified School District ("PAUSD"). (Exhibit A, Declaration of Peter Colombo, ¶¶1-2, 5-9.)

2.      In January of 2022, the husband of NT, a former 6th grader at Jordan Middle School, raised a false allegation that Colombo had raped NT during lunch, in the girl's locker room after PE class, some two decades prior during the 2001-2002 school year. (Id. at ¶¶3-4, 10-11.)

3.      Colombo was arrested and prosecuted, but the criminal charges were eventually dropped for lack of supporting evidence. (Id.; Exhibit B, Paly Voice News Report.)

4.      A key piece of evidence that could have completely exonerated Colombo at the outset, NT's grade report for 6th grade, should have been preserved by Defendants but was reported as having been lost. (Nelson Decl., ¶¶4-7; Exhibit C, PAUSD Archives Records Back to Early 1900s; Exhibit D, Redacted Portion of CTC Summary of Investigation.)

5.      Defendants reported the missing evidence in a manner designed to implicate that Colombo had deleted the grade report, even though Defendants had sole access to the evidence. (Exhibit D, "Only *staff* could have removed a student [file]."; Exhibit A, ¶11.)

6.      Although the grade report would have had limited impact, if any, favorable to NT's claim, it could completely exonerate Colombo by showing he wasn't even NT's PE teacher or was at a different school during the class period NT described for when the unsubstantiated rape occurred – Colombo spent 30% of his time teaching at Terman in 2001-2002. (See Exhibit D; Exhibit E, Portion of PAUSD Employee File for Peter Colombo.)

7.      Defendants later claimed to have found NT's relevant student file, and purportedly provided it to the District Attorneys. (Exhibit F, Emails Obtained Through CPRA Requests to SCCDA.)

8.      However, the suppressed grade report and student files have never been provided to Colombo's attorneys despite numerous requests and legal obligations to produce it, and it was never presented at court. (Nelson Decl., ¶7; Exhibit G, Notes From Investigation Interview.)

/ / /

NOTICE AND MOTION FOR MSJ; MEMO OF PTS. & AUTH.
Case No.: 5:24-cv-00909-NC

9.     Following the dropped criminal charges, the California Commission on Teacher Credentialing ("CTC") conducted its own investigation that resulted in complete renewal of Colombo's multi subject teaching credential, without limitation. (Nelson Decl., ¶9; See Exhibit D; Exhibit H, Printout of CTC Website Credential Status; Exhibit I, Hickey Letter Dated 11.1.23.)

10.     Defendants worked together with a common scheme to unlawfully discriminate against Colombo by treating him differently as a man accused of rape. (See Exhibit G, In 20 years of doing school investigations relating to sexual misconduct reports, 100% of the time there was evidence of "grooming", but not here; and, to the investigator, things just didn't add up.; Facts Nos. 20-23 and referenced evidence.)

11.     PAUSD placed Colombo on paid administrative leave to conduct an open-ended investigation without scope, due process protections or time limitations in violation of standard board policies. (Exhibit J, Hickey Letter Re Admin Leave Pending Investigation.)

12.     The investigation was not circumscribed to limit its scope to determining whether there was credible evidence of any conduct underlying the arrest for which action might need to be taken. (Id.)

13.     Defendants finally interviewed Colombo as part of the boundless investigation on January 25, 2024 and after only 20 minutes, Defendants' own investigator stated, "obviously, there's no way the facts support a finding that there was any type of sexual assault or sexual impropriety". (Nelson Decl., ¶8; Exhibit G.)

14.     Rather than concluding the investigation at that point, Defendants kept the investigation open until May 28, 2024, and then provided only a one-sentence factual finding to describe the result of the year-long investigation. (Exhibit K, PAUSD Letter Re Investigation Findings.)

15.     Colombo is entitled under the law to receive a complete report regarding all evidence reviewed by the investigator, factual findings discerned from that evidence, conclusions including analysis of law and regulations, and other information. (Exhibit L, Letter Response to Investigation Findings, including Board Policies at L-37 and L-39.)

16.     California Code of Regulations, Title 2, section 11017.1, clarifies that it is a violation of the Fair Employment and Housing Act ("FEHA") to discriminate against a person who has been arrested, without conviction, by considering such an arrest for any employment decision. (Exhibit M, Copy of California Code of Regulations, Title 2, section 11017.1.)

17.     Similarly, it is a violation of Title VII under federal law, to not presume a criminal arrestee to be innocent or to discriminate against a person by using the information of an arrest for any purpose other than to investigate what proven conduct, if any, led to the arrest. (Exhibit N, EEOC 2012 Guidance on Use of Criminal Records.)

18.     Defendants acted under color of state law as school administrators at Palo Alto Unified School District ("PAUSD") when they violated Plaintiff's federal rights under Title VII as set forth in Fact No. 17. (Nelson Decl., ¶16; Exhibit O.)

19.     Defendants further acted under color of state law to deprive Colombo of due process guaranteed under the Federal Constitution by tampering with evidence, suppressing exonerative evidence and creating false evidence and implications, aimed at intentionally projecting guilt instead of presumed innocence for one of their employees. (Fact Nos. 4-8 and 18, along with cited evidence.)

