EVAN C. NELSON (SBN 172957)
LAW OFFICE OF EVAN C. NELSON
1990 N. CALIFORNIA BLVD., 8TH FLOOR
WALNUT CREEK, CA 94596
Telephone: (925) 323-1991
Email: evancnelson.law@gmail.com

*Attorneys for Plaintiff Peter Colombo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER COLOMBO,<br><br>     Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN sued individually and in his capacity as Superintendent at PAUSD, LISA HICKEY sued individually and in her capacity as Director HR Certificated Employees at PAUSD, and AMANDA BARK sued individually and in her capacity as Manager Policy and Legal Compliance at PAUSD,<br><br>     Defendants. | Case No. 5:24-cv-00909-NC<br><br>**PLAINTIFF PETER COLOMBO'S NOTICE AND RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**FED. RULES CIV.PROC., RULE 56**<br><br>DATE:     SEPTEMBER 25, 2024<br>TIME:     11:00 AM<br>LOCATION:  COURTROOM 5, 4th FLOOR<br><br><br>**HON. NATHANAEL M. COUSINS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

NOTICE OF MOTION AND MOTION ....................................................................................... 1

ISSUES PRESENTED FOR PARTIAL SUMMARY JUDGMENT ............................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.      INTRODUCTION ............................................................................................................. 2

II.    STATEMENT OF FACTS ............................................................................................... 4

    A.   DEFENDANTS' LIABILITY FOR UNLAWFUL ADVERSE EMPLOYMENT ACTIONS. ........................... 4

    B.   PAUSD IS NOT AN ARM OF THE STATE FOR ITS' LOCAL EMPLOYMENT ROLE. ..................... 8

    C.   THE INDIVIDUAL CAPACITY DEFENDANTS VIOLATED PLAINTIFF'S ESTABLISHED FEDERAL RIGHTS. ........................ 9

III.   ARGUMENT ................................................................................................................... 9

    A.   DEFENDANTS ARE NOT ENTITLED TO ELEVENTH AMENDMENT SOVEREIGN IMMUNITY. ........................ 9

        1.   *Sovereign Immunity is Waived for Discrimination and Other Claims.* ................................. 10

        2.   *Defendants are not Otherwise Entitled to Sovereign Immunity Here.* .................................. 10

    B.   QUALIFIED IMMUNITY DOES NOT ATTACH AS DEFENDANTS VIOLATED WELL-ESTABLISHED LAW. ................... 13

        1.   *Suppressed Evidence Re 6th Grade PE Teachers at Jordan in 2001-2002.* ........................... 14

        2.   *Unlawfully Delayed Title IX Investigation and Suppressed Findings of Fact.* ........................ 15

        3.   *A Timely Investigation Would Have Found More Exculpatory Evidence.* ............................... 16

           a.   *Requests for Judicial Notice – Federal Rule of Evidence 201* ......................................... 16

           b.   *If an Assault Occurred, it was at Foothill Middle School in 2002-2003.* ........................ 17

    C.   DEFENDANTS VIOLATED FEHA WITH ADVERSE EMPLOYMENT ACTIONS BASED ON AN ARREST. ................. 18

    D.   DEFENDANTS VIOLATED TITLE VII THROUGH GENDER DISCRIMINATION. ............................ 19

    E.   DEFENDANTS CONDUCT CAUSED CONSTRUCTIVE TERMINATION OF COLOMBO'S CAREER ............ 19

    F.   DEFENDANTS' MISCONDUCT HAS CAUSED IN EXCESS OF $5,201,739 IN ECONOMIC DAMAGES .......... 20

IV.   CONCLUSION ............................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

<span style="text-align:center">C<small>ASES</small></span>

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) -------------------------------------------------- 13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ------------------------------------------ 9

*Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) ---------------------------------------------- 13

*Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992) ------------------------------ 12

*Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) ------------------------------------- 13

*Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995) ------------------------------------------- 14

*Burns v. Reed*, 500 U.S. 478, 486 (1991) ------------------------------------------------------------- 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ----------------------------------------------- 9

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) ---------------------------------------------- 19

*Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 819 (9th Cir. 2001) -------------------- 10

*Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) ------------------------- 13

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) ----------------------------------------------------------- 10

*Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008) ----------------------------------------------- 13

*Fry v. Board of Education*, 17 Cal.2d 753 (1941) ------------------------------------------------- 11

*Garmon v. Cnty. of L.A.,* 828 F.3d 837, 843 (2016) --------------------------------------------- 9

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) --------------------------------------------- 14

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994)----------------------- 10, 11, 12, 13

*Holbrook v. Board of Education*, 37 Cal.2d 316 (1951)----------------------------------------- 11

*Hope v. Pelzer*, 536 U.S. 730, 736 (2002)-------------------------------------------------------- 13

*In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002) ------------------------------------------- 10

*Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) ------------------------------------------ 13

*Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2018)-------------------------------------------- 13

*Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060 (9th Cir. 2006) --------------------------- 14

*Kohn v. State Bar of California*, 87 F.4th 1021 (2023)-------------------------------- 3, 10, 11, 12, 13

*Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995) -------------------------------------------- 13

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)------------------------ 12

*Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) -------------------------------------- 18, 19

*Puerto Rico Ports Authority v. Federal Maritime Commission*, 531 F.3d 868,
(D.C. Cir. 2008.) -------------------------------------------------------------------- 10, 11, 12

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)------------------------------------------ 12

*Richards v. Cnty. of San Bernardino,* 39 F. 4th 562 (2022) -------------------------------------------- 15

*Richardson v. Bd. of Education*, 6 Cal.2d 583 (1936) --------------------------------------------------- 11

*Rodis v. Cty. & Cnty. of San Francisco*, 558 F.3d 964, 969 (9th 2009)------------------------------- 13

*Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) ------------------------------- 13

*Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017)------------------------------------- 12

*Saucier v. Katz*, 533 U.S. 194, 201 (2001) -------------------------------------------------------------- 13

*Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 951 (9th Cir. 2018) --------------------------------- 13

*Scott v. Harris*, 550 U.S. 372, 377 (2007)--------------------------------------------------------------- 13

*Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022) ------------------------------------------------- 13

*Seminole Tribe of Fla. v. Florida,* 517 U.S. 44 (1996) ------------------------------------------------- 10

*Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002)--------------------------------------------------- 13

*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238-------------------------------------------------- 19

*Whitehall v. County of San Bernardino*, 17 Cal.App.5th 352 (2017)---------------------------------- 19

<u>STATUTES</u>

Title 20 United States Code §§ 1681 *et seq.* ("Title IX") ------------------------------------- 10, 15, 16

Title 42 United States Code §§ 2000e *et seq.*("Title VII")------------------------------------------ 10, 19

Title 42 United States Code § 1983 ------------------------------------------------------------------------ 10

California Education Code § 44929------------------------------------------------------------------------- 19

California Education Code §§ 44934 ----------------------------------------------------------------------- 19

