Eugene B. Elliot, State Bar No. 111475
Ethan M. Lowry, State Bar No. 278831
Benjamin I. Oreper, State Bar No. 329480
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
Email:   eelliot@bfesf.com
         elowry@bfesf.com
         boreper@bfesf.com

Attorneys for Defendants
PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN,
AMANDA BARK, LISA HICKEY and TRENT BAHADURSINGH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER COLOMBO,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, et al.,<br><br>　　　　Defendants. | Case No. 5:24-cv-00909-NC<br><br>**DEFENDANTS PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN, AMANDA BARK, LISA HICKEY, AND TRENT BAHADURSINGH'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br>**[FRCP RULE 12(b)(6)]**<br><br>Date:　　September 25, 2024<br>Time:　　11:00 a.m.<br>Dept.:　　Courtroom 5, 4th Floor<br><br>**Hon. Nathanael M. Cousins** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. LEGAL ARGUMENT............................................................................................................ 1

    A. Plaintiff Fails to Plausibly Allege Deprivations of Due Process........................................ 2

        1. Plaintiff's Claims are Not Based on Deprivations of Interests for which Defendants May be Found Liable ........................................................................ 2

        2. Plaintiff Fails to Plausibly Allege Defendants Caused any Deprivation................ 4

    B. Plaintiff Has Not Stated Cognizable, Plausible Claims Under FEHA, Title VII, and the ADA ............................................................................................................................ 7

    C. Plaintiff Cannot Establish as a Matter of Law that the DISTRICT is Not an Arm of the State for the Purposes of Eleventh Amendment Immunity and is Not a "Person" Subject to Suit Under §1983............................................................................... 8

    D. Qualified Immunity Applies to Plaintiff's Claims Against the Individual Defendants...................................................................................................................... 12

III. CONCLUSION ..................................................................................................................... 15

i

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ...................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................................5

*Belanger v. Madera Unified School District*,
    963 F.2d. 248 (9th Cir. 1992) ............................................................................ 9, 10, 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................5

*Billington v. Smith*,
    292 F.3d 1177 (9th Cir. 2002) ....................................................................................13

*Brady v. Maryland*,
    373 U.S. 83 (1963) .....................................................................................................14

*Butt v. State*,
    842 P.2d 1240 (1992) .................................................................................................10

*Carillo v. Cnty. Of Los Angeles*,
    798 F.3d 1210 (9th Cir. 2015) ....................................................................................13

*Cervantes v. City of San Diego*,
    5 F.3d 1273 (9th Cir. 1993) .........................................................................................2

*Chavez v. Robinson*,
    817 F.3d 1162 (9th Cir. 2016) ....................................................................................13

*City and County of San Francisco v. Sheehan*,
    135 S.Ct. 1765 (2015) .......................................................................................... 12, 13

*Doe v. White*,
    440 F. Supp. 3d 1074 (N.D. Cal. 2020) .....................................................................14

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .......................................................................................5

*Engquist v. Oregon Dep't of Agric.*,
    478 F.3d 985 (9th Cir. 2007) .......................................................................................2

*Garrett v. Governing Bd. of Oakland Unified Sch. Dist.*,
    583 F. Supp. 3d 1267 (N.D. Cal. 2022) .......................................................................2

*In re Century Aluminum Co. Sec. Litig.*,
    729 F.3d 1104 (9th Cir. 2013) ..................................................................................5, 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .......................................................................................2

ii

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

*Kohn v. State Bar of California*,
　87 F.4th 1021 (2023) ................................................................................................... 9, 10, 11, 12

*Kyles v. Whitley*,
　514 U.S. 419 (1995) ........................................................................................................................6

*Mellen v. Winn*,
　900 F.3d 1085 (9th Cir. 2018) ......................................................................................................13

*Moran v. Selig*,
　447 F.3d 748 (9th Cir. 2006) .........................................................................................................7

*Nicholson v. County of Stanislaus*,
　2010 WL 923729 (2010) ............................................................................................................4, 5

*Plumhoff v. Rickard*,
　572 U.S. 765 (2014) ......................................................................................................................12

*Regents of Univ. of Calif. v. Doe*,
　519 US 4251 (1997) ......................................................................................................................11

*Richards v. County of San Bernandino*,
　39 F.4th 562 (9th Cir. 2022) .....................................................................................................3, 6

*Sato v. Orange County Dept. of Education*,
　861 F.3d 923 (9th Cir. 2017) ........................................................................................ 9, 10, 11, 12

*Tennison v. City & Cnty of San Francisco*,
　570 F.3d 1078 (9th Cir. 2009) .............................................................................................. 13, 14

**<u>Regulations</u>**

89 FR 33474 (2020) ..............................................................................................................................15

