1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER COLOMBO,

　　　　　　Plaintiff,

　　　v.

PALO ALTO UNIFIED SCHOOL
DISTRICT, et al.,

　　　　　　Defendants.

Case No. 24-cv-00909-NC

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED
COMPLAINT WITH AND
WITHOUT LEAVE TO AMEND**

Re: ECF 41, 42, 47

　　　　Plaintiff Peter Colombo alleges Defendants Palo Alto Unified School District and four District officials violated his procedural and substantive due process rights and discriminated against him based on events following an allegation that Plaintiff raped a middle school student.  The District and individual Defendants, in their official and individual capacities, move to dismiss Plaintiff's first amended complaint based on sovereign immunity, qualified immunity, and failure to state a claim.  For the reasons below, the Court GRANTS Defendants' motion to dismiss.  Specifically, the Court dismisses Plaintiff's 42 U.S.C. § 1983 claims against the District and individual Defendants in their official capacities with prejudice on the basis of sovereign immunity, and dismisses the remainder of the first amended complaint with leave to amend for failure to state a claim.

## I.    BACKGROUND

　　　　The following facts in the first amended complaint are taken as true for the purposes

1   of this motion.  Plaintiff is a tenured, certificated teacher and coach who has worked for

2   the District for 28 years.  ECF 37 (FAC) ¶¶ 3, 19.  Plaintiff is male and has a disability of

3   alcoholism.  FAC ¶¶ 1, 19.  At all relevant times, Defendant Don Austin has worked for

4   the District as Superintendent, Lisa Hickey as Director of Certificated Human Resources,

5   Amanda Bark as Manager, Policy and Legal Compliance, and Trent Bahadursingh as Chief

6   of Staff and Deputy Superintendent.  FAC ¶¶ 5–8.

7       A former student of Jordan Middle School (now Greene Middle School) accused

8   Plaintiff of raping her during the 2001-2002 school year.  FAC ¶¶ 20–21, 66.  Criminal

9   charges were filed against Plaintiff on June 16, 2022, and Plaintiff was incarcerated and

10  placed in solitary confinement, then on home detention, until a preliminary hearing on

11  March 21, 2023.  FAC ¶ 31.  On April 24, 2023, the District Attorney dropped the charges

12  against Plaintiff.  FAC ¶ 32.  The California Commission on Teacher Credentialing (CTC)

13  reinstated Plaintiff's teaching credential after the dismissal of the criminal charges, but

14  then conducted an investigation for the renewal of Plaintiff's credential, which was

15  ultimately renewed in October 2023.  FAC ¶¶ 37, 41.  Defendants also conducted an

16  internal investigation of Plaintiff with the assistance of an independent investigator.  FAC

17  ¶¶ 35, 43–45.  In February and April 2023, a media outlet, Embarcadero Media, published

18  two articles about Plaintiff.  FAC ¶¶ 27, 34.

19      Plaintiff filed an initial complaint on February 15, 2024.  ECF 1.  Plaintiff filed a

20  first amended complaint on July 10, 2024, which seeks damages and monetary relief.

21  FAC.  Defendants filed a motion to dismiss the first amended complaint.  ECF 41 (Mot.).

22  Plaintiff opposed the motion.[1]  ECF 42 (Opp'n).  Defendants filed a reply.  ECF 47

23  (Reply).  All parties have consented to magistrate judge jurisdiction under 28 U.S.C. §

24  636(c).  ECF 7, 11, 59.

25

26

27  _____

[1] Concurrent with his opposition to the motion to dismiss, Plaintiff filed a motion for
28  partial summary judgment.  ECF 43.  The Court will address Plaintiff's motion in a
    separate order.

United States District Court
Northern District of California

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.     DISCUSSION

Plaintiff brings three causes of action alleging Defendants violated his procedural and substantive due process rights, and discriminated and retaliated against him based on gender and disability in violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), and California's Fair Employment and Housing Act (FEHA). Defendants argue that the District and individual Defendants, in their official capacities, are entitled to sovereign immunity, and each of Plaintiff's causes of action fails to state a claim. The Court agrees with both arguments, and therefore does not reach the argument that the individual Defendants, in their individual capacities, are entitled to qualified immunity.

