Eugene B. Elliot, State Bar No. 111475
Ethan M. Lowry, State Bar No. 278831
Benjamin I. Oreper, State Bar No. 329480
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990
Email:   eelliot@bfesf.com
         elowry@bfesf.com
         boreper@bfesf.com

Attorneys for Defendants
PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN,
AMANDA BARK, LISA HICKEY and TRENT BAHADURSINGH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER COLOMBO,<br><br>    Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 5:24-cv-00909-NC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS**<br><br><br>**Hon. Nathanael M. Cousins** |

Plaintiff's arguments are presented in the context of responding to two legal questions raised by Defendants' moving papers: First, whether Plaintiff has adequately and plausibly alleged that the individual Defendants deprived Plaintiff of a clearly-established constitutional property or liberty interest; and second, whether a reasonably competent official in the position of the individual Defendants – whom are neither prosecutors nor police officers – could find those interests were not "clearly defined" at the time of the alleged deprivation.

Plaintiff's supplemental briefing presents no arguments to rectify the issue that he cannot adequately allege the deprivation of a clearly-established constitutional property or liberty interest through his contention that Defendants "suppressed" evidence. As a threshold matter, Plaintiff has still not specifically alleged the manner in which the specific conduct of any Defendants constituted such "suppression" or "concealment." However, even if he could do so, Plaintiff's claims would remain deficient because the suppression alleged would not constitute a deprivation under the framework required to state a claim under Section 1983. Plaintiff's argument is based on his contention that certain "evidence" existed – grade reports, teaching schedules, and the "testimony" of teachers employed by the DISTRICT – which he claims would have "exonerated" him in the context of his criminal proceedings, but which was improperly "suppressed" or "concealed" by Defendants in an unspecified manner. Even if this were true, and the mechanism of suppression was alleged with sufficient specificity, the criminal proceeding itself central to Plaintiff's allegations resulted in the criminal charges against him being dropped, rendering the alleged "suppression" immaterial[1]. As a result, Plaintiff cannot allege that any concrete "deprivation" occurred. Further, although on a motion to dismiss the Court is to consider the facts in the light most favorable to Plaintiff, this does not mean that the Court must accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact or legal conclusions couched as facts. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).) Here, Plaintiff's allegations that the "suppressed" evidence would have "exonerated" him or otherwise materially affected the result of any criminal process are just such allegations. Plaintiff readily admits that he was present at Jordan/Greene as a teacher at the time the alleged rape occurred, whether it was 100% of the time, 70% of

---

[1] Plaintiff does not cite, nor have Defendants found, any cases in which a Court even considered the question of whether a rights violation occurs in the evidentiary suppression context where there is no underlying conviction.

1

the time, or 30% of the time (Dkt. 37 at 5:18-19, 14:24-26; Dkt. 43-1 at 3:16-21), and thereby had access to the locker room where the rape allegedly occurred, whether or not he was the accuser's teacher at the time. Accordingly, the allegedly "exculpatory" impact of the supposed documentary evidence is entirely speculative. Similarly, the allegation that Defendants "suppressed exculpatory evidence from the female PE teachers in charge of the girls' locker room" (Dkt. 86 at 8:24-26) is conclusory and implausible. It is not clear how this "evidence," allegedly comprised of testimony by these teachers, was or could have been "suppressed" by Defendants from a law enforcement investigation, and in any event, the assertion that this evidence would have been "exculpatory" is a speculative legal conclusion.

