```
1                UNITED STATES DISTRICT COURT
2               NORTHERN DISTRICT OF CALIFORNIA
3    Before The Honorable Nathanael M. Cousins, Magistrate Judge
4
5  PETER COLOMBO,                  )
                                   )
6          Plaintiff,              )
                                   )
7  vs.                             ) No. C 24-00909-NC
                                   )
8  PALO ALTO UNIFIED SCHOOL        )
   DISTRICT, et al.,               )
9                                  )
           Defendants.             )
10 _____)
11                                  San Jose, California
                                    Wednesday, October 30, 2024
12
13          TRANSCRIPT OF THE OFFICIAL ELECTRONIC
         SOUND RECORDING   11:37 - 11:56 = 19 MINUTES
14
15 APPEARANCES:
16 For Plaintiff:
                               Law Office of Jonathan
17                               McDougall
                               1640 Laurel Street
18                             San Carlos, California 94070
                          BY:  EVAN C. NELSON, ESQ.
19 For Defendants:
                               Bertrand, Fox, Elliot, Osman &
20                               Wenzel
                               2749 Hyde Street
21                             San Francisco, California
                                 94109
22                        BY:  ETHANLUKE M. LOWRY, ESQ.
23 Transcribed by:         Echo Reporting, Inc.
                           Contracted Court Reporter/
24                         Transcriber
                           echoreporting@yahoo.com
25
```

```
                                                                2
 1  Wednesday, October 30, 2024                         11:37 a.m.
 2                    P-R-O-C-E-E-D-I-N-G-S
 3                          --oOo--
 4          THE CLERK:  Calling Civil 24-0909, Colombo versus
 5  Palo Alto Unified School District.
 6      Counsel, please state your appearances for the record.
 7          MR. NELSON:  Good morning, your Honor.  Evan
 8  Nelson on behalf of Plaintiff.
 9          THE COURT:  Good morning.
10          MR. LOWRY:  Good morning, your Honor.  Ethan Lowry
11  on behalf of Defendants.
12          THE COURT:  Good morning.  Welcome, both.
13      All right.  We're here to talk about case management.
14  Thank you for your update.  I think, in the big picture,
15  scheduling issues, your settlement conference got postponed,
16  unfortunately.  Judge Van Keulen is in trial.  They're doing
17  closing arguments next door right now.
18      Have you had occasion to get that rescheduled yet?  Are
19  you in the process of working on that?
20          MR. LOWRY:  It appears that, as of this morning,
21  we have a date that works for us and the judge.  So that
22  will be, hopefully, February 26, 2025.
23          THE COURT:  February 20th (sic).  All right.  And
24  have you already communicated that, or you're going to
25  communicate that back to her deputy?
```

1          MR. LOWRY:  I've asked my associate to send her
2 that e-mail today.
3          THE COURT:  So, in process.  All right.  Thank you
4 for having collaborated on that, and I'll -- I'm sure that
5 that -- that communication will continue, but I'll check
6 with her to make sure it gets placed on the calendar.
7      We've got a November 13th hearing on a pending motion
8 to dismiss.  That's good with me.  Still good with you, as
9 far as your schedules go?
10         MR. NELSON:  Yes, your Honor.
11         MR. LOWRY:  Yes, your Honor.
12         THE COURT:  All right.  So that's the next thing
13 in the case, and then you've given me an update as to your
14 discovery topics and scheduling, with a numbers of, I'd say,
15 open-ended questions there about when things might occur in
16 the future.
17     Has there been any further conferring?  And what I'm
18 leading up to is to see how I can help you with any disputes
19 on scheduling, and if there aren't any, then I'll get out of
20 your way, but, if there's things I can help you with, that's
21 my objective, to help you.
22         MR. NELSON:  I think we were just discussing,
23 actually, while we were waiting in here, and I think we can
24 work most of it out.  Part of it is, you know, my saying,
25 you know, I need responses to the discovery requests.  Just

4

1 saying you gave me stuff in initial disclosures doesn't give
2 me what I need, because I need to know I have everything.
3 So we've discussed that, and we're working out how that
4 might work.  As far as the other parts of it, scheduling
5 depositions, I think we just -- we need to get dates.
6         MR. LOWRY:  Yes.  I guess -- so, as far as
7 scheduling the depositions goes, you know, in our mind,
8 it's -- we still believe it's premature to be scheduling
9 depositions of individual Defendants before the pleadings
10 are settled.
11     We would prefer to hold off on that, given that we have
12 produced at this point, I believe, approximately 1,100 pages
13 of documents, and then, obviously, if counsel would like us
14 to clarify, you know, in discovery responses, whether we
15 have produced everything in response to a given request or,
16 alternately, provide a privilege log to the extent that
17 anything has been produced, we're happy to do that, but,
18 given that the pleadings aren't settled, it would still seem
19 premature to be having depositions of all these individual
20 Defendants who we don't know if they're going to even remain
21 in the case, or what the ultimate claims are going to be
22 that move forward.
23         THE COURT:  All right.  Mr. Nelson, your thoughts
24 on that?  I don't know -- I don't want to interrupt where
25 you already were in your conversations about it, but we're

5

1  here.
2         MR. NELSON:  Well, just --
3         THE COURT:  Mr. Nelson, go ahead.
4         MR. NELSON:  -- real quickly, with regard to the
5  1,100 pages, 222 pages are Plaintiff's employment file,
6  which we already had.  Another couple hundred -- actually,
7  it's almost 400 pages -- are useless handbooks and other
8  things that we never asked for.  So the actual amount of
9  real documents that are pertinent to the case is about 300
10 pages, maybe 400 pages, and that's mostly communications.
11     There was something wrong -- I didn't have any record
12 of having received any of those communications.  Last week I
13 sent an e-mail and asked Mr. Oreper to give me a link with
14 everything they say they've given in initial disclosures,
15 which he did, and then I -- so I do have some communications
16 now.  The problems with that are, we had requested those
17 communications in public records requests over a year ago,
18 and didn't receive any of those.
19     So there is an issue there.  I just want the Court to
20 know.  I'm not trying to circumvent your authority, but we
21 do have rights under the PRA to file in state court and
22 pursue remedies, and we intend to do that.  So, you know,
23 we'll seek those records through the PRA request, but also
24 here through discovery.
25         THE COURT:  Well, there's a real -- you filed a

6

1  joint statement, and the objective of a joint statement is,
2  hopefully, you're communicating with each other.  There are
3  some discrepancies in what you report as to what's occurred,
4  Mr. Nelson.  On page four, you say there's only been one
5  document produced.
6              MR. NELSON:  In response to discovery, correct.
7              THE COURT:  All right.
8              MR. NELSON:  There's only one document, and that
9  was an almost completely redacted student record of the
10 accuser, which we had the protective order so that it didn't
11 have to be heavily redacted, but it is completely redacted.
12 I mean, there's very little in there that was given to us.
13             THE COURT:  And the defense, they list a number of
14 things which they have provided, and maybe your point is
15 that it's not in response to a document request, it's in
16 response to a PRA or it's voluntary production, but they
17 provide other documents than just that, as far as things
18 that have been provided?
19             MR. NELSON:  Correct.  And that's what I'm saying,
20 is the bulk of what they provided were things like
21 handbooks, a 120-page Greenville School Life (phonetic)
22 handbook.  Okay.  You know, that doesn't really advance
23 anything.  So, again, we need discovery responses, so that
24 we know what the documents pertain to and that we have all
25 the documents reasonably obtainable that are responsive to

1 those document requests.
2          THE COURT:  All right.  I'm not ignoring the fact
3 we've had some discovery disputes, I think a number of them
4 that have been presented, and I've ruled upon them.  So I
5 know that there's been activity between the parties, from
6 the case file.
7          MR. NELSON:  And coming back to the deposition
8 part of it, the district has claimed attorney-client
9 privilege and attorney work product protection, and has not
10 agreed to waive any of that.  So, with that in mind, the
11 depositions of the individuals can certainly go forward.  If
12 the district does not waive attorney-client privilege, then
13 they don't get to talk about it.  So they won't get to have
14 that defense of potential advice of counsel or those kinds
15 of things.  That's something they have to work out.  I'm
16 happy to go forward with the depositions as is, and we just
17 won't go into what was said by the attorneys and to the
18 attorneys, knowing that they, of course, won't get that
19 advice of counsel defense.  If they want the advice of
20 counsel defense, they'll have to have that sorted.  That's
21 on them, not on me.
22          THE COURT:  All right.  I'm going to come back to
23 the depositions now.  Nicole Miller (phonetic) is the one
24 that you've had the most advanced conversations about.
25 We've had prior conversations about it, and, according to

1  your joint statement, she's available November 15th or 18th.
2  So, if you --
3           MR. NELSON:  The problem with that, your Honor,
4  is, again, they've asserted attorney-client privilege over
5  everything she has to say and all her documents.  So they've
6  produced no documents, and they say that they have capacity
7  for everything she has to say.  So what's the point of
8  taking a deposition?  So, again, I will let them be hung by
9  their own petard.
10          THE COURT:  Well, no.  Hold on.  An assertion of
11 privilege has to be made in response to a question, and I
12 believe we've discussed this before, and I granted you
13 permission to take the deposition, finding that there's
14 relevant testimony that she has, based on the claims in the
15 case, even in the current state, and if there's a privilege
16 assertion to be made, it has to be made in response to a
17 question, not just in the abstract, and not all of what a
18 person knows is automatically privileged just based on who
19 they are.  But what I'm hearing you say is you don't want to
20 take the deposition?
21          MR. NELSON:  Well, not if they're saying that
22 everything she has to say is covered by attorney-client
23 privilege.  Then I'd just waste a bunch of time and money,
24 and I find out her name, and they shut me down on everything
25 else, so there's no point there.  But, again, they're stuck

```
 1  with that.  If they're going to assert attorney-client
 2  privilege, they can't mention this investigation, or her
 3  findings, or anything else.  So, again, that's on them.
 4  That's a later issue.
 5              THE COURT:  No, that's a later issue.
 6              MR. NELSON:  I agree.
 7              THE COURT:  Being stuck with it is a later issue.
 8  I'm trying to figure out, is this deposition going to take
 9  place or not?
10              MR. NELSON:  Well, it's not going to take place on
11  the 15th or 18th, because that wasn't a date that we
12  selected, and that was not -- again, after that date was put
13  out there, and we got the third subpoena served on her,
14  that's when they said -- they've given us no documents, and
15  to this point, some of the documents that we requested --
16  and we requested them in advance of the deposition -- some
17  of the documents were copies from her website, things of
18  that nature.  But they asserted attorney-client privilege or
19  attorney work product to everything, so they've given us
20  none of the documents, and they're saying they're not
21  producing any of the documents, and that she is not allowed
22  to discuss anything related to the investigation.  So, if
23  that is their assertion, what's the point of taking her
24  deposition?
25              THE COURT:  All right.  For her benefit, I think
```

1  most to know, the deposition is not happening on November 15
2  through 18?  You're not --
3           MR. NELSON:  They've never --
4           THE COURT:  Yes.
5           MR. NELSON:  It never got re-noticed.
6           THE COURT:  All right.
7           MR. NELSON:  Again, that wasn't a date -- we
8  didn't select that date, and in light of what Defendants are
9  asserting, that would be a meaningless waste of resources.
10          THE COURT:  All right.  Let me get the defense
11 views as to the Miller deposition and what, if anything,
12 you'd like me to order.
13          MR. LOWRY:  I don't believe anything needs to be
14 ordered at this time, your Honor.  There's nothing going
15 forward at the moment.  I think that sort of the concerns
16 that counsel is raising kind of highlight why it makes sense
17 to wait until the pleadings are settled before we proceed
18 with depositions, so that everyone knows what the claims are
19 going to be moving forward, if any, so that a maybe more
20 robust analysis as to any, you know, attorney-client
21 privilege or waiver thereof, and to what extent any advice
22 of counsel defense is going to be raised.
23          THE COURT:  All right.  I'm not trying to put
24 words in your mouth, but here's my observation as to the
25 next couple of weeks.  It's not too long until the November

1  13th hearing, and you'll undoubtedly want my ruling on the
2  hearing, not just to have the hearing.  You haven't come
3  to agreement to take these depositions.  I'm talking
4  about the Bark, Hickey, the Bahadursingh, and Miller
5  depositions.
6      You haven't agreed to take them in the next couple
7  weeks, and I think, given where you're at in the case, it
8  doesn't make sense to -- for me to order you to take them on
9  short notice before ruling on the motion to dismiss.  So
10 I -- for an efficiency point of view, Mr. Nelson, as you
11 pointed out, until some of these issues get resolved,
12 privilege issues, the pleadings, it would be an inefficient
13 use of your time, and the witnesses' time, to take them,
14 until you have that ruling.
15      So I'm not precluding Plaintiff from taking discovery.
16 I'm not saying you can't take discovery.  You're engaged in
17 discovery.  You have received some information, and you're
18 still in process with more.  But I'm not going to compel
19 these depositions, and I agree with the defense and with the
20 Plaintiff that it would be inefficient to schedule them
21 before you have a ruling on the motion to dismiss that's
22 pending.
23          MR. NELSON:  And I -- Plaintiff agrees with that,
24 because --
25          THE COURT:  Yes.

1         MR. NELSON:  -- especially if we're going to get
2  into attorney-client privilege-type issues.
3         THE COURT:  Yes.
4         MR. NELSON:  If those are going to be reviewed or
5  appealed at some point, we don't want them to be
6  contaminated by procedural stuff, right?
7         THE COURT:  Yes.  All right.  And the other -- so
8  that's our common expectation as to those.  I'm not ordering
9  them now, and I've also not precluded discovery.  I'm not
10 saying there can't be discovery.
11      Another procedural issue raised in the submission is
12 the deadline to add parties in pleadings.  I'm not going to
13 set a deadline before I've ruled on the pending motion to
14 dismiss.  That will guide me as to whether further amendment
15 is appropriate, and when.  So, if further amendment is
16 allowed, I'll set a deadline after that for you to have the
17 feedback from me before making any further decisions.
18        MR. NELSON:  And on that point, your Honor, the
19 communications I did get last week suggest that the former
20 in-house counsel, Komey Vishakan, may need to be added as a
21 Defendant.
22        THE COURT:  What was the name, again?
23        MR. NELSON:  Komey, K-O-M-E-Y, Vishakan,
24 V-I-S-H-A-K-A-N, and it "Komey" is shortened for the full
25 first name.

1          THE COURT:  Okay.  Thank you.  I just didn't hear
2  what you said, so, thank you.
3      All right.  Okay.  I'm not ruling on that, but, as far
4  as a deadline goes, I'm not going to set one that doesn't
5  give you time to react to whatever my ruling is.
6          MR. NELSON:  Yes.  And I guess, with the
7  attorney-client privilege stuff as well, that may implicate
8  Dubarry Willis (phonetic) as well, and that's something that
9  we won't be able to know until a little bit later, but --
10         THE COURT:  All right.  That hits the topics on my
11 agenda.  I could, theoretically, be setting a trial date,
12 setting more dates.  I've got plenty of trial dates
13 available.  I'm not going to set them, given where we are on
14 the case, and given that you've got an extended time now
15 until your settlement conference.  So I'm obviously not
16 going to set trial dates faster than that.  So we will set
17 one, but I think our next hearing and that ruling will be
18 significant in figuring out what's to come.
19     Anything else I can help you with on the defense side?
20         MR. LOWRY:  I don't believe so, your Honor.
21         THE COURT:  Thank you.
22         Mr. Nelson, on the Plaintiff's side?
23         MR. LOWRY:  Sorry, your Honor.  One thing.
24         THE COURT:  That's all right. Friendly minute.
25 Go ahead.

1            MR. LOWRY:  One thing.  On the settlement
2 conference, we would just like to have excused from that all
3 of the individual Defendants.  We'll certainly have a
4 district representative there, and, you know, the persons
5 with settlement authority, but, as far as bringing in all of
6 the individuals, I don't know that that's going to assist in
7 resolving the case, and may greatly complicate scheduling as
8 well.
9            THE COURT:  Well, that -- yes.  I have two
10 reactions to that.  One is that that's an issue to discuss
11 with Judge Van Keulen.  She may already -- she might have
12 already engaged with you on that -- I have no idea -- about
13 who should be there, and what format the conference is going
14 to be under, whether it's in person or Zoom, totally up to
15 her discretion, and Plaintiff may have input on that, and
16 I'm not saying he has to have input on it right now, but
17 sometimes a plaintiff and plaintiff's counsel have a view as
18 to whether individual defendants would be necessary and
19 helpful to the conference, or might even be
20 counterproductive.
21     So it's something I want you to discuss with each other
22 before confirming the schedule.  So I'll punt that to Judge
23 Van Keulen.  I understand the request, but she may have a
24 preference to have some of them there or all of them there.
25 It will be up to her.

15

1        MR. NELSON:  And that does remind me.  So --
2        THE COURT:  And the same will be true on
3 Plaintiff's side.
4        MR. NELSON:  Right.  And so one of the things we
5 requested is the insurance policies that may be available to
6 pay all or part, and I was very confused that they mentioned
7 something about -- and I can't remember what it was exactly
8 called, but, for the settlement conferences, they had
9 specifically identified a Keenan representative, and that's
10 inconsistent with the policy.
11       MR. LOWRY:  Let me explain.
12       MR. NELSON:  Okay.
13       MR. LOWRY:  We can produce the memorandum of
14 coverage that exists.  We're a public school district member
15 of a JPA, so there is no insurance.  It's JPA full coverage.
16 So we can produce the memorandum of coverage that exists.
17 Keenan is the third-party claims administrator for the pool.
18       MR. NELSON:  Okay.
19       THE COURT:  That answer your question?
20       MR. NELSON:  It does.
21       THE COURT:  Well, great.  Then we accomplished
22 something, then.
23       MR. NELSON:  It is confusing.
24       THE COURT:  Yes.
25       MR. NELSON:  And my wife is a former chief

16

1  personnel officer at a big school district over in the East
2  Bay, so, you know, she's confused by some of this as well.
3          MR. LOWRY:  And I will say most plaintiff's
4  attorneys, when they're dealing with school districts or
5  public entities, are not as familiar with the JPA setup
6  versus the insurance setup, so, understandable.
7          THE COURT:  All right.  We're moving ahead.  All
8  right.  I'm glad you clarified that, and that's helpful
9  information to share in advance of the settlement process,
10 to make sure that there's authority to resolve things.
11     All right.  Mr. Nelson, anything else on your side I
12 could help you with today?
13         MR. NELSON:  I don't think so.
14         THE COURT:  All right.  Then we will -- there's
15 not much on the schedule that this applies to, but the
16 current schedule remains in place, and I'll communicate with
17 Judge Van Keulen to make sure that the conference gets
18 scheduled, and we'll see you on November 13th for the
19 hearing on the motion to dismiss.  Thanks very much.  Have a
20 good day.
21         MR. NELSON:  Thank you, your Honor.
22         MR. LOWRY:  Thank you, your Honor.
23     (Proceedings adjourned at 11:56 a.m.)
24
25

17

1      CERTIFICATE OF TRANSCRIBER

2

3      I certify that the foregoing is a true and correct
4 transcript, to the best of my ability, of the above pages of
5 the official electronic sound recording provided to me by
6 the U.S. District Court, Northern District of California, of
7 the proceedings taken on the date and time previously stated
8 in the above matter.
9      I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.



16          Echo Reporting, Inc., Transcriber
17              Monday, November 25, 2024