1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10   PETER COLOMBO,                          Case No. 24-cv-00909-NC

11                    Plaintiff,
                                             **ORDER GRANTING IN PART AND**
12          v.                               **DENYING IN PART DEFENDANTS'**
                                             **MOTION TO DISMISS THE THIRD**
13   PALO ALTO UNIFIED SCHOOL                **AMENDED COMPLAINT;**
     DISTRICT, et al.,                       **DENYING MOTION TO STRIKE**
14
                     Defendants.             Re: Dkt. Nos. 114, 116, 118
15

16          Plaintiff Peter Colombo alleges Defendants Palo Alto Unified School District and

17   four District officials violated his due process rights and discriminated and retaliated

18   against him following an allegation that Plaintiff raped a middle school student.

19   Defendants move to dismiss the third amended complaint, arguing Plaintiff fails to state a

20   claim for violations of his procedural and substantive due process rights pursuant to 42

21   U.S.C. § 1983 and for discrimination under Title VII, California's Fair Employment and

22   Housing Act (FEHA), and Title IX.  Defendants also argue they are entitled to qualified

23   immunity as to the § 1983 due process claim and move to strike Plaintiff's new allegations

24   of retaliation under Title VII, FEHA, and Title IX.

25          For the reasons below, the Court GRANTS IN PART and DENIES IN PART the

26   motion to dismiss and DENIES the motion to strike.  Because Plaintiff was previously

27   granted leave to amend, any dismissal of claims is without leave to amend.  *Miller v.*

28   *Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004).

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.    BACKGROUND

The Court provides a brief summary of the facts alleged, which are taken as true for the purposes of this motion.  Plaintiff is a white male and a tenured, certificated physical education teacher and coach who has worked at the District for 27 years.  ECF 113 (TAC) ¶¶ 7, 105, 131.  At all relevant times, Defendant Don Austin has worked for the District as Superintendent, Lisa Hickey as Director of Certificated Human Resources, Amanda Bark as Manager, Policy and Legal Compliance, and Trent Bahadursingh as Chief of Staff and Deputy Superintendent of Human Resources.  TAC ¶¶ 9–12.

In January 2022, a former student of Jordan Middle School (now Greene Middle School) accused Plaintiff of raping her during the 2001-2002 school year.  TAC ¶¶ 1, 35–36.  As a result, the District placed Plaintiff on administrative leave.  TAC ¶ 35.  A criminal investigation and charges ensued, which were eventually dropped.  *See* TAC ¶¶ 44, 55, 62, 74, 126.  Defendants also conducted an internal investigation of the allegations against Plaintiff with the assistance of an independent investigator.  TAC ¶¶ 2, 63, 65, 216.

Defendants concluded their investigation by providing a one-sentence letter on May 28, 2024, stating, "The Investigator determined that the allegation was not substantiated due to a lack of evidence, including but not limited to, the absence of a direct statement from the alleged victim to support the claim."  TAC ¶ 173.  Plaintiff returned from administrative leave on July 30, 2024, after "more than 2.5 years."  TAC ¶¶ 105, 126, 227.  Upon his return, Defendants placed Plaintiff into a non-teaching position with daily tasks that do not use his teaching credential or experience.  TAC ¶¶ 105, 158.

Plaintiff filed an initial complaint on February 15, 2024.  ECF 1.  The Court granted a motion to dismiss the first amended complaint and granted in part and denied in part a motion to dismiss the second amended complaint.  ECF 68, 110.  Plaintiff filed a third amended complaint.  TAC.  Defendants filed a motion to dismiss the third amended complaint.  ECF 114 (Mot.)  Plaintiff opposed, ECF 116 (Opp'n), and Defendants replied, ECF 118 (Reply).  Plaintiff moved for leave to file a supplemental brief in opposition to

the motion to dismiss, which the Court denied.  ECF 120, 124.  All parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  ECF 7, 11, 59.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).  A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.    DISCUSSION

Plaintiff brings four claims in the third amended complaint.  His First Claim alleges each individual Defendant, in their individual capacities, deprived Plaintiff of procedural and substantive due process in violation of 42 U.S.C. § 1983.  Plaintiff's Second, Third, and Fourth Claims each allege the District discriminated and retaliated against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; FEHA, Cal. Gov. Code § 12900 *et seq.*; and Title IX, 20 U.S.C. § 1681 *et seq.*, respectively.  Defendants move to dismiss the due process and discrimination claims without leave to amend, and to strike new allegations of retaliation added to the third amended complaint.

The Court concludes Plaintiff states a claim for procedural due process, but not

United States District Court
Northern District of California

substantive due process.  Plaintiff fails to state a claim for discrimination under Title VII, FEHA, or Title IX.  The Court declines to assess the parties' arguments as to qualified immunity at the motion to dismiss stage and declines to strike Plaintiff's amended allegations of retaliation.

### A.    Plaintiff States a Claim for a Violation of Procedural Due Process under 42 U.S.C. § 1983 (First Claim)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  An individual is liable under § 1983 not only for "direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit federal and state governments from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amends. V, XIV.  To state a substantive due process claim, a plaintiff must establish "a government deprivation of life, liberty, or property" that "'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998).  To state a procedural due process claim, a plaintiff must establish "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  Unlike liberty interests, property interests are not created by the Constitution.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  They are instead defined by "an independent source such as state law" that creates a claim of entitlement to a benefit.  *Id.*

As before, Plaintiff throws a slew of alleged due process rights at the wall, but this time some stick.  Although Plaintiff does not plausibly allege a due process right to evidence, he does plausibly allege a property interest in an employment position of the

4

same nature as his tenured teaching role and a liberty interest based on a stigma-plus theory.  He likewise plausibly alleges he was deprived of these protected interests without due process.  Plaintiff therefore states a procedural due process claim on two bases.

### 1.    Plaintiff does not Plausibly Allege a Due Process Right to Evidence

Plaintiff renews his allegations that he was deprived of due process based on his right to evidence.  Plaintiff alleges Defendants "concealed material evidence exclusively within the District's possession and control" in both the criminal and internal investigations, which prevented him from proving his innocence and clearing his name, and which would have prevented his arrest and confinement in jail if disclosed.  TAC ¶¶ 56, 59, 80, 95.  Plaintiff offers many bases to support his alleged right to evidence, none of which carry weight.

In the Court's order dismissing in part Plaintiff's second amended complaint, it observed "[t]here are well-established constitutional due process rights against false or suppressed evidence in *criminal* investigations and hearings," but "Plaintiff has failed to identify, and the Court is not aware of, any case applying these same constitutional rights to the investigatory actions of school district officials."  ECF 110 at 5–6 (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) and *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  The same remains true; Plaintiff again alleges Defendants are subject to the same obligations as prosecutors in criminal proceedings to affirmatively disclose favorable evidence to the accused because Defendants are state officers, but only cites to criminal caselaw in support.  *See* TAC ¶¶ 57–58, 71.

To avoid the Court's prior finding that such obligations do not apply to investigatory actions by school district officials, Plaintiff alleges the criminal investigation led by the Palo Alto Police Department was a "joint District/PAPD Investigation."  TAC ¶¶ 62, 64.  In support, he alleges that Bahadursingh stated Defendants and PAPD worked collaboratively and as partners, and that PAPD asked Defendants for certain information and evidence.  TAC ¶¶ 62, 64.  The Court does not find these facts sufficient to support Plaintiff's allegations that Defendants acted as investigators for PAPD and thus are subject

to affirmative criminal evidence obligations.  Moreover, *Brady's* requirement that the government disclose exculpatory evidence to the accused applies to *prosecutors*.  *See Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995) (citing *Brady*, 373 U.S. at 87).  So, even if Defendants acted on the government's behalf in the criminal investigation, the responsibility for any *Brady* violations would rest with the prosecutor, not the individual District employees in their individual capacities.  *See id.* ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation . . . the prosecution's responsibility . . . is inescapable.").

Moreover, even if *Brady* and similar evidentiary disclosure obligations applied to Defendants, Plaintiff does not adequately allege any nondisclosure or delayed disclosure of evidence by Defendants to Plaintiff, PAPD, or the district attorney was material.  *See* TAC ¶ 94.  "[S]uppression of evidence amounts to a constitutional violation . . . only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."  *U.S. v. Bagley*, 473 U.S. 667, 678 (1985).  Stated another way, suppressed evidence, collectively, is material only where "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Strickler v. Greene*, 527 U.S. 263, 281 (1999).  Although Plaintiff alleges Defendants' suppression of evidence would have prevented his arrest and jail time, he does not allege any suppression would have resulted in a different outcome in either his criminal proceeding or the District's investigation.  *See* TAC ¶ 95.  In fact, Plaintiff alleges "the criminal charges were dropped" and the internal investigation concluded without any findings of misconduct by Plaintiff.  TAC ¶¶ 55, 118.  Delayed disclosures of evidence are also not material where the evidence is disclosed and turned over to a defendant for use in a trial "when disclosure was still of substantial value to the accused."  *U.S. v. Bates*, 147 F. App'x 693, 696 (9th Cir. 2005); *U.S. v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996); *U.S. v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988); TAC ¶¶ 67, 69 (alleging Defendants waited to collect exculpatory evidence until several weeks after Plaintiff's arrest).

Plaintiff also fails to premise a due process right to evidence on Defendants' alleged duty to investigate and gather evidence about the claims against him, including by seeking out specific evidence like the accuser's sixth grade student file or interviewing other teachers. *See* TAC ¶¶ 68, 75–76, 80, 88, 90, 93; *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way . . ."); *Davis v. Folsom Cordova Unified Sch. Dist.*, No. 11-1242-KJM-DAD-PS, 2013 WL 268925, at *9 (E.D. Cal. Jan. 23, 2013) ("[P]laintiff's second amended complaint fails to identify how defendant Principal Dixon's failure to interview plaintiff's daughter deprived plaintiff of a right secured by the Constitution or federal law.").

The handful of statutory sections and policies cited by Plaintiff likewise do not provide a basis for a right to evidence. California Penal Code § 135 makes it a misdemeanor for a person to "willfully destroy[], erase[], or conceal[]" evidence they know is "about to be produced" in a trial or investigation to prevent its production. Plaintiff does not allege Defendants willfully destroyed or deleted allegedly exculpatory evidence—"the accuser's 6th grade student file"—to prevent its use in a trial or investigation as required by § 135. *See* TAC ¶¶ 60, 83; Cal. Pen. Code § 135; *cf. Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). Any argument otherwise is also undermined by conflicting allegations that Defendants found, lost, or never even searched for the file, or only recklessly suppressed the evidence. *See* TAC ¶¶ 82, 85, 88, 89, 95. Title 34 of the Code of Federal Regulations § 106.45 establishes procedural requirements for handling formal complaints of sexual harassment under Title IX and requires "objective evaluation of all relevant evidence—including both inculpatory and exculpatory evidence." 34 C.F.R. § 106.45(b)(1)(ii) (2020). The Court is unaware of any case finding this section sufficient

7

1    to establish a right to evidence protected by due process.  *See Emily O. v. Regents of the*

2    *Univ. of Cal.*, No. 20-08159-AB-JEM, 2021 WL 1535539, at *7 (declining to recognize a

3    due process claim where plaintiff alleged violations of 34 C.F.R. § 106.45).  Plaintiff's

4    allegations premising a right to evidence on § 106.45 also amounts to using Title IX as a

5    basis for a due process claim, which the Court already found improper.  ECF 110 at 10.

6         Plaintiff fails to establish an applicable right to evidence protected by due process.

7         **2.    Plaintiff Plausibly Alleges a Due Process Violation based on a Property Interest in a Position Similar to his Tenured Teaching Role**

8

9         **a.    Property Interest**

10        Property interests protected by due process are "defined by existing rules or

11   understandings that stem from an independent source such as state law—rules or

12   understandings that secure certain benefits and that support claims of entitlement to those

13   benefits."  *Roth*, 408 U.S. at 577.  "These interests attain this constitutional status by virtue

14   of the fact that they have been initially recognized and protected by state law, and we have

15   repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply

16   whenever the State seeks to remove or significantly alter that protected status."  *Paul v.*

17   *Davis*, 424 U.S. 693, 710–11 (1976).

18        "[G]overnment employees can have a protected property interest in their continued

19   employment *if* they have a legitimate claim to tenure or if the terms of the employment

20   make it clear that the employee can be fired only for cause."  *Blantz v. Cal. Dep't of Corr.*

21   *and Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (emphasis in original).  California courts

22   have long recognized that the state's education code establishes a property right in a

23   tenured teacher's continued employment in a position of the same nature.  *See Barthuli v.*

24   *Bd. of Tr.*, 19 Cal. 3d 717, 723 (Cal. 1977) ("[P]etitioner's tenure rights and thus his

25   property rights are those of a classroom teacher."); *Adelt v. Richmond Sch. Dist.*, 250 Cal.

26   App. 2d 149, 152 (Cal. Ct. App. 1967) ("A tenured school teacher . . . has a vested right to

27   permanent employment, subject to those provisions of the Education Code regulating its

28   termination.").  Under California Education Code § 44955(a), tenured employees, who

have achieved permanent status, may only be terminated for a reason enumerated by statute. *See* Cal. Educ. Code § 44929.21 (defining permanent employee); *Kilroy v. L.A. Unified Sch. Dist.*, No. 16-cv-09068-DMG (JDE), 2017 WL 4417685, at *6 (C.D. Cal. May 26, 2017). A school district may, within reason, reassign a permanent teacher to a different position "so long as the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired and so long as the assignment is one for which the teacher in question is qualified." *Mitchell v. Bd. of Tr. of Visalia Union High Sch. Dist.*, 5 Cal. App. 2d 64, 69 (Cal. Ct. App. 1935); *Thompson v. Modesto City High Sch. Dist.*, 19 Cal. 3d 620, 623–24 (Cal. 1977). This is because "the permanent employment protected is [e]mployment within the scope of the certificate under which tenure was acquired." *Adelt*, 250 Cal. App. 2d at 152.

Here, Plaintiff plausibly alleges a property right in a position of the same nature as the credentialed teaching position through which he was tenured, and that Defendants infringed this right. In particular, Plaintiff alleges Defendants removed him from or refused to return him to his permanent certificated PE teaching position upon his return from mandatory leave. TAC ¶¶ 32, 101. Plaintiff alleges that Defendants have instead placed him in a special assignment position, the job duties for which "do <u>not</u> involve use of his credential or teaching experience." TAC ¶¶ 103, 105, 108, 115, 123 (emphasis in original). The daily tasks Plaintiff performs in the special assignment position "have included receiving sand deliveries, moving soccer goal posts, measuring pool depths, setting up and taking down after events, and being expressly instructed not to say anything at meetings and presentations." TAC ¶ 113. In fact, Plaintiff alleges he is prohibited from engaging in any of the functions the California Education Code considers in directing when an employee must "hold a valid teaching or service credential." Cal. Educ. Code § 44065; TAC ¶¶ 111–12. Plaintiff further alleges he does not meet the qualifications for the position, other than holding a teaching credential, which are instead "akin to [those of] a secretary or maintenance worker." These allegations are sufficient to allege he is not qualified for his current position and the position is not "of a rank and grade equivalent to

9

that by which [his] permanent status was acquired." *See Mitchell*, 5 Cal. App. 2d at 69.

Plaintiff therefore plausibly alleges the infringement of a property right for the purposes of due process, not because he has a right to a specific PE teaching position, *see* Mot. 5, or even to a teaching position at all, but because his current duties as alleged fall far outside the scope of the teaching position in which he acquired tenure. *See Adelt*, 250 Cal. App. 2d at 152. "[A]s a result of the state action complained of," Plaintiff therefore alleges his "right or status previously recognized by state law was distinctly altered or extinguished." *See Paul*, 424 U.S. at 711.

The Court addresses the shortcomings of Plaintiff's other allegations and arguments, which fail to establish liberty and property interests relating to his employment: (1) that his constructive termination is a breach of his contract; (2) that his liberty interest in practicing in his chosen profession is impaired; and (3) that he has a property interest based on § 44955's provisions regulating a district's reduction in permanent employees. Cal. Educ. Code § 44955. First, Plaintiff does not provide any details of his teaching contract, which he alleges affords him property rights in a tenured teaching position. *See* TAC ¶¶ 32, 110, 122. Even if he did, "[u]nder California law, the terms and conditions of government service are regulated by statute, not by contract." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992).

Second, for the same reasons the Court discussed in its order partially dismissing Plaintiff's second amended complaint, Plaintiff fails to plausibly allege Defendants have impaired his liberty interest in practicing his chosen profession of teaching. *See* ECF 110; TAC ¶¶ 114, 116–18, 125. To establish a violation of occupational liberty, a plaintiff must allege that they are "unable to pursue an entire occupation due to Defendant's actions . . . rising to the level of a government blacklist or the revocation of a license to practice a particular profession." *Armstrong v. Reynolds*, 22 F.4th 1058, 1080 (9th Cir. 2022) (citation omitted). Although Plaintiff alleges that Defendants must disclose the rape allegation and investigation against him to any prospective employer under California Education Code § 44393.5(c), he nonetheless recognizes any such disclosure would

include the one-sentence letter from the District stating the rape allegation was unsubstantiated. *See* TAC ¶¶ 116–18. Considered alongside his allegations that he retains an active teaching credential, Plaintiff fails to plausibly allege an infringement of his occupational liberty interest. *See, e.g.*, TAC ¶ 105 (alleging he is currently not allowed "to use his credential"); *Armstrong*, 22 F.4th at 1081 (finding allegations of "a loss of 13 years of future employment, . . . loss of a clean employment file, and loss of a neutral recommendation to possible future employers" insufficient to state a claim). Likewise, Plaintiff's allegations that any employment he could secure outside of the District would negatively impact his seniority and salary are inadequate to allege a liberty interest. *See* TAC ¶ 125; *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366 (9th Cir. 1976) (noting due process protections do not attach "when the likely results of even a false charge are reduced economic returns and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful employment within the trade or profession").

Third, Plaintiff alleges California Education Code § 44955 "guarantees him a PE teaching position at the District ahead of all PE teachers with less seniority," TAC ¶ 120, and that Defendants improperly placed him in a non-teaching position after reducing the number of PE teachers due to decreased enrollment. TAC ¶¶ 104, 106–109. Sections 44955(b) and (c) provide that when a district's enrollment declines, the district's governing board may terminate some employees given "no permanent employee [is] terminated . . . while any probationary employee, or any other employee with less seniority, is retained to render a service which said permanent employee is certificated and competent to render," subject to limited exceptions. Cal. Educ. Code § 44955(b), (c). But California courts have held that where, like here, a permanent employee is reassigned, or even demoted, rather than terminated or dismissed, §§ 44955(b) and (c) do not apply. *See Thompson*, 19 Cal. 3d at 627 (stating "it is clear" that the language of § 44955 "refers to dismissal or termination of services. Accordingly, it has been held that section 44955 has no application to the reassignment or demotion of administrators to the position of classroom teacher").

Here, Plaintiff alleges that the District terminated PE positions, but does not

11

plausibly allege his services have been entirely terminated.  TAC ¶ 104.  Therefore, §§ 44955(b) and (c) do not apply to establish a protected property interest.  *See Lacy v. Richmond Unified Sch. Dist.*, 13 Cal. 3d 469, 473 (Cal. 1975) (finding a school counselor's "services were not terminated" when counseling positions were discontinued and she was reassigned to classroom teaching).  Although Plaintiff alleges he was "constructively terminated" as a PE teacher based on his current role and/or will leave his position before his planned retirement age, he provides no legal support to establish that a state claim of constructive discharge or a speculative future injury can constitute a protected liberty or property interest for a due process claim.  *See* TAC ¶¶ 32, 34, 110, 121–22.

Plaintiff therefore only alleges a viable liberty or property interest based on his employment with respect to his alleged property interest in a position of the same nature as his tenured teaching role.

### b.    Deprivation of Procedural Due Process

The Court understands Plaintiff to bring a procedural due process claim based on the alleged violation of his property interest in a position akin to his tenured teaching role. He cites only to cases on procedural due process and provides no argument as to how the alleged deprivation of his property right "'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  *See Nunez*, 147 F.3d at 871; TAC; Opp'n 8–9, 11–14; *cf. Paul*, 424 U.S. at 713 (holding "publiciz[ing] a record of an official act such as an arrest" did not violate a substantive due process right to privacy).

The specific procedure due depends on the facts of a given case as analyzed under the *Mathews v. Eldrige* three-part balancing test:  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).  But at minimum, due process requires notice and an opportunity to be heard "at a meaningful time and in a

meaningful matter." *Brewster*, 149 F.3d at 984 (citation omitted); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As applied here, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546; *see Stretten*, 537 F.2d at 369 ("The resident's interest is important enough that he should have notice of his deficiencies, should have an opportunity to examine the evidence against him, and should be allowed to present his side of the story to the decision-maker.").

Here, Plaintiff alleges "he was not provided notice and a hearing with a fair opportunity to avoid being removed from his PE teaching position." TAC ¶ 101. He also alleges Defendants did not give him "proper notice" of the allegations and investigation against him. TAC ¶¶ 97, 99. At the pleading stage, these allegations are sufficient to allege a claim for procedural due process based on Plaintiff's property right in a position of the same nature and ranks as his tenured teaching rule. The Court notes, however, that Plaintiff will have to present facts better connecting each individual Defendant to the alleged violation of this property right without due process to succeed on his § 1983 claim on this basis. *See Johnson*, 588 F.2d at 743–44 (requiring causation for individuals acting under the color of law).

### 3. Plaintiff Plausibly Alleges a Due Process Violation based on a Stigma-Plus Liberty Interest

Plaintiff also premises his procedural due process claim on another basis—the alleged violation of his liberty interest under a stigma-plus theory.

When a plaintiff "has suffered a tangible loss[,] a liberty interest is implicated only when the state makes a 'charge against him that might seriously damage his standing and associations in his community.'" *Stretten*, 537 F.2d at 365. Charges impairing a plaintiff's "reputation for honesty or morality" are sufficient to implicate a liberty interest. *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982). "The procedural protections of due process apply if the accuracy of the charge is contested, there is some public

United States District Court
Northern District of California

1   disclosure of the charge, and it is made in connection with the termination of employment

2   or the alteration of some right or status recognized by state law." *Id.* at 777–78; *see Ulrich*

3   *v. City and Cnty. of S.F.*, 308 F.3d 968, 982 (9th Cir. 2002).

4         Plaintiff alleges Defendant Austin issued public comments about Plaintiff,

5   including: "Mr. Colombo was removed from his teaching position [and placed] on paid

6   administrative leave, for the protection of students," TAC ¶ 40; "There is a point to where

7   there's enough of a pattern of behavior where some people should not have the right of

8   working with students," TAC ¶ 43; implying that the District's internal investigation might

9   find Plaintiff responsible for the rape charges despite the dismissal of criminal charges,

10   TAC ¶¶ 44–45; and implying the allegations against Plaintiff were true and the criminal

11   charges were dismissed only because "evidence was difficult to find," TAC ¶¶ 54–55.

12   Plaintiff also alleges Defendant Hickey sent a letter to the state's teacher credentialing

13   commission "indicating that the District's disciplinary investigation of Mr. Colombo

14   would result in a 'statement of charges or intent to dismiss/suspend.'"[1]  TAC ¶ 63.

15         Plaintiff plausibly alleges each element to state a stigma-plus procedural due

16   process claim.  However, because Plaintiff only alleges Austin and Hickey caused a

17   deprivation of his liberty interest through their statements, he only states a claim against

18   those individual Defendants, and not against Bark or Bahadursingh.  *See Johnson* 588 F.2d

19   at 743–44.

20         **a.   Liberty Interest**

21         The statements by Austin and Hickey about Plaintiff are sufficient to implicate his

22   liberty interest.  The alleged statements concern an allegation by a former middle school

23   student that Plaintiff raped her on school grounds and suggested he could pose a danger to

24

25   ---

    [1] Defendants' reply brief argues this allegation is "[p]articularly misleading" and attaches a

26   declaration including Hickey's letter as an exhibit.  Reply 4.  The declaration states that the
     letter is provided in response to Plaintiff's "misrepresentation of the contents of this

27   document" in his opposition brief.  ECF 118-1 ¶ 3.  However, Plaintiff's third amended
     complaint presents the same allegation that his opposition brief repeats.  TAC ¶ 63.  The

28   Court declines to consider Defendants' argument and the letter when "raised for the first
     time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

students.  These statements carry the "stigma of moral turpitude" and are "likely to have severe repercussions outside of professional life."  *Stretten*, 537 F.2d at 366; *see Blantz*, 727 F.3d at 925 n.6.

In contrast, Plaintiff's allegations that Defendants wrongly disclosed his entire personnel file under the California Public Records Act are insufficient to state a due process claim because Plaintiff does not allege how the contents of his file would be so stigmatizing as to implicate his liberty interest.  TAC ¶¶ 49–50.

Each of the elements outlined in *Vanelli* are also satisfied here such that Plaintiff plausibly alleges he was entitled to procedural due process protections based on his liberty interest.  *See* 667 F.2d at 777.  First, Plaintiff alleges he "at all times has contested the [rape] allegations" against him.  TAC ¶¶ 31, 39.  Second, Plaintiff alleges Austin and Hickey disclosed the charge against him through their statements, made online, on social media, in news articles, in conversations to students, and to the state credentialing commission.  TAC ¶¶ 40, 43, 44–45, 54–55, 63.  Although at least some of these statements may not have named Plaintiff, "stigmatizing statements need not name an employee to be actionable, so long as the surrounding circumstances make clear that the statement makes particular reference to the employee." *Tibbetts v. Kulongoski*, 567 F.3d 529, 537 (9th Cir. 2009) (citations omitted).  Third, Plaintiff plausibly alleges Austin and Hickey made these statements "in connection with" the alteration of his property interest in a position of the same nature as his tenured teaching role.  Defendants do not argue otherwise, and the Court finds the timing of many of the public statements during the course of the District's internal investigation, which allegedly culminated in the deprivation of Plaintiff's property right, sufficient at this stage.  *See* TAC ¶¶ 44–45, 55, 63; *Tibbetts*, 567 F.3d at 537 (discussing how stigmatizing statements must be "so closely related to discharge from employment that the discharge itself may become stigmatizing in the public eye").

Defendants argue that Plaintiff cannot state a stigma-plus due process claim because the District, as his employer, did not bring any "charge" against him.  Mot. 5, 8; Reply 8, 10–11.  A "charge," Defendants argue, is defined by the California Education Code.  Mot.

8; Reply 8.  And here, the only "charge" was brought by a third-party student who accused Plaintiff of rape.  Mot. 8; Reply 8.  Defendants do not provide any legal support for their contention that a "charge" must refer to a formal charge or be brought by an employer, rather than merely refer to any allegations brought by or repeated by an employer.  In *Tibbetts*, for example, the Ninth Circuit focused on the governor's publication of stigmatizing press releases and analyzed whether the governor caused the termination of the employees alleging the stigma-plus claim.  *See* 567 F.3d at 537–39.  The Ninth Circuit did not consider whether the governor brought the initial charges that resulted in the employees' termination, which he had not.  *See id.* at 532, 537–39.  Defendants' attempts to distinguish *Vanelli* are also unavailing.  Mot. 5.  In *Vanelli*, students complaining about a teacher initiated the charges, "directly paralleled [] the language" of "charges" defined by the education code.  667 F.2d at 777, 780.  The same is true here; the District admits the California Education Code "identif[ies] the charges against Plaintiff as 'mandatory leave of absence offenses.'"  Mot. 14–15.  The Court does not see why the initial source of the charge against Plaintiff and the parallel involvement of the police and district attorney here change the applicable analysis.  This is particularly so given Plaintiff alleges the District announced its internal investigation would be distinct from and use a different standard of proof than the criminal investigation.  *See* TAC ¶¶ 44–45.

### b.    Deprivation of Procedural Due Process

A plaintiff is "entitled to notice and a hearing to clear his name" when the government publicly discloses a contested, stigmatizing charge in connection with the deprivation of another right.  *Ulrich*, 308 F.3d at 982.  Plaintiff alleges Defendants did not give him notice of the allegations against him and deprived him "of a meaningful opportunity to clear his name" after they "publiciz[ed] the sexual assault claim."  TAC ¶¶ 33, 56, 97, 99.  Defendants argue Plaintiff was not deprived of due process and was afforded an opportunity to be heard through an interview with their internal investigator, but do not specifically refute that he was denied notice.  *See* Mot. 8–9.  Defendants also do not provide support for their contention that Plaintiff received sufficient process in part

16

through the criminal proceedings against him. *See* Mot. 8–9.

At this stage, Plaintiff sufficiently alleges he was denied procedural due process in connection with a violation of his liberty interest under a stigma-plus theory.

In sum, the Court GRANTS Defendants' motion to dismiss Plaintiff's substantive due process claim. The Court DENIES Defendants' motion to dismiss Plaintiff's procedural due process claim based on his alleged property interest. The Court DENIES IN PART the motion to dismiss Plaintiff's procedural due process claim based on a stigma-plus theory as against Defendants Austin and Hickey and GRANTS IN PART the motion to dismiss the stigma-plus claim as to Defendants Bark and Bahadursingh.

### 4. The Court Declines to Dismiss the § 1983 Due Process Claim based on Qualified Immunity

Defendants also move to dismiss Plaintiff's due process claim based on qualified immunity. Mot. 12–16. Defendants argue that even if they violated Plaintiff's due process rights, they are entitled to qualified immunity because their actions did not violate clearly established law. Mot. 12–13; Reply 11–13. Plaintiff counters that "no reasonable school administrator would disagree" that Defendants violated his clearly established rights and, alternatively, that qualified immunity cannot be resolved on a motion to dismiss where relevant factual disputes preclude doing so. Opp'n 18–20.

The Court declines to dismiss Plaintiff's procedural due process claim based on qualified immunity at this stage because the parties' arguments would benefit from more targeted briefing and factual support once the pleadings are set. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) ("At the motion to dismiss stage, 'dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.'").

### B. Plaintiff Fails to State a Claim for Discrimination under Title VII, FEHA, and Title IX (Second, Third, and Fourth Claims)

Plaintiff alleges the District discriminated against him based on his gender and race in violation of Title VII, FEHA, and Title IX. For the reasons below, he fails to plausibly

United States District Court
Northern District of California

17

allege claims for discrimination.

### 1. Plaintiff does not Plausibly Allege Discrimination under Title VII and FEHA

A plaintiff can state a claim for discrimination under Title VII and FEHA by establishing that "(1) the plaintiff belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Reynaga v. Rosebug Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017) (citations omitted); *Leland v. City and Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008). A plaintiff need not plead each element of a prima facie case of discrimination to survive a motion to dismiss, but a court must be able to determine "the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1304 (N.D. Cal. 2020) (citations omitted).

The Court found Plaintiff's previous allegations "insufficient to support a plausible inference that Defendants took [adverse] employment actions because of Plaintiff's gender and/or race." ECF 110 at 15. Plaintiff's third amended complaint alleges the District adopted an Equity Plan to increase the number of non-white and non-male teachers and employed a "discriminatory scheme" to reach these ends "by weaponizing unsubstantiated claims of sexual misconduct against white male teachers . . . without providing them due process and using these unsubstantiated claims to extort these white male teachers into early retirement." TAC ¶ 132. Plaintiff's allegations, despite amendment, remain facially implausible.

As Defendants point out, Plaintiff has reversed course from certain allegations in his second amended complaint that the Court found undermined his claims of discrimination. Mot. 17. First, Plaintiff previously alleged that the text of the Equity Plan requires "[h]iring practices that attract, develop, and retain best-in-class talent that is

culturally and linguistically diverse" and "[d]ata-driven decision making."  ECF 86 ¶ 81; ECF 110 at 15.  His third amended complaint now omits this language and alleges the "Equity Plan directs the use of hiring practices to increase the number/percentage of teachers who are not white males."  TAC ¶ 135.  Second, Plaintiff previously alleged "Defendants complied with the investigation requirements under Title IX and board policies for every other serious allegation of sexual misconduct against a male accused that they received between 2016 and present . . . ."  ECF 86 ¶¶ 28, 64; ECF 110 at 15.  His third amended complaint now omits this allegation and alleges "[u]nsubstantiated reports of alleged sexual misconduct were unlawfully withheld from Title IX procedures" for white male teachers targeted by the Equity Plan, including at least two others in addition to Plaintiff.  TAC ¶¶ 136, 139, 146.

Although an amended complaint supersedes a prior complaint, a court "need not disregard the fact that an inconsistent allegation was previously made."  *Morales v. City and Cnty. of S.F.*, 603 F. Supp. 3d 841, 847 (N.D. Cal. 2022); *Polk v. Lattimore*, No. 12-cv-01156-DAD-BAM, 2018 WL 2183877, at *3 (E.D. Cal. May 11, 2018) (citation omitted).  Without additional factual support in the amended complaint, a court is "not required to accept as true" new, contradictory allegations.  *Morales*, 603 F. Supp. 3d at 846 (citation omitted).  Here, Plaintiff replaces his previous allegations as to the language of the Equity Plan with only conclusory allegations that the Plan targets white males, not additional facts.  Such an allegation is particularly "unconvincing" where it constitutes a direct reversal and amounts to "simply deleting" unfavorable allegations in an attempt to state a claim.  *See id.* at 847.  Plaintiff's allegation that the District withheld unsubstantiated allegations against other white male teachers from the Title IX process also constitutes a direct reversal of his prior allegations.  Though he at least adds the supporting allegation that two other white male teachers experienced this treatment, he offers no other facts as to their specific circumstances.

Moreover, Plaintiff does not plausibly allege "similarly situated employees were treated more favorably," disparate impact, or "other circumstances" that "give rise to an

inference of discrimination" to state a claim.  *See Reynaga*, 847 F.3d at 691.  First, Plaintiff only alleges three white male teachers, who were similarly situated because of sexual misconduct allegations against them, were treated similarly by the District.  TAC ¶¶ 138, 146.  He does not allege any non-white or non-male teachers facing sexual misconduct allegations were treated differently or more favorably than him and the other white male teachers.  *See* Mot. 17.

Second, "[a] plaintiff establishes a prima facie case of disparate impact" under Title VII and FEHA "by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion."  *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002); *Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835 (9th Cir. 2000).  Here, the contours of both the protected class and facially neutral policy alleged by Plaintiff are unclear.  Although he alleges "Defendants used unsubstantiated sexual misconduct claims to unlawfully threaten the targeted white male teachers" into early retirement and "unlawfully withheld" these claims from the Title IX process, he also alleges this scheme targeted white male teachers "who had enough years of service credit to qualify for early retirement" and were included on a District "hit list."  TAC ¶¶ 133–34, 136, 139.  It is therefore unclear whether the alleged protected class includes all white male teachers, only white male teachers with sufficient service credits, only white male teachers with sufficient service credits who happen to have sexual misconduct claims brought against them, or only white male teachers on a "hit list."

The alleged policy employed by the Defendants also lacks specificity.  Plaintiff alleges Defendants utilized an Equity Plan to achieve a discriminatory goal, but some allegations suggest the District itself fabricated the "unsubstantiated sexual misconduct claims" while others suggest the District used such claims that happened to arise as an opportunity to further their goals.  *Compare, e.g.*, TAC ¶ 142 (discussing *modis operandi* against Plaintiff before any rape allegation) and ¶ 145 (alleging District colluded with others to target Plaintiff with false reports) *with* ¶ 138 (discussing "the weaponized use of unsubstantiated sexual misconduct claims").  Moreover, Plaintiff does not plausibly allege

1    a significant disparate impact on the protected class. While he need not allege precise

2    statistical disparities, Plaintiff must provide some reference as to how the treatment of him

3    and the two other white male teachers compares with that of other employees, or how the

4    alleged impact of the District's actions on the three employees compares with the impact

5    on the total population of white male employees or non-white, non-male employees. *See*

6    *Liu v. Uber Techs., Inc.*, 551 F. Supp. 3d 988, 991 (N.D. Cal. 2021).

7    Third, Plaintiff's remaining allegations fail to identify circumstances to support an

8    inference of discrimination. For example, he alleges that a report in the spring of 2021 that

9    Plaintiff sent an inappropriate "Snap" to an underage student demonstrates a larger "effort

10    to target him." TAC ¶¶ 144–45. And because the sister of the individual who brought the

11    rape allegation was an early employee at Snap Inc., Plaintiff alleges "the false accuser's

12    sister was working with the District dating back to the Spring of 2021 to target Mr.

13    Colombo for false reports of alleged inappropriate conduct." TAC ¶ 144. Such an

14    allegation of collusion between Plaintiff's accuser and/or her sister and the District based

15    only on the sister's place of employment is highly tenuous and conclusory. It also clashes

16    with Plaintiff's allegation that "the District received a written report or complaint by email

17    communication that a former student had been sexually assaulted" by Plaintiff and that

18    "the written report was sent by the accuser's husband." TAC ¶ 35.

19    Taken all together, it is unclear how the allegations against Plaintiff were part of a

20    District plan meant to extort early retirement, and how the District's alleged failure to

21    follow Title IX procedures was meant to achieve that result. Plaintiff's claims for

22    discrimination under Title VII and FEHA are DISMISSED.

23    ### 2.    Plaintiff does not Plausibly Allege Discrimination under Title IX

24    "To state a Title IX claim, a plaintiff must plead that: (1) the defendant educational

25    institutional receives federal funding; (2) the plaintiff was excluded from participation in,

26    denied the benefits of, or subjected to discrimination under any education program or

27    activity, and (3) the latter occurred on the basis of sex." *Schwake v. Ariz. Bd. of Regents*,

28    967 F.3d 940, 946 (9th Cir. 2020). A plaintiff may allege background indicia of sex

1   discrimination to support a Title IX claim, but must also allege facts specific to their case

2   establishing bias. *Doe v. Regents of Univ. of Cal.*, 23 F.4th 930, 939 (9th Cir. 2022).

3         The Court previously found Plaintiff's allegations of sex discrimination and related

4   background indicia insufficient to state a claim under Title IX.  ECF 110 at 11–13.  As

5   discussed above, Plaintiff again fails to state a claim for discrimination on the basis of his

6   gender.  He also largely renews the same allegations of background indicia and procedural

7   shortcomings in the District's investigation.  As a result, Plaintiff continues to allege only

8   violations of procedure by the District, and fails to plausibly allege discrimination under

9   Title IX.  Plaintiff's claim for discrimination under Title IX is therefore DISMISSED.

### C.   The Court Declines to Strike Allegations from Plaintiff's Claims for Retaliation under Title VII, FEHA, and Title IX (Second, Third, and Fourth Claims)

12         Defendants move to strike Plaintiff's expanded allegations that the District

13   retaliated against him in violation of Title VII, FEHA, and Title IX, arguing the new

14   allegations "significantly expand" the scope of his retaliation claims, are facially

15   implausible, are inconsistent with previous allegations, and were filed without leave.  Mot.

16   22–23.  The Court previously denied dismissal of Plaintiff's retaliation claims as stated in

17   his second amended complaint, finding Plaintiff plausibly alleged the District retaliated

18   against him for filing the initial complaint in this matter.  ECF 110 at 16–19.  Plaintiff's

19   third amended complaint includes these same allegations, but also alleges a second theory

20   that the District retaliated against him after he "resisted [a] discriminatory attempt to force

21   his early retirement" in September 2022.  TAC ¶¶ 150–54.

22         Courts have discretion to "strike from a pleading an insufficient defense or any

23   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *Villarreal*

24   *v. Cnty. of Monterey*, 254 F. Supp. 3d 1168, 1178 (N.D. Cal. 2017).  "Motions to strike are

25   generally disfavored and 'should not be granted unless the matter to be stricken clearly

26   could have no possible bearing on the subject of the litigation.'"  *Villarreal*, 254 F. Supp.

27   3d at 1178 (citation omitted).  Courts are to view the pleadings in the light most favorable

28   to the nonmoving party when considering a motion to strike.  *Id.*

Defendants provide no caselaw to support their arguments that it is improper to expand the scope of a claim the Court previously declined to dismiss, or that the expanded allegations are implausible because declining an offer of early retirement is not a protected activity.  Defendants do not explain how Plaintiff's new allegations contradict or are inconsistent with his existing allegations of retaliation, rather than a second theory for relief.  And Defendants do not identify the specific allegations they ask the Court to strike, or explain how these allegations are redundant, immaterial, impertinent, or scandalous.  *See* Fed. R. Civ. P. 12(f).  Given Defendants' failure to do so and the "drastic" nature of striking pleadings, Defendants' motion to strike allegations from Plaintiff's retaliation claims is DENIED.  *See Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012).

## IV.    CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss as follows:

- First Claim (§ 1983):
  - o   GRANTED as to substantive due process claim.
  - o   DENIED as to procedural due process claim based on Plaintiff's alleged property interest in a position similar to his tenured teaching role.
  - o   DENIED as to the stigma-plus procedural due process claim against Defendants Austin and Hickey, and GRANTED as to the stigma-plus due process claim against Defendants Bark and Bahadursingh.
- Second, Third, and Fourth Claims for discrimination under Title VII, FEHA, and Title IX: GRANTED

Defendants' motion to strike allegations from Plaintiff's Second, Third, and Fourth Claims for retaliation under Title VII, FEHA, and Title IX is DENIED.

Plaintiff has amended his complaint three times, twice with the benefit of Court feedback.  The claims dismissed above are therefore dismissed without leave to amend.  *See Miller*, 358 F.3d at 622 (9th Cir. 2004).  Plaintiff must seek leave of the Court for any

further amendment of claims or to add parties.

Defendants must file an answer to the claims remaining in the third amended complaint by April 10, 2025.  Fed. R. Civ. P. 12.

**IT IS SO ORDERED.**


Dated:  March 27, 2025                                    _____
NATHANAEL M. COUSINS
United States Magistrate Judge