Eugene B. Elliot, State Bar No. 111475
Ethan M. Lowry, State Bar No. 278831
Benjamin I. Oreper, State Bar No. 329480
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990
Email: eelliot@bfesf.com
elowry@bfesf.com
boreper@bfesf.com

Attorneys for Defendants
PALO ALTO UNIFIED SCHOOL DISTRICT, AMANDA BARK, and
LISA HICKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER COLOMBO,<br><br>    Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Case No. 5:24-cv-00909-NC<br><br>**JOINT STATEMENT OF PARTIES REGARDING DEFENDANTS' REQUEST FOR DEFENSE MEDICAL EXAMINATION OF PLAINTIFF**<br><br>**Hon. Nathanael M. Cousins** |

**Defendants' Position**

Defendants seek to conduct a mental examination of Plaintiff on the grounds that good cause for such examination exists, as Plaintiff has placed his mental condition in controversy by claiming injury thereto resulting from Defendants' acts. Plaintiff has consistently contended in pleadings, correspondence, and other documentation in this matter that he suffered "severe emotional distress" and "extreme emotional and psychological distress" (Dkt. 113 at 5:6-10; 26:7-12; 34:19-25; 43:16-20; 60:24-28); that Plaintiff "has past and future medical damages for psychological counseling, which will likely be the subject of expert medical testimony that has not yet been provided" (Dkt. 166 at 9:2-10); that Plaintiff's "full noneconomic damages . . . could be in the tens of millions of dollars based on the emotional distress of being labeled a child rapist . . . carrying a substantial suicide risk" (Dkt. 119 at 23:21-25); references to "the severe emotional distress [Defendants'] misconduct was causing [Plaintiff] to endure" (Dkt. 21 at 17:17-19); and allegations that Plaintiff was "forced to endure more than ten months of the worst forms of emotional distress imaginable," and that Defendants "knowingly generated extreme psychological and emotional harm including a substantially increased risk for suicide" (Dkt. 37 at 7:20-22, 15:26-28), among myriad other analogous contentions. Allegations of severe emotional distress and Plaintiff's designation of an expert witness to testify to such distress have been found sufficient by Courts to place a plaintiff's mental condition "in controversy." (*Gavin v. Hilton Worldwide, Inc.* (N.D. Cal 2013) 291 FRD 161, 164; *Turner v. Imperial Stores* (S.D. Cal 1995) 161 FRD 89, 92-97). During the Parties' meet and confer regarding this issue, counsel for Plaintiff confirmed that Plaintiffs "have an expert psychiatrist retained and intend to offer her opinions at trial." A psychiatric examination and psychological testing are necessary and warranted to (1) determine the existence and extent, if any, of plaintiff's alleged psychological injuries and damages, and (2) prepare effectively for cross-examination of plaintiff's witnesses.

Under Rule 35, a movant seeking to compel a mental examination of a party claiming emotional distress must show "one or more" of the following in addition to a claim of emotional distress, including that the party is claiming "unusually severe emotional distress;" offering "expert testimony to support a claim of emotional distress;" and/or a "concession that [the party's] mental condition is 'in controversy' within the meaning of Rule 35(a)." (*Turner v. Imperial Stores*, 161 F.R.D. 89, 91 (S.D.Cal. 1995), aff'd, 105 F.3d 666 (9th Cir. 1996).) Here, there is no dispute that Plaintiff has repeatedly claimed severe

1

emotional distress and has stated his intent to offer expert testimony to support this claim. Defendants are accordingly entitled under Rule 26 and Rule 35 to prepare an adequate defense by conducting a mental examination of Plaintiff to determine the nature and extent of his alleged emotional injuries, and assess causation and any future treatment needs or claims. This is particularly the case where, as here, Plaintiff attributes his emotional distress exclusively to Defendants despite indication from the pleadings and discovery in this matter that the operative allegation against Plaintiff (that he had raped a sixth grade student) were made by a third party, and Plaintiff's history predating both this incident and the allegations in this lawsuit as discussed at his deposition and evidenced in his employment and criminal records.

Defendants intend to designate two expert witnesses – Dr. Nancy Hoffman, a licensed Forensic Psychologist, and Dr. James Armontrout, a licensed Forensic Psychiatrist – to conduct psychological testing and a psychiatric examination of Plaintiff, respectively, and to offer their conclusions and testimony regarding the causation, nature, and extent of Plaintiff's alleged emotional distress. Dr. Hoffman intends to conduct her psychological examination of Plaintiff on August 18, 2025, lasting approximately four to five hours exclusive of breaks, and comprised of a brief information interview (not clinical or diagnostic) and testing, with the appropriate battery of testing selected based on the information obtained during the session (a list of proposed tests was previously provided to Plaintiff in meet and confer). Dr. Armontrout subsequently intends to conduct his psychiatric examination of Plaintiff on August 20, 2025, lasting approximately three to six hours and comprised of Plaintiff's psychiatric and medical history; social, family, occupational, and educational background; symptom evaluation and severity over time; medication and treatment history; and other standard elements of a comprehensive forensic psychiatric evaluation. Both exams will be conducted at neutral third-party locations convenient to Plaintiff. Neither exam will include any physical examination or intrusive medical studies or procedures. Given Defendants' experts' limited availability and the short time period to complete the examination within the discovery cutoff, if these dates are not workable Defendants would request, and would be willing to stipulate, to a brief extension of the current discovery cutoff for the express purpose of completing the examination.

Defendants have engaged in meet and confer discussions with Plaintiff's counsel. Counsel indicated Plaintiff would stipulate to Dr. Armontrout's psychiatric examination but not to Dr. Hoffman's testing, which counsel characterizes as "neurological" and "unwarranted as there is no disease like

Parkinson's or Alzheimer's at issue." As Defendants have represented, the proposed psychological testing will encompass Plaintiff's intellectual functioning, cognitive functioning, reasoning, judgment, psychological symptoms, and personality traits – all of which have a direct bearing upon obtaining accurate psychiatric diagnoses as well as facilitating an estimate of Plaintiff's degree of current functional impairment and/or subjective distress, if any. Contrary to Plaintiff's assertions, the goal of testing in this matter is not to determine whether Plaintiff has a neurocognitive disorder such as dementia, but to provide more comprehensive information about the nature of his mental health symptoms and to assist in assessing the accuracy of Mr. Colombo's self-report regarding his symptoms. This testing is necessary to assess Plaintiff's emotional and psychological complaints, and for generating objective data to enhance the reliability of Dr. Armontrout's diagnostic impressions.  The utilization of multiple testing instruments is the most accurate and widely accepted professional approach to arriving at reliable and valid inferences from psychological test data regarding diagnosis, functional impairment and subjective distress, and is considered a best practice in forensic mental health assessments of this nature.

**Plaintiff's Position**

The requirements for showing good cause sufficient to obtain an Order for mental examination under Federal Rule of Civil Procedure 35 "are not met by mere conclusory allegations of the pleadings — nor by mere relevance to the case — but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Robinson v. HD Supply, Inc.*, No. 2:12-cv-604, 2013 U.S. Dist. LEXIS 101703, 2013 WL 3815987, at *9-10 (E.D. Cal. July 19, 2013 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)) (rejecting wide ranging neurologic and psychiatric testing). Even if Defendants had met their "good cause" showing requirement, it would remain within the Court's discretion to determine whether to order an examination. Id. at *16 (citing *Williams v. Troehler*, 2010 U.S. Dist. LEXIS 6676, 2010 WL 121104, at *4 (E.D. Cal. Jan. 7, 2010)) ("even if good cause is shown, it is still within the court's discretion to determine whether to order an examination.")

Contrary to Defendants' position statement, Plaintiff has offered to submit to an examination of the precise same type and extent of examination performed by his retained expert psychiatrist to address his conditions that are actually at issue. Plaintiff's psychiatrist conducted a two-hour medical examination via

zoom preceded by review of the same materials already made available to Defendants.

Plaintiff has repeatedly requested the basis for Defendants' demand for psychological tests to be performed by Dr. Hoffman, who utilizes such testing in her geriatric patients with neurologic disorders such as Parkinson's or Alzheimer's and/or to check for memory defect and testamentary capacity. None of these are relevant to any of the claims being made here. Plaintiff also requested a declaration from Dr. Armontrout attesting that such extensive testing is required for his opinions relevant to any specific conditions actually at issue in this case. Defendants continue to broadly and vaguely state Dr. Armontrout's diagnostic impressions might be enhanced by such testing. What continues to be lacking is any specific explanation of how results from specific tests affect any opinion specific to Mr. Colombo's situation.

Dr. Armontrout's own FAQ section on his forensic expert page is instructive here. He states "If the attorney will not agree to allow for an appropriate IME, then a motion to compel an examination may be a reasonable next step. I can provide a declaration in support of such a motion if needed. If the court determines that certain restrictions should be imposed on the examination then I would typically proceed with a limited examination and offer opinions along with an explanation of any relevant limitations of the opinion given the inability to perform a full exam." (located under the *Opposing counsel is unwilling to allow for a full exam* FAQ at the link provided here – https://www.drarmontrout.com/forensic/faq) Plaintiff has agreed to an appropriate IME with the precise same access provided to Plaintiff's own expert psychiatrist. If the battery of additional tests had been deemed appropriate, Dr. Armontrout would have provided a declaration as has been requested by Plaintiff. Moreover, Dr. Armontrout admits he is fully capable of proceeding with a limited examination comprised of a recorded 2-hour zoom interview with recording and transcription to be provided with his report within 10 days of exam.

Defendants' demand is an abusive and overreaching attempt at an unauthorized fishing expedition. To be clear, Plaintiff has already informed Defendants of his precise psychiatric conditions that were diagnosed using DSM V criteria and do not require the full battery of tests demanded by Defendants. Reference to Plaintiff's non-economic damages is also misplaced, as Plaintiff reminds defense counsel that the stigmatizing nature of their clients' misconduct, which has wrongfully labeled Plaintiff as a child rapist for the past 3.5 years, forms a much larger component of his non-economic damages.

The timing of this demand is extremely problematic. Defendants raised the prospect of this testing

4

about three months ago but waited until the start of the 2025-2026 school year before initiating their request. When first raised, Plaintiff considered submitting to the testing because it was during the summer. However, in light of recent events and the timing of this demand, it is abusive. Defendants' delayed timing for the exam now coincides with extreme anxieties already caused by Defendants' (1) recently forcing Plaintiff to transfer to a different school than the one where he has an established support group after spending the bulk of his 25+ years with the District at Greene, (2) moving him to Fletcher in South Palo Alto where the political environs are hostile to Plaintiff, where there are already petitions being filed to prevent his return to work because of uncleared stigma created by Defendants, (3) with an extremely undesirable teaching schedule that Cindi Ahern testified is extreme and punitive, forcing Plaintiff to be in the sun all day without preparation breaks on Tuesdays and Thursdays, and (4) unreasonably increases his daily commute time by 40 minutes. Defendants also refused Plaintiff his right to the interactive process for reasonable accommodations in violation of the ADA while also refusing his request to remain at Greene where a male PE teaching position was open and a brand new teacher was assigned with no regard for Plaintiff's seniority, mental health status and the known extreme anxieties of finally being returned to teach in an extremely hostile work environment after being kept on leave by Defendants for 3.5 years (including the year in the sham TOSA position), which exudes stigma as being a form of "discipline" by Defendants.

Now, with all of these additional stressors already created by Defendants to welcome Plaintiff back into the District, they ask the Court to force Plaintiff to submit to an abusive amount of testing that will require him to again leave the classroom for two days just at the time he is tasked with trying to build momentum in a restart to his profession with no help or support from Defendants and before he even has a chance to try to get his feet back on the ground. Defendants provide no justification for the delay in testing to coincide with all of the other stressors they are creating at the start of the new school year. Any testing should be completed before discovery cutoff on Tuesday (August 19th) or a Thursday (August 21st or August 28th) and Plaintiff to be excused by the District without any detriment (no loss of pay or vacation or personal leave days, etc.); all raw data from any testing along with standard normalized distributions for the test scores, recordings and transcribed recordings all to be immediately provided to Plaintiff within 10 days of the exam along with the complete report(s). Everything should be kept highly confidential, not to be used outside this litigation and not to be shared with Defendants. (See Education Code §44942.)

| | | |
|---|---|---|
| Dated: August 14, 2025 | | BERTRAND, FOX, ELLIOT, OSMAN & WENZEL |

By: ___*/s/ Benjamin I. Oreper*___
    Eugene B. Elliot
    Ethan M. Lowry
    Benjamin I. Oreper
    Attorneys for Defendants
    PALO ALTO UNIFIED SCHOOL DISTRICT,
    AMANDA BARK, and LISA HICKEY

Dated: August 14, 2025                        LAW OFFICE OF EVAN C. NELSON

By: ___*/s/ Evan C. Nelson*___
    Evan C. Nelson
    Attorney for Plaintiff
    PETER COLOMBO

Dated: August 14, 2025                        CLYDE & CO. US LLP

By: ___*/s/ Alison Beanum*___
    Alison K. Beanum
    Veena A. Mitchell
    Attorneys for Defendants
    DON AUSTIN and TRENT BAHADURSINGH

JOINT STATEMENT RE DEFENDANTS' REQUEST FOR MEDICAL EXAMINATION
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC