ALISON K. BEANUM (State Bar No. 221968)
alison.beanum@clydeco.us
VEENA A. MITCHELL (State Bar No. 161153)
veena.mitchell@clydeco.us
CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone:    (213) 358-7600
Facsimile:    (213) 358-7650

Attorneys for Defendants
DON AUSTIN and TRENT BAHADURSINGH

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER COLOMBO,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, et al.,<br><br>                    Defendants. | Case No. 5:24-cv-00909-NC<br><br>Assigned to: Hon. Nathanael Cousins<br><br>**DEFENDANTS DON AUSTIN AND TRENT BAHADURSINGH'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Filed concurrently with Declaration of Trent Bahadursingh; Declaration of Alison K. Beanum; Appendix of Exhibits; and Proposed Order*]<br><br>Date: December 17, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 5, 4th Floor,<br>          San Jose Federal Courthouse |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................. 1

STATEMENT OF ISSUES .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.   STATEMENT OF ARGUMENT AND ISSUES ..................................... 1

II.  STATEMENT OF FACTS ......................................................................... 3

    A.   Procedural Background About Plaintiff's Lawsuit ....................... 3

    B.   General Background Regarding the District and the Administrators ........... 5

    C.   General Background About the Claim Involving Plaintiff .......... 5

    D.   Plaintiff's TOSA Position ............................................................ 10

    E.   Statements by Superintendent Austin ......................................... 11

III. LEGAL STANDARD ............................................................................. 13

IV.  ARGUMENT ........................................................................................... 14

    A.   Plaintiff's Claim Against the Administrators in Their Official Capacity is Subject to the Court's Order of Dismissal Based on Sovereign Immunity ........................................................................ 14

    B.   Plaintiff Cannot Demonstrate that Each Administrator Deprived Plaintiff of Due Process in Connection With the Limited Property Interest at Issue ............................................................................ 15

    C.   Plaintiff Cannot Establish that Superintendent Austin's Statements Are Actionable and Caused Plaintiff's Alleged Injury ............... 17

        1.   The Statements at Issue Do Not Qualify Under the Stigma-Plus Test ............................................................................. 17

        2.   The Deprivation of Liberty and the Causation Requirements Cannot be Established ................................................... 20

    D.   Qualified Immunity Acts as a Complete Bar to All of Plaintiff's Section 1983 Claims Against the Administrators ........................ 21

    E.   Plaintiff's Punitive Damage Claim Against the Administrators Also Fails ....................................................................................... 24

V.   CONCLUSION ....................................................................................... 25

i

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – Case No. 5:24-cv-00909-NC

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 16, 22

*Baker v. Racansky*,
887 F.2d 183 (9th Cir. 1989) ........................................................................................ 22

*Blantz v. Cal. Dept. of Corrections & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ........................................................................................ 20

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
149 F.3d 971 (9th Cir. 1998) .............................................................................. 15, 22, 23

*Campanelli v. Bockrath*,
100 F.3d 1476 (9th Cir. 1996) ...................................................................................... 17

*Chaudhry v. Smith*,
2020 WL 869115 ........................................................................................................... 17

*Clay v. County of Contra Costa Bd. of Sups.*,
2014 WL 12691950 (N.D. Cal. 2013) .......................................................................... 17

*Davis v. Scherer*,
468 U.S. 183 (1984) ...................................................................................................... 17

*Doe v. White*,
440 F. Supp. 3d 1074 (N.D. Cal. 2020), aff'd, 859 F. App'x 76 (9th Cir. 2021) ................. 22

*Dubner v. City and Cnty. of S.F.*,
266 F.3d 959 (9th Cir. 2001) ........................................................................................ 25

*Easley v. Moore*,
2022 WL 16856080 (C.D. Cal. 2022) ........................................................................... 24

*Endy v. County of Los Angeles*,
975 F.3d 757 (9th Cir. 2020) ........................................................................................ 20

*Fayle v. Stapley*,
607 F.2d 858 (9th Cir. 1979) ........................................................................................ 16

*Frederickson v. Wong*,
2016 WL 3253831 (N.D. Cal. 2016) ............................................................................. 25

ii

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................................ 21

*Harper v. City of Los Angeles,*
    533 F.3d 1010 (9th Cir. 2008) ................................................................................ 20

*Iliya v. City of Sunnyvale,*
    2023 WL 12139866 (N.D. Cal. 2024) ..................................................................... 24

*Kissner v. Loma Prieta Joint Union Sch. Dist.,*
    2024 WL 347911 (N.D. Cal. 2024) ......................................................................... 23

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986) ................................................................................................ 14

*McAllister v. Los Angeles Unified Sch. Dist.,*
    216 Cal. App. 4th 1198 (2013) ............................................................................... 14

*Miller v. California,*
    355 F.3d 1172 (9th Cir. 2004) .......................................................................... 17, 20

*Mitchell v. Dupnik,*
    75 F.3d 517 (9th Cir. 1996) .................................................................................... 24

*Munoz v. Gipson,*
    2024 WL 1182860 (N.D. Cal. 2024) ....................................................................... 25

*Olivier v. Baca,*
    913 F.3d 852 (2019) ................................................................................................ 24

*Paul v. Davis,*
    424 U.S. 693 (1976) ................................................................................................ 22

*Rubio v. Allison,*
    2021 WL 3173295 (N.D. Cal. 2021) ....................................................................... 22

*Sherman v. Lake County Jail,*
    2021 WL 3773604 (N.D. Cal. 2021) ....................................................................... 16

*Sinaloa Lake Owners Ass'n v. City of Simi Valley,*
    70 F.3d 1095 (9th Cir. 1995) .................................................................................. 22

*Smith v. Wade,*
    461 U.S. 30 (1996) .................................................................................................. 25

*Taylor v. List,*
    880 F.2d 1040 (9th Cir. 1989) ................................................................................ 16

*Tuuamalemalo v. Greene,*
    946 F.3d 471 (9th Cir. 2019) .................................................................................. 22

iii

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

*Ulrich v. City & Cty. of San Francisco*,
    308 F.3d 968 (9th Cir. 2002)...................................................................... 17, 20

*White v. Pauly*,
    580 U.S. 72 (2017) ..................................................................................... 22

**Statutes**

28 U.S.C § 1983 ................................................................... 1-4, 14-17, 21, 24-25

California Child Abuse and Neglect Reporting Act....................................... 5

California Education Code Section 44010 ..................................................... 6

California Education Code Section 44940 .................................................. 5, 6

California Education Code Section 45034 .................................................. 7, 9

California Penal Code Section 11166 ............................................................ 5

California Public Records Act, Cal. Gov. Code §7920 *et seq.* ............... 13, 18

Federal Rule of Civil Procedure 56............................................... 1, 4, 13, 23

**Other Authorities**

U.S. Constitution, Fourteenth Amendment ...................................... 17, 20, 21

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on December 17, 2025 at 10:00 a.m., in Courtroom 5, 4th Floor, of the Federal District Court, located at 280 South 1st Street, San Jose, California, Defendants Don Austin and Trent Bahadursingh will and hereby do move this Court for summary judgment against Plaintiff Peter Colombo pursuant to Federal Rule of Civil Procedure 56 based upon this Notice, the accompanying Memorandum, the Declarations of Trent Bahadursingh and Alison K. Beanum, the Appendix of Exhibits, and any other matter this Court may consider.

## STATEMENT OF ISSUES

1.    Plaintiff's one remaining claim (First Claim under 28 U.S.C § 1983) against Defendants Don Austin and Trent Bahadursingh fails as a matter of law.

2.    Defendants Don Austin and Trent Bahadursingh are entitled to qualified immunity.

3.    Plaintiff's punitive damages claim against both Defendants fails as a matter of law.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF ARGUMENT AND ISSUES

In the nearly three years since this case was initially filed, Plaintiff Peter Colombo ("Plaintiff" or "Colombo") has "throw[n] a slew of alleged" claims against Palo Alto Unified School District ("District") officials "at the wall" to see if they "stick." (*See* Order (ECF 128) at 4:26-27.) All the while, Plaintiff has struggled to find any factual or legal basis to allege that Superintendent Don Austin and Deputy Superintendent Trent Bahadursingh ("Administrators") should be held financially responsible to Plaintiff following an allegation that their employer, the District, received in January 2022 that Plaintiff, a District PE teacher and coach, raped a middle school student while at a District school in 2001-2002. As a result, only a part of one claim (28 U.S.C. § 1983) against the Administrators has been permitted by the Court to advance beyond the pleadings stage.

Specifically, in March 2025, the Court ruled that the sole remaining issue against both Administrators is an alleged procedural due process violation as to Plaintiff's alleged property interest "in a position of the same nature and ranks as his tenured teaching rule," specifically whether his "current [2024-2025 school year] duties as alleged fall far outside the scope of the teaching position in which he acquired tenure." (*See id.* at 9:13-10:5, 12:10-12, 13:12-14, 23:17-18.) The

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1    Court also permitted a procedural due process claim based on an alleged stigma-plus liberty interest

2    to advance against Superintendent Austin.  (*Id.* at 17:2-3, 23:19-21.)  However, the Court flatly

3    rejected Plaintiff's claims in several respects, as detailed in Section IIA below.  (*See id.* at 5:4-11,

4    7:1-4,  8:7; 10:2-22, 11:3-9. 11:28-12:9, 15:4-7.)  Also, the Court recognized the utter tenuous nature

5    of Plaintiff's Section 1983 claims here: "The Court notes, however, that Plaintiff will have to present

6    facts better connecting each individual Defendant to the alleged violation of this property right

7    without due process to succeed on his Section 1983 claim on this basis."  (*See id.* at 13:14-17.)  Yet,

8    on the eve of trial, Plaintiff cannot present the facts that the Court has long required.  Plaintiff's

9    claim against the Administrators also fails for several additional reasons.

10    First, the Court dismissed with prejudice Plaintiff's Section 1983 claim against the

11    Administrators in their official capacity on the basis of sovereign immunity.  (*See* Order (ECF 68).)

12    Yet, contrary to the Court's Order, the caption and key allegations in Plaintiff's current pleading

13    continue to expressly name the Administrators in their official capacity.  Regardless of these

14    allegations, Plaintiff's Section 1983 claim against the Administrators in their official capacity is

15    subject to the Court's Order of dismissal with prejudice.

16    Second, Plaintiffs' Section 1983 claim against each Administrator "Individually" fails where

17    there has been no violation of Plaintiff's procedural due process rights by the Administrators.  Here,

18    there is no evidence that the Administrators acted to deprive Plaintiff of his property interest "in a

19    position of the same nature and ranks as his tenured teaching rule," as to his duties during the 2024-

20    2025 school year.  Moreover, the Administrators cannot be held liable for a Section 1983 violation

21    premised on *respondeat superior* liability for the conduct of others.  Furthermore, the stigma-plus

22    claim against Superintendent Austin fails where Plaintiff cannot prove that the statements at issue

23    were stigmatizing and false, accompanied by the deprivation of liberty and the actionable cause of

24    Plaintiff's claimed injury.

25    Third, the Administrators are plainly entitled to qualified immunity in the performance of

26    their discretionary functions where their conduct does not violate clearly established statutory or

27    constitutional rights of which a reasonable person would have known at the time.  This serves as a

28    complete bar to Plaintiff's Section 1983 claim against the Administrators in its entirety.

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

Finally, should any aspect of Plaintiff's Section 1983 claim survive, which it should not, Plaintiff's punitive damages claim against the Administrators should be dismissed.  The law will not permit a punitive damages claim against the Administrators in their official capacity.  Also, this claim against the Administrators as individuals is unsupported.  There is no evidence whatsoever of the requisite high degree of culpability on the part of the Administrators for this claim to proceed.

The Court should bring an end to the Administrators' protracted and wrongful involvement as parties to this lawsuit.  Plaintiff's Section 1983 claim against the Administrators has all along been patently tenuous.  Now, on the eve of trial, and viewed in light of the utter lack of evidence supporting Plaintiff's claim and the complete bar that immunity confers, Plaintiff's narrow remaining claim against the Administrators fails as a matter of law.  Summary judgment should be entered in favor of the Administrators forthwith.

## II.  STATEMENT OF FACTS

### A.  Procedural Background About Plaintiff's Lawsuit

On February 15, 2024, Plaintiff filed his Complaint (ECF 1) in this case,  alleging nine claims against Superintendent Austin and others.  On July 10, 2024, Plaintiff filed a First Amended Complaint (ECF 37), adding Deputy Superintendent Bahadursingh as a defendant, and alleging three claims – violations of procedural due process and substantive due process, and discrimination – against all Defendants.  On September 16, 2024, the Court granted Defendants' motion to dismiss, with leave to amend, stating in relevant part: "[T]he Court dismisses Plaintiff's 42 U.S.C. § 1983 claims against the District and individual Defendants in their official capacities with prejudice on the basis of sovereign immunity, and dismisses the remainder of the first amended complaint with leave to amend for failure to state a claim."  (Order (ECF 68) at 1:22-26.)  The Court also found "Plaintiff's First Amended Complaint, on its face, lacks sufficient factual allegations to support its generalized legal conclusion," "presents numerous unsupported legal conclusions" and "many of Plaintiff's allegations fail to tie back to alleged actions by Defendants."  (*Id.* at 11:28-13:15.)

On October 8, 2024, Plaintiff filed a Second Amended Complaint (ECF 86), which, as against the Administrators, alleged a Section 1983 claim "Against Each Individual Defendant In Their Individual Capacities," as well as two discrimination claims.  On December 12, 2024, the

3

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

Court ruled that all claims against the Administrators failed, but the Court granted Plaintiff leave to amend the Section 1983 claim. (Order (ECF 110) at 19:12-17.) The Court found Plaintiff had alleged due process violations "based on a slew of liberty and/or property interests," including "freedom from fabrication and/or suppression of evidence," "the right to a fair trial," "continued employment in a position or profession of one's choosing," "violations of the California Public Records Act (PRA), Cal. Gov. Code §7920 *et seq.*, and Title IX." (*Id.* at 4:24-5:1.) The Court found that, as to all of these alleged violations, Plaintiff failed "at the first step of analysis" by failing to identify the deprivation of a protected liberty or property right. (*Id.*. at 5:1-3.) The Court held that "Plaintiff failed to plausibly allege a due process right to evidence and a fair trial," "to continued employment or occupational liberty," "to PRA protections or reputation," and "to Title IX Protections." (*Id.* at 5:4-5, 7:9-10, 9:3-4.) The Court also found that "Plaintiff's allegations fall short of this high bar to establish a violation of his occupational liberty," and that "[w]ithout more, Plaintiff's allegations that Defendants have destroyed his teaching career and foreclosed him from pursuing the entire profession are conclusory." (*Id.* at 8:1-7.) The Court also held, "Plaintiff cannot state a claim under Title VII or FEHA against the Individual Defendants here." (*Id.* at 10:28-11:1.)

On January 6, 2025, Plaintiff filed a Third Amended Complaint, alleging against the Administrators solely a Section 1983 claim for procedural and substantive due process, as well as other claims against the District. (Declaration of Alison Beanum ("Beanum Decl.") at 2:9-11, ECF 113, Exhibit P.) On March 27, 2025, the Court ruled that the sole remaining issue against both Administrators is an alleged procedural due process violation as to Plaintiff's alleged property interest "in a position of the same nature and ranks as his tenured teaching rule," specifically whether his "duties [during the 2024-2025 school year] as alleged fall far outside the scope of the teaching position in which he acquired tenure." (*See id.*, ECF 128, Exhibit Q, at 9:13-10:5, 12:10-12, 13:12-14, 23:17-18.) The Court also ruled that a procedural due process claim against Superintendent Austin may proceed for Plaintiff's alleged liberty interest under a stigma-plus theory in connection with certain statements. (*Id.* at 17:2-3, 23:19-21.) The Court said, "As before, Plaintiff throws a slew of alleged due process rights at the wall, but this time some stick;" notably, however, the Court expressly *rejected* Plaintiff's claims against the Administrators in several respects, including the

4

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1    alleged "right to evidence," "concealed evidence," "duty to investigate and gather evidence," "right

2    to a specific PE teaching position," "breach of contract," "constructive discharge," "liberty interest

3    in his chosen profession of teaching," "District terminated PE positions," "his services have been

4    entirely terminated," "employment he could secure outside of the District would negatively impact

5    his seniority and salary," "speculative future injury," and "wrongly disclosed his entire personnel

6    file under the California Public Records Act," amongst other claims.  (*See id.* at 4:26-27, 5:4-11,

7    7:1-4, 8:4, 10:2-22, 11:2-9, 11:28-12:9, 15:4-7.)

8    **B.    General Background Regarding the District and the Administrators**

9        The District currently operates eighteen schools (twelve elementary, three middle, and

10   three high schools) serving over 10,200 students, with the assistance of about 1,300 employees.

11   (Declaration of Trent Bahadursingh ("Bahadursingh Decl.") at 7:15-16.)  Defendant Don Austin has

12   served as the District Superintendent since July 2018.   (Beanum Decl. at 2:22-23, Exhibit U,

13   Deposition of Don Austin ("Austin Depo.") at 12:1-9.)  Defendant Trent Bahadursingh has served

14   as the District Deputy Superintendent since February 2021.  (Bahadursingh Decl. at 2:4-5.)

15   **C.    General Background About the Claim Involving Plaintiff**

16       On January 28, 2022, the District received an email from the husband of a former female

17   District student, Jane Doe, alleging that Colombo, a District employee, had raped Jane Doe in the

18   locker room of Greene Middle School during the 2001-2002 school year.  (Bahadursingh Decl.. at

19   2:13-18, Exhibit A.)  Colombo was a District teacher and coach when this allegation was presented

20   to the District (and he remains a teacher in good standing with the District).  (*Id.* at 2:14, 3:13-14.)

21       In accordance with the California Child Abuse and Neglect Reporting Act ("CANRA,"

22   California Penal Code §11166(a)), the District's General Counsel at the time promptly reported the

23   allegation to local law enforcement.  (*Id.* at 2:13-21.)  On January 31, 2022, the District notified

24   Plaintiff that he was being placed on paid administrative leave effective that date, with the

25   notification letter stating that the leave is "not intended to be disciplinary" and "is intended to avoid

26   any undue disruption at Greene Middle School."  (*Id.* at 2:22-26, Exhibit B.)

27       On June 15, 2022, following an investigation by the Palo Alto Police Department ("PAPD")

28   and the Santa Clara County District Attorney's Office, Plaintiff was arrested, charged with felony

aggravated sexual assault of a child, and booked into the Santa Clara County Main Jail. (*Id.* at 2:27-3:1.) The PAPD issued two news releases on June 15-16, 2022 regarding Plaintiff's arrest, which published Plaintiff's photograph, included details of the report of sexual assault in January 2022, and said that "District administrators immediately placed the teacher on administrative leave," that "the investigation revealed … that the victim … had been sexually assaulted by her physical education teacher in the locker room at the former Jordan Middle School … while she was in sixth grade (the 2001-2002 school year)," and noted that the charges were filed by the District Attorney and the warrant for arrest was signed by the Santa Clara Superior Court judge on June 14, 2022. (Beanum Decl. at 6:14-20, Exhibit AA.)

On June 16, 2022, the District notified Plaintiff that due to his arrest and the charges against him, the District was legally compelled by Sections 45304(b), 44940, and 44010 of the California Education Code to place him on an unpaid leave of absence, to continue until ten days after the date of entry of judgment in the criminal proceeding. (Bahadursingh Decl.. at 3:2-7, Exhibit C.) In accordance with California Education Code Section 44940(d)(1), the District also reported Plaintiff's arrest and charging to the California Commission on Teacher Credentialing ("CTC") the same day. (*Id.* at 3:8-13, Exhibit D.) Independent of any further action by the District, the CTC (an independent state agency) suspended Plaintiff's teaching credential pursuant to California Education Code Section 44940(d)(2). (*Id.*)

On April 4, 2022, during the pendency of the law enforcement investigation of Plaintiff and prior to charges being brought, General Counsel Vishakan responded via email to an inquiry from investigating PAPD Detective Yolanda Franco-Clausen, stating that no records related to Jane Doe had been located in the District's digital databases with the exception of a "yearbook which shows the student attended Jordan Middle." (*Id.* at 3:14-19, Exhibit E.) After being apprised of General Counsel Vishakan's communication, Deputy Superintendent Bahadursingh performed a search of the District's physical repository of student records pending digitization, which are in a District warehouse, and located the District's copy of the student victim's file. (*Id.* at 3:20-26.) The file did not contain the student's "grade report for 6th grade," nor did it contain any information from which a conclusion could be drawn that Plaintiff was or was not the student's PE teacher, or whether

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

Plaintiff was at a different school during the class period the student alleged the rape occurred. (*Id*.) This file was subsequently provided to law enforcement. (*Id*.)

On March 21, 2023, the criminal preliminary hearing was held, and the Santa Clara County Superior Court judge found probable cause to hold Colombo to answer for the charge of one count of aggravated sexual assault (rape) of a minor by force or fear. On April 3, 2023, Plaintiff was arraigned, and bail in the amount of $250,000 was set by the Court.

About a month after the preliminary hearing, the Santa Clara District Attorney's office announced that it intended to dismiss the criminal case against Plaintiff, which dismissal occurred in May 2023. (*Id*. at 3:27-28.) On May 24, 2023, the District notified Plaintiff that it had been informed that the CTC had reinstated Plaintiff's teaching credential effective May 2, 2023, given that the charges leading to his mandatory leave of absence offences were dropped, and that he was being returned to paid administrative leave, pending an internal investigation. (*Id*. at 4:2-6, Exhibit F.) However, the District subsequently received notification from the CTC that Plaintiff's credential had expired, and that the CTC had not approved its renewal. (*Id*. at 4:7-8.) Accordingly, on August 4, 2023, the District advised Plaintiff of the notification from the CTC that, as a result, he did not at that time possess a valid teaching credential; that although Plaintiff had informed the District of his submission of a renewal application on May 16, 2023, the status of his renewal application was listed as "Notice of Delay List;" that the District could not lawfully issue a pay warrant to a certificated employee without a valid credential in accordance with Education Code Section 45034; and that he was being returned to unpaid leave effective August 7, 2023, pending the renewal of his credential. (*Id*. at 4:7-16, Exhibit G.) The District was not involved in Plaintiff's application being placed on the "Notice of Delay List." (*Id*.) Ultimately, Plaintiff's teaching credential was reinstated effective October 20, 2023, and on November 1, 2023, the District notified Plaintiff that he was being returned to paid administrative leave effective October 23, 2023. (*Id*. at 4:17-20, Exhibit H.) Plaintiff's salary and benefits which could not be paid during the pendency of his criminal proceeding were subsequently fully reimbursed by the District. (*Id*. at 7:1-6.)

The 2022-2023 school year ended on June 1, 2023, and the 2023-2024 school year began on August 9, 2024. (*Id*. at 4:6, 4:22-23.) Once the District returned from its summer recess, it initiated

7

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

an independent personnel investigation into the allegations of rape against Plaintiff. (*Id*. at 4:21-5:4.) The District did not initiate its independent investigation prior to this date in order not to interfere with the criminal investigation and Plaintiff's pending criminal proceeding. (*Id*.) This investigation was not initiated pursuant to any of the District's internal complaint procedures, board policies, or administrative regulations because none specifically applied to this situation. (*Id.*) Rather, the District was compelled to initiate the investigation due to the gravity of the allegations against Plaintiff, regardless of the outcome of his criminal proceedings, and further given the District's potential exposure to civil liability for failing to perform an independent investigation of the allegations. (*Id*.) The scope of the investigation was expressly limited to the rape allegation against Plaintiff, which was communicated to him prior to his interview. (*Id*., Exhibit I.)

The investigation was overseen by the District's outside legal counsel, who retained the services of an independent third-party investigator, Nicole Miller of Miller & Associates. (*Id*. at 5:5-10.) The District's investigation of Plaintiff concluded in Spring 2024. (*Id.* at 5:25.) Once complete, Plaintiff was notified of the completion of the investigation; that the investigation was exclusively regarding potential misconduct based on information received by the District from an anonymous source regarding a report of an alleged sexual assault of a student by Plaintiff on District property during the 2001-2002 school year; and that the investigator "determined that the allegation was not substantiated due to a lack of evidence, including but not limited to, the absence of a direct statement from the alleged victim to support the claim." (*Id* at 5:25-6:4, Exhibit L.)

On May 29, 2024, Plaintiff's counsel sent a letter to the District's General Counsel in which he stated that "it would be unconscionable, if not criminal, to attempt to assign [Plaintiff] to a school site without completely dispelling the false light created to the public by PAUSD, and as again intimated through the recent 'Investigation Report,'" which the District understood to constitute Plaintiff's refusal to accept an assignment from the District at that time. (*Id.,* at 6:5-10, Exhibit M.)

Subsequently, on May 30, 2024, Plaintiff's counsel sent another letter to the District's general counsel in which he stated that "Colombo will now need to work until age 72," and that Plaintiff "will be ready to report back to his PE teaching assignment at Greene Middle School beginning with District Day on August 12, 2024 and to resume his baseball coaching role at Paly." (*Id.* at 6:7-17, Exhibit N.)

However, the letter stated Plaintiff's return would be contingent on the District meeting several demands by Plaintiff, including that the District make a "public announcement" inclusive of specified factual contentions proffered by counsel; that the District provide Plaintiff with a "security detail" to "accompany" him on campus; and that Plaintiff be provided with "a much heightened level of mental health support." (*Id.* at 6:11-21.)  The District understood this communication to constitute Plaintiff's refusal to accept an assignment from the District absent the District meeting Plaintiff's demands.  (*Id.*)

Nevertheless, with the exception of the time period from August 4, 2023, to October 23, 2023, during which time Plaintiff was without a valid teaching credential and the District could not issue a pay warrant to him in accordance with Education Code Section 45034, Plaintiff has received, and is continuing to receive, his full salary and health and welfare benefits.  (*Id.* at 7:1-6.)  This is inclusive of the District's full reimbursement of Plaintiff's salary and benefits which could not be paid during the pendency of his criminal proceeding when he was on mandatory unpaid leave.  (*Id.*)  Plaintiff has no legal claim of entitlement to summer school and coaching stipends he alleges he would have, and did not, earn during the time period that he has been on leave from the District, as these assignments are discretionary.  (*Id.* at 7:10-12.)  Finally, Plaintiff has no legal entitlement to be returned to his particular prior assignment.  (*Id.* at 7:7-9.)  Rather, the District retains the right to assign Plaintiff to an assignment based on what is in the "best interest" of the District.  (*Id.*)

Deposition testimony in this case has confirmed the lack of involvement by the Administrators in several aspects which were instead handled by the District's attorneys or others. For example, Superintendent Austin testified that he had: (a) no involvement in the District's investigation of the matter involving Plaintiff or in running that investigation; (b) no involvement in the timing of the District investigation after the police submitted its report to the District Attorney; (c) no personal knowledge about communications or meetings with Plaintiff; and (d) very little information about the claim other than as told by the General Counsel, who reported to the Board. (Beanum Decl., Exhibit U, Austin Depo. at 25:19-26:20, 27:20-28:10, 43:7-44:8, 50:6-13, 65:11-66:9, 75:5-13, 76:3-9, 77:14-19.)  Also, Deputy Superintendent Bahadursingh had: (a) no involvement in handling the claim involving Plaintiff while the District General Counsel was doing so; and (b) no involvement in the District's investigation, which was handled by the District's

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1  outside counsel. (*Id.* at 2:20-21, Exhibit T, Deposition of Trent Bahadursingh ("Bahadursingh

2  Depo.") at 58:10-24, 59:25-60:16, 62:13-18, 82:1-13, 188:2-16.)

### D.    Plaintiff's TOSA Position

4       In his Section 1983 claim against the Administrators, Plaintiff complained about his Teacher

5  on Special Assignment ("TOSA") position for the 2024-2025 school year. He alleged: "Defendants

6  … attempt[ed] to force Mr. Colombo, a tenured teacher with high seniority as a Middle School PE

7  teacher in the District, out of his teaching career and into an artificial Teacher on Special Assignment

8  ("TOSA") position he didn't apply for, that is not an administrative position and which written job

9  duties do not match with his 27 years of PE teaching experience. His assigned daily tasks as a TOSA

10  are typically given to classified positions in maintenance, and not to persons in the credentialed

11  teaching profession." (*Id.*, Exhibit P, ECF 113 at 20:5-10.) Plaintiff further alleged: Plaintiff's

12  "supervisor does not allow him to engage in any of [] 13 functions related to the profession of a

13  credentialed teacher." "[T]he actual duties assigned by his supervisor that do not involve use of his

14  credential and are more akin to a classified position." (*Id.* at 22:14-16, 29:12-16).

15       When Plaintiff was placed on leave in January 2022, an interim teacher was put in place for

16  his classes for the remainder of the 2021-2022 school year. (Bahadursingh Decl. at 7:17-23.) Due

17  to the criminal case, Plaintiff's leave extended through the 2022-2023 school year, into May 2023.

18  (*Id.*) For the 2022-2023 school year, due to declining enrollment, Greene Middle School did not

19  offer the same number of PE classes and only had 2, not 3, male PE teachers at the school site for

20  that school year, and those 2 male PE teachers had been previously assigned to that school site. (*Id.*

21  *See also,* Beanum Decl., (*Id.*, Exhibit S, Deposition of Peter Colombo ("Colombo Depo.") at 358:1

22  – 359:19.) Therefore, for the 2022-2023 through the 2024-2025 school years, Plaintiff's prior

23  assignment at Greene Middle School was not available. (Bahadursingh Decl. at 7:17-23.)

24       For the 2024-2025 school year, when there was no teaching position available, the decision

25  to place Plaintiff in a TOSA position, which is a certificated teaching position, for that one year was

26  addressed by a team, which included legal counsel. (Beanum Decl., Exhibit T, Bahadursingh Depo.

27  at 274:11-19.) Plaintiff's TOSA position did not negatively impact Plaintiff's seniority, tenure or

28  compensation at the District. (*See id.* at 258:2-259:21.) In any event, Plaintiff's return to a TOSA

10

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1  position at the District was not decided by the Administrators. (*Id.* at 274:11-19.) Also, the

2  Administrators did not serve as Plaintiff's direct supervisors at the District; they did not assign day-

3  to-day duties to Plaintiff in that position; they did not supervise Plaintiff's work; and they were not

4  involved in his evaluation. (*See* Bahadursingh Decl. at 7:25-28.)

5  For the 2025-2026 school year, Plaintiff has served (and is currently serving) in a position

6  teaching PE at a District middle school which he applied for. (*Id.*, Exhibit S, Colombo Depo. at

7  340:19-20; Exhibit U, Austin Depo. at 92:8-15.) Plaintiff remains a tenured teacher in good standing

8  with the District. (Bahadursingh Decl. at 7:13-14.)

9  In addition, Plaintiff's responses (dated June 6, 2025) to Defendants' requests for admission

10  for evidence that the Administrators' engaged in affirmative acts depriving Plaintiff of due process

11  provide no facts about the TOSA position, and merely allege "Defendant… failed to properly

12  account for Plaintiff's state-defined property rights in his tenured and senior, middle school PE

13  teacher position when making assignments for 2024-2025… which was his ultimate responsibility."

14  (Beanum Decl., 2:15-17, Exhibit R, p. 90-100, 107-118, 98:22-28, 116:16-20.) Plaintiff's responses

15  also raise a whole host of other matters that the Court previously rejected in its dismissal Orders.

16  (*Compare id.* dated June 6, 2025 with Order (ECF 128) dated March 27, 2025).

17  **E.    Statements by Superintendent Austin**

18  Plaintiff's Third Amended Complaint (ECF 113) complains about Superintendent Austin's

19  statements, specifically one student's "impression" and five articles. Meanwhile, Plaintiff's

20  responses to Defendants' requests for admission for evidence merely state that Superintendent

21  Austin made "improper derogatory comments about Plaintiff to the media as set forth in the Third

22  Amended Complaint." (Beanum Decl., Exhibit R, 116:4-5, 39-44.)

23  As for an unnamed student's "impression," Plaintiff alleged: "At least one student, who has

24  gone on record, to recount Mr. Austin's comments and meeting with students, *was left with the*

25  *impression* that Plaintiff is guilty and the only reason the criminal charges were dropped is because

26  evidence was difficult to find." (*Id.*, Exhibit P, ECF 113 at 9:2-5 (emphasis added).)

27  In addition, Plaintiff took issue with five newspaper articles, although only three refer to

28  Plaintiff and include statements by Superintendent Austin. (*See id.* at 6:10-26, 7:7-16, 8:16-24). A

11

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1    December 2024 article states Superintendent Austin was not interviewed, and another article does

2    not mention or relate to Plaintiff at all.  (*Id.,* Exhibits Y & Z.)  The remaining three articles, published

3    in February 2023, March 2023, and April 2023, attribute certain statements to Superintendent

4    Austin.  (*Id.*, Exhibit V (February 17, 2023, "Unfit to Teach?", Palo Alto Weekly); Exhibit W (April

5    25, 2023, "Criminal sex-assault charge to be dropped against Palo Alto teacher Peter Colombo,"

6    Palo Alto Online); Exhibit X (May 15, 2023, "DA dropping charges, but district plans to investigate

7    Colombo," The Paly Voice).)

8         The February 2023 article titled "Unfit to Teach" discusses information about Plaintiff from

9    public records from the 1980s through 2021, including prior criminal convictions, the CTC's public

10   statements, parents' complaints and other matters.  This article was not sponsored by the District or

11   published at its request.  (*Id.* at 243:14-244:11.)  The article discusses the CTC's " 'public reproval'

12   in 1997, which serves as a public warning of misconduct" due to convictions, including "a 1988

13   misdemeanor trespassing charge ...., according to the teacher credentialing commission's summary

14   of his criminal cases;" a 1988 "no contest plea" "resulting in a misdemeanor vandalism and

15   misdemeanor disorderly conduct under the influence of alcohol or drugs, the summary of his

16   criminal cases states;" and a 1990 conviction "after pleading no contest to misdemeanor charges of

17   DUI and hit and run."  (*Id.* at Exhibit V.)  It also says that the CTC issued the public warning in

18   June 1997, and the following year, PAUSD hired Colombo, but it is "unclear what the district would

19   have known before hiring Colombo in the 1990s."  (*Id.*)  It mentions that the CTC "in 1998 provided

20   an "all points bulletin" to superintendents that listed adverse actions the commission took against

21   educators, a representative from the commission told the Weekly."  (*Id.*)  It states that in January

22   2004, Colombo "pleaded guilty and was convicted of misdemeanor DUI, court records show."  (*Id.*)

23   It says, "In October 2005, the Commission on Teacher Credentialing wrote Colombo to notify him

24   that the Committee of Credentials had found probable cause to recommend the suspension of his

25   teaching credential for 60 days," and "[t]he basis for the suspension recommendation is not publicly

26   known" according to "the documents that the commission released to the Weekly."  (*Id.*)  It states

27   that "Colombo appealed the 2005 suspension recommendation, requesting an administrative

28   hearing, the commission confirmed."  (*Id.*)  It says, "After the administrative hearing, Colombo and

12

the commission agreed on a Consent Determination and Order in February 2007, the commission representative told the Weekly.  That agreement placed him on a four-year probationary period, citing his multiple convictions, including the 2004 DUI." (*Id.*)  The article also discusses what it calls "multiple complaints" by parents during the 2020-2021 school year. (*Id.*)  It includes a separate section on the Jane Doe matter.  Plaintiff has conceded the prior criminal convictions and the CTC suspension.  (*Id.*, Exhibit S, Colombo Depo. at 245:1-23.)  Plaintiff has also conceded that he no longer pursues claims in this case regarding the disclosures in response to the California Public Records Act ("CPRA") requests, including any purported resulting damages.  (*Id.*, Exhibit S, Colombo Depo. at 230:4-232:7.)

Plaintiff complains about a partial quote by Superintendent Austin (Exhibit P, ECF 113 at 6:6-9), but the May 2023 article includes the full quote including the underlined text that Plaintiff omitted in his pleading: "The day the allegations came forward, Mr. Colombo was removed from his teaching position on paid administrative leave, for the protection of students <u>and for the protection of the individual with the allegations against them</u>." (*Id.*, Exhibit X (emphasis added).)  The PAPD news release in June 2022, nine months earlier, had said: "District administrators immediately placed the teacher on administrative leave," "The investigation revealed that the victim … had been sexually assaulted by her physical education teacher," which resulted in the "felony charge of aggravated sexual assault of a child." (*Id.* at Exhibit AA.)  Plaintiff also alleged in his Third Amended Complaint that the January 2022 allegation of rape of a former student in 2001-2002 was "an allegation of sexual assault posing a potential threat to student safety." (*Id.*, Exhibit P at 44:20-22.)

Superintendent Austin testified that he was quoted out of context by the media at times, and in any case, he did not make statements that implied Plaintiff was guilty. (*Id.*, Exhibit U, Austin Depo. at 47:21-48:3, 72:3-11.)

## III.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the movant meets this requirement,

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1  the burden shifts to the party resisting the motion to set forth specific facts showing that there is a

2  genuine issue for trial. *See id.* Therefore, a non-moving party must cross a significant evidentiary

3  threshold to successfully resist a motion for summary judgment. *See id.* at 252 ("The mere existence

4  of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be

5  evidence on which the jury could reasonably find for the plaintiff."). Where the record taken as a

6  whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

7  issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

8  **IV.    ARGUMENT**

9      **A.    Plaintiff's Claim Against the Administrators in Their Official Capacity**

10          **is Subject to the Court's Order of Dismissal Based on Sovereign**

11          **Immunity**

12      The Court has already ruled that Plaintiff's Section 1983 claim against the Administrators

13  in their official capacity is dismissed with prejudice on the basis of sovereign immunity. (ECF 68

14  at 1:22-26.) While the Third Amended Complaint alleges in the caption and the First Claim that

15  Administrators are sued individually (Exhibit P, ECF 113, at caption and 4:5), the caption continues

16  to state that the Administrators are also sued in their official capacity: "Individually and as

17  Superintendent for PAUSD" and "Individually and as Deputy Superintendent and Chief of Staff for

18  PAUSD." (*Id.* at caption). The Third Amended Complaint also alleges that the Administrators are

19  parties by reference to them solely as the "Superintendent at the District" and "Deputy

20  Superintendent and Chief of Staff." (*Id.* at 1:28, 2:6-8.) It also alleges that the Administrators

21  "collaborated together in each of the actions taken against Mr. Colombo in their

22  supervisorial/managerial positions for Defendant District." (*Id.* at 2:23-25.)

23      Where the caption lists the title of the school official, and the allegations are specific to the

24  school official related to his official duties, the school official is sued in an official, rather than

25  individual capacity. *See McAllister v. Los Angeles Unified Sch. Dist.*, 216 Cal. App. 4th 1198, 1208

26  (2013) (Concluding that despite including the term "individual," the clear intent was to target the

27  superintendent in his official capacity, and the proposed amendment would be "a mere pleading

28  device"). As the Third Amended Complaint continues to target the Administrators in their official

14

1  capacity, the one remaining claim against them is subject to the Court's Order of dismissal with

2  prejudice on the basis of sovereign immunity (Order, ECF 68).

### B.    Plaintiff Cannot Demonstrate that Each Administrator Deprived Plaintiff of Due Process in Connection With the Limited Property Interest at Issue

6  Plaintiff has not presented a shred of evidence that each Administrator, in an individual

7  capacity, deprived Plaintiff of his due process rights as to Plaintiff's alleged property interest "in a

8  position of the same nature and ranks as his tenured teaching rule," specifically whether his "current

9  duties [during the 2024-2025 school year] as alleged fall far outside the scope of the teaching

10  position in which he acquired tenure." (*See* Exhibit Q, ECF 128 at 9:12-13, 10:4-5.)

11  To state a procedural due process claim, a plaintiff must establish "(1) a deprivation of a

12  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

13  protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

14  1998). Also, this Court has expressly recognized that: "Plaintiff will have to present facts better

15  connecting each individual Defendant to the alleged violation of this property right without due

16  process to succeed on his Section 1983 claim on this basis." (Exhibit Q, ECF 128 at 13:14-17).

17  Plaintiff cannot present such facts, and his Section 1983 claim alleging a property right fails.

18  Here, Plaintiff purports to hold the Administrators responsible as individuals for violating

19  his property rights in connection with the TOSA assignment, but he cannot support this with any

20  evidence. Instead, the evidence shows that during the criminal investigation and case, Plaintiff was

21  on leave from the District from January 2022 into May 2023, and due to declining enrollment, a

22  male PE teacher position was not offered at Green Middle School for the 2022-23 through 2024-

23  2025 school years. (Bahadursingh Decl. at 7:17-23; Beanum Decl., Exhibit S, Colombo Depo. at

24  358:1 – 359:19) The evidence also shows that when there was no teaching position available for

25  the 2024-2025 school year, the decision to place Plaintiff in the TOSA position for that one year

26  was addressed by a team, which included legal counsel. (Beanum Decl., Exhibit T, Bahadursingh

27  Depo. at 274:11-19.) The TOSA position for 2024-2025 was in the same job classification as a

28  teacher, continuing to build seniority and tenure. (*Id.* at 259:1-21.) In addition, the evidence shows

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1   that the Administrators did not serve as Plaintiff's direct supervisors at the District; they did not

2   assign day-to-day duties to Plaintiff in that position; they did not supervise Plaintiff's work; and

3   they were not involved in his evaluation.  (Bahadursingh Decl. at 7:25-28.)  For the 2025-2026

4   school year, Plaintiff was selected for a PE teaching position at Fletcher Middle School that he

5   applied for.  (Beanum Decl., Exhibit U, Austin Depo. at 92:8-15.)

6        Because Section 1983 does not provide for vicarious liability, an individual's liability under

7   Section 1983 arises only if he "personally participated" in the alleged constitutional deprivation.

8   *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989)*; Ortez v. Washington* Co., 88 F.3d 804, 809 (9th

9   Cir. 1996).  A supervisor is only liable for constitutional violations of his subordinates if the

10  supervisor participated in or directed the violations, or knew of the violations and failed to act to

11  prevent them.  There is no *respondeat superior* liability under section 1983.  *Id.*  That is, an official

12  can only be liable under Section 1983 "for his or her own misconduct."  *Ashcroft v. Iqbal*, 556 U.S.

13  662, 677 (2009).  Furthermore, "when a named defendant holds a supervisory position, the causal

14  link between him and the claimed constitutional violation must be specifically alleged."  *Sherman*

15  *v. Lake County Jail*, 2021 WL 3773604, *2 (N.D. Cal. 2021), citing *Fayle v. Stapley*, 607 F.2d 858,

16  862 (9th Cir. 1979) (Alleged liability against Department director based on position and supervisory

17  power over the entity was insufficient).  "Vague and conclusory allegations concerning the

18  involvement of supervisory personnel in civil rights violations are not sufficient."  *Id.* at *2 (On this

19  claim, "Plaintiff should not refer to the defendants as a group (e.g. "the defendants" or "they")").

20  Moreover, on summary judgment, Plaintiff must do far more than allege as to each individual

21  defendant (which he has not), he must prove as to each individual defendant (which he cannot).

22       Here, Plaintiff baldly alleged that "Defendants" "attempt[ed] to force" Plaintiff "out of his

23  teaching career and into" a TOSA position, and Plaintiff's "supervisor" who is not named "does not

24  allow him to engage in any of these 13 functions related to the profession of a credentialed teacher."

25  (Beanum Decl., Exhibit P, 20:5-10, 22:14-16.)  In opposing summary judgment, Plaintiff must

26  present evidence specific to each Administrator, connecting each to the TOSA assignment and the

27  duties assigned by Plaintiff's "supervisor" in that position.  Plaintiff's claim here instead amounts

28  to vague, conclusory allegations that try to establish a basis by which a group of individual

16

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1    defendants can be liable for a constitutional violation committed by someone else.  This the law will

2    not permit.

3      Because Plaintiff cannot establish the alleged constitutional violation and that each

4    Administrator individually and personally participated, directed or knew and failed to act as to that,

5    there is no basis under Section 1983 for each Administrator to be liable.  Accordingly, summary

6    judgment on Plaintiff's Section 1983 claim based on an alleged property interest should be granted.

7        **C.** **Plaintiff Cannot Establish that Superintendent Austin's Statements Are**

8         **Actionable and Caused Plaintiff's Alleged Injury**

9      Plaintiff's stigma-plus claim against Superintendent Austin also fails because Plaintiff

10   cannot demonstrate that the statements at issue are stigmatizing and false, the claimed stigma was

11   accompanied by the deprivation of liberty, and caused Plaintiff's claimed injury.

12     The Supreme Court has stated that damage to reputation—without more—is insufficient to

13   implicate the Fourteenth Amendment's Due Process Clause, *see Paul v. Davis*, 424 U.S. 693, 706,

14   (1976), and a "stigma-plus" due process claim requires that plaintiff prove reputational harm

15   "accompanied by some additional deprivation of liberty or property," *Miller v. California*, 355 F.3d

16   1172, 1178 (9th Cir. 2004).  Under the stigma-plus test, "a plaintiff must show" (1) "the public

17   disclosure of a stigmatizing statement by the government;" (2) "the accuracy of which is contested;"

18   (3) "*plus* the denial of 'some more tangible interest[ ] such as employment'."  *Ulrich v. City & Cty.*

19   *of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002), quoting *Paul, supra*, 424 U.S. at 701.

20       **1.** **The Statements at Issue Do Not Qualify Under the Stigma-Plus**

21        **Test**

22     In order to prevail on the stigma-plus claim, "plaintiff[] must prove that the defendants'

23   statements were substantially false."  *Chaudhry v. Smith,* 2020 WL 869115, *6 (E.D. Cal. 2020,

24   citing *Campanelli v. Bockrath*, 100 F.3d 1476, 1484 (9th Cir. 1996).  *See also Clay v. County of*

25   *Contra Costa Bd. of Sups.*, 2014 WL 12691950 *1 (N.D. Cal. 2013) ("[P]laintiff must allege facts

26   showing that there was factually false information about him" and "that the false information

27   satisfied the "stigma-plus" test.")  Plaintiff cannot prove such for the statements at issue here.

28   / / /

In his discovery responses, Plaintiff pointed solely to the statements alleged in his Third Amended Complaint as the basis for his stigma-plus claim against Superintendent Austin. (Exhibit R, 116:4-5, 39-44.) In the Third Amended Complaint, Plaintiff alleged that a student's "impressions" and five newspaper articles violated Plaintiff's stigma-plus due process rights. (Exhibit P, ECF 113 at 6:6-26.) However, an unnamed student's "impressions" are plainly not statements by Superintendent Austin. Also, one article does not relate at all to Plaintiff, and another article dated December 1, 2024 says Superintendent Austin was not interviewed. (*See* Exhibits Y & Z.) Those three aspects cannot be the basis of a stigma-plus claim against Superintendent Austin.

Plaintiff also pointed to three articles, published by the media in February 2023, April 2023 and May 2023 respectively (Exhibits V, W & X); all were published well before the commencement of the District's investigation during the Fall of 2023. In fact, the May 2023 article states: "Austin said the scope of the district investigation has not been determined yet." (Exhibit X.)

Also, the articles include substantial information from public records. One article dated February 2023, which the media titled "Unfit to Teach?," discussed the public record of Plaintiff's prior criminal convictions and the CTC's publications about Plaintiff, based on documents received in response to CPRA requests to the District and CTC. Here, the Court already ruled that Plaintiff's allegations about the CPRA requests to the District are "insufficient to state a due process claim" in this case. (*See* Exhibit Q, ECF 128 at 15:4-7.) Moreover, Plaintiff has since conceded that he no longer pursues claims in this case regarding the disclosures in response to the CPRA requests, including any purported resulting damages. (*Id.*, Exhibit S, Colombo Depo. at 230:4-232:7.) Also, this article was published one year after the PAPD press release which named Colombo, published his photograph, and described the rape allegation, the felony charge filed by the District Attorney and the warrant signed by the Superior Court Judge. Any claimed "stigma" for Plaintiff in connection with these matters have nothing whatsoever to do with Superintendent Austin.

Furthermore, Plaintiff's Third Amended Complaint includes inaccurate, incomplete, and/or misleading quotes from the articles. For example, Plaintiff alleged a partial statement from the February 2023 article: "There is a point to where there's enough of a pattern of behavior where some people should not have the right of working with students" (Exhibit Q, ECF 128 at ¶ 43, 6:10-13).

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

18

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

The complete quote and its placement in the article show that it is a general opinion about other concerns, and not anything about Plaintiff's guilt in the Jane Doe matter.  (*See* Exhibit V.)  The full quote from the article (Exhibit V) is:

> "Selecting and retaining the people that work with your children is the most important job that we do in the school district," Austin said. "There's a point to where there's enough of a pattern of behavior where some people should not have that right of working with students."

Plaintiff also alleged partial quotes from the April 2023 article: "Defendant Austin stated publicly, "The allegations are no joking matter …"The allegations are the most serious allegations you can have."  Defendant Austin then confirmed that the District would be conducting its own investigation and clarified that "we have different standards than the legal system when it comes to what we need to look at" and stated, "our attorneys are going to guide us." (Exhibit P at ¶ 44, 7:14-20.)  Yet, the quotes are from different parts of the article and they do not state or imply anything as to Plaintiff's guilt in the Jane Doe matter.

In addition, Plaintiff misleadingly alleged the following partial statement: "The day the allegations came forward, Mr. Colombo was removed from his teaching position [and placed] on paid administrative leave, for the protection of students…"  (Exhibit P, ECF 113 at ¶ 40, 6:6-9).  Here, Plaintiff omitted the following words from the quote: "and for the protection of the individual with the allegations against them."  (*See* Exhibit X.)  The complete quote (Exhibit X) reads:

> Austin later said, "The day the allegations came forward, Mr. Colombo was removed from his teaching position on paid administrative leave, for the protection of students and for the protection of the individual with the allegations against them."

Plaintiff was the only "individual with the allegations against them" in the Jane Doe matter. Therefore, the complete quote addresses protection for students and Plaintiff.  It does not state or imply anything as to Plaintiff's guilt.  This quote from the May 2023 article also matches PAPD's news release from June 2022, nine months earlier, that "District administrators immediately placed the teacher on administrative leave" upon receiving the rape allegation.  (Exhibit AA.)  Also, Plaintiff conceded in the Third Amended Complaint that the Jane Doe "allegation of sexual assault

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

1    pos[ed] a potential threat to student safety."    (Exhibit P at 44:20-22.)    Plaintiff cannot now also

2    complain that the statement about protection for students (and for Plaintiff) was improper and

3    constituted stigma.

## 2.    The Deprivation of Liberty and the Causation Requirements Cannot be Established

6    Plaintiff "must show that the stigma was accompanied by some additional deprivation of

7    liberty []."  *Miller, supra,* 355 F.3d at 1178 (Ninth Circuit affirmed summary judgment on "stigma-

8    plus" claim where plaintiff failed to show loss of recognizable property or liberty interest in

9    connection with claimed injury to reputation); *Endy v. County of Los Angeles,* 975 F.3d 757, 768

10   (9th Cir. 2020) (same).  Also, the allegedly defamatory statement and deprivation of liberty must be

11   "so closely linked" for "the 'plus' element for a liberty claim to be met."  *Ulrich*, *supra,* 308 F.3d

12   at 983 (Ninth Circuit considered the five day period between the statement and the decision not to

13   rehire plaintiff).  "[T]he liberty interests protected by the Fourteenth Amendment are implicated

14   only when the government's stigmatizing statements effectively exclude the employee completely

15   from her chosen profession.  Stigmatizing statements that merely cause 'reduced economic returns

16   and diminished prestige, but not permanent exclusion from, or protracted interruption of, gainful

17   employment within the trade or profession' do not constitute a deprivation of liberty."  *Blantz v.*

18   *Cal. Dept. of Corrections & Rehab.*, 727 F.3d 917, 925 (9th Cir. 2013).  Furthermore, plaintiff must

19   ... demonstrate that the defendant's conduct was the actionable cause of the claimed injury."  *Harper*

20   *v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).  To meet this causation requirement,

21   the plaintiff must establish both causation-in-fact and proximate causation.  *Id*.  Nevertheless,

22   Plaintiff cannot establish these requirements in the present case.

23   Here, Plaintiff was asked by written discovery to disclose evidence that three statements by

24   Superintendent Austin were made in connection with the termination of Plaintiff's employment or

25   the alteration of some right or status recognized by law.  Plaintiff responded in June 2025 with a

26   whole slew of bald legal conclusions and issues, several that the Court had rejected in March 2025,

27   such as "constructive termination," "conducting an investigation," and "placing him on leave" for

28   the investigation, "sponsoring abuse of process by CTC," "delaying back pay," and "failing to retain

20

a middle school PE teaching position for him for the 2023-2024 school year." (*See* Exhibit R, p. 39-44.) Yet, these do not satisfy the additional deprivation of liberty requirement. They also do not relate in substance or timing to the statements by Superintendent Austin. In addition, the statements at issue in February 2023 to May 2023 did not cause any of the issues that Plaintiff has again complained about.

In short, Superintendent Austin's statements are true, mere general opinions about other matters, and not stigmatizing to Plaintiff. The statements also fail to support Plaintiff's stigma-plus claim. In addition, the alleged harm that Plaintiff claims to have suffered from these statements does not rise to the level protected by the Fourteenth Amendment. Plaintiff has not, and cannot, show the statements were made in connection with a deprivation of a federally protected right. Plaintiff does not have any evidence that the alleged statements, all occurring well *before* the District's investigation commenced, caused the denial of any federally protected right to Plaintiff, much less the slew of issues Plaintiff baldly and repeatedly raises.

Plaintiff's stigma-plus claim fails because Plaintiff cannot establish that any statements by Superintendent Austin were stigmatizing to Plaintiff and substantially untrue, the claimed stigma was accompanied by the deprivation of liberty, and also caused Plaintiff's claimed injury. Accordingly, Plaintiff's stigma-plus claim fails as a matter of law and summary judgment should be granted in favor of Superintendent Austin on this claim.

### D.    Qualified Immunity Acts as a Complete Bar to All of Plaintiff's Section 1983 Claims Against the Administrators

Plaintiff's entire Section 1983 claim against the Administrators as individuals, under both the property interest and the stigma-plus liberty interest theories, should be dismissed for the additional reason that they are barred by the doctrine of qualified immunity.

Under qualified immunity, government officials are not subject to damages liability for the performance of their discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

21

clearly established law[.]  No other "circumstances" are relevant to the issue of qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 191 (1984).  The plaintiff shoulders the burden of proving that the rights he claims were "clearly established" at the time of the conduct at issue.  *Id*. at 197. "Furthermore, supervisor defendants are entitled to qualified immunity where the allegations against them are simply 'bald' or 'conclusory' because such allegations do not 'plausibly' establish the supervisors' personal involvement in their subordinates' constitutional wrong.  *Rubio v. Allison,* 2021 WL 3173295, *3 (N.D. Cal. 2021), citing *Ashcroft, supra*, 556 U.S. at 679.

"The Supreme Court has made clear that qualified immunity provides a protection to government officers that is quite far-reaching.  Indeed, it safeguards 'all but the plainly incompetent or those who knowingly violate the law.... [I]f officers of reasonable competence could disagree on th[e] issue [whether a chosen course of action is constitutional], immunity should be recognized.'" *Brewster, supra,* 149 F.3d at 977.  "[I]f the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered "clearly established" at least in the absence of closely corresponding factual and legal precedent."  *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'"  *Doe v. White*, 440 F. Supp. 3d 1074, 1082 (N.D. Cal. 2020), aff'd, 859 F. App'x 76 (9th Cir. 2021).  To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly,* 580 U.S. 72, 78-79 (2017). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority."  *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).  Where no binding precedent addresses the issue in question and other circuits' decisions are in conflict, qualified immunity is appropriate because the law was not "clearly established."  *Doe v. White*, *supra*, 440 F. Supp. 3d at 1083.

"While the right to due process is 'clearly established' by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard."  *Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 70 F.3d 1095, 1100 (9th Cir. 1995).  Rather, "because procedural due

22

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims "can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent." *Brewster, supra*, 149 F.3d 971 at 983.  In *Brewster*, the Ninth Circuit found that "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context" and necessitates the application of the test in *Mathews v. Eldridge*. *Brewster*, *supra*, 149 F.3d 971 at 983.  The Ninth Circuit observed that the application of the *Mathews* test was "perhaps even less amenable to the discovery of clearly established law than are the *Pickering* test and other multifactor balancing tests that arise in constitutional jurisprudence," and "[n]ot only does the *Mathews* inquiry require a delicate balancing of several competing interests, it requires that balancing at several separate stages of the procedural due process calculus." *Id.*

In *Kissner v. Loma Prieta Joint Union Sch. Dist.,* 2024 WL 347911, *1 (N.D. Cal. 2024), the Court considered the stigma-plus claim by a 6th grade math and science teacher against the school district superintendents for disclosing, in response to a Public Records Act request, the Statement of Charges against the teacher prior to his termination, which charged the teacher with Immoral Conduct, Unprofessional Conduct, Unsatisfactory Performance, Evident Unfitness for Service, and included the allegation that the teacher engaged in "Potential grooming behavior, such as: singling out a minor and being alone with a minor; offering alcohol; asking about sex/sexual encounters; and posting images of youth partially unclothed on the internet." *Id.*  The Court granted the school district superintendents' summary judgment motion on qualified immunity "because it was not clearly established that disclosure alone would violate [the teacher's] rights." *Id.*  The Court explained that no one argued that the CPRA disclosures, which took place in April and July of 2021, effectuated the termination of the teacher's employment in December 2021.  *Id.* at *6.  The Court then considered whether the disclosures altered or extinguished some other constitutionally cognizable interest held by the teacher, and found the disclosures of the grooming allegation against the teacher were harmful to his reputation, but they did not alter or extinguish his right to future employment.  *Id.* at *7.

Here, the operative inquiry with respect to the application of qualified immunity is whether the Administrators' actions were objectively reasonable with respect to clearly established law, and

23

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

whether *no* official of reasonable competence in the position of the Administrators would disagree that these actions would violate Plaintiff's "clearly established rights," based on binding precedent and put the issue "beyond debate." Plaintiff has not been terminated from his position or from the District, nor does he so allege. Instead, he has remained a District employee in good standing. He complained about the assignment to the TOSA position during the 2024-2025 school year and his assigned duties in that position, for which the Administrators are not shown to have a role. Nevertheless, whatever may be said as their roles as the top District officials, such was objectively reasonable under clearly established law, and any official of reasonable competence would agree that the TOSA assignment and assigned duties do not constitute a violation of clearly-established rights by the Administrators.

Also, Plaintiff complained about statements by Superintendent Austin that plainly did not state or imply Plaintiff's guilt or any charges by the District. Here too, there is no binding precedent supporting the assertion that a District Superintendent may not make any of the statements at issue here. In addition, an official of reasonable competence could disagree that the right was not "clearly established" and that the statements were well within the Superintendent's reasonable discretion and thereby subject to qualified immunity.

In summary, qualified immunity bars Plaintiff's Section 1983 claim against the Administrators as individuals, and the Court should dismiss the entire claim on that basis.

### E. Plaintiff's Punitive Damage Claim Against the Administrators Also Fails

Plaintiff's claim for punitive damages against the Administrators, either in their official capacity or as individuals, also fails and should be dismissed.

To the extent Plaintiff seeks punitive damages against the Administrators for conduct in their official capacity, such damages are unavailable as a matter of law. *See, e.g., Olivier v. Baca,* 913 F.3d 852, 861 (2019) ("Punitive damages are not available against [official] in his official capacity"); *Mitchell v. Dupnik,* 75 F.3d 517, 527 (9th Cir. 1996); *Iliya v. City of Sunnyvale*, 2023 WL 12139866, *3 (N.D. Cal. 2024) (Dismissing the Section 1983 punitive damages claim.); *Easley v. Moore*, 2022 WL 16856080, *4 (C.D. Cal. 2022) (same). In the Third Amended Complaint, the

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

24

1    Administrators are alleged in their official capacity ("as Superintendent for PAUSD" and "as Deputy

2    Superintendent and Chief of Staff for PAUSD"), and as acting in their official capacity. Plaintiff's

3    punitive damages claim fails as a result.

4    In turn, a government official may be found liable in an individual capacity for punitive

5    damages only where the official's "conduct is shown to be motivated by evil motive or intent, or

6    when it involves reckless or callous indifference evil motive or intent, or when it involves reckless

7    or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56

8    (1996). Absent a plaintiff making such a showing, a claim for punitive damages against individual

9    government officials should be dismissed. *See Dubner v. City and Cnty. of S.F.*, 266 F.3d 959, 969

10   (9th Cir. 2001) (Plaintiff's burden to produce evidence of official's evil intent or reckless

11   indifference; where plaintiff failed to make such showing, punitive damage claims properly

12   dismissed). Furthermore, this issue is appropriately addressed on summary judgment as well as

13   earlier. *See Munoz v. Gipson*, 2024 WL 1182860, *7 (N.D. Cal. 2024) (Dismissing the punitive

14   damages claim as "[t]here is no evidence before the Court that any of the Defendants' alleged

15   wrongdoing rose to this requisite high level of culpability."); *Frederickson v. Wong*, 2016 WL

16   3253831, *5 (N.D. Cal. 2016) (Noting issue is "appropriate on a motion for summary judgment").

17   Here, the sole remaining basis for Plaintiff's Section 1983 claim is his bald assertion that the

18   Administrators did not afford him procedural due process. (Exhibit Q, ECF 128, 13:14-15.) Yet,

19   Plaintiff cannot point to any evidence that the Administrators acted with an evil intent to violate his

20   due process rights, or that they acted with the requisite high degree of culpability. Plaintiff's claim

21   for punitive damages against the Administrators should be summarily dismissed.

## V.    **CONCLUSION**

23   Based on the foregoing, the Administrators respectfully request that this Court grant

24   summary judgment in their favor against the sole remaining claim, the First Claim for 42 U.S.C.

25   Section 1983, alleged against them in Plaintiff's Third Amended Complaint in this case.

26   / / /

27   / / /

28   / / /

CLYDE & CO US LLP
355 South Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600

Dated: November 3, 2025                    CLYDE & CO US LLP


By:        _/s/ Alison K. Beanum_
           Alison K. Beanum
           Veena A. Mitchell
           Attorneys for Defendants,
           DON AUSTIN and TRENT BAHADURSINGH

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - Case No. 5:24-cv-00909-NC