20.     The District Attorneys, CTC and Defendants all discriminated against Colombo as a man falsely accused of rape, by using evidence of past alcohol abuse (he has been completely sober for 14 years and his use of alcohol never impacted his work at school) in their investigations and prosecutions, even though it was irrelevant to the false rape claim and it was even unlawful to raise the stale allegations from more than 4 years prior. (*Ibid.*; See Cal. Code Regs. Tit. 5, § 80306 - Time for Presentation of Allegations.)

21.     As a man arrested (falsely accused) of a crime for which he has been investigated three times with the same exonerating finding that there is no credible substantiation of the accusation, Colombo has still had unlawful adverse employment action taken against him by Defendants, including but not limited to: (i) not being returned to his PE teaching assignment at Greene Middle School, (ii) not being returned to coach baseball at Paly, (iii) while placed on admin leave, not being paid for summer school and coaching stipends that he consistently earned, (iv) while placed on paid admin leave, not being paid for three months' salary, (v) while placed on admin leave, not being given salary increases and bonuses every active teacher has received, (vi) while placed on admin leave, not being offered mental wellness care. (Exhibit A, ¶12; and see Exhibits B, D, G, H and K.)

22.     At each juncture of Colombo's ordeal, the PAUSD school board has been apprised of what was being done with regard to "employee discipline" relating to Colombo and has approved and/or ratified each and every action. (See Nelson Decl., ¶17; See Exhibit P, Board Agenda Closed Sessions.)

-6-

23. Overarching the mistreatment of Colombo is a widespread misandrist policy, "Believe Women", sponsored by former PAUSD Board President Ken Dauber's spouse Michele Dauber, that as implemented by PAUSD and other government officials, compels treatment of a man accused of rape as guilty thereby depriving him of due process guarantees implicit in the presumption of innocence – even when there was no credible evidence to substantiate the accusation. (See Exhibit G; Exhibit Q, "Believe Women" co-sponsored by Michele Dauber; Exhibit R, News Report of Ken Dauber, Michele Dauber's husband resigning as President of the PAUSD School Board several months after the "process" against Colombo had already been set into motion; Exhibit S, at pp. 22, 24 and 32, "Unfit to Teach?" Article with comments from Michele Dauber showing clear gender based discrimination against men; Exhibit T, Michele Dauber sexist "tweets" exhibiting hateful, misandrist discrimination.)

24. Colombo is a fully tenured teacher of 27 years with no history of conduct to support the false rape accusation, and he cannot legally be disciplined or terminated by Defendants because there exists no substantiating evidence that he has done anything wrong. (See Exhibit G.)

25. Defendants refusal to publicize their own independent investigator's findings, including that "obviously, there's no way the facts support a finding that there was any type of sexual assault or sexual impropriety", is part of Defendants' unlawful refusal to return Colombo to his career without compensating him for the career their discriminatory misconduct has destroyed. (See Exhibit K; Exhibit G.)

26. Accordingly, Colombo's economic losses for the constructive termination of his career, calculated to his statistical work life expectancy of 69.75 years, totals $5,201,739 in future losses, comprised of $2,632,280 in salaries (assuming 3.5% average annual increases), $224,307 in lost stipends for coaching and summer school, $526,456 in employer paid benefits, and $1,818,336 in lost pensions (the difference between his pension earned for retirement at age 70 if has no more income versus his pension if he works until age 69.75, and collects 13 years of pension for his additional life expectancy after retirement). (Nelson Decl., ¶¶23, 24; Exhibit U.)

**B.    Colombo's Career and Character**

*1.    Colombo's Stellar Teaching Career*

27. Colombo has been a teacher for 27 years and has been "written up" only three times; (a) in 2008, for making a male student run liners for being disrespectful, (b) in 2020, during COVID, because a

couple basketball players were seen in the gym with their masks down, and (c) in 2021, he was reported for using improper slang language with some boys and for elbow bumping a boy for running a great 400m. (Exhibit A, ¶¶5-7; Exhibit A-1.)

28.     Colombo's teaching record prior to the single, false accusation is devoid of any improper conduct of a sexual nature (sexual contact, grooming, assault, etc.). (Id.)

29.     Colombo's teacher evaluations are more than satisfactory, and frequently stellar. (Exhibit A, ¶8; Exhibit A-2.)

30.     Colombo consistently taught summer school. (Exhibit A, ¶7; Exhibit A-3.)

### 2.     Colombo's Outstanding Coaching Career

31.     Colombo has coached two sports most years since 1998. (Exhibit A, ¶8; See Exhibit A-4.)

32.     Colombo was an Athletic Director for six years. (Id.)

33.     In 2017, Colombo was lauded as an invaluable asset to students. (Exhibit A, ¶9; Exhibit V.)

### 3.     Colombo Remains Highly Recommended by Those Who Know Him

34.     Colombo received 20+ letters for CTC to renew his credential. (Nelson Decl., ¶¶26, 27.)

35.     Notably, he received letters from each of the three female PE teachers who worked at Jordan Middle School in 2001-2002, doubting and refuting the credibility of the false accusation. (Id; Exhibit W.)

**C.     Defendants' Investigator, a Female Former Sheriff, Exonerated Colombo**

36.     The independent investigator hired by PAUSD began the interview by stating this was not a difficult case and she would only need 20 minutes for the interview. (Nelson Decl., ¶8; Exhibit G.)

37.     The investigator said that she didn't even need to interview the three female PE teachers who controlled the girls' locker room in 2001-2002, because there simply was not sufficient credible evidence from which to find that a sexual assault or rape had actually occurred. (Id.)

38.     The investigator noted that she has conducted numerous investigations of this type of alleged serious sexual abuse, and 100% of the time in her experience, there has been some form of significant grooming in those cases where abuse occurred, which did not exist in this case. (Id.)

39.     Defendants' investigator stated, "I base my findings on a preponderance of evidence standard and I don't even see with her [NT's] testimony that this comes close to meeting that standard. . . .

I have to admit there is no evidence to show that you did this or for me to make that kind of finding right, because it's just not, there's not enough evidence at all here." (Id.)

40.     Defendants' investigator concluded the interview stating, "I will say that, as you know, I already explained to you, is that, obviously, there's no way the facts support a finding that there was any type of sexual assault, sexual impropriety but um I'm sure you already knew that . . .." (Id.)

41.     Even though the investigator stated she was prepared to write her final investigative report on January 25, 2024, Defendants have suppressed this evidence by not providing her findings, which is required to be provided to Colombo as part of his due process. (Exhibit G; See Exhibit K.)

**D.     PAUSD is not an Arm of the State for Its' Local Employment Role**

42.     The statutory intent relating to school districts employing teachers is that such matters will be conducted locally through contract negotiations with employee bargaining units. (See Exhibit X.)

43.     The relationship between a school district and its employees is contractual and local in nature. (Exhibit Y, p. California Educators' Guide to School Law, Chapter XIV, School Employees.)

44.     The state does not contract with the teacher employees. (Exhibit X; See Exhibit Y.)

45.     The local school district is governed by a school board comprised of locally elected members from the community. (Exhibit Z, Bylaws of the Board, 9220 BB "Governing Board Elections".)

46.     PAUSD is a basic aid district with the vast majority of its funding coming from local funding sources. (Exhibit AA, at p. 7, Legislative Analyst Office Explanation of Local Control Funding Formula and Basic Aid Districts; Exhibit BB, p. 2/12 Article Discussing PAUSD as a Basic Aid District receiving almost 90% of its revenue from local funding sources.)

47.     School districts are required to obtain insurance to cover losses such as an adverse judgment incurred as the result of Defendants' unlawful conduct in this case, and state funds will not be responsible to pay any portion of an eventual verdict in this matter. (Exhibit CC, Bylaws of the Board, 9260 BB.)

**III.     SUMMARY JUDGMENT STANDARD**

A party may move for summary judgment on a "claim or defense" or "part of… a claim or defense." Fed. Rules Civ.Proc., rule 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and

1  the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,
2  477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v.*
3  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" only if there is
4  sufficient evidence for a reasonable jury to find for the nonmoving party. *Ibid.*

5  

**IV.    LEGAL ARGUMENT**

6      "When governmental actors offend federal rights, victims are often left with no one to hold
7  accountable in federal courts. . . . Local government, after all, is the layer of government that is often
8  closest to our daily lives, from law enforcement to education. . . .[and] immunity unduly obstructs
9  constitutional accountability."  Smith, F., *Local Sovereign Immunity*, Columbia L. Rev. Vol. 116:409-
10  487 (2016). Fortunately, Supreme Court and Ninth Circuit precedent recognizes that unless local
11  government agents and agencies are an "arm of the state", such that holding them liable would offend the
12  state's twin reasons for having sovereign immunity, dignity and solvency, those local state government
13  actors can be held responsible for violating Constitutional rights. Accordingly, proper application of
14  current legal precedent allows Defendants to do the right thing by compensating Colombo for the harm
15  caused by their federal rights-offending misdeeds, including destruction of a valued educator's career.

16      **A.    PAUSD is not an Arm of the State for Its Local Employment Role**

17      Sovereign immunity does not attach unless Defendant is an "arm of the state." *See, e.g., Mt.*
18  *Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Hess v. Port Auth. Trans-*
19  *Hudson Corp.*, 513 U.S. 30, 47 (1994); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

20      **1.    Discussion of Newly Applicable Arm of the State Test from *Kohn***

21      Recently, an 11-member panel of the Ninth Circuit Court of Appeals changed the arm of the state
22  test that is to be applied in the Circuit by adopting the D.C. Circuit's three-factor test distilled from recent
23  Supreme Court decisions: "(1) the [s]tate's intent as to the status of the entity, including the functions
24  performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the
25  state treasury." *Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (2023) (*en banc*).

26      Moreover, "[w]hen indicators of immunity point in different directions, the Eleventh
27  Amendment's twin reasons for being [the state's dignity and solvency] remain our prime guide." *Id.* at
28  1028 1027 (citing *Hess*, 513 U.S. at 47, 52.)

Applying the new three-factor test here, Defendant PAUSD is fulfilling a local function by employing teachers; It is under local control; and it is predominantly locally funded. Hence, Defendants are not an arm of the state for their employment of teachers and should not have sovereign immunity.

The intent relating to the school district's function in employing teachers is that such matters will be conducted locally through contract negotiations between the local school district and the employee bargaining units. (Fact No. 42; Exhibit X.) Moreover, the relationship between a school district and its employees is contractual and local in nature. (Fact No. 43; Exhibit Y, p. 41-1 "The relationship between a school district and its employees is contractual in nature." (citing *Richardson v. Board of Education*, 6 Cal.2d 583 (1936); *Fry v. Board of Education*, 17 Cal.2d 753 (1941); *Holbrook v. Board of Education*, 37 Cal.2d 316 (1951).) The state does not contract with the district's teachers. (Fact No. 44.)

Regarding control, PAUSD is governed by a local school board of locally elected members from the community. (Fact No. 45; Exhibit Z, Bylaws of the Board, 9220 BB "Governing Board Elections".)

Funding for PAUSD is distinctly local. PAUSD is a "Basic Aid District" with the vast majority of its funding coming from local funding sources through property taxes. (Fact No. 46; Exhibit AA, at p. 7, Legislative Analyst Office Explanation of Local Control Funding Formula and Basic Aid Districts; Exhibit BB, p. 2/12 PAUSD is a Basic Aid District receiving almost 90% of its revenue from local funding sources.) Perhaps most salient for purposes of the state treasury impact analysis, PAUSD is mandated to carry insurance, so state funds will not be responsible to pay any portion of an eventual verdict in this matter. (Fact No. 47; Exhibit CC, Bylaws of the Board, 9260 BB.)

Analysis of the intent, control and treasury factors demonstrates that California's "dignity and solvency" will not be impacted by this case and, therefore, sovereign immunity should not apply.[2]

**2.    Defendants Fail to Cite Applicable Law in their Rule 12(b)(6) Motion**

Defendants' recently filed Motion to Dismiss under Rule 12(b)(6) fails to cite the applicable Ninth Circuit three-factor test announced in *Kohn*, which clearly appears as part of the discussion of

---

[2] Whether the analysis would be different for PAUSD's education role, does not need to be resolved here. See *Kohn,* 87 F.4th at 1038-1053 (Justice Mendoza's Concurring Opinion discussing why the entity analysis approach from the D.C. Circuit should not be adopted, as it runs afoul of Supreme Court rulings and was actually not properly before the Court in *Kohn* because the issue was not necessary to the decision and it had not been briefed or argued by the parties.).

NOTICE AND MOTION FOR MSJ; MEMO OF PTS. & AUTH.
Case No.: 5:24-cv-00909-NC

Eleventh Amendment Immunity in the Ninth Circuit Manual of Model Civil Jury Instructions, Chapter 9. Civil Rights Action—42 U.S.C. § 1983, which states:

> "The Ninth Circuit applies a three-factor test to determine whether a government entity is a state agency for Eleventh Amendment purposes: (1) what is the state's intent as to the status of the entity, including the functions performed by the entity; (2) what is the state's control over the entity; and (3) what is the entity's overall effects on the state treasury. *Kohn v. State Bar of California,* 87 F.4th 1021, 1031 (9th Cir. 2023) (en banc) (adopting the D.C. Circuit's three-factor test)."

Instead, Defendants cite two cases that apply the old *Mitchell* factors, which the 11-member panel in *Kohn* cited as being "out of step with current Supreme Court jurisprudence" and that "also generate a muddled arm of the state analysis within our Circuit." 87 F.4th at 1027, 1028. Indeed, one of the two main cases cited by Defendants, *Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir. 1988), is the example used by the Court in *Kohn* to explain the need to revamp the Ninth Circuit arm of the state test to conform with more recent Supreme Court decisions such as *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994), and *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).[3]

As set forth above, PAUSD does not get immunity through proper application of the agency function-based three-part "intent, control, treasury" test adopted by the Ninth Circuit in *Kohn*, particularly while keeping in mind the twin reasons for sovereign immunity – dignity and solvency – that become tiebreakers according to the Supreme Court's decision in *Hess*.

### 3.    Immunity Doesn't Attach to Defendants in Their Individual Capacities

The Eleventh Amendment also imposes no bar to Plaintiff's damages action against Defendants Austin, Hickey and Bark for acts alleged to have been taken in their personal capacity. *See Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995). The Supreme Court has made it clear that a plaintiff can seek

---

[3] Conclusions about local school boards being arms of the state, based on the *Mitchell* factors as applied by the courts in *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992) and *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017), no longer have direct application. In particular, "Basic Aid Districts" like PAUSD that derive most of their funding from local property tax revenues appear to require a distinct analysis separate from those LCFF districts that obtain funding predominantly from state funding based on student enrollment.

-12-

1  damages in a section 1983 action if facts show personal liability through individual actions or omissions,

2  taken under color of state law, which cause the deprivation of Plaintiff's federal rights. *Hafer v. Melo*,

3  502 U.S. 21, 25 (1991).

4  **B.    PAUSD is not Entitled to Qualified Immunity**

5  PAUSD, as a local governing body defendant, is not entitled to qualified immunity. *See Owen v.*

6  *Independence*, 445 U.S. 622, 638 (1980) (holding that "municipality may not assert the good faith of its

7  officers or agents as a defense to liability under § 1983"). And, as discussed below, PAUSD's agents are

8  not entitled to the good faith defense, so there is nothing valid for PAUSD to assert.

9  **C.    Defendants are not Entitled to Qualified Immunity**

10  To have qualified immunity, private parties must have acted in direct reliance on then-binding

11  Supreme Court precedent and presumptively valid state law. *Danielson v. Inslee*, 945 F.3d 1096, 1097

12  (9th Cir. 2019) (citing *Clement v. City of Glendale*, 518 F.3d 1090, 1096-97 (9th Cir. 2008)).

13  Defendants have no good faith defense because their conduct in suppressing evidence favorable

14  to Plaintiff or fabricating false inference/evidence runs directly afoul of well established law.

15  Intentionally or recklessly suppressing evidence has been known to be an actionable offense for

16  decades. *See Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018); *Tennison v. City & Cnty. of S.F.*, 570

17  F.3d 1078, 1087, 1089 (9th Cir. 2009); *see also Carrillo v. Cnty. of L.A.*, 798 F.3d 1210, 1219 (9th Cir.

18  2015) (The law in 1984 clearly established that government officials were bound to disclose material,

19  exculpatory evidence.).  And fabrication of evidence implicates "the fundamental due process right to a

20  fair trial." *Richards v. County of San Bernadino*, 39 F.4th 562, 572 (9th Cir. 2022).  This is true

21  "regardless of the plaintiff's innocence or guilt . . . the right to a fair trial is impinged either way." *Id.*

22  Here, a key piece of evidence that could have completely exonerated Colombo at the outset, NT's

23  grade report for 6th grade, should have been preserved by Defendants but was reported as having been lost.

24  (Fact No. 4; Nelson Decl., ¶¶4-7; Exhibit C, PAUSD Archives Records Back to Early 1900s; Exhibit D,

25  Redacted Portion of CTC Summary of Investigation.) Defendants then reported the evidence missing in a

26  manner designed to implicate that Colombo had deleted the grade report, though Defendants had sole

27  access to it. (Fact No. 5; Exhibit D, "Only *staff* could have removed a student [file]."; Exhibit A, ¶11.)

28  Although the grade report would have had limited impact, if any, favorable to NT's claim, it could

-13-

1  completely exonerate Colombo by showing he wasn't even NT's PE teacher or was at a different school

2  during the class period NT described for when the unsubstantiated rape occurred – Colombo spent 30% of

3  his time teaching at Terman in 2001-2002. (Fact No. 6; See Exhibit D; Exhibit E, Portion of PAUSD

4  Employee File for Peter Colombo.)

5         Defendants later claimed to have found NT's relevant student file, and purportedly provided it to

6  the District Attorneys. (Fact No. 7; Exhibit F, Emails Obtained Through CPRA Requests to SCCDA.)

7  However, the suppressed grade report and student files have never been provided to Colombo's attorneys

8  despite numerous requests and legal obligations to produce it, and it was never presented at court. (Fact

9  No. 8; Nelson Decl., ¶7; See Exhibit G, Notes From Investigation Interview, Plaintiff's counsel enquires

10  about the student files and notes they have never been provided.)

11         Defendants also failed to apprise the District Attorney that Colombo is a fully tenured teacher of

12  27 years with no history of conduct to support the false rape accusation, and there exists no substantiating

13  evidence that he has done anything wrong. (Fact No. 24; See Exhibit G.) Even now, Defendants refuse to

14  publicize their independent investigator's findings that "obviously, there's no way the facts support a

15  finding that there was any type of sexual assault or sexual impropriety." (Fact No. 25; See Exhibit K.)

16         Since Defendants have no good faith defense, they have no qualified immunity for their actions.

17       **D.**    **PAUSD is Liable Under *Monell* for Approving or Ratifying the Conduct**

18         PAUSD can be liable for an isolated constitutional violation if a final policymaker ratified the

19  actions. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 885 (9th Cir. 2022); *Christie v. Iopa*,

20  176 F.3d 1231, 1238 (9th Cir. 1999); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

21         The court must determine as a matter of state law whether certain employees or officials have the

22  power to make official or final policy on a particular issue or subject area. *Jett v. Dallas Indep. Sch.*

23  *Dist.*, 491 U.S. 701, 737-38 (1989). Here, PAUSD is governed by a school board of locally elected

24  members from the community and that school board has the power to make official or final policy. (Fact

25  No. 45; Exhibit Z, Bylaws of the Board, 9220 BB "Governing Board Elections".)

26         To show ratification, Plaintiff must prove that the PAUSD School Board had knowledge (actual

27  or constructive) of the constitutional violation and approved of it. *Sabra*, 44 F.4th at 885. *See also Lytle*

28

-14-

*v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) ("The policymaker must have knowledge of the constitutional violation and actually approve of it." (citing *Praprotnik*, 485 U.S. at 127.)

At each juncture of Colombo's nightmarish ordeal, the PAUSD school board has been apprised of what was being done with regard to "employee discipline" relating to Colombo and has approved and/or ratified each action. (Fact No. 22; Nelson Decl., ¶17; See Exhibit P, Board Agenda Closed Sessions.)

Implicit in these closed session board meetings is the fact that the school board was being apprised of everything that was being done regarding Colombo's investigation, arrest, prosecution, dismissal of charges, CTC and PAUSD investigations, and each adverse employment action taken. (Id.) The Board had constructive knowledge of each constitutional violation and approved of them, including:

(A)    Suppression of NT's grade report that would have shown she didn't even have Colombo as her PE teacher in 2001-2002 (Fact Nos. 4-8; 19);

(B)    Violation of Colombo's federal rights under Title VII (Fact Nos. 17-19); and

(C)    Ratifying the adverse employment actions taken against Colombo due to an arrest, without a conviction of relevant finding of fact against him. (Fact Nos. 19-22.)

### E.    PAUSD is Liable Under *Monell* for its Discriminatory Policies

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978) established that a local government body can be liable for policies that violate federal rights. Such liability may attach when an employee committed a constitutional violation pursuant to an expressly adopted official policy. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). "Official municipal policy includes the decisions of a government's lawmakers, acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Endy*, 975 F.3d at 769 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "[A] rule or regulation promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies *Monell*'s policy requirement[.]" *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc).

Overarching the mistreatment of Colombo is a widespread misandrist policy, "Believe Women", sponsored by former PAUSD Board President Ken Dauber's spouse Michele Dauber, that as implemented by PAUSD and other government officials, compels treatment of a man accused of rape as guilty thereby

-15-

1   depriving him of due process guarantees implicit in the presumption of innocence – even when there was

2   no credible evidence to substantiate the accusation. (Fact No. 23; See Exhibit G; Exhibit Q, "Believe

3   Women" co-sponsored by Michele Dauber; Exhibit R, News Report of Ken Dauber, Michele Dauber's

4   husband resigning as President of the PAUSD School Board several months after the "process" against

5   Colombo had already been set into motion; Exhibit S, at pp. 22, 24 and 32, "Unfit to Teach?" Article with

6   comments from Michele Dauber showing clear gender based discrimination against men; Exhibit T,

7   Michele Dauber sexist "tweets" exhibiting hateful, misandrist discrimination.)

8       The adopted misandrist policies based on the "Believe Women" resolution, underlies PAUSD's

9   inequitable and federal rights-violating conduct, including:

10      (A)     Suppression of NT's grade report that would have contradicted her story and likely shown

11  she didn't even have Colombo as her PE teacher in 2001-2002 (Fact Nos. 4-8; 19);

12      (B)     Violation of Colombo's federal rights under Title VII (Fact Nos. 17-19); and

13      (C)     Ratifying the adverse employment actions taken against Colombo due to an arrest, without

14  a conviction or relevant finding of fact against him. (Fact Nos. 19-22.)

15      **F.    Defendants Violated FEHA with Adverse Employment Actions Based on an Arrest**

16      California's Fair Employment and Housing Act, California Government Code §§ 12900 *et seq.*

17  provides protection from harassment or discrimination in employment. California Code of Regulations,

18  Title 2, section 11017.1 clarifies that it is a violation of the Fair Employment and Housing Act ("FEHA")

19  to discriminate against a person who has been arrested, without conviction, by considering such an arrest

20  for any employment decision. (Fact No. 16; Exhibit M, Copy of Section 11017.1.)

21      Plaintiff was arrested in mid-2022, but the charges based on the false rape claim were dropped for

22  lack of substantiating evidence in May of 2023. (Fact No. 3; Exhibit B.) Defendants presumptively knew

23  there was no evidence of any conduct by Colombo to suggest he might have done what he was accused

24  of doing, because (1) Colombo had a stellar 27-year teaching and coaching career with only three minor

25  written reports against him, and no misconduct of a sexual nature (Fact Nos. 1, 27-35); (2) All three

26  female PE teachers in control of the girls' locker room during the 2001-2002 school year doubted and/or

27  refuted the false rape allegation (Fact No. 35; Exhibit W, three letters from the three female PE teachers);

28  (3) Defendants suppressed NT's grade report for 6th grade because it contradicted her claim –

-16-

presumptively showing she didn't even have Colombo as her PE teacher, since he was teaching 6th grade PE at a completely different school in 2001-2002 (Fact Nos. 4-8; Exhibits C, D, E, F and G; Exhibit A, Colombo Decl., ¶¶ ); (4) CTC conducted an investigation that concluded, as had the criminal case, in Colombo's favor resulting in renewal of his credential without limitation (Fact No. 9; Exhibits D, H, and I.); and (5) Defendants conducted an investigation without scope, authority or time limitation (Fact No. 11), not circumscribed to determination of whether credible evidence existed to prove Colombo had engaged in the misconduct underlying the false rape claim (Fact No. 12), all of which became conclusive knowledge as of January 25, 2024 that there was nothing to support a finding that a rape or assault had occurred based on their own independent investigator's findings (Fact Nos. 13-15, 36-41; Exhibit G).

However, even knowing that there was no evidence of conduct to substantiate the false rape claim and arrest, Defendants refused to publish or publicize their investigator's findings exonerating Colombo (Fact No. 41; Exhibits G and K), and continued to take adverse employment actions against Colombo based solely on the arrest, in open violation of FEHA, including: (i) not returning him to his PE teaching assignment at Greene Middle School, (ii) not returning him to coach baseball at Paly, (iii) not paying him for summer school and coaching stipends that he consistently earned, (iv) not paying him for three months' salary while he was on paid leave, (v) not giving him given salary increases and bonuses every active teacher has received, and (vi) not offering him stepped up mental wellness care knowing the severe emotional distress their misconduct was causing him to endure. (Fact No. 21; Exhibit A, ¶12; and see Exhibits B, D, G, H and K.)

The U.S. Supreme Court ruled just over a month ago, in *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024), that an adverse employment action is anything that constitutes a "disadvantageous" change in an employment term or condition. Each and all of these employment actions taken by Defendants, based solely on an arrest, created a disadvantageous change in Colombo's employment terms. It is also well established that these employment actions taken by Defendants, even when placing Colombo on paid leave, constitute actionable adverse employment actions. *See, e.g.*, *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013); *Whitehall v. County of San Bernardino*, 17 Cal.App.5th 352 (2017) (holding that under federal law (*Dahlia*), and under California law (*Whitehall*), paid administrative leave can constitute an adverse employment action.

Moreover, since FEHA prohibits considering an arrest that doesn't result in conviction for any employment decision, these employment actions are *per se* violations of FEHA for which Defendants should be held liable.

### G.       Adverse Employment Actions Based on Gender Discrimination Violate Title VII

Just as Defendants' actions violate FEHA as discussed above, because such conduct is based on misandrist gender discrimination, such also violates Title VII. "Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' §2000e-2(a)(1)." *Muldrow, supra,* 144 S. Ct. at 974. Moreover, it is a violation of Title VII under federal law, to not presume a criminal arrestee to be innocent or to discriminate against a person by using the information of an arrest for any purpose other than to investigate what proven conduct, if any, led to the arrest. (Fact No. 17; Exhibit N, EEOC 2012 Guidance on Use of Criminal Records.)

As set forth in Section F., above, Defendants had conclusive knowledge as of January 25, 2024 that there was nothing to support a finding that a rape or assault had occurred based on their own independent investigator's findings (Fact Nos. 13-15, 36-41; Exhibit G).

Notwithstanding that knowledge, as a man arrested (falsely accused) of a crime for which he has been investigated three times with the same exonerating finding that there is no substantiation of the accusation, Colombo has still had unlawful adverse employment action taken against him by Defendants, including but not limited to: (i) not being returned to his PE teaching assignment at Greene Middle School, (ii) not being returned to coach baseball at Paly, (iii) not being paid for summer school and coaching stipends that he consistently earned, (iv) not being paid for three months' salary, (v) not being given salary increases and bonuses every active teacher has received, (vi) not being proactively offered mental wellness care. (Fact No. 21; Exhibit A, ¶12; and see Exhibits B, D, G, H and K.)

Overarching the mistreatment of Colombo is a widespread misandrist policy, "Believe Women", sponsored by former PAUSD Board President Ken Dauber's spouse Michele Dauber, that as implemented by PAUSD and other government officials, compels treatment of a man accused of rape as guilty thereby depriving him of due process guarantees implicit in the presumption of innocence – even when there was

-18-

no credible evidence to substantiate the accusation. (Fact No. 23; See Exhibit G; Exhibit Q, "Believe Women" co-sponsored by Michele Dauber; Exhibit R, News Report of Ken Dauber, Michele Dauber's husband resigning as President of the PAUSD School Board several months after the "process" against Colombo had already been set into motion; Exhibit S, at pp. 22, 24 and 32, "Unfit to Teach?" Article with comments from Michele Dauber showing clear gender based discrimination against men; Exhibit T, Michele Dauber sexist "tweets" exhibiting hateful, misandrist discrimination.)

Regardless of how strong the political winds might feel to Defendants as Plaintiff's employer, they are required to treat a man accused of rape as presumed innocent and must remain neutral—they cannot take sides against him with no factual finding to support the claim that he engaged in the criminal conduct.

### H.    Defendants' Conduct Caused Constructive Termination of Colombo's Career

A constructive discharge occurs when the employer's conduct effectively forces an employee to resign. *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1244.

Under California law, a tenured teacher who has not done anything wrong cannot be lawfully disciplined or terminated. See, e.g., Cal. Ed. Code § 44929, subd. (b) (the "tenure statute" provided tenure to Colombo more than quarter of a century ago); Cal. Ed. Code §§ 44934, 44938, and 44944 (the "dismissal statutes" has strict requirements for notice and opportunity to correct behavior, which cannot be initiated because Defendants have placed Colombo on permanent admin leave); and Cal. Ed Code § 44955 (the "reduction-in-force statute" requires school districts, in the event of layoffs, to terminate teachers based on seniority alone, and Colombo has seniority over the other male PE teachers at Greene Middle School and over 12 PE teachers within PAUSD).

Colombo is a fully tenured teacher of 27 years with no history of conduct to support the false rape accusation, and he cannot legally be disciplined or terminated by Defendants because there exists no substantiating evidence that he has done anything wrong. (Fact Nos. 1, 27-35, 36-41; and Exhibit G.) Consequently, Defendants have no cause or lawful ability to terminate Colombo's employment, as the teacher tenure statutes have already been upheld by the California Appellate Court against challenge by school districts. *See Vergara v. State of California*, 246 Cal.App.4th 619 (2016).

In an attempt to work around their dilemma, Defendants have created a hostile work environment for Colombo that would make it untenable for him to return, including by their refusal to publicize their

-19-

own independent investigator's findings that "obviously, there's no way the facts support a finding that there was any type of sexual assault or sexual impropriety". The overtly hostile environment is exacerbated when combined with the highly publicized false light traducement titled "Unfit to Teach" with Ms. Dauber's vitriolic comments (Exhibit S) and Defendants misandrist treatment of Colombo as though he were guilty instead of being presumed (and proven) innocent. (Fact No. 25; See Exhibit K; Exhibit G.) Hence, Defendants cannot legitimately attempt to bring Colombo back to his career at the hostile work environment they have nurtured[4]; however, they also cannot terminate him.

This is a very distinct case of constructive discharge for which there is no remedy other than payment of compensation for the career that has been destroyed because Defendants failed to remain neutral, treated Colombo as guilty based on misandrist policies emanating from the "Believe Women" resolutions, and withheld exonerating evidence in the form of the accuser's grade report for 6th grade (because it contradicted her story, including by showing she didn't even have Colombo as her 6th grade PE teacher) and, more recently, by concealing the findings of their own independent investigator. Not only has Colombo been constructively discharged from his fully tenured position at PAUSD, but he cannot obtain employment anywhere because Defendants have allowed the false light press narrative against him to fester for 2.5 years, which paints him as a child rapist without any supporting evidence.

## I.    Defendants' Misconduct Has Caused in Excess of $5,201,739 in Economic Damages

Colombo's economic losses for the constructive termination of his career, calculated to his statistical work life expectancy of 69.75 years, totals $5,201,739 in future losses, comprised of $2,632,280 in salaries (assuming 3.5% average annual increases), $224,307 in lost stipends for coaching and summer school, $526,456 in employer paid benefits, and $1,818,336 in lost pensions (the difference between his pension earned for retirement at age 70 if has no more income versus his pension if he works until age 69.75, and collects 13 years of pension for his additional life expectancy after retirement). (Nelson Decl., ¶¶23, 24; Exhibit A, ¶ 11; Exhibit U; Exhibit V, 2017 Article at p. 2 "I am the luckiest man in the world. I will teach and coach until I am 70, easy.") Plaintiff should be awarded this amount against Defendants.

---

[4] Notwithstanding the extreme mental trauma returning to Greene Middle School would pose under the conditions sponsored by Defendants, Plaintiff would be forced to return if Defendants demanded, because he cannot financially afford to forego his salary and benefits from his only employment option.

NOTICE AND MOTION FOR MSJ; MEMO OF PTS. & AUTH.
Case No.: 5:24-cv-00909-NC

## IV.    CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment should properly be granted in all respects. Plaintiff respectfully requests rulings that:

1. Defendants are local government actors not entitled to sovereign immunity under *Kohn*.

2. Defendant Palo Alto Unified School District is not entitled to qualified immunity.

3. Defendants Austin, Hickey and Bark are not entitled to qualified immunity.

4. Defendant Palo Alto Unified School District is subject to *Monell* liability for approval or ratification of the conduct of others, including Defendants Austin, Hickey and Bark.

5. Defendant Palo Alto Unified School District is subject to *Monell* liability for harmful conduct in conformance with its policies.

6. Defendants violated California's Fair Employment and Housing Act ("FEHA").

7. Defendants conduct constitutes violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C.A. §§ 2000e, *et seq*.

8. Defendants' conduct caused constructive termination of Plaintiff's employment.

9. Plaintiff is entitled to a judgment against Defendants for economic damages in the amount of $5,201,739 or an amount determined by the evidence submitted.

The facts and issues addressed herein are beyond reasonable or material dispute and warrant immediate resolution through summary judgment proceedings. Defendants have had access to all material documents and witnesses for 2.5 years, including Plaintiff, whom they already interviewed as part of their investigation on January 25, 2024.

Respectfully submitted,

Dated:  June 4, 2024

LAW OFFICE OF EVAN C. NELSON

By: _____
    Evan C. Nelson
    Attorneys for Plaintiff PETER COLOMBO