California Education Code §§ 44938 ----------------------------------------------------------------------- 19

California Education Code §§ 44944 ----------------------------------------------------------------------- 19

California Education Code § 44955------------------------------------------------------------------------- 19

California Government Code §§ 12900 *et seq* ("FEHA")--------------------------------------------- 10, 18

<u>RULES</u>

Federal Rule of Civil Procedure 56 --------------------------------------------------------------------------9

Federal Rule of Evidence 201------------------------------------------------------------------------- 16, 21

<u>REGULATIONS</u>

California Code of Regulations, Title 2, section 11017.1 ------------------------------------------------ 18

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE that on September 25, 2024 at 11:00 a.m.** or as soon thereafter as the Court may hear this matter in Courtroom 5, 4th Floor of the Robert F. Peckham Federal Building & United States Courthouse located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Peter Colombo will, and hereby does, move for summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56 based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities including Statement of Material Undisputed Facts with evidentiary citations, the concurrently filed Declaration of Evan C. Nelson and Exhibits, the court files in this matter and other matters properly presented to the Court.

## ISSUES PRESENTED FOR PARTIAL SUMMARY JUDGMENT

The matters on which moving party is seeking partial summary judgment are as follows:

1.     Defendants are local government actors not entitled to sovereign immunity for their participation in a conspiracy to extort Plaintiff into early retirement through intentional violation of Title IX protections, suppression of evidence designed to violate procedural and substantive due process, abuse of criminal and administrative proceedings and discrimination violating Title VII and FEHA.

2.     Defendants are not entitled to qualified immunity for knowing violations of well-established law in their attempts to extort Plaintiff into early retirement.

3.     Defendants violated California's Fair Employment and Housing Act ("FEHA"), using an arrest without any finding of misconduct to advance discriminatory attempts to extort early retirement.

4.     Defendants violated Title VII, 42 U.S.C. §§ 2000e, *et seq*, using an arrest without any finding of misconduct to advance discriminatory attempts to extort early retirement.

5.     Defendants' constructively terminated Plaintiff's employment, and the false rape stain Defendants sponsored permeates the media preventing Plaintiff from obtaining employment elsewhere.

6.     Plaintiff is entitled to a judgment against Defendants, jointly and severally, for economic damages in the amount of $5,201,739 or an amount determined by the evidence submitted.

/ / /

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendants conspired to abuse criminal and administrative actions relating to a known false rape claim against Plaintiff in an attempt to extort him to retire early because he is an older (more experienced but more expensive) white male (holding a teaching position that could be given to a non-white male to accelerate the District's Equity Plan) with tenure, seniority (27 years of experience teaching middle school PE) and a stellar performance record that prevents Defendants from lawfully terminating him. Defendants' suppression of evidence to actively support a malicious criminal prosecution and abuse of administrative process forced Plaintiff to endure 2.5 years of extreme emotional distress being wrongfully labeled and treated as a child rapist while Defendants knew he did not commit the falsely alleged rape and they continue to conceal evidence proving his innocence. Defendants also blatantly violated Title IX requirements to expeditiously investigate and report findings, by delaying their investigation for two years and concealing the exculpatory findings **to this day**, even though an Audit Resolution Agreement with the Office of Civil Rights ("OCR") compelled completion of the investigation within 60 days, by March of 2022.

To support malicious prosecution, Defendants suppressed exculpatory evidence, the accuser's 6th grade report card and other information about Plaintiff's teaching 6th grade PE at a different school during the 2001-2002 school year, that shows Plaintiff most probably was not the accuser's PE teacher who allegedly raped her. Defendants further supported abuse of process with direct violation of Title IX and the OCR Audit Resolution Agreement by delaying their own investigation and concealing findings to obscure the facts that (1) the sexual assault alleged by the accused to have occurred at Jordan Middle School in 2001-2002 most likely did not even occur and (2) no evidence exists to show Plaintiff was even involved.

Simultaneous with their concealment of exculpatory evidence to support malicious prosecution and abuse of administrative processes, Defendants engaged in a series of discriminatory adverse employment actions that (1) unreasonably delayed Plaintiff's return to his middle school PE teaching position by 2+ years, (2) kept him from coaching positions he had enjoyed for 25+ years, (3) refused to pay him coaching and summer school teaching stipends he consistently earned, (4) refused to pay three months of his salary during what was supposed to be paid leave while still requiring him to comply with all of the requirements for the paid leave, including to stay home waiting for a work assignment and to not seek other employment,

(5) constructively terminating his teaching position and career at PAUSD while making it impossible for him to obtain employment anywhere else, and (6) on July 31, 2024, brazenly violating the Collective Bargaining Agreement, Board Policies and Education Code by forcing him into a non-teaching Teacher on Special Assignment ("TOSA") position that was belatedly listed to require qualifications Plaintiff does not possess and the position did not even exist when they notified Plaintiff he was being forced into it.

The Section 1983 due process violations are directly tied into Defendants' violations of Title IX, Title VII, ADA and Fair Employment and Housing Act ("FEHA"), and no sovereign immunity applies because sovereign immunity is waived for alleged violations of these statutory schemes. Moreover, through proper application of the three-pronged "arm of the state" analysis recently adopted by the Ninth Circuit in *Kohn v. State Bar of California*, 87 F.4th 1021 (2023), sovereign immunity should not apply to Defendants employment role here, as they are local state actors filling a local employment function where intent, control and funding are all local and liability would not unduly impact the state's dignity or solvency. Indeed, calling Defendants an "arm of the state" and providing them sovereign immunity for their participation in a conspiracy using blatant violations of due process, Title IX, Title VII, ADA and FEHA to try and extort an early retirement, is the only way California's dignity or treasury could be negatively impacted here.

Defendants, in their individual capacities, are not entitled to qualified immunity for their knowing (intentional and/or reckless) violations of well-established law to support their conspiracy to extort Plaintiff into early retirement.

Defendants unlawfully targeted older white male teachers at Greene Middle School so that they could replace them with younger (cheaper) non-white male teachers to accelerate their Equity Plan. In support of this unlawful targeting, Defendants violated California's FEHA, Title VII and the ADA by advancing discriminatory attempts to extort early retirement where Plaintiff has done nothing wrong.

Defendants' misconduct constructively terminated Plaintiff's employment, and they retaliated against him by unlawfully forcing him into a non-teaching position that was not ever posted, for which he did not apply and that did not even exist when he was assigned. For more than 2.5 years, Defendants' concealment of exculpatory evidence and facts has sponsored, and now continues to buoy, the false rape stain permeating the media that prevents Plaintiff from obtaining alternative employment.

## II.   STATEMENT OF FACTS

**A.   Defendants' Liability for Unlawful Adverse Employment Actions.**

1.   The claims in this action are brought by Plaintiff Peter Colombo, a tenured teacher in good standing with 27 years of stellar teaching and coaching history, almost entirely within the Palo Alto Unified School District ("PAUSD"). (Exhibit A, Declaration of Peter Colombo, ¶¶1-2, 5-9.)

2.   In January of 2022, a false claim was raised that Plaintiff had allegedly raped a former 6th grader at Jordan Middle School (now called Greene Middle School) during lunch, in the girl's locker room after her PE class, some two decades prior during the 2001-2002 school year. (Id. at ¶¶3-4, 10-11.)

3.   Defendants were required by Title IX, and by an Audit Resolution Agreement with the Office of Civil Rights ("OCR"), to conduct and complete an expeditious investigation of all alleged sexual misconduct within 60 days of a report, or within a reasonable time thereafter. (Exhibits GG, HH.)

4.   Defendants intentionally flouted the requirements of Title IX and their express obligations under the OCR Audit Resolution Agreement by intentionally not conducting their own expeditious Title IX investigation regarding the false allegation of rape against Plaintiff.  (See id.)

5.   Rather than following Title IX and the OCR Audit Agreement designed to ensure the rights of both accuser and accused were protected, Defendants instead concealed exculpatory evidence to support wrongful criminal prosecution and abuse of administrative processes.  (See id.; Exhibits KK; G.)

6.   Defendants' published document retention policy states "[t]he PAUSD Registration Services office is responsible for the permanent archiving of student records of PAUSD students. Records are maintained for students who attended PAUSD schools from the early 1900s to present" and "[t]he Palo Alto Unified School District (PAUSD) has established a Custodian of Records at each school site and at the District Office . . . to ensure a copy of those records is provided to authorized individuals making the request." (Declaration of Evan C. Nelson ¶ 4; Exhibit C, PAUSD Records Retention; Exhibit D.)

7.   If properly retained and produced, the accuser's 6th grade report card would show Plaintiff was not her 6th grade PE teacher in 2001-2002, because the District reassigned Plaintiff to teach three classes of 6th grade PE at a different school that year, and another male PE teacher had to pick up those three 6th grade PE classes at Jordan/Greene.  (Nelson Decl. ¶¶ 4-5; Exhibit C, PAUSD Records Retention; Exhibit D, Redacted Portion of CTC Summary Investigation.)

8.      Defendants claim that the accuser's 6th grade report card, a document that should have been retained pursuant to PAUSD records retention policies, has disappeared both from the physical archives and from computerized storage, without explanation other than that it was removed. (Exhibit D, "Only *staff* could have removed a student [file]."; Exhibit A, ¶11, Defendants reported the missing grade report in a manner designed to implicate that Colombo had deleted it, though Defendants had sole access to it.)

9.      In addition to concealing the accuser's 6th grade report card from the Police Detective, the District Attorneys and from their own independent investigator, Defendants (1) did not provide the information that the District had transferred Plaintiff to teach three classes of 6th grade PE at a different school in 2001-2002; (2) did not provide the information that those three 6th grade PE classes at Jordan/Greene were picked up by a different male teacher and (3) did not even attempt to use information from the other Jordan/Greene 6th graders' report cards for 2001-2002 to determine which male PE teachers taught 6th grade PE classes that year at Jordan/Greene.  (Exhibit MM, Declaration of Trent Bahadursingh, ¶¶ 9-10; Nelson Decl. ¶¶ 4-5, 7.)

10.      On May 28, 2024, more than 2 years late, Defendants finally concluded their investigation, but continue to conceal the investigator's findings by illegitimately claiming attorney-client privilege for the exculpatory findings made by the non-attorney, independent investigator, which Plaintiff has a right to be provided. (Exh. K, PAUSD Letter Re Investigation Findings; Exh. L.)

11.      On January 25, 2024, the independent investigator hired by PAUSD began her interview of Plaintiff [which should have been completed by March of 2022 or shortly thereafter] by stating this was not a difficult case and she would only need 20 minutes for the interview. (Nelson Decl., ¶8; Exhibit G.)

12.      The investigator said that she did not even need to interview the three female PE teachers who controlled the girls' locker room in 2001-2002, because there simply was not sufficient credible evidence from which to find that a sexual assault or rape had actually occurred. (Id.)

13.      The investigator assigned by Defendants stated, "I base my findings on a preponderance of evidence standard and I don't even see with her [the accuser's] testimony that this comes close to meeting that standard. . . . I have to admit there is no evidence to show that you did this or for me to make that kind of finding right, because it's just not, there's not enough evidence at all here." (Id.)

14.     This independent investigator concluded the interview stating, "I will say that, as you know, I already explained to you, is that, obviously, there's no way the facts support a finding that there was any type of sexual assault, sexual impropriety but um I'm sure you already knew that . . .." (Id.)

15.     Even though the investigator stated she was prepared to write her final investigative report on January 25, 2024, Defendants have suppressed this evidence by not providing her findings, which is required to be provided to Colombo as part of his due process. (Exhibit G; See Exhibit K; Exhibit L.)

16.     Had Defendants complied with Title IX and the OCR Audit Resolution Agreement by timely completing their investigation, Plaintiff would have been exonerated as early as March of 2022, well before Plaintiff was arrested in June of 2022.  (See Exh. GG; Exh. KK; Exh. G.)

17.     The criminal charges remained active for almost a year before finally being dropped due to lack of evidence in May of 2023, an action that was delayed by more than a year due to Defendants' dilatory investigation and active concealment of (1) the grade report showing Plaintiff was not the accuser's PE teacher; (2) that PAUSD transferred Plaintiff to teach three 6th grade PE classes at a different school in 2001-2002; (3) that a different male PE teacher taught the three 6th grade PE classes at Jordan/Greene when Plaintiff was transferred for 2001-2002; (4) the other 6th graders' 2001-2002 grade reports, in lieu of the accuser's disappeared grade report, showing which male PE teachers taught 6th grade PE at Jordan/Greene during the 2001-2002 school year; and (5) their investigator's (a former sheriff with 30 years of experience conducting Title IX investigations) very specific findings that even the lower preponderance of evidence standard could not possibly be met with regard to the claim of (a) a sexual assault at Jordan/Green in 2001-2002 and/or (b) any misconduct by Plaintiff. (See Exhibit G; Exhibit K; Exhibit L.)

18.     Due to Defendants' delays and concealment of exculpatory evidence, the California Commission on Teacher Credentialing ("CTC") also conducted an investigation that eventually resulted in complete renewal of Colombo's multi subject teaching credential. (Nelson Decl., ¶9; See Exhibit D; Exhibit H, Printout of CTC Website Credential Status; Exhibit I, Hickey Letter Dated 11.1.23.)

19.     Defendants worked together with a common scheme to unlawfully discriminate against Plaintiff, an older (more experienced and more expensive) white male (whose position could be given to another teacher to accelerate the District's Equity Plan) by attempting to extort his early retirement through (1) supporting malicious criminal prosecution and abuses of administrative processes by concealing

evidence and (2) taking adverse employment actions against him under the pretext of the criminal arrest that did not result in any finding of misconduct.  (Exhibit NN, Declaration of Mark Allendorf.)

20.     Defendants have a recent pattern and practice of using false Title IX sexual abuse claims to extort early retirement from older male middle school teachers at Jordan/Greene. (Exhibit NN.)

21.     Discriminating against a person who has been arrested, without conviction, by considering such an arrest for any employment decision violates FEHA. (Exh. M, Cal. Code Regs, Title 2, §11017.1.)

22.     It is a violation of Title VII to not presume a criminal arrestee to be innocent and/or to discriminate by using the information of an arrest without a finding of misconduct. (Exhibit N.)

23.     Defendants have a distinct history of abusing Title IX reports of sexual misconduct that are known to be false and using threats of related criminal/administrative processes combined with unwarranted adverse employment actions to attempt to extort early retirement from older male teachers to decrease their budget and accelerate their Equity Plan.  (Exhibit NN, Allendorf Decl.)

24.     Ken Dauber was Defendant PAUSD's Board President during origination and implementation of the scheme to try and extort Plaintiff's early retirement. (See Exhibit R, News Report of Ken Dauber, Michele Dauber's husband resigning as President of the PAUSD School Board several months after the "process" against Colombo had already been set into motion.)

25.     Ken Dauber's spouse, Michele Dauber, is a reported misandrist who has often threatened and used false sexual abuse allegations to promote an agenda. (See Exhibit G; Exhibit Q, "Believe Women" co-sponsored by Michele Dauber; Exhibit R, News Report of Ken Dauber, Michele Dauber's husband resigning as President of the PAUSD School Board; Exhibit S, at pp. 22, 24 and 32, "Unfit to Teach?" Article with comments from Michele Dauber showing clear gender based discrimination against men; Exhibit T, Michele Dauber sexist "tweets" exhibiting hateful, misandrist discrimination.)

26.     Colombo is a fully tenured teacher of 27 years with no history of conduct to support the false rape accusation, and he cannot legally be disciplined or terminated by Defendants because there exists no substantiating evidence that he has done anything wrong. (See Exhibit G.)

27.     Defendants' refusal to publicize the investigator's findings, including that "obviously, there's no way the facts support a finding that there was any type of sexual assault or sexual impropriety,"

is part of Defendants' continuing attempt to extort early retirement, forcing Plaintiff to accept any position they force upon him and prevent him from obtaining alternative employment. (See Exhibit K; Exhibit G.)

28.     Defendants misconstrue Plaintiff's Intention to Return to His Current Assignment.  They misread counsel's suggestions (i) that failure to take certain actions would be unconscionable (Deft.'s Exhibit M) as indication that Plaintiff would not return to his assignment.  (Exh. MM, Bahadursingh Decl., ¶¶ 19-20.) To remove Defendants' purported misunderstanding, prior to July 1, 2024 (to be in compliance with Education Code §44842), Plaintiff Peter Colombo has provided written notice that he intends to return to his current assignment as PE teacher at Greene Middle School, from which he has been on temporary leave ("paid administrative leave" means a temporary leave from an assignment). (Pltf.'s Exhibit II).

29.     Defendants admit they refused to pay $41,154.40 of salary to Plaintiff while he was on "paid" administrative leave and was required to stay home waiting for an assignment and not take other employment.  (Exh. MM, Bahadursingh Decl., ¶ 22.)

30.     Plaintiff's economic losses, calculated to his statistical work life expectancy of 69.75 years, totals $5,201,739 in future losses, comprised of $2,632,280 in salaries (assuming 3.5% average annual increases), $224,307 in lost stipends for coaching and summer school, $526,456 in employer paid benefits, and $1,818,336 in lost pensions (the difference between his pension earned for retirement at age 70 if has no more income versus his pension if he works until age 69.75, and collects 13 years of pension for his additional life expectancy after retirement). (Nelson Decl., ¶¶23, 24; Exhibit U.)

31.     Defendants retaliated against Plaintiff by improperly forcing him to transfer into a non-teaching position. (Exhibit OO, Plaintiff's Grievance.)

**B.      PAUSD is not an Arm of the State for Its' Local Employment Role.**

32.     The statutory intent relating to school districts employing teachers is that such matters will be conducted locally through contract negotiations with employee bargaining units. (See Exhibit X.)

33.     The relationship between a school district and its employees is contractual and local in nature. (Exhibit Y, p. California Educators' Guide to School Law, Chapter XIV, School Employees.)

34.     The state does not contract with the teacher employees. (Exhibit X; See Exhibit Y.)

35.     The local school district is governed by a school board comprised of locally elected members from the community. (Exhibit Z, Bylaws of the Board, 9220 BB "Governing Board Elections.")

36.     PAUSD is a basic aid district with the vast majority of its funding coming from local funding sources. (Exhibit AA, at p. 7, Legislative Analyst Office Explanation of Local Control Funding Formula and Basic Aid Districts; Exhibit BB, p. 2/12 Article Discussing PAUSD as a Basic Aid District receiving almost 90% of its revenue from local funding sources.)

37.     School districts are required to obtain insurance to cover losses such as an adverse judgment incurred as the result of Defendants' unlawful conduct in this case, and state funds will not be responsible to pay any portion of an eventual verdict in this matter. (Exhibit CC, Bylaws of the Board, 9260 BB.)

**C.     The Individual Capacity Defendants Violated Plaintiff's Established Federal Rights.**

38.     The individual capacity Defendants Violated Clearly Defined Federal Civil Rights. Defendants worked together and in conjunction with others to conceal evidence, fabricate evidence/false inferences, failed to treat Plaintiff with the presumption of innocence to which he was entitled, and now continue to harass Plaintiff and create an extremely hostile work environment, taking discriminatory adverse employment action based on an arrest without either a conviction or an adverse fact finding regarding wrongdoing.  (Fact Nos. 1-30; See also Exh. MM, Bahadursingh Decl.)

### III.     ARGUMENT

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. Rules Civ.Proc., rule 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Ibid*.

**A.     Defendants are not Entitled to Eleventh Amendment Sovereign Immunity.**

"The 'official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" *Garmon v. Cnty. of L.A.,* 828 F.3d 837, 843 (2016) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Defendants cannot prove entitlement to sovereign immunity both because such is waived here and because they are not an "arm of the state".

-9-

**1.  Sovereign Immunity is Waived for Discrimination and Other Claims.**

California has waived sovereign immunity for the alleged violations of Title VII and Title IX (See *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976); *Douglas v. California Dep't of Youth Auth*., 271 F.3d 812, 819 (9th Cir. 2001); 42 U.S.C. § 2000d-7), and they have waived any sovereign immunity for FEHA violations and the right to have the FEHA claims heard only in state court (s*ee In re Bliemeister*, 296 F.3d 858, 862 (9th Cir. 2002)).

**2.  Defendants are not Otherwise Entitled to Sovereign Immunity Here.**

Recently, an 11-member panel of the Ninth Circuit Court of Appeals changed the arm of the state test that is to be applied in this Circuit by adopting the D.C. Circuit's three-factor test distilled from recent Supreme Court decisions: "(1) the [s]tate's intent as to the status of the entity, including the *functions* performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn,* 87 F.4th at1030 (emphasis added).  Moreover, "[w]hen indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being [the state's dignity and solvency] remain our prime guide." (Id. at 1027) (citing *Hess*, 513 U.S. at 47, 52.). Applying the new three-factor test here, Defendant PAUSD is fulfilling a Palo Alto area function by employing teachers for its Palo Alto area schools; It is under control of the Palo Alto School Board; and is predominantly funded primarily through Palo Alto area property tax. (See Exhs. X, Y, Z, AA, BB). Hence, Defendants' intent, control and overall effects are local, not an arm of California for their employment of teachers and should not have sovereign immunity.  *Kohn* at 1030.

This is a case of first impression following adoption of the *Kohn* factors for arm of the state analysis, as no court has yet applied the *Kohn* factors to a Basic Aid school district's exercise of its employment function to violate Title IX, Title VII, FEHA, the ADA and due process.

In *Kohn,* the intent prong of the analysis favored a grant of sovereign immunity because the State Bar "performs functions typically performed by state governments." 87 F.4th at 1033 (citing *P.R. Ports Auth.*, 531 F.3d at 875 citing *Hess*, 513 U.S. at 45). Unlike the State Bar's functions analyzed in *Kohn*, the intent relating to a local school district's function in employing teachers is that such matters will be conducted locally through contract negotiations between the Palo Alto Unified School District and the employee bargaining units. (Fact No. 32; Ex. X.) Moreover, state court treatment is also relevant (id. at

1032 citing *Hess*, 513 U.S. at 45) and the California Supreme Court's treatment of the employment relationship between a school district and its employees is that it is a local, contractual matter. (Fact No. 33; Ex. Y, p. 41-1 "The relationship between a school district and its employees is contractual in nature." (citing *Richardson v. Bd. of Education,* 6 Cal.2d 583 (1936); *Fry v. Board of Education*, 17 Cal.2d 753 (1941); *Holbrook v. Board of Education*, 37 Cal.2d 316 (1951).) The state does not contract with the district's teachers. Accordingly, the intent factor cuts strongly against sovereign immunity for the school district's employment function.

"The second factor of control considers, first, 'how the directors and officers' of the entity 'are appointed.'" *Kohn*, 87 F.4th at 1035 citing *P.R. Ports Auth.*, 531 F.3d at 877 (citing *Hess*, 513 U.S. at 44.).  Unlike the State Bar (defendant in *Kohn*) that is governed by trustees appointed by the California Supreme Court, the state legislature and the governor (87 F.4th at 1035), PAUSD is governed by a local school board of locally elected members from the community. (Fact No. 35; Ex. Z, Bylaws of the Board, 9220 BB "Governing Board Elections.") The control factor also weighs strongly against immunity here.

The third prong, where the entity obtains its funding, also points against immunity. Funding for PAUSD is again distinctly local. As a "Basic Aid District", the vast majority of PAUSD's funding comes from local funding sources through property taxes, local grants and other local sources. (Fact No. 36; Pltf.'s Exh. AA, at p. 7, Legislative Analyst Office Explanation of Basic Aid Districts; Pltf.'s Exh. BB, p. 2/12 PAUSD is a Basic Aid District funded 90% by local sources.) Accordingly, any financial impacts from liability would be covered predominantly, if not entirely, from local funding sources and not from the state – even if the mandatory insurance policy underwritten by Keenan were not in place here.

Analysis of the intent, control and treasury factors demonstrates sovereign immunity should not apply to PAUSD's local employment function in this case.

Should the Court determine that indicators of immunity point in different directions**, the Eleventh Amendment's twin reasons for being [the state's dignity and solvency] remain our prime guide.**" *Kohn.* at 1027 (citing *Hess*, 513 U.S. at 47, 52.) (Bold added.). Defendants cannot show that sovereign immunity is justified because the state's dignity would be offended only by cloaking Defendants with immunity for their unconscionable conduct.

In adopting the above factors for the Ninth Circuit's current "arm of the state" analysis, the 11-member panel in *Kohn* cited *Mitchell* as being "out of step with current Supreme Court jurisprudence" and that its application "generates a muddled arm of the state analysis within our Circuit." 87 F.4th at 1027, 1028. *Belanger v. Madera Unified School District*, 963 F.2d 248 (9th Cir. 1988) is the specific example used by the Court in *Kohn* to explain the need to revamp the Ninth Circuit arm of the state test to conform with more recent Supreme Court decisions such as *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994), and *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).[1]

In his concurring opinion in *Kohn*, Justice Mendoza states that the categorical approach of "'once an entity is determined to be an arm of the State . . . that conclusion applies unless and until there are relevant changes in the state law governing that entity'" while easier, "lacks consistent support in our precedent or practice and would lead to anomalous results." (*Kohn* at 1043 citing *Puerto Rico Ports Authority v. Federal Maritime Commission*, 531 F.3d 868, 873, 382 U.S. App. D.C. 139 (D.C. Cir. 2008).) And further points out that such issue was neither briefed nor argued and thus not reached in the *Kohn* decision. (Id. at 1043.) Instead, Justice Mendoza emphasized his concurrence with the majority "so long as proper weight is given to the sovereign immunity factors and further encourages a function-based approach as it serves the Eleventh Amendment's twin purposes focusing on the entity's conduct in the dispute and hand and not merely its legal status." (Id. at 1044-45.)

Sovereign immunity for PAUSD is not justified through proper application of the agency function-based three-part "intent, control, treasury" test adopted by the Ninth Circuit in *Kohn*[2], particularly while keeping in mind the twin reasons for sovereign immunity – dignity and solvency – that

---

[1] Conclusions about local school boards being arms of the state based on the *Mitchell* factors applied in *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992) and *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017) no longer have direct application. In particular, "Basic Aid Districts" like PAUSD that derive most of their funding from local property tax revenues appear to require a distinct analysis.

[2] Whether the analysis would be different for PAUSD's education role, does not need to be resolved here. *See Kohn*, 87 F.4th at 1038-1053 (Justice Mendoza's Concurring Opinion discussing why the entity analysis approach from the D.C. Circuit should not be adopted, as it runs afoul of Supreme Court rulings and was actually not properly before the Court in *Kohn* because the issue was not necessary to the decision and it had not been briefed or argued by the parties.).

1   become tiebreakers according to the Supreme Court's decision in *Hess*. *Kohn* at 1043-45, *Hess* 513 U.S.

2   30, 47.  Hence, Defendants would have no right to sovereign immunity, even if it had not been waived.

3         **B.**      **Qualified Immunity Does not Attach as Defendants Violated Well-Established Law.**

4        Qualified immunity in Section 1983 actions only protects government officials from liability

5   insofar as their conduct does not violate established statutory or constitutional rights. *Sampson v. Cnty. of*

6   *Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020). See also *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir.

7   2022). "[I]n deciding whether qualified immunity applies, [the court] ask[s] two questions: (1) did the

8   officer violate a constitutional right, and (2) was that right clearly established at the time of the events at

9   issue?" *Seidner v. de Vries*, 39 F.4th 591, 595 (9th Cir. 2022) (internal quotation marks omitted).

10       As to the first question determining whether conduct violated a constitutional right set out in

11   *Seidner***,** the court's consideration of the facts must be "[t]aken in the light most favorable to the party

12   asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier v.*

13   *Katz*, 533 U.S. 194, 201 (2001); see also *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Brosseau v. Haugen*,

14   543 U.S. 194, 197 (2004) (per curiam); *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Seidner*, 39 F.4th at

15   595; *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022); *Sampson v. Cnty. of Los Angeles by & through*

16   *Los Angeles Cnty. Dep't of Child. & Fam. Servs*., 974 F.3d 1012, 1018 (9th Cir. 2020); *Ioane v. Hodges*,

17   939 F.3d 945, 950 (9th Cir. 2018); *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007); *Kennedy v. City*

18   *of Ridgefield*, 439 F.3d 1055, 1060 (9th Cir. 2006); *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043,

19   1050 (9th Cir. 2002); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

20       As to the second question set out in *Seidner*, concluding that the right is clearly established, the

21   court need not identify an identical prior action. See *Anderson v. Creighton*, 483 U.S. 635, 640 (1987);

22   see also *Hope*, 536 U.S. at 739; *Ioane*, 939 F.3d at 956 (the court "need not identify a prior identical

23   action to conclude that the right is clearly established"); *Scott v. Cnty. of San Bernardino*, 903 F.3d 943,

24   951 (9th Cir. 2018) (explaining that although the constitutional right must be clearly established, there

25   need not be a case dealing with the particular facts to find the officer's conduct unreasonable); *Rodis v.*

26   *Cty. & Cnty. of San Francisco*, 558 F.3d 964, 969 (9th 2009); *Fogel v. Collins*, 531 F.3d 824, 833 (9th

27   Cir. 2008); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065-66 (9th Cir. 2006); *Sorrels*, 290 F.3d at

28   970; *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995); *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir.

-13-

1995). Rather, once a court determines that "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing [the official's] conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

1.      **Suppressed Evidence Regarding 6th Grade PE Teachers at Jordan During 2001-2002.**

Defendants' published document retention policy states "[t]he PAUSD Registration Services office is responsible for the permanent archiving of student records of PAUSD students. Records are maintained for students who attended PAUSD schools from the early 1900s to present" and "[t]he Palo Alto Unified School District (PAUSD) has established a Custodian of Records at each school site and at the District Office . . . to ensure a copy of those records is provided to authorized individuals making the request." (Fact No. 6; Declaration of Evan C. Nelson ¶ 4; Exhibit C, PAUSD Records Retention; Exhibit D.)

The accuser's digital 6th grade report card, which would show who her PE teacher was, should have been preserved by Defendants (Pltf.'s Exh. C), but was reported as "lost" and that "only staff could have removed a student [file]" (Pltf.'s Exh. D). Defendants make no attempt to explain what happened to the digital file with the accuser's 6th grade report card, why it was "removed by staff", any audit or other efforts to find who deleted it or to otherwise explain how both physical and electronic copies of the grade report went missing. (See Exhibit MM, Bahadursingh Decl., ¶¶ 9-10.)

Defendants claim, through Mr. Bahadursingh, that they later located a physical copy of the accuser's 6th grade student file and turned it over to the District Attorney, again without the 6th grade report card and without information regarding the fact that Plaintiff actually taught 6th grade PE at a different school, Terman, during the relevant 2001-2002 school year. (Id.) Defendants claim that they didn't have information from which it could be determined whether Plaintiff was the accuser's 6th grade PE teacher at Jordan in 2001-2002. (Id.) However, in addition to the 6th grade report card, Defendants had other readily available documents at their immediate disposal, including (i) 2001-2002 assignments demonstrating that Plaintiff was actually teaching 6th grade PE at a different school, and (ii) the fact that when Plaintiff volunteered to go to Terman, a different male PE teacher had to pick up three 6th grade PE classes at Jordan previously taught by Plaintiff. (See Pltf.'s Exh. A-5; Pltf.'s Exh. A Colombo Decl. ¶¶ 10-11.) What Defendants also should have had readily available to them is a copy of grade reports for every 6th grader in 2001-2002 at Jordan. (See Pltf.'s Exh. C.) These records, which are carefully preserved and archived

"to ensure a copy of those records is provided to authorized individuals making the request", would readily confirm who taught 6th grade PE to Jordan students in 2001-2002. No attempt is made to explain why more effort was not exerted to obtain the potentially exculpatory evidence contained in the accuser's 6th grade report card that was "removed by staff," even though Defendants were fully aware of "the gravity of the allegations against Colombo." (See Exhibit MM, Bahadursingh Decl., ¶ 15.) Defendants took an entire year for their open-ended investigation after both the District Attorney and CTC investigations found no evidence of misconduct, yet they made no attempt to obtain the potentially exculpatory evidence contained in the accuser's 6th grade report card that PAUSD "staff" had removed. (Id.)

As clearly demonstrated by the Ninth Circuit's decision in *Richards v. Cnty. of San Bernardino*, 39 F.4th 562 (2022)*,* a due process right under the Fourteenth Amendment exists where a plaintiff has been denied a presumption of innocence and the right to not be discriminatorily prosecuted based on a false accusation totally lacking in evidentiary support which is implicated by concealment of exculpatory evidence or fabrication of false evidence, or when the state actors act in such a way that prejudicial or unequal treatment results. *Richards,* 39 F.4th at 572. Defendants suppressed information, and likely did so because they knew what the 6th grade report card shows, e.g. that a different male PE teacher taught the accuser's 6th grade PE class at Jordan in 2001-2002, and they wanted that information to be lost.

### 2.    Unlawfully Delayed Title IX Investigation and Suppressed Findings of Fact.

Defendants' aver that their "investigation was not initiated pursuant to any of the District's internal complaint procedures, board policies, or administrative regulations" (Exhibit MM, Bahadursingh Decl., ¶15), but offer no explanation why they didn't follow mandatory Title IX policies. (Id. at ¶15). The definition of "complaint" relating to Title IX expressly includes an informal report through an email, so the husband's email invoked the Title IX procedures. (See Pltf.'s Exh. L, pp. L-002, fn 1, L-013, L-015, L-016, L-029, L-030, L-037.)

Defendants imply it was proper to delay their investigation "in order to not interfere with" the Palo Alto Police Department's ("PAPD") concurrent investigation. (Bahadursingh Decl., ¶17.) But Defendant's delay was distinctly unlawful as the OCR-mandated governing interactions between PAUSD and PAPD relating to investigations of any sexual misconduct required "[t]he PAPD's investigation will not take the place of a District Title IX investigation" and "[t]he PAPD is also aware that PAUSD must complete its

Title IX investigation promptly within a reasonable timeframe (e.g. 60 calendar days or less), and it agrees to coordinate with PAUSD to meet that obligation." (Plt.'s Exh. GG, pp. GG-013 to GG-017.) OCR (U.S. Dept. of Education, Office of Civil Rights ) mandated this as part of a Title IX audit Resolution Agreement between PAUSD and OCR. (Pltf.'s Exh. HH, pp. HH-002, HH-003, HH-004 "The District will revise its Memorandum of Understanding (MOU) with the Palo Alto Police Department to clarify roles . . . including the responsibility of **the District's separate obligation to promptly and equitably resolve complaints of sexual harassment even while a criminal investigation is ongoing**." Bold added.)

Defendants finally started their investigation in May of 2023, more than a year late, and through Defendant Hickey they notified Plaintiff about the investigation without providing any indication of scope, due process protections, time limitations or even authority for the investigation. (Pltf.'s Exh. JJ.) The investigator hired by PAUSD finally interviewed Plaintiff on January 25, 2024, and only needed 20 minutes for the interview, stating: "I have to admit there is no evidence to show that you did this or for me to make that kind of finding" and "obviously, there's no way the facts support a finding that there was any type of sexual assault, sexual impropriety but um I'm sure you already knew that . . ..". (Fact Nos. 10-15; Nelson Decl., ¶8; Exh. G; Exh. A, Colombo Decl., ¶4.) Defendants then concealed her factual findings, even though Plaintiff is entitled to a report of all her findings. (Pltf.'s Exhs. K and L.)

No qualified immunity can attach for such clearly established unconscionable conduct.

**3.     A Timely Title IX Investigation Should Have Found More Exculpatory Evidence.**

One of the key claims made by the accuser in an attempt to substantiate her claim that she was raped during lunch and right after 6th grade PE class in the girl's locker room at Jordan/Greene in 2001-2002 was that her grades and swimming performances tanked immediately following the alleged assault during the fall of 2001. Defendants' investigator concluded the sexual assault likely didn't occur because there was no grooming (Exhibit G) but a timely and proper investigation into her claim involving her grade and swimming performance would have also shown that if she was raped as a child, the most probable time and location for such an event was during her 7th grade year at Foothill Middle School.

**_a.     Requests for Judicial Notice – Federal Rule of Evidence 201_**

Pursuant to Federal Rule of Evidence 201, Plaintiff requests judicial notice as to law and adjudicative facts that are beyond reasonable dispute, including the above and the following matters:

The accuser's grades and swimming performances dropped in 2003, not in 2001-2002. (Exhs. DD and EE.) Her grades during 4th term of her 7th grade year (2002-2003) at Foothill Middle School dropped to 4 C's and 3 B's (2.429 GPA) from her 1st term grades of 4 A's and 3 B's (3.571 GPA). (Exh. DD.) If a trauma caused her grades to "immediately drop", the incident most likely occurred during the 2002-2003 school year and not during 2001-2002. (Id.) While swimming for Terrapins in Concord, her swimming performance markedly dropped after the 2002-2003 season, from her age group NAG score of 500.90 in 2002-2003 to 388.65 for the 2003-2004 season. (Exh. EE.) While swimming for DeAnza Cupertino Aquatics (DACA), before her family moved to Walnut Creek, the accuser's swimming did not worsen during the 2001-2002 season, but improved with an NAG point scoring system score of 442.30 in the 11-12 age group for the 2001-2002 season compared to 413.95 for the 11-12 age group in 2000-2001. (Id.) Her NAG scores for her actual age group also did not worsen in 2001-2002, but improved from a score of 501.50 for her age group in 2000-2001 (9-10's) swimming for DACA to a score of 528.40 for her age group in 2001-2002 (11-12's) swimming for Terrapins. (Id.) Similar to what is evidenced by her grades, if an event caused her swimming performance to "immediately drop", that event most likely occurred during the 2002-2003 season, when her grades also dropped, and not during 2001-2002. (Id.)

The accuser's 6th grade report card most likely would show that her grades did not drop in 2001-2002 as the result of an alleged rape. (Exhibits DD and EE.)

Plaintiff taught 6th grade PE at Terman, a different school than accuser attended, during the 2001-2002 school year. (Exhibit A, ¶¶ 10-11; Exhibit A-5.) Had Defendants produced the accuser's 6th grade report card, it most likely would have shown Plaintiff was not her 6th grade PE teacher at Jordan in 2001-2002. (Id.) The accuser's 6th grade report card and/or evidence about Plaintiff's 2001-2002 teaching assignments, had they been properly disclosed, would have tended to exonerate Plaintiff. (Id.)

Defendant's investigator found it was unlikely that the rape or any sexual impropriety actually occurred. (Exhibits G and K.) No evidence of misconduct by Plaintiff exists. (Id.)

### b. If an Assault Occurred, it Occurred at Foothill Middle School in 2002-2003.

In addition to the timing of her worsened grades and swimming times, set forth above, the accuser switched to a teacher's aide position at the exact time an assault could have caused her grades and swim times to fall precipitously. (Exh. DD.) This is important because the investigator stated that 100% of the

time that she has found a sexual assault between student and teacher to have occurred, there was

significant grooming activity. (Exh. G.) A teacher aide position presents grooming opportunities.

Consequently, if the accuser did suffer a sexual assault during her childhood in a middle school

setting, the most likely time and location was 3rd and/or 4th term during 2002-2003 while she was a

teacher aide, immediately followed by precipitous decline in her grades and swimming times.

**C.**    **Defendants Violated FEHA with Adverse Employment Actions Based on an Arrest.**

The Fair Employment and Housing Act, California Government Code §§ 12900 *et seq.* provides

protection from harassment or discrimination in employment. California Code of Regulations, Title 2,

section 11017.1 clarifies that it is a violation of the FEHA to discriminate against a person who has been

arrested, without a conviction, by considering such for any employment decision, stating in relevant part:

> (b) **Employers are prohibited from** inquiring into, **considering**, distributing, or
> disseminating information regarding the following types of criminal history prior to making
> a conditional offer, after a conditional offer has been made, and **in any other subsequent**
> **employment decisions such as decisions regarding promotion, training, discipline, lay-**
> **off, and termination**: (1) **An arrest or detention that did not result in conviction** (Labor
> Code section 432.7 (see limited exceptions in subdivisions (a)(1) for an arrest for which the
> employee or applicant is out on bail or on their own recognizance pending trial and (f)(1)
> for specified positions at health facilities);

(Cal. Code Regs. § 11017.1.) (Emphasis added.)

Defendants provide no lawful reason to explain their harassment of Plaintiff, leaving the arrest

based on a false accusation as the only explanation. Defendants know Colombo is innocent. However,

Defendants continue to take adverse employment actions based solely on the arrest, in open violation of

FEHA, including: (i) not returning him to his PE teaching assignment at Greene, (ii) not returning him to

coach baseball at Palo Alto High School, (iii) not paying him for stipends he consistently earned, and (iv)

not paying him for three months' salary while he was on "paid" leave. (Fact No. 21; Exhibit A, ¶12.)

*Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) holds that an adverse employment action

is "any harm" or anything that constitutes a "disadvantageous" change in an employment condition. The

employment actions taken by Defendants, even if done while placing Colombo on paid leave, constitute

actionable adverse employment actions. *See, e.g. Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013); *Whitehall v. County of San Bernardino*, 17 Cal.App.5th 352 (2017). There is no evidence of misconduct by Plaintiff, but Defendants unlawfully delayed their investigation, concealed factual findings, and placed Plaintiff on involuntary paid administrative leave as the pretext to adverse employment actions that led to constructive termination through continued harassment and a hostile work environment.

### D.    Defendants Violated Title VII Through Gender Discrimination.

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.' §2000e-2(a)(1)." *Muldrow, supra,* 144 S. Ct. at 974. Moreover, it is a violation of Title VII under federal law, to not presume a criminal arrestee to be innocent. (Exhibit N, EEOC 2012 Guidance.)

Defendants worked together with a common scheme to unlawfully discriminate against Plaintiff, an older (more experienced and more expensive) white male (whose position could be given to another teacher to accelerate the District's Equity Plan) by attempting to extort his early retirement through (1) supporting malicious criminal prosecution and abuses of administrative processes by concealing evidence and (2) taking adverse employment actions against him under the pretext of the criminal arrest that didn't result in any finding of misconduct and most recently through (3) brazenly violating the Collective Bargaining Agreement, Board Policies and Education Code by forcing Plaintiff into a non-teaching Teacher on Special Assignment ("TOSA") position that did not even exist when they notified Plaintiff of the assignment transfer and that requires qualifications Plaintiff does not possess. (Exhs. MM, NN, OO.)

### E.    Defendants Conduct Caused Constructive Termination of Colombo's Career

A constructive discharge occurs when the employer's conduct effectively forces an employee to resign. *Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1244. Under California law, a tenured teacher who has not done anything wrong cannot be lawfully disciplined or terminated. See, e.g., Cal. Ed. Code § 44929, subd. (b) ("tenure statute" provided tenure to Colombo 25 years ago); Cal. Ed. Code §§ 44934, 44938, and 44944 (the "dismissal statutes" have strict conditions for notice and opportunity to correct behavior); and Cal. Ed Code § 44955 ("reduction-in-force statute" requires school districts, in the event of layoffs or reassignments, to terminate or reassign teachers based on seniority, and Colombo has

seniority). So, Defendants created a hostile work environment for Colombo that would make it untenable for him to return, including by delaying and concealing the independent investigator's exonerating findings. The overtly hostile work environment is exacerbated by the "Unfit to Teach" article with Ms. Dauber's vitriolic comments (Exhibit S) and Defendants' misandrist treatment of Colombo as though he were guilty instead of being presumed (and proven) innocent.

Plaintiff cannot financially afford to forego the salary and benefits from the only employment option he has, due to the false label of child rapist that Defendants allow to be attached to him. Defendants also cannot terminate Plaintiff's employment, so they forced him to stay away from campus through compelled administrative leaves for 2.5 years and have made it virtually intolerable for him to return.

Most recently, Defendants retaliated against Plaintiff by improperly forcing him to transfer into a non-teaching position. (Fact No. 31; Exhibit OO, Plaintiff's Grievance.) He is not qualified for the TOSA position, the position was not posted as required per the Collective Bargaining Agreement ("CBA"), the position did not even exist when Plaintiff was forced into it, Plaintiff did not apply for the position, and Defendants completely ignored the CBA mandates required before making a transfer.

This is a distinct case of constructive discharge as Defendants have sponsored and continue to buoy the false rape stain permeating against Plaintiff in the media, which makes it impossible for him to seek employment elsewhere and leave him beholden to Defendants' whim for continuing adverse employment actions and being forced into whatever position they determine to transfer him into, whether non-teaching, teaching different subjects (akin to what they did to Mr. Allendorf to extort his early retirement), positions where he cannot possibly succeed, etc. He should be relieved of the "requirement" to continue to answer Defendants' discriminatory and retaliatory beck and call through a determination that his employment position has been constructively terminated.

### F.    Defendants' Misconduct Has Caused in Excess of $5,201,739 in Economic Damages

Colombo's economic losses for the constructive termination of his career, calculated to his statistical work life expectancy of 69.75 years, totals $5,201,739 in future losses, comprised of $2,632,280 in salaries (assuming 3.5% average annual increases), $224,307 in lost stipends for coaching and summer school, $526,456 in employer paid benefits, and $1,818,336 in lost pensions (the difference between his pension earned for retirement at age 70 if has no more income versus his pension if he works until age

69.75, and collects 13 years of pension for his additional life expectancy after retirement). (Nelson Decl., ¶¶23, 24; Exhibit A, ¶ 11; Exhibit U; Exhibit V, 2017 Article at p. 2 "I am the luckiest man in the world. I will teach and coach until I am 70, easy.")

Pursuant to Federal Rule of Evidence 201, Plaintiff requests judicial notice that his statistical work life expectancy is 69.75 based on the tables in an article published in the *Journal of Forensic Economics* in Vol. 18, number 1-2, September 2019.  It is based on econometric analysis of data in the U.S. between 2012 and 2017. The name of the article is "The Markov Model of Years to Final Separation for the labor force 2012-2017: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors." The authors are Gary R. Skoog, James E. Ciecka, and Kurt Krueger, three highly regarded economists in this field. Based on Plaintiff's current age of 57 and his education level with a B.A. Degree, 69.75 is his statistical work life expectancy, which just happens to match his prior statement that he would continue working and coaching until age 70, at least.

Plaintiff should be awarded $5,201,739 in future economic losses to compensate him for the intentional constructive termination of his position caused by Defendants' discriminatory harassment and retaliation, so that he no longer is beholden to Defendants and their abuses of authority.

## IV.    CONCLUSION

For the foregoing reasons Plaintiff's Renewed Motion for Partial Summary Judgment should be granted on each of the six points requested as no triable issues exist. Trial can then be limited to compensation for past economic losses, non-economic damages, other potential statutory damages and, if appropriate, punitive damages against the individual defendants in their individual capacities.

Respectfully submitted,

Dated:  August 16, 2024                     LAW OFFICE OF EVAN C. NELSON

By: _____/s/_____
        Evan C. Nelson
        Attorneys for Plaintiff PETER COLOMBO