I.      INTRODUCTION

Plaintiff's First Amended Complaint alleges, in broad strokes, that the PALO ALTO UNIFIED SCHOOL DISTRICT (the "DISTRICT") and its named individual officers and employees conspired with a litany of state agencies and private actors to "target" Plaintiff and violate his constitutional rights. Examination of the facts alleged in the Complaint, taken as true, but absent Plaintiff's conclusory allegations, unreasonable inferences, legal characterizations and conclusions couched as facts, and unwarranted deductions of fact, reveals that Plaintiff has alleged only that the DISTRICT, upon receipt of an allegation that Plaintiff had forcibly raped a student in a school locker room during the 2001-2002 school year, duly reported that allegation to law enforcement; that law enforcement, not the DISTRICT, arrested Plaintiff and charged him with forcible rape of a minor; and that the DISTRICT, in compliance with applicable law and in the proper exercise of its discretion, made legally-compelled disclosures of information related to Plaintiff in response to Public Record Act requests, and initiated an independent personnel investigation of the allegation against Plaintiff following the dismissal of the criminal charges against him. Contrary to Plaintiff's assertions in his Opposition, these facts are insufficient to state a cognizable claim for relief premised on violations of Plaintiff's substantive and procedural due process rights under 28 U.S.C. §1983. Further, even if Plaintiff had adequately alleged such claims, they are subject to dismissal as to the DISTRICT, as it is an "arm of the state" and not a "person" subject to suit under §1983 and is accordingly entitled to 11th Amendment Immunity under well-established, binding precedent which continues to be applicable. Plaintiff further fails to sufficiently or plausibly allege that his gender or disability were motivating factors for any "adverse employment action" against him as required to state claims under FEHA, Title VII, and the ADA. Finally, the individual defendants are subject to qualified immunity as Plaintiff fails to allege any specific conduct by them in violation of his clearly established constitutional rights under binding precedent. Plaintiff argues only that the application of qualified immunity is defeated by his allegations that Defendants "suppressed exculpatory evidence" – an allegation which, even if not conclusory and facially implausible, fails to identify conduct which no reasonable school district official could disagree violated Plaintiff's clearly-established rights.

II.     LEGAL ARGUMENT

As a preliminary matter, Plaintiff has again submitted hundreds of pages of supplemental material outside of the pleadings purportedly in support of his Opposition. In general, a court may not consider materials

1

outside the Complaint in considering a motion to dismiss under Rule 12(b)(6). (*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); see also *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ["Review is limited to the complaint; evidence outside the pleadings ... cannot normally be considered in deciding a 12(b)(6) motion"].) The DISTRICT rejects Plaintiffs' efforts to unilaterally convert its Motion to Dismiss into a Motion for Summary Judgment and asks that the Court exclude matters outside the pleadings accordingly.

A.   **Plaintiff Fails to Plausibly Allege Deprivations of Due Process**

The defective nature of Plaintiff's §1983 claims is twofold. First, Plaintiff fails to plausibly allege the existence of a constitutionally protected property or liberty interest, the deprivation of which **by Defendant**s would constitute a violation of his constitutional rights. Second, even if Plaintiff had plausibly identified such interests, he fails to plausibly allege that any deprivation was caused by Defendants.

   1.   **Plaintiff's Claims are Not Based on Deprivations of Interests for which Defendants May be Found Liable**

Plaintiff argues Defendants "mischaracteriz[e]" his claims "as specifically and merely a due process right to continued employment in a particular position." (Dkt. No. 42 at 9:27-10:2.) However, as evidenced by Plaintiff's arguments that Defendants "circumvent[ed] the process required for disciplining or terminating a tenured teacher," and that Defendants "objective [was] constructive termination," Plaintiff continues to assert that his right to continued employment in a particular position remains the primary basis for his claims. (*Id.* at 10:8-12.) As discussed in Defendants' motion, no such substantive due process right has been found by courts within this circuit, and Plaintiff therefore fails to state a cognizable claim for relief to the extent that it is predicated on the existence of such a right. (*Garrett v. Governing Bd. of Oakland Unified Sch. Dist.*, 583 F. Supp. 3d 1267, 1280 (N.D. Cal. 2022); *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996–97 (9th Cir. 2007).)

Plaintiff instead contends that he has asserted the deprivation of "liberty and property interests that arise from "a presumption of innocence and to not be discriminatorily prosecuted based on a false accusation totally lacking in evidentiary support," based on "concealment of class lists and suppression of other exculpatory evidence and attempts to fabricate false evidence.[1]" (Dkt. No. 42 at 10:17 – 11:2.) In support of this contention,

---

[1] Notably, Plaintiff repeatedly states his allegation that Defendants "fabricated" evidence without providing any specificity as to what evidence he alleges was "fabricated" nor its relationship to his underlying criminal proceeding.

2

Plaintiff cites to *Richards v. County of San Bernandino,* 39 F.4th 562, 572 (9th Cir. 2022), which he argues "expressly affirms a right under the Fourteenth Amendment when a plaintiff has been denied their due process right to a fair trial.[2]" However, that case concerned claims of constitutional violations by the Sheriff's Department and District Attorney criminally prosecuting the Plaintiff - e.g., the parties which in fact charged and criminally prosecuted Plaintiff. (*Richards,* 39 F.4th 562, 566.) Here, Plaintiff instead alleges that his rights to a fair trial and to the presumption of innocence were violated by Defendants, whom neither brought charges against him nor conducted his criminal prosecution. The holding of *Richards* expressly supports the conclusion that claims of violation of the right to a fair trial based on fabrication of evidence are proper only against the entities actually engaged in the criminal prosecution. The court notes the "constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government," and finds that "the fundamental due process right to a fair trial . . . is the very same constitutional right that is implicated **when the prosecution suppresses evidence**." (*Richards*, 39 F.4th at 569, 572 [emphasis added].) Here, Defendants did not prosecute Plaintiff, and to the extent that Plaintiff seeks to claim that the prosecuting entities violated his rights, he does not name them as parties to the Complaint. Further, in *Richards*, the plaintiff's assertion that his right to a fair trial was violated was based not on allegations of "suppression" or "fabrication" of evidence by itself, but on the fact of his conviction at trial, which was subsequently vacated on the Supreme Court's finding it was based on false evidence. (*Id.,* at 565.) Here, as in *Richards*, only the authorities actually engaged in the criminal charging and prosecution of Plaintiff had any discretionary agency to "subject" Plaintiff to criminal charges, or to "continue" their prosecution, and not only was Plaintiff not convicted, but the criminal charges against him were dropped following a preliminary hearing. Accordingly, Plaintiff cannot state any cognizable claim for a violation of his right to a fair trial against Defendants.

In addition to his allegations of suppression of evidence, Plaintiff also alleges that his right to a fair trial and the presumption of innocence were violated by the DISTRICT's "conspiring to produce a media campaign aimed at fabricating false evidence," and "doubling down when the criminal charges were dismissed . . . and again violating the neutral silence mandate by stating that a 'big investigation' of Plaintiff would be pursued into

---

[2] Plaintiff also alleges Defendants violated his "right to presumed innocence through unbiased, neutral investigations relating to the false accusation," inclusive of the DISTRICt and its employees "remaining neutral regarding ongoing investigations," and citing *Richards*, 39 F.4th at 572. (Dkt. No. 42 at 11:10-12.) However, *Richards* contains no such holding or discussion.

his entire 'history.'" (Dkt. No 42 at 11:25-12:7.) Plaintiff's allegations regarding the DISTRICT's personnel investigation are facially insufficient to allege the violation of his due process rights, as he cites to no authority establishing a constitutionally protected interest in a "neutral silence mandate," nor a constitutional right not to be subject to a personnel investigation by the school district employing you following allegations by a third party of your having raped a minor student. Plaintiff's allegations regarding the DISTRICT's "production" of a media campaign likewise fail to adequately identify a constitutional interest or allege its violation by the DISTRICT, as Plaintiff can identify no clearly-established constitutional right under which the DISTRICT would be foreclosed from fulfilling its obligations under the law to make legally-compelled disclosures pursuant to requests under the Public Records Act – the only alleged conduct directly attributable to Defendants. Further, as discussed in the DISTRICT's Motion to Dismiss and below, Plaintiff cannot plausibly allege any causal connection between any alleged deprivations and the alleged conduct attributable to the DISTRICT. Finally, Plaintiff alleges in support of his claims that "he was entitled to be informed, at the outset, regarding the scope of any PAUSD investigation and the authority under which such investigation was proceeding." (Dkt. No. 42 at 11:6-8.) In support of this assertion, Plaintiff cites to *Nicholson v. County of Stanislaus*, 2010 WL 923729, which is entirely inapposite. There, in a case involving iris farmers whom were compelled to destroy their stock following receipt of a notice of abatement from the county following an inspection, the Court identified the question presented as "whether county made its administrative remedies available to Plaintiffs prior to any deprivation by providing adequate notice of those remedies." (*Nicholson*, 2010 WL 923729 at *4.) Here, the DISTRICT's independent personnel investigation is not in any way analogous to a county's issuance of an abatement order to a farm, and Plaintiff provides no authority for his specific contentions that the DISTRICT was required to notify him of the scope of or authorization for its investigation "at the outset," nor that any failure to do so constituted a constitutional violation. The "notice" contemplated in *Nicholson* was "notice of an opportunity to challenge the agency action in a meaningful way" – something which, again, is not analogous to an employer's independent personnel investigation of allegations against an employee. (*Id.,* at *6.) Furthermore, Plaintiff admits that he was provided with the scope of the investigation in advance of his direct involvement, and well in advance of any findings being made. (Dkt. No. 37 at 9:26-28.)

    **2.**    **Plaintiff Fails to Plausibly Allege Defendants Caused any Deprivation**

As Plaintiff concedes in his Opposition, the Federal pleading standard that claims have "facial

4

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

plausibility" requires that a Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Dkt. No. 42 at 9:15-17, citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009).) Plaintiff is required to plead sufficient facts "to state a claim for relief that is plausible on its face," and which "must be enough to raise a right to relief above the speculative level." (*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).) Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." (*Id.*, at 679.) "When considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior." (*Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).) "When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true in order to render plaintiffs' allegations plausible within the meaning of *Iqbal*." (*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).)

Here, Plaintiff's Opposition sets forth that the alleged deprivation(s) of constitutional rights were comprised of Defendants' 1) "sponsor[ing] the false allegation against Plaintiff" by "suppressing exculpatory evidence;" 2) the DISTRICT's aforementioned legally-compelled disclosures to a media organization pursuant to requests under the Public Records Act, which Plaintiff alleges were part of a conspiracy; and 3) the DISTRICT's personnel investigation of Plaintiff, characterized as the DISTRICT's "doubling down when the criminal charges were dismissed." (Dkt. No. 27 at 17:22-18:9.)

As a threshold matter, with the exception of the DISTRICT's personnel investigation, none of the conduct alleged is even directly attributable to the DISTRICT. Plaintiff's arrest, charging with sexual assault of a minor, and incarceration were neither initiated nor carried out by Defendants, nor does Plaintiff so allege. Plaintiff's allegations of a coordinated, multi-actor conspiracy, without any stated motive, to violate his rights fail to permit an inference beyond "the mere possibility of misconduct" and do not "cross[] the line from conceivable to plausible." Plaintiff alleges no facts with any tendency to exclude the obvious alternative explanation that a former student of the DISTRICT alleged that Plaintiff had raped her in a locker room on school grounds on or around the 2001-2002 school year; that the DISTRICT reported that allegation to law

enforcement as required under the Child Abuse and Neglect Reporting Act (Cal. Pen. Code §11166(a)) and that law enforcement independently reached a determination as to arresting, charging, and incarcerating Plaintiff based on its own investigation into the allegation.

Similarly, Plaintiff's allegation that "exculpatory evidence" was "suppressed" is insufficient given the obvious alternative explanation, uncontroverted by any of Plaintiff's allegations, that the DISTRICT simply did not possess any additional evidence beyond that which was provided to law enforcement. Indeed, Plaintiff specifically alleges that he was never provided with this evidence, and his allegations that it exists at all, let alone that the DISTRICT affirmatively suppressed its disclosure, are entirely speculative. His allegations that such evidence would be "exculpatory" are likewise speculative and conclusory. Further, to the extent that Plaintiff's claims are based on alleged "suppression," the court in *Richards* observed that for such claims, "causation is satisfied . . . if the plaintiff can show that the suppressed evidence was "material"- i.e., that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.[3]" (*Richards,* 39 F.4th at 573, citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).) Thus, even if Plaintiff's assertions as to the purported contents of the evidence were not entirely speculative and insufficient to show any reasonable probability of material difference in the outcome of the proceeding, the "proceeding" in question resulted in the charges against Plaintiff being dropped. As such, even if Plaintiff could otherwise state a claim against Defendants based on "suppression," his allegations are insufficient to meet this materiality requirement.

Plaintiff's allegations that the DISTRICT impermissibly released his personal information to the media in a bid to influence his criminal proceedings are similarly implausible on their face, given that Plaintiff was arrested, charged, and incarcerated nearly a year before Plaintiff alleges the "defamatory traducement" was published, and further given the obvious alternative explanation that the DISTRICT was merely fulfilling its legal obligation to respond to such requests – an explanation Plaintiff's allegations likewise have no tendency to exclude. Finally, as discussed above, the DISTRICT's personnel investigation was not violative of any clearly-established constitutional right, and the allegation that it was initiated pursuant to a conspiracy is rendered

---

[3] To the extent that Plaintiff claims a different standard applies to "fabrication" than to "suppression," Plaintiff's allegations are premised on the DISTRICT's non-production of "exculpatory evidence," inclusive of student records, and Plaintiff has not adequately alleged any evidence was deliberately "fabricated."

6

implausible by the obvious alternative explanation that the DISTRICT was compelled to initiate this investigation due to the gravity of the allegations against Plaintiff, and regardless of the outcome of his criminal proceeding given the significantly lower bar for civil liability, and that the DISTRICT waited until the criminal proceedings had concluded prior to initiating its investigation in order not to interfere with any investigation by law enforcement.

**B.      Plaintiff Has Not Stated Cognizable, Plausible Claims Under FEHA, Title VII, and the ADA**

Plaintiff argues that he has sufficiently stated discrimination claims under the above statutes because, *inter alia*, he has alleged that "similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." (Dkt. No 42 at 12:22-24.)

The crux of the issue is this: in order to state cognizable claims under these statutes, Plaintiff is required to plausibly allege that his gender and/or disability were the basis for Defendants' taking of adverse employment actions against him. Specifically, he must plead "facts tending to exclude the possibility that the obvious alternative explanation is true in order to render plaintiffs' allegations plausible within the meaning of *Iqbal*." (*In re Century Aluminum,* 729 F.3d at 1108.) In particular, given that all of the alleged "adverse employment actions" occurred subsequent to the DISTRICT's receipt of an allegation that Plaintiff had raped a minor student, in order to plausibly allege that employees were subject to favorable or differential treatment, Plaintiff must allege that other employees outside of his protected class *who were similarly accused of the same misconduct – the rape of a minor student –* were not likewise subjected to those "adverse employment actions." (See *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) ["In order to show that the "employees" allegedly receiving more favorable treatment are similarly situated . . . the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects."])

Plaintiff indeed alleges that he is male, and that he has a disability of "inactive alcoholism." However, as the DISTRICT has argued, given that 1) the DISTRICT received an allegation that Plaintiff had raped a minor student; 2) each and every one of the "adverse employment actions" alleged by Plaintiff took place *following* the DISTRICT's receipt of this allegation – despite the fact that, as Plaintiff alleges, he was a male teacher with alcoholism with the DISTRICT for up to 28 years prior to the allegation against him; and 3) Plaintiff fails to plausibly allege that similarly situated persons outside of his protected class were treated more favorably – e.g.,

7

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

that female employees or employees without a history of alcoholism whom were accused of having raped minor students were *not* subjected to the "adverse employment actions" Plaintiff alleges he was subjected to – it follows that Plaintiff has not met the bar to plead plausible discrimination claims under the applicable standard. As discussed at length in Defendants' motion, Plaintiff's allegations are facially implausible given the obvious alternative explanation that, to the extent the DISTRICT took any of the "adverse employment actions" alleged, it did so based on its receipt of an allegation that Plaintiff had raped a minor student, and not because of Plaintiff's gender, disability, or membership in a protected class. Plaintiff further claims that he has plead "in detail that his gender was a motivating factor and/or cause of Defendants' adverse employment actions," but outside of a reference to "multiple misandrist comments made about him," Plaintiff's remaining list is bereft of specific, non-conclusory allegations supporting a plausible inference of gender-related animus. (Dkt. No. 42 at 13:22-14:1.) Further, the Complaint itself does not contain a single allegation that any DISTRICT employee made any "misandrist comments" about Plaintiff. For the same reasons, Plaintiff's claims that Defendants violated FEHA by "considering" his arrest in subsequent adverse employment decisions is likewise facially implausible. Plaintiff does not allege any adverse employment actions prior to the third-party allegation that he raped a student, but alleges adverse employment actions both prior to and subsequent to his arrest, supporting the obvious alternative explanation that these alleged actions were predicated on the allegation, and not on Plaintiff's arrest.

C. **Plaintiff Cannot Establish as a Matter of Law that the DISTRICT is Not an Arm of the State for the Purposes of Eleventh Amendment Immunity and is Not a "Person" Subject to Suit Under §1983**

As Defendants argue in the Motion to Dismiss, school districts in California (and their constituent employees sued in their official capacities) have consistently been considered "arms of the state" whom are therefore not "persons" subject to suit under 28 U.S.C. §1983[4]. (*Belanger v. Madera Unified School District*, 963 F.2d. 248, 251, 254 (9th Cir. 1992); *Sato v. Orange County Dept. of Education*, 861 F.3d 923, 928-29 (9th Cir. 2017).) Plaintiff argues that under new Ninth Circuit authority, *Kohn v. State Bar of California*, 87 F.4th 1021 (2023), the holdings of *Belanger*[5] and *Sato* are overruled in their entirety, and that under the new test *Kohn*

---

[4] Plaintiff claims Defendants "fail to address" waiver of sovereign immunity as to alleged violations of Title VII, Title IX, and FEHA; however, the FAC contains no claims based on Title IX, and as argued, Plaintiff's Title VII and FEHA claims are deficient.

[5] Plaintiff contends that *Belanger* "is the example used by the Court in *Kohn* to explain the need to revamp the .

8

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

sets forth, the DISTRICT is not an "arm of the state" for 11th Amendment purposes. For the reasons Defendants have outlined, this is incorrect. First, the *Kohn* court clarified its intent not upend established precedent with regard to entities previously found immune, stating that its decision to modify the applicable test "is unlikely to lead to different results in cases that previously applied the *Mitchell* factors and held an entity entitled to immunity," and that it was primarily concerned with prior "erroneous[] conclusion[s] of **no immunity**." (*Id.,* at 1028, 1031-32 [emphasis added].)

Second, the *Kohn* court expressly adopted the D.C. Circuit's rule that "under the three-factor test, an entity either is or is not an arm of the state: the status of the entity does not change from one case to the next based on the nature of the suit, the state's financial responsibility in one case as compared to another, or other variable factors." (*Kohn*, 87 F.4th 1021 at 1031.) Plaintiff's arguments, which rely on Justice Mendoza's concurring opinion, are directly to the contrary, proposing that rather than considering the relationship between public school districts and the state as a whole, as mandated by the majority, that the Court carve out an exception for a "basic aid district" in the context of an employment lawsuit. The *Kohn* court expressly disfavors this "activity-based" approach, finding it "would allow parties to relitigate an entity's immunity simply by articulating the challenged activity at a different level of generality," allowing "the very purpose of immunity" to be undermined. (*Id.*) From this, it is clear that under *Kohn*, the proper determination is whether all public school districts in California are collectively entitled to eleventh amendment immunity based on the test's application to districts as a whole.

In this context, Plaintiff's proposed application of *Kohn* relies on a fundamental misunderstanding of the relationship between school districts and the state in California, and on a highly narrow analysis focused on school districts as local employers, rather than institutions of education and agents of the implementation of the state's educational curriculum. Plaintiff addresses the first *Kohn* factor – "the [s]tate's intent as to the status of the entity, including the functions performed by the entity" – by arguing that "[t]he intent relating to the school district's function in employing teachers is that such matters will be conducted locally through contract negotiations between the local school district and the employee bargaining units." (Dkt. No. 42 at 16:1-4.) In

---

. . . arm of the state test." However, *Kohn* cites *Belanger* solely in the context of presenting it as an example of a case in which the *Mitchell* factors were applied, does not otherwise hold that *Belanger* was in any way wrongly decided nor otherwise disapprove of its holding that school districts in California are arms of the state. (*Kohn, supra,* 87 F.4th at 1027.)

9

addition to being a bizarre characterization of the state's intent with regard to the existence and maintenance of school districts (employing teachers rather than providing for the education of pupils), this is directly contrary to the law and to the analysis in *Kohn*. The *Kohn* court, in applying the intent factor to the state bar, observed that "California law characterizes the state bar as a governmental instrumentality," and that it is "codified in the California Constitution." (*Kohn,* 87 F.4th at 1032.) Similarly, as discussed, the California Supreme Court has found that that "California has assumed specific responsibility for a statewide public education system," and other courts similarly note that "[e]xamples of the state's assumption of public education as a state responsibility appear throughout the California Constitution." (*Butt v. State*, 842 P.2d 1240, 1247 (1992); *Sato*, 861 F.3d at 932.) Additionally, the *Kohn* court held that "[t]he state legislature's characterization of an entity is not the only important metric for the intent factor—state court treatment is also relevant," citing with approval the opinion in *Hess v. Port Authority Trans-Hudson Corporation* that "[s]tate courts . . . repeatedly have typed the Port Authority an agency of the [s]tates." (*Kohn*, 87 F.4th at 1032.) As Defendants have repeatedly noted, school districts in California have consistently been considered "arms of the state" for 11th Amendment purposes. (*Belanger*, 963 F.2d. at 251, 254; *Sato,* 861 F.3d at 928-29.) Both portions of the intent analysis under *Kohn* thus support the application of immunity to the DISTRICT. Plaintiff's analysis is predicated on the disfavored "activity-based" approach, centering the DISTRICT's function as an employer in the context of this lawsuit – an analysis at a level of generality under which the state's intent as to any entity which employs persons can be argued to be identical, and which does not engage with *Kohn*.

Similarly, in applying the second *Kohn* factor – "the [s]tate's control over the entity" – Plaintiff argues that *this particular* DISTRICT "is governed by a local school board of locally elected members from the community." (Dkt. No. 21 at 11:11-12.) Plaintiff's analysis is again focused on whether the DISTRICT in this particular instance – rather than school districts in California as a whole – are arms of the state subject to immunity under *Kohn*. Further, the manner of appointment of officers is only one element of this factor. The court in *Kohn* also considered the state's exercise of control over the entity's "functioning," the closeness of the relationship between them, and whether the entity is subject to state "supervision." (*Kohn*, 87 F.4th at 1035.) Under longstanding precedent, ""California law treats public schooling as a statewide or central governmental function," and "[t]hat the state itself has decided to give its local agents more autonomy does not change the fact that the school districts remain state agents under state control." (*Belanger*, 963 F.2d at 253.) Further, as noted in

10

*Sato*, even following the adoption of "Local Control and Accountability Plans (LCAPs) . . . [u]nder the state constitution, the provision of public education in California remains a central government function. And even through the LCAP process, the state still exercises significant control over school districts and COEs." (*Sato*, 861 F.3d at 933.) "The far-reaching areas of state priority include such fundamental issues as "[i]mplementation of the academic content and performance standards adopted by the state board," "[p]arental involvement," and "[p]upil achievement." (*Id.*) Accordingly, application of this factor also weighs in favor of upholding the precedent that school districts remain arms of the state for 11th Amendment purposes.

As discussed, the third *Kohn* factor "is not dispositive [and] placed in its proper context, cannot overcome the first two." (*Kohn*, 87 F.4th at 1037.) The *Kohn* court further concluded that "the inquiry into whether a state is legally liable for judgments against an entity is important not as a formalistic question of ultimate financial liability, but because it is an indicator of the relationship between the state and its creation." (*Id.*) Here, Plaintiff's analysis hinges primarily on the argument that because *this* District is a "basic aid" District, it receives the majority of its funding from local sources, rather than from the state, and that the DISTRICT is further "mandated to carry insurance, so state funds will not be responsible to pay any portion of an eventual verdict[.]" (Dkt. No. 42 at 11:13-19.) This both misapplies the test and misstates the law. As a threshold matter, an entity's right to indemnification is immaterial, as Eleventh Amendment Immunity depends on the State's potential legal liability, regardless of the entity's ability to require indemnification from a third party. (*Regents of Univ. of Calif. v. Doe*, 519 US 425, 430-431 (1997).) Further, as discussed above, Plaintiff's attempts to isolate the DISTRICT from all public school districts in California for 11th amendment purposes through the proposed "basic aid" lens are at odds with *Kohn's* entity-based analysis. In any event, *Sato* previously addressed Plaintiff's precise argument that given California's implementation of the Local Control and Funding Formula (LCFF), districts are "free to raise local property tax revenues as much as they want to supplement minimum state support," and that the defendant district's receiving "a significant portion of its funding from local property tax revenues . . . raised on top of LCFF base grant funding" should result in a loss of sovereign immunity. (*Sato,* 861 F.3d at 930-31.) The *Sato* court found these arguments "without merit," noting that because "the LCFF keeps in place a maximum per-pupil funding formula, state and local funds are still "hopelessly intertwined . . . any change in the allocation of property tax revenue has a direct effect on the allocation of state funds," and in this context finding Plaintiff's focus on the **particular portion** of funding

derived from local property tax revenues purely "semantic." (*Sato*, 861 F.3d at 931-32.) *Kohn* likewise found that although "California would not be liable for a judgment against the State Bar," because the State Bar's property "is held for essential public and governmental purposes . . . [its] funds *are* state funds;" because the California legislature exercises control over its ability to raise revenue; and because it performs a "vital government function" that "the state could not do without," the state *is* "the real, substantial party in interest . . . even if not directly liable for a judgment against [the] entity." (*Kohn*, 87 F. 4th at 1036-37.) Here, school districts fulfill the vital, central government function of providing public education; all of their property is held for these essential purposes; and the state continues to retain "centralized control over local education budgets," even under the LCFF regime. (*Sato*, 861 F.3d at 932.) Thus, the manner in which denying sovereign immunity to school districts in California touches on both the state's dignity and solvency is clear, and there remains "no reason to disturb our nearly forty-year-old determination" that California school districts are arms of the state and entitled to immunity in Federal Court. (*Kohn*, 87 F. 4th at 1037.)

**D.     Qualified Immunity Applies to Plaintiff's Claims Against the Individual Defendants**

Public officials are immune from suit under 42 U.S.C. § 1983 unless they have violated a clearly established statutory or constitutional right. (*Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014).) The doctrine's purpose is to "protect all but the plainly incompetent or those who knowingly violate the law." (*City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774, n.3 (2015).) To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).) The threshold question in deciding whether a public official is entitled to qualified immunity is: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right? (*Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002).) If the answer is no, no further inquiry is necessary. (*Id.*) If there was a violation, the second question is whether the violated right was "clearly established" at the time. (*Id.*) If the answer to this second question is no, then the official cannot be said to have fair notice and is entitled to qualified immunity even if there was technically a violation of rights. (*Sheehan*, 135 S.Ct. at 1777.)

Plaintiff argues qualified immunity is improper for determination on a motion to dismiss, citing *Chavez v. Robinson,* 817 F.3d 1162, 1169 (9th Cir. 2016). That case, however, dealt with a pro-se complainant proceeding in forma pauperis where dismissal of the complaint was sought and granted "before any defendant

12

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

had been served." (*Id.,* at 1164-65.) Indeed, the *Chavez* court acknowledged plaintiff's argument that "qualified immunity is an affirmative defense that the defendant, not the court, must raise," and responded that "qualified immunity is an immunity from suit rather than a mere defense to liability, and is thus effectively lost if a case is erroneously permitted to go to trial." (*Id.,* at 1168.)

In his Opposition, beyond his facially inadequate claims under FEHA and Title VII discussed above, the only conduct by Defendants which Plaintiff asserts defeats qualified immunity is the alleged "suppression of evidence" and "unlawful[l] delay" of a "Title IX Investigation." (Dkt. No. 42 at 20:7, 21:12.) Both have previously been addressed by Defendants. With regard to the alleged "suppression," Plaintiff cites to *Richards*, 39 F. 4th at 572, as supporting the proposition that "a due process right under the fourteenth amendment exists where a plaintiff has been denied a presumption of innocence and the right to not be discriminatorily prosecuted . . . implicated by concealment or suppression of favorable (exculpatory) evidence and/or fabrication of false evidence." (Dkt. No. 42 at 21:4-8.) However, *Richards* and its progeny concern allegations of evidentiary suppression in cases involving prosecutors and law enforcement – e.g., the officials actually responsible for carrying out criminal proceedings – and are expressly limited to such circumstances. (See *Carillo v. Cnty. Of Los Angeles*, 798 F.3d 1210, 1219 (9th Cir. 2015) ["it was clearly established well before the events in these cases that **police officers** were bound to disclose material and exculpatory evidence."]; *Tennison v. City & Cnty of San Francisco,* 570 F.3d 1078, 1087 (9th Cir. 2009) [holding *Brady* imposes a duty on prosecutor and police officers alike to disclose exculpatory evidence to the defense in a criminal proceeding]; and *Mellen v. Winn,* 900 F.3d 1085, 1096 (9th Cir. 2018) ["[s]ince **the investigative officers are part of the prosecution**, the taint on the trial is no less **if they, rather than the prosecuto**r, were guilty of nondisclosure."]) No clearly established law imposes identical disclosure obligations on the officials of a school district who reported an allegation made against one of their employees to the police, or who employ a criminal defendant during the pendency of their criminal proceedings. At a minimum, there exists no precedent establishing "beyond debate" the disclosure obligations of a school district and its officials' concerning any given documents pursuant to a criminal proceeding involving one of their employees.

Accordingly, even taken in the light most favorable to Plaintiff, his allegations fail to sufficiently allege any specific conduct by any of the individual defendants violative of his constitutional rights. Plaintiff's allegations are insufficient to support an inference that "every reasonable official" of the DISTRICT would have

13

understood that not affirmatively providing, *inter alia*, copies "of grade reports for every 6th grader in 2001-2002 at Jordan" to law enforcement was violative of Plaintiff's constitutional rights. (Dkt. No. 42 at 20:23-24.) There exists no clearly established basis in law or policy for holding the officials of educational institutions to the same standard as prosecutors and police officers in determining their disclosure obligations in criminal proceedings to which the officials are not even a party. As the *Tennison* court noted, "[t]he dispositive inquiry is whether it would be clear to a reasonable [official] that his conduct was unlawful ***in the situation he confronted***." (*Tennison*, 570 F.3d at 1094 [emphasis added].) It is not "beyond debate" that 1) a police officer or prosecutor's duty to identify and disclose material evidence in a criminal proceeding they are engaged in prosecuting imposes an equivalent duty on school district officials; 2) that no reasonable school official would understand it to impose such a duty; and that every reasonable school official would understand their failure to ensure that "class lists" were provided to criminal prosecutors in a proceeding involving one of their employees would constitute a violation of that employee's constitutional right to a fair trial. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" (*Doe v. White*, 440 F. Supp. 3d 1074, 1082 (N.D. Cal. 2020).) In holding that "the suppression ***by the prosecution*** of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment," the Supreme Court, in *Brady v. Maryland,* stated as its rationale that such suppression "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." (*Brady v. Maryland,* 373 U.S. 83, 87, 88 (1963).) Many a reasonable school district official would disagree with an analogous categorization of district officials as "architects" of criminal proceedings involving district employees, nor that they are imparted with evidentiary analysis and disclosure obligations analogous to those of prosecutors.

Plaintiff's assertions in his opposition that the DISTRICT unlawfully delayed its personnel investigation in violation of Title IX are based entirely on his submission of additional evidence outside of the pleadings, and thus these claims and arguments do not render his pleadings sufficient to defeat the application of qualified immunity[6]. Regardless, his assertions are baseless, as the DISTRICT's independent personnel investigation was

---

[6] Regarding Plaintiff's request to further amend the Complaint to add a Title IX claim, Defendants note that the parties previously engaged in a round of motions on the pleadings and summary judgment; Plaintiff had already agreed to file an amended complaint and did so without alleging such claims; and Plaintiff accordingly should

14

not initiated pursuant to Title IX, Plaintiff improperly conflates it with a Title IX investigation and thus relies on inapplicable standards for it, and cites to no authority prohibiting the DISTRICT from conducting an investigation of its employee accused of raping a minor student. Plaintiff's assertions that the DISTRICT's personnel investigation was subject to Board Policies and Admin Regulations based on Title IX (20 U.S.C. 1681) is misplaced. The Title IX Rule applicable to the cited DISTRICT policies and regulations, as amended August 14, 2020 (effective at the time the DISTRICT received the allegation), does not retroactively apply to schools' responses to sexual harassment that allegedly occurred prior to August 14, 2020. (89 FR 33474 at 33841-42 (2020) [7] ["the Department does not intend the final regulations to be enforced retroactively."]) Further, although it is outside of the pleadings, Plaintiff's argument that the DISTRICT was mandated by OCR to conduct a Title IX investigation in this instance is also misplaced. Plaintiff's "evidence" does not support a finding that the DISTRICT was under any obligation from OCR in January of 2022 to initiate a Title IX investigation, nor that any Memorandum of Understanding with the Palo Alto Police Department was in force at that time. Additionally, as previously discussed, Plaintiff provides no binding authority that Defendants were required to provide him with the "scope . . . time limitations, or authority for the investigation," or that he is "entitled to a report of [the investigator's] findings, absent which no determination can be made that such right was "clearly established."

### III.   CONCLUSION

Defendants respectfully request that this Court grant their motion in its entirety.

Dated: August 23, 2024                                          BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

By:   /s/ Benjamin Oreper
Eugene B. Elliot
Ethan M. Lowry
Benjamin I. Oreper
Attorneys for Defendants
PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN, AMANDA BARK, LISA HICKEY and TRENT BAHADURSINGH

---

not be granted leave to allege new theories of liability.

[7] See also U.S. Dept. of Ed. Q&A Regarding Final Title IX Rule, Question 1 (September 4, 2020) ["Consistent with the Department's statements in the preamble to the Title IX Rule regarding nonretroactivity, the Rule does not apply to schools' responses to sexual harassment that allegedly occurred prior to August 14, 2020."] https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-20200904.pdf

15