As a threshold matter, the Court notes, as do Defendants, that Plaintiff's opposition to the motion to dismiss includes over 500 pages of exhibits. *See* Reply 1–2; Opp'n, Ex.

A–OO. On a 12(b)(6) motion, "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 2018) (emphasis in original). Accordingly, the Court excludes the exhibits and any new factual allegations presented in Plaintiff's opposition, and does not consider them here.

### A.    Defendants are Immune to Plaintiff's § 1983 Claims in their Official Capacities based on Eleventh Amendment Sovereign Immunity

Plaintiff brings his First and Second Claims pursuant to 42 U.S.C. § 1983, alleging Defendants violated his procedural and substantive due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. FAC ¶¶ 12–16. Defendants argue that the District and individual Defendants, in their official capacities, are entitled to sovereign immunity under the Eleventh Amendment, which precludes their liability under § 1983.

The Eleventh Amendment immunizes states and parties that are considered arms of the state from suit in federal court. U.S. Const. amend. XI; *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1025 (9th Cir. 2023) (en banc). Section 1983 creates a private right of action against "[e]very person" who violates federal constitutional or statutory rights while acting under color of state law. 42 U.S.C. § 1983; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). In suits for damages, "[s]tates or governmental entities that are considered arms of the state for Eleventh Amendment purposes are not persons within the meaning of § 1983." *Thompson v. City of L.A.*, 885 F.2d 1439, 1443 (9th Cir. 1989) (internal quotations omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58). An official of the state or arm of the state who is acting in their official capacity is likewise entitled to Eleventh Amendment immunity and is not a "person" for the purposes of § 1983. *Will*, 491 U.S. at 71.

The parties agree that the Ninth Circuit's recent decision in *Kohn v. State Bar of California* governs whether the District is an arm of the state and, along with the District officials, entitled to sovereign immunity. *See* 87 F.4th at 1030–32. Under *Kohn*, "whether

United States District Court
Northern District of California

the state 'structured' the entity to enjoy immunity from suit" depends on a three-factor test: "(1) the state's intent as to the status of the entity, including the functions performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury." *Id.* at 1030 (cleaned up) (quoting *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008)). The *Kohn* court explicitly adopted an "entity-based approach" to this test, such that "an entity either is or is not an arm of the state: The status of an entity does not change from one case to the next . . . ." *Id.* at 1031 (cleaned up) (quoting *P.R. Ports*, 531 F.3d at 873).

Nonetheless, the parties argue for different interpretations and conclusions of the *Kohn* test as applied here. Much of the disagreement stems from how much weight to afford prior caselaw that held California public school districts are arms of the state entitled to Eleventh Amendment immunity, and that were decided under the five-factor *Mitchell* test that was replaced in *Kohn*. *See Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988); *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923 (9th Cir. 2017) (holding California school districts are arms of the state); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248 (9th Cir. 1992) (same). Although the *Kohn* test implements a new structure and weighting of factors as compared the *Mitchell* test, it still calls for many of the same considerations analyzed by courts under the *Mitchell* test, such that the underlying findings in cases like *Sato* and *Belanger* remain relevant. In fact, the *Kohn* court noted, "[W]e have no reason to believe that our decision today will substantially destabilize past decisions granting sovereign immunity to state entities within the Ninth Circuit." 87 F.4th at 1032.

Because neither the Ninth Circuit nor any district court has analyzed whether school districts are entitled to sovereign immunity since *Kohn*, the Court applies each step of the *Kohn* test here.[2] Like in *Kohn*, "[t]hough we update our test," the Court concludes the

---

[2] Two district courts summarily concluded California school districts are still entitled to Eleventh Amendment immunity. *See T.L. v. Orange Unified Sch. Dist.*, No. 23-cv-01078-FWS-KES, 2024 WL 305387, at *8 (C.D. Cal. Jan. 9, 2024*); Donaghe v. Sherman Heights Elementary*, 24-cv-0359-MMA (DDL), 2024 WL 3883510, at *6 n.5 (S.D. Cal. Aug. 20,

United States District Court
Northern District of California

1  status of California public school districts "remains the same: [They are] arm[s] of the state

2  and entitled to sovereign immunity." 87 F.4th at 1032.

3         **1.   Intent**

4         "The first factor of intent turns on whether state law expressly characterizes the

5  entity as a governmental instrumentality rather than as a local governmental or non-

6  governmental entity; whether the entity performs state governmental functions; whether

7  the entity is treated as a governmental instrumentality for purposes of other state law; and

8  state representations about the entity's status." *Id.* at 1030.

9         To assess whether California law characterizes and represents public school districts

10  as state governmental entities, courts look at the state constitution, legislation, and judicial

11  decisions. *Id.* at 1032–35. It is well settled that "through the state constitution, statutes,

12  and supreme court decisions, California has made public schooling a state governmental

13  function." *Belanger*, 963 F.2d at 253.[3] The California Constitution requires that "[t]he

14  Legislature shall provide for a system of common schools," as well as the creation of

15  school districts and other agencies to maintain these schools. Cal. Const. art. IX, §§ 5, 6.

16  As a result, the California Supreme Court has long recognized that public schools are a

17  responsibility of the state. In *Butt v. State*, the California Supreme Court noted that

18  "[s]ince its admission to the Union, California has assumed specific responsibility for a

19  statewide public education system open on equal terms to all." 4 Cal. 4th 668, 680 (Cal.

20  1992) (in bank). In *Hall v. City of Taft*, the California Supreme Court concluded that

21  school districts are state agencies, recognizing "public schools of this state are a matter of

---

23  2024). Various Ninth Circuit judges have noted the *Kohn* test has not been applied to
24  California school districts to date. *See Riley's Am. Heritage Farms v. Elsasser*, No. 23-
   55516, 2024 WL 1756101, at *1 n. 1 (9th Cir. Apr. 24, 2024); *id.* at 3 n.1 (Sanchez, J.,
25  dissenting); *Health Freedom Def. Fund, Inc. v. Carvalho*, 104 F.4th 715, 726–27 (9th Cir.
   2024) (R. Nelson, J., concurring).
26  [3] The Court disagrees with Plaintiff's characterization of *Belanger* as "the specific
   example used by the Court in *Kohn* to explain the need to revamp the Ninth Circuit arm of
27  the state test," such that *Belanger* "no longer [has] direct application." Opp'n 17 & n.1.
   The *Kohn* court cites *Belanger* for the factors of the *Mitchell* test and to demonstrate the
28  application of those factors, but does not touch on *Belanger's* underlying findings or
   holding. *See Kohn*, 87 F.4th at 1027–29.

1  statewide rather than local or municipal concern; their establishment, regulation and
2  operation are covered by the [state] Constitution and the state Legislature is given
3  comprehensive powers in relation thereto." 47 Cal. 2d 177, 179, 181 (Cal. 1956). In
4  particular, the state legislature created and maintains an extensive education code
5  governing all manner of education in the state. *See generally* Cal. Educ. Code.

6        Based on the above, "California law is well settled that providing public education
7  is a state function." *Belanger*, 963 F.2d at 253. And, more broadly, "[t]he provision of
8  education is one of the most important tasks performed by government: it ranks at the very
9  apex of the function of a State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 848 (1982)
10  (Marshall, J., dissenting) (citing *Ambach v. Norwick*, 441 U.S. 68, 77 (1979)). Moreover,
11  both *Sato* and *Belanger* held that California's delegation of authority and autonomy to
12  districts to meet local needs "does not change the fact that the school districts remain state
13  agents subject to state control." *Belanger*, 963 F.2d at 253; *Sato*, 861 F.3d at 933.

14        Lastly, to assess whether an entity is treated as a state agency for other purposes of
15  state law, the *Kohn* court examined state statues governing whether the entity can sue or be
16  sued, is subject to open meeting laws, and receives tax exemptions for property. 87 F.4th
17  at 1034. Applying similar inquiries here, a California school district can sue and be sued,
18  and can hold property, both of which weigh against immunity. *See* Cal. Educ. Code §
19  35162. However, the California Supreme Court "determined that local public school
20  entities hold property for the benefit of the state." *Sato*, 861 F.3d at 934 (citing *Hall*, 47
21  Cal. 2d at 181). Property held by and used exclusively for public schools is exempt from
22  state taxes. Cal. Const. art. XIII, § 3(d); Cal. Rev. & Tax. Code § 202(a)(3). Meetings and
23  minutes of the governing board of a school district also must generally be open to the
24  public, in accordance with various sections of the California Government Code. *See* Cal.
25  Educ. Code §§ 35145, 35147.

26        Taken as a whole, the first factor of intent weighs in favor of immunity for
27  California public school districts.

28        Plaintiff's argument to the contrary relies on an activity-based theory, which was

United States District Court
Northern District of California

7

1   rejected by the *Kohn* majority and focuses on one specific role or function an entity plays.

2   *See* Opp'n 14–16; *Kohn*, 87 F.4th at 1029, 1031.  In particular, Plaintiff's analysis of the

3   intent factor focuses on the District's "function in employing teachers," and cites only to

4   the non-controlling *Kohn* concurrence and caselaw that does not concern sovereign

5   immunity.  *See* Opp'n 14–16, 18.  But the *Kohn* majority concluded that "an activity-based

6   approach would allow parties to relitigate an entity's immunity simply by articulating the

7   challenged activity at a different level of generality. . . . undermining the very purpose of

8   immunity," which is absolute.  87 F.4th at 1031.  The Court therefore cannot accept the

9   approach advocated by Plaintiff.

10          **2.    Control**

11          "The second factor depends on how members of the governing body of the entity

12   are appointed and removed, as well as whether the state can 'directly supervise and control

13   [the entity's] ongoing operations.'"  *Id.* at 1030.  In their briefs, Plaintiff addresses only the

14   first half of this analysis, and Defendants only the second half.

15          The "directors and officers" of California public school districts include

16   superintendents and county boards of education.  *See id.* at 1035; Cal. Educ. Code §

17   35160.2.  Plaintiff also argues that the District is "governed by a local school board of

18   local elected members from the community," rather than appointed by the state.  Opp'n 16.

19   The Court therefore considers the appointment and removal of superintendents, county

20   boards of education, and governing boards of school districts, which Plaintiff refers to as

21   school boards.

22          The California Constitution outlines how superintendents and county boards are

23   appointed or elected.  Cal. Const. art. IX.  The state legislature must determine the required

24   qualifications of superintendents. Cal. Const. art. IX, § 3.1(a).  Local municipalities and

25   voters determine whether the superintendent is appointed or elected, the superintendent's

26   salary, the creation of any joint county boards of education, the qualifications and terms of

27   county board members, and the election and removal of county board members.  *See* Cal.

28   Const. art. IX, §§ 3, 3.1(b), 3.2, 3.3, 16(a).  For the governing boards of school districts,

California's Education Code specifically prescribes the election, term lengths, and payment of governing board members. *See* Cal. Educ. Code §§ 35100–35107, 35120–35124.

In *Kohn*, the court concluded the California State Bar's "governing structure is housed wholly within the state government" because the "California Supreme Court, the state legislature, and the governor appoint the State Bar's Board of Trustees." 87 F.4th at 1035. Here, although the state is intimately involved in setting the guidelines for appointment and removal of superintendents, county boards, and governing boards, the state's involvement in determining school district leadership does not necessarily rise to the level identified in *Kohn*, where the state itself appointed and removed entity officials.

Nonetheless, the level of supervision and control the state exercises over the operation of school districts points towards the role of school districts as arms of the state. In *Kohn*, the court concluded the state exercises significant control over the functions of the State Bar because the judiciary reviews State Bar rules, decides whether to adopt admissions and disciplinary decisions, and creates standards for disciplinary proceedings. *Id.* Here, the California Constitution instructs the state to select textbooks for schools and provides that the state legislature "may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established." Cal. Const. art. IX, §§ 7.5, 14. Accordingly, the state legislature has developed extensive requirements and guidelines affecting all areas of school district administration, funding, policy, and curriculum. *See generally* Cal. Educ. Code.

In *Sato*, the Ninth Circuit considered whether new statutes "empowering districts to identify local priorities and develop strategies for achieving their goals . . . effectively transferred primary authority over public education from the state to local level." 861 F.3d at 933. The court concluded they did not: "[T]he state still exercises significant control over school districts" by requiring them to address and report on specific and "far-reaching areas of state priority," even if the districts have increased autonomy and discretion in

9

1    doing so.  The parties have not provided any reasons why the court's conclusion in *Sato*

2    does not still apply today.

3        Although a closer call, the Court finds the second factor of control leans in favor of

4    sovereign immunity for California public school districts.

5        **3.    Treasury**

6        The third *Kohn* factor examines "a [s]tate's overall responsibility for funding the

7    entity or paying the entity's debts or judgments, *not* whether the [s]tate would be

8    responsible to pay a judgment *in the particular case at issue.*"  87 F.4th at 1036 (emphasis

9    in original).  This factor, though relevant, is not dispositive and cannot overcome the first

10   two.  *Id.* at 1030, 1037.

11       In *Kohn*, the court considered the entity's "financial relationship to California," the

12   state's control over the entity's ability to raise funds, whether the entity's property was

13   held for government purposes, and whether the entity performs essential government

14   functions such that the state would have to fund the entity in the face of a large judgment

15   the entity could not pay to maintain those functions.  *Id.* at 1036.

16       Plaintiff argues the third factor undermines immunity here because the "vast

17   majority" of the District's funding "comes from local funding sources," and "any financial

18   impacts from liability would be covered predominantly, if not entirely, from local funding

19   sources and not from the state."  Opp'n 16.  Plaintiff also argues that "Basic Aid Districts"

20   largely funded by local property taxes "require a distinct analysis" for sovereign immunity,

21   but provides no support for this contention.  Opp'n 17 n.1.  Plaintiff errs by focusing too

22   narrowly on the financial impact of this particular action, against the counsel of *Kohn.  See*

23   87 F.4th at 1036; *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)

24   ("[W]ith respect to the underlying Eleventh Amendment question, it is the entity's

25   potential legal liability, rather than its ability or inability to require a third party to

26   reimburse it, or to discharge the liability in the first instance, that is relevant.").

27       *Sato* rejected arguments similar to those Plaintiff makes here.  There, the Ninth

28   Circuit concluded that a statute streamlining state funding of public schools and affording

school districts "additional flexibility in their budgets . . . did not eliminate the 'centralized' system of 'strict state control' over local districts' funding." 861 F.3d at 932. The court disagreed with characterizations of the new funding system as allowing school districts to "raise local property tax revenues as much as they want to supplement minimum state support." *Id.* at 930. It further noted "there is nothing unusual about the fact that" school districts "are funded through a combination of local tax revenues and the state's funding contribution." *Id.* at 931. Particularly because the state's funding formula is bound to equal protection considerations under the California Constitution, the *Sato* court concluded that "state and local funds are still 'hopelessly intertwined,' and 'any change in the allocation of property tax revenue has a direct effect on the allocation of state funds.'" *Id.* at 930, 932.

*Sato* held that school districts were arms of the state even under the *Mitchell* test, which emphasized the satisfaction of money judgments as the most important factor in determining immunity. *Id.* at 929, 934. The Court does not find the parties have identified any reason, or significant change in funding formulas, to depart from *Sato*. The third factor therefore supports sovereign immunity.

Based on the three *Kohn* factors, California public school districts are arms of the state entitled to sovereign immunity. Because the District and District officials are immune as a matter of law, Plaintiff's § 1983 claims against the District and individual Defendants in their official capacities are dismissed with prejudice.

**B.    Plaintiff's First Amended Complaint Fails to State a Claim**

In addition to Plaintiff's First and Second Claims for deprivation of procedural and substantive due process under § 1983, Plaintiff's Third Claim alleges discrimination and retaliation based on gender and disability in violation of Title VII, the ADA, and FEHA. Defendants argue none of Plaintiff's causes of action plausibly state a claim. Mot. 10–15, 20–23. The Court agrees. As noted, the Court can only consider allegations in the complaint, not those in Plaintiff's opposition to the motion to dismiss. *Supra* III. Plaintiff's first amended complaint, on its face, lacks sufficient factual allegations to

United States District Court
Northern District of California

1    support its generalized legal conclusions.  The Court highlights examples of the

2    complaint's deficiencies below, and refers Plaintiff to Defendants' briefing for additional

3    consideration.

4         Plaintiff's complaint presents numerous unsupported legal conclusions.  For

5    instance, Plaintiff alleges Defendants "sponsored" the accusation against Plaintiff, FAC ¶¶

6    1, 20, 22–23, 41; conspired against Plaintiff, FAC ¶¶ 1, 53; were motivated by "bias and

7    ill-will," including based on Plaintiff's gender and disability, FAC ¶¶ 19, 95; maintained

8    "informal policies to discriminate against male teachers accused of sexual assault," FAC ¶

9    16; and engaged in a "'false light' media campaign" against Plaintiff, FAC ¶ 25.  Some of

10   these conclusions lack any supporting factual explanation—particularly the allegations of

11   conspiracy and of informal policies against accused male teachers.  Others are pleaded

12   alongside factual allegations that are too vague to support a viable claim.

13        For example, Plaintiff alleges Defendants sponsored the accusation against him by

14   concealing, suppressing, and fabricating evidence, presumably to the District Attorney as

15   part of the criminal investigation.  FAC ¶¶ 21–24, 65(a), 67.  It is unclear if Plaintiff is

16   alleging that the District Attorney requested certain information from Defendants that

17   Defendants did not provide, or that the Defendants had a duty to volunteer certain

18   information for use in the criminal investigation and failed to do so.  Similarly, Plaintiff's

19   allegations that Defendants engaged in a false light media campaign lack clear factual

20   support.  *See* FAC ¶¶ 25–27, 65(b).  Did Embarcadero Media approach Defendants for

21   information?  Did Defendants volunteer Plaintiff's employment record to the media of

22   their own accord?  What balancing test does Plaintiff allege Defendants failed to follow?

23   *See* FAC ¶ 27.

24        This pattern continues in other areas of the complaint.  Plaintiff alleges Defendants

25   retaliated against him for opposing an unlawful employment action, but does not specify

26   the employment action or how he opposed it.  FAC ¶ 83; *see* FAC ¶¶ 43, 72.  Plaintiff

27   alleges Defendants delayed their internal investigation and hid its scope from Plaintiff, but

28   does not allege the length of the delay or whether he asked about the scope of the

investigation or expected notice initiated by Defendants.  FAC ¶ 36.  Plaintiff does not explain how Defendants influenced the CTC investigation, or how Defendant Hickey's attendance at the CTC hearing was an attempt to do so.  FAC ¶¶ 37, 39.  And Plaintiff does not allege how he has "lost the remainder" of his career or been "constructively discharge[d]."  FAC ¶¶ 73, 78, 95.

Moreover, many of Plaintiff's allegations fail to tie back to alleged actions by Defendants.  Despite Plaintiff's general assertion that Defendants conspired against him and sponsored the rape accusation, it is unclear how specific actions taken by Defendant resulted in false charges against him, prolonged a criminal investigation, and led to his solitary confinement as overseen by a separate government entity.  *See* FAC ¶¶ 22, 32, 68, 72.  The complaint also includes allegations against individuals, Ken and Michele Dauber, who are not parties to this action and for claims, Title IX and defamation/false light, that are not alleged.  *See* FAC ¶¶ 17–18, 22, 25–26, 28–30, 34, 43, 52, 65(b), 72.

Based on these deficiencies, Plaintiff's first amended complaint fails to state a claim against Defendants.

## IV.    CONCLUSION

The Court GRANTS Defendants' motion to dismiss.  The First and Second Claims under § 1983 are dismissed with prejudice as to the District and the individual Defendants in their official capacities.  The remainder of the first amended complaint is dismissed with leave to amend.  The Court does not reach the parties' arguments on qualified immunity.

Plaintiff must file an amended complaint, or a statement indicating he does not intend to amend the first amended complaint, by September 30, 2024.  Plaintiff may not add parties or claims without leave of the Court.

**IT IS SO ORDERED.**

Dated:  September 16, 2024

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California