This is borne out in the case law concerning suppression and fabrication of evidence on which Plaintiff relies in support of his claims. The Court in *Mellen* stated that "suppressed evidence is material if the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Mellen v. Winn*, 900 F.3d 1085, 1096-97 (9th Cir. 2018).) *Mellen* involved a Plaintiff convicted of first-degree murder "based largely" on the testimony of a witness 'Patti,' whose sister told a police detective that Patti "was the biggest liar she had ever met in her life and that she did not believe anything Patti says." (*Mellen*, 900 F.3d 1085, 1089 (9th Cir. 2018).) Plaintiff alleged that the detective wrongfully withheld this statement and other information relevant to assessment of Patti's credibility from the jury. (*Id.*) Similarly, in *Tennison*, plaintiffs were convicted and served 13 years in state prison for murder allegedly based on police inspectors' withholding of exculpatory evidence and manufacturing and presentation of perjured testimony. (*Tennison v. City & Cnty. of S.F.*, 570 F.3d 1078, 1081 (9th Cir. 2009).) The Court likewise noted that "the suppression **by the prosecution** of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." (*Id.* at 1088 [emphasis added].) In both cases, the Courts were concerned both with the materiality of the allegedly suppressed evidence, and the analysis of whether a duty to disclose exculpatory evidence extended *not only* to prosecutors, but to police officers as well, finding that it did. (*Mellen,* 900 F.3d at 1096; *Tennison,* 570 F.3d at 1087.) Here, by contrast, Plaintiff was never convicted, rendering any alleged suppression immaterial, even absent the fact that Plaintiff's assertions of the "exculpatory" nature of the evidence are entirely conclusory and facially implausible.

Even if Plaintiff had, or could have, adequately and specifically alleged that Defendants "suppressed"

2

or "concealed" evidence, and that such suppression or concealment caused a material deprivation of his rights, he cannot defeat qualified immunity because it is not "beyond debate" that a reasonably competent official in the circumstances faced by Defendants would have understood the alleged conduct to be violative of Plaintiff's clearly established constitutional rights.

These issues have been subject to extensive prior briefing by both parties. The only facially novel point made in Plaintiff's supplemental briefing is his argument that, in the context of assessing whether Defendants deprived Plaintiff of a property or liberty interest through alleged "suppression" of evidence, the individual Defendants are properly viewed as "investigating officers" rather than school district officials. This is a problematic conception for several reasons.

First, Plaintiff's proposed reading of the law - that non-law-enforcement public officials, when allegedly engaged in conduct related to a criminal investigation or prosecution, themselves become "investigating officers or officials" under the law in cooperating with the investigation – is unsupported by any authority. Plaintiff does not address the significant material distinction between officials tasked with responding to or cooperating with a criminal investigation or proceeding, as opposed to those officials tasked with *conducting* the proceeding. He further provides no authority for the proposition that a public official charged with responding to requests for information from law enforcement subject to an ongoing criminal investigation has ever been considered officially "part" of the investigation in an official capacity sufficient to render them an agent of the prosecution. Such a reading would support imposing liability on any and all public officials involved in any capacity with a criminal proceeding when their conduct falls short of the clearly-established constitutional obligations imputed to prosecutors and police officers – an overreach not supported by existing qualified immunity authority and contrary to the purpose thereof to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." (*Butz v. Economou*, 438 U.S. 478, 506 (1978).) The Complaint neither alleges facts sufficient to support an inference that Defendants themselves acted in the capacity of agents of law enforcement, nor can Plaintiff plausibly, in good faith, allege such facts. Additionally, Plaintiff's allegations of suppression, to the extent they are taken to mean that Defendants allegedly withheld or concealed evidence *from* law enforcement, undermine and render implausible his alleged conception of Defendants themselves acting as *agents* of law enforcement.

3

DEFENDANTS' OPPOSITION TO SUPPLEMENTAL BRIEFING
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

Second, Plaintiff's cited authorities do not support the scope of his conclusions. Plaintiff advocates a "functional approach" to the analysis of Defendants' roles and cites *Forrester*, which he quotes as holding that the Court should "examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted." (*Forrester*, 484 U.S. 219, 224 (1988).) Applying this analysis, however, does not support a finding that the "class" of school district officials has been entrusted with functions of a nature analogous to that of prosecutors or police officers simply because the conduct at issue occurs in the context of a district employee being subject to law enforcement investigation or criminal prosecution requiring the district's cooperation under the law. Indeed, this is the precise argument Defendants have raised in their moving papers – a district official of reasonable competence could find that their evidentiary obligations in the context of a criminal investigation of a district employee were not analogous to those of the prosecutors and law enforcement officers directly engaged in the criminal investigation and prosecution. Indeed, under Plaintiff's proposed reading of the framework wherein the Court is to analyze "the nature of the function performed, not the identity of the actor who performed it," the nature of the district officials' function in cooperating with law enforcement is not analogous to the nature of the law enforcement officials' function in conducting the criminal investigation and prosecution. Further, a contrary reading of the law would render the second prong of the qualified immunity inquiry - "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted" - a nullity, by substituting consideration of a reasonable official in Defendants' position with one whose function is dictated by the nature of the circumstances alleged. Put another way, the stated purpose of qualified immunity is to assess whether a reasonably competent person in the same position as the Defendant - here, a school district employee - and faced with the same situation would understand Defendants' conduct to be unlawful, rather than whether an official whose express function is to face such a situation - e.g., a prosecutor - would.

Additionally, although it is true that the Court "need not identify an identical prior action" in order to conclude whether a right was "clearly established" at the time of its alleged violation, it is Plaintiff's burden to show that the right was "clearly established." (*Davis v. Scherer*, 468 U.S. 183, 197 (1984).) To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." (*White v. Pauly*, 137 S. Ct. 548, 551 (2017).) "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." (*Tuuamalemalo v.*

4

*Greene*, 946 F.3d 471, 477 (9th Cir. 2019).) Here, even the relatively recent *Mellen* (2019) and *Tennison* (2009) cases grappled with the issue of whether the same obligations concerning evidentiary suppression which were held to be clearly-established with regard to *prosecutors* could be likewise held to be clearly established with regard to police officers. This alone establishes that the question of whether analogous obligations apply to school district officials is not "beyond debate."

Plaintiff also cites *Grossman v. City of Portland* in support of his contention that the "[e]xistence of an applicable statute or ordinance is relevant in determining whether the law prohibiting the specific violation of a constitutional right is well-established for purposes of a qualified immunity analysis." (Dkt. 97-1 at 3:27-4:1.) However, that is not the holding of *Grossman*, which found only that "an officer who acts in reliance on a duly-enacted ordinance is ordinarily entitled to qualified immunity;" and that "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity." (*Grossman*, 33 F.3d 1200, 1209.) The specific context of *Grossman* was whether a police officer was ordinarily entitled to rely on the assumption that, in enacting a municipal ordinance, the city council members "concluded that the ordinance is a valid and constitutional exercise of authority." (*Id.*) What *Grossman* does not stand for, however, is the proposition that Plaintiff may premise a claim under Section 1983 on alleged violations of state or federal penal statutes rather than a showing of Plaintiff's having been deprived of a constitutional right. Plaintiff further cannot premise his 1983 claims on a violation of the California penal code because it does not enumerate a constitutional right nor provides the basis for a 1983 claim, nor can Plaintiff base his claim on the cited section of the United States Code, as Plaintiff was not subject to a Federal criminal proceeding. In any event, as discussed, the Complaint is bereft of sufficient, specific, and facially plausible facts regarding any alleged "suppression" or "concealment" of evidence in violation of the statutes cited by Plaintiff. Even if he had done so, however, the operative question for the Court's qualified immunity inquiry is whether such suppression would have been understood by a reasonably competent school district official to have *deprived Plaintiff* of a property or liberty interest to which he had a clearly established constitutional right – not whether the conduct could have constituted a misdemeanor under state law.

Dated:  November 18, 2024

BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
By: /s/Benjamin Oreper
    Benjamin I. Oreper
    Attorneys for Defendants

5

DEFENDANTS' OPPOSITION TO SUPPLEMENTAL BRIEFING
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC