Eugene B. Elliot, State Bar No. 111475
Ethan M. Lowry, State Bar No. 278831
Benjamin I. Oreper, State Bar No. 329480
BERTRAND, FOX, ELLIOT, OSMAN & WENZEL
2749 Hyde Street
San Francisco, California 94109
Telephone: (415) 353-0999
Facsimile:  (415) 353-0990
Email:      eelliot@bfesf.com
            elowry@bfesf.com
            boreper@bfesf.com

Attorneys for Defendants
PALO ALTO UNIFIED SCHOOL DISTRICT and LISA HICKEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER COLOMBO,<br><br>        Plaintiff,<br><br>v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | Case No. 5:24-cv-00909-NC<br><br>**DEFENDANTS PALO ALTO UNIFIED SCHOOL DISTRICT AND LISA HICKEY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:   December 17, 2025<br>Time:   10:00 a.m.<br>Place:  Courtroom 5, 4th Floor<br><br>**Hon. Nathanael M. Cousins** |

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND SUMMARY OF ISSUES ..................................................... 1

II.   STATEMENT OF MATERIAL UNDISPUTED FACTS ......................................... 2

    A.    Procedural Background About Plaintiff's Lawsuit .......................................... 2

    B.    General Background Regarding the Defendants ............................................... 3

    C.    The Rape Allegation Against Plaintiff ............................................................. 3

    D.    Plaintiff's TOSA Position .................................................................................. 8

III.  SUMMARY JUDGMENT STANDARD ............................................................... 9

IV.   LEGAL ARGUMENT ............................................................................................ 10

    A.    Plaintiff's §1983 Claim(s) Against HICKEY in her Official Capacity is Subject to Dismissal ........................................................................................ 10

    B.    Lisa Hickey Is Entitled to Summary Judgment as to Plaintiff's §1983 Property Deprivation Claims ............................................................................ 10

        1.    Plaintiff Cannot Establish the Deprivation of a Property Interest by Hickey ....... 10

        2.    Plaintiff Did Not Suffer Deprivations of Property or Process ............................ 11

    C.    Hickey Is Entitled to Summary Judgment as to Plaintiff's "Stigma-Plus" Claim ............ 13

    D.    Hickey is Entitled to Qualified Immunity as to Plaintiff's §1983 Claims ....................... 16

    E.    The District is Entitled to Summary Judgment as to Plaintiff's Retaliation Claims ........ 18

        1.    Plaintiff's "Resisting" an Offer of Early Retirement is not a Protected Activity .......... 19

        2.    Plaintiff Cannot Establish a Causal Retaliatory Nexus, and the District's Actions were Legitimate, Non-Retaliatory, and Non-Pretextual ......................... 21

            i.    The Filing of Plaintiff's Complaint ............................................................. 22

            ii.   Plaintiff's "Opposition" to Early Retirement ............................................. 24

V.    CONCLUSION ........................................................................................................ 25

i

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................11

*Baker v. Racansky*,
    887 F.2d 183 (9th Cir. 1989) .....................................................................................16

*Blount v. Morgan Stanley Smith Barney LLC*,
    982 F. Supp. 2d 1077 (N.D. Cal. 2013) ....................................................................21

*Booker v. Brown & Williamson Tobacco Co.*,
    879 F.2d 1304 (6th Cir.1989) ....................................................................................22

*Brannum v. Mo. Dep't of Corr.*,
    518 F.3d 542 (8th Cir. 2008) .....................................................................................20

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
    149 F.3d 971 (9th Cir. 1998) ........................................................................ 10, 16, 17

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006) .....................................................................................................18

*Campanelli v. Bockrath*,
    100 F.3d 1476 (9th Cir. 1996) ...................................................................................13

*Chaudhry v. Smith*,
    2020 WL 869115 (E.D. Cal. 2020) ...........................................................................13

*Clark Cty Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ...................................................................................................20

*Clay v. County of Contra Costa Bd. of Sups.*,
    2014 WL 12691950 (N.D. Cal. 2013)........................................................................13

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ...................................................................................................15

*Crawford v. Met. Gov. of Nashville et al.*,
    555 US 271 (2009) .....................................................................................................20

*Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*,
    450 F.43d 130 (3rd Cir. 2006) ...................................................................................20

*Davis v. Scherer*,
    468 U.S. 183 (1984) ...................................................................................................16

*Dawson v. Entek Int'l*,
    630 F.3d 928 (9th Cir. 2011) .....................................................................................18

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

*Doe v. White*,
   440 F. Supp. 3d 1074 (N.D. Cal. 2020) ........................................................................16

*Fayle v. Stapley*,
   607 F.2d 858 (9th Cir. 1979) ......................................................................................11

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ....................................................................................................16

*Hart v. Parks*,
   450 F.3d 1059 (9th Cir.2006) ......................................................................................13

*Howard v. City of Coos Bay*,
   871 F.3d 1032 (9th Cir. 2017) ....................................................................................21

*Jaburek v. Foxx*,
   813 F3d 626 (7th Cir. 2016) ........................................................................................20

*James River Ins. Co. v. Schenk, P.C.*,
   519 F.3d 917 (9th Cir. 2008) ........................................................................................9

*Kissner v. Loma Priesta Joint Union Sch. Dist.*,
   2024 WL 347911 (N.D. Cal. 2024) ............................................................................17

*MacIntyre v. Carroll Coll.*,
   48 F.4th 950 (9th Cir. 2022) ........................................................................................18

*Magassa v. Mayorkas*,
   52 F.4th 1156 (9th Cir. 2022) ......................................................................................13

*Malynn v. Morgan Hill Unified School Dist*,
   137 Cal.App.3d 785 (Ct.App 1982) ............................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................................9

*Moyo v. Gomez*,
   40 F.3d 982 (9th Cir. 1994) ........................................................................................20

*Mt. Healthy v. Doyle*,
   429 U.S. 274 (1977) ....................................................................................................19

*Nieves v. Bartlett*,
   587 U.S. 391 (2019) ....................................................................................................21

*Ollier v. Sweetwater Union High Sch. Dist.*,
   768 F.3d 843 (9th Cir. 2014) ......................................................................................18

*Ortez v. Washington* Co.,
   88 F.3d 804 (9th Cir. 1996) ........................................................................................11

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
   212 F3d 493 (9th Cir. 2000) ........................................................................................21

*Paul v. Davis*,
   424 U.S. 693 (1976) ................................................................................................13, 15

iii

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

*Ray v. Henderson*,
   217 F.3d 1234, 1240 (9th Cir. 2000) ............................................................................. 18

*Ruggles v. California Polytechnic State University*,
   797 F.2d 782 (9th Cir. 1986) ............................................................................. 18, 19

*Sherman v. Lake County Jail*,
   2021 WL 3773604 (N.D. Cal. 2021) ............................................................................. 11

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*,
   70 F.3d 1095 (9th Cir. 1995) ............................................................................. 17

*Taylor v. List*,
   880 F.2d 1040 (9th Cir. 1989) ............................................................................. 11

*Trent v. Valley Electric Ass'n Inc.*,
   41 F.3d 524 (9th Cir. 1994) ............................................................................. 20

*Tuuamalemalo v. Greene*,
   946 F.3d 471 (9th Cir. 2019) ............................................................................. 16

*Ulrich v. City & Cty. of San Francisco*,
   308 F.3d 968 (9th Cir. 2002) ............................................................................. 13

*Vasconcelos v. Meese*,
   907 F.2d 111 (9th Cir. 1990) ............................................................................. 19

*Walker v. City of Berkeley*,
   951 F.2d 182 (9th Cir.1991) ............................................................................. 15

*White v. Pauly*,
   580 U.S. 72 (2017) ............................................................................. 16

*WMX Technologies, Inc. v. Miller*,
   80 F.3d 1315 (9th Cir. 1996) ............................................................................. 13

**Statutes**

42 United States Code, Section 2000e-3(a) ............................................................................. 18, 19

**Rules**

Federal Rule of Civil Procedure 56, *et seq.* ............................................................................. 9

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

## I.     INTRODUCTION AND SUMMARY OF ISSUES

This motion for summary judgment/partial summary judgment is brought on behalf of defendants PALO ALTO UNIFIED SCHOOL DISTRICT (the "District") and former Director of Certificated Human Resources LISA HICKEY ("Hickey") in her official capacity. Plaintiff PETER COLOMBO filed this lawsuit against the District following the District's receipt in January 2022 of an allegation that, during the 2001-02 school year, Colombo had raped an 11 year-old student in the locker room of Greene Middle School. Following several rounds of briefing on the pleadings, on March 27, 2025, the Court delineated Plaintiff's three surviving claims against Defendants as follows (Dkt. 128):

- A claim against Lisa Hickey, Trent Bahadursingh, and Don Austin for violation of procedural due process under 42 U.S.C. §1983 based *only* on an "alleged property interest in a position of the same nature as his tenured teaching role," premised on the allegation that Plaintiff was not provided "proper notice" of the allegations and investigation against him and a "hearing with a fair opportunity to avoid being removed from his PE teaching position;" (Dkt. 128 at 12:10-12, 13:9-12)

- A "stigma-plus" procedural due process claim against Lisa Hickey and Don Austin under 42 U.S.C. §1983, premised (as to Ms. Hickey) ***only*** on Plaintiff's allegation that she "sent a letter to the state's teacher credentialing commission indicating that the District's disciplinary investigation of Mr. Colombo would result in a 'statement of charges or intent to dismiss/suspend;'" (*Id.* at 14:12-14)

- A claim (against the District only) alleging retaliation under Title VII, Title IX, and/or FEHA for Plaintiff's filing the initial complaint in this matter in February of 2024, and "after he 'resisted [a] discriminatory attempt to force his early retirement' in September 2022." (Dkt. 110 at 17:9-17; Dkt. 12 at 22:12-21.)

Defendants are entitled to summary judgment on all three of Plaintiff's surviving claims. With respect to Plaintiff's §1983 claims against Lisa Hickey, the undisputed evidence establishes that (1) Lisa Hickey had not been employed by the District for nearly 5 months at the time of Plaintiff's "reassignment," nor had any involvement in the District's personnel investigation; (2) Plaintiff was deprived neither of property nor process; (3) No "stigma-plus" disclosure or related deprivation occurred; and (4) Lisa Hickey is entitled to qualified immunity as her conduct was neither objectively unreasonable nor violative of clearly established rights from the position of a reasonably competent administrator. The District is entitled to summary

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

judgment as to Plaintiff's retaliation claims because (1) Plaintiff's conclusory allegation that he "resisted" a "discriminatory" early retirement offer is not a cognizable protected activity; (2) the evidence does not support a causal nexus between any alleged protected activity and adverse employment actions; (3) any allegedly adverse employment actions taken were supported by non-pretextual legitimate business justifications; and (4) even if Plaintiff could establish both a prima facie retaliation case and pretext, the District would have taken the same actions absent any allegedly protected activities.

## II.     STATEMENT OF MATERIAL UNDISPUTED FACTS

### A.     Procedural Background About Plaintiff's Lawsuit

On February 15, 2024, Plaintiff filed his Complaint (Dkt. 1) in this case, alleging nine claims against all Defendants. On July 10, 2024, Plaintiff filed a First Amended Complaint (Dkt. 37), adding Trent Bahadursingh as a defendant, and alleging three claims – violations of procedural due process and substantive due process, and discrimination – against all Defendants. On September 16, 2024, the Court granted Defendants' motion to dismiss with leave to amend, stating in relevant part: "[T]he Court dismisses Plaintiff's 42 U.S.C. § 1983 claims against the District and individual Defendants in their official capacities with prejudice on the basis of sovereign immunity." (Dkt. 68 at 1:22-26.) On October 8, 2024, Plaintiff filed a Second Amended Complaint (ECF 86) alleging a claim under §1983 against "Each Individual Defendant In Their Individual Capacities," and two discrimination claims. On December 12, 2024, the Court dismissed all of Plaintiff's claims with leave to amend, with the exception of his retaliation claim against the District. (Dkt. 110 at 19:12-17.) The Court found that although Plaintiff had alleged due process violations "based on a slew of liberty and/or property interests," he had failed to identify the deprivation of a protected liberty or property right. (*Id.* at 4:24-5:3.)

On January 6, 2025, Plaintiff filed a Third Amended Complaint, now solely alleging procedural and substantive due process claims under §1983 against the individual defendants, and discrimination/retaliation claims under Title IX, Title VII, and FEHA against the District. (Dkt. 113). On March 27, 2025, the Court ruled that the sole basis on which Plaintiff's §1983 claim against *all* of the individual defendants could proceed was as an alleged procedural due process violation as to Plaintiff's alleged property interest "in a position of the same nature and ranks as his tenured teaching rule," specifically whether his "duties [during the 2024-2025 school year] as alleged fall far outside the scope of the teaching position in which he acquired

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

tenure." (Dkt. 128 at 9:13-10:5, 12:10-12, 13:12-14, 23:17-18.) The Court also ruled that Plaintiff had adequately alleged a procedural due process claim against defendants Austin and Hickey only, based on Plaintiff's alleged liberty interest under a "stigma-plus" theory in connection with certain "statements" by Defendants. (*Id.* at 17:2-3, 23:19-21.) The Court otherwise expressly *rejected* with prejudice Plaintiff's claims against the individuals, including his allegations of a "right to evidence," "concealed evidence," "duty to investigate and gather evidence," "breach of contract," "constructive discharge," "liberty interest in his chosen profession of teaching," and violations of the Public Records Act, amongst other claims. (*See Id.* at 4:26-27, 5:4-11, 7:1-4, 8:4, 10:2-22, 11:2-9, 11:28-12:9, 15:4-7.) The Court further dismissed with prejudice Plaintiff's discrimination claims in their entirety, and allowed retaliation claims against the District only. (*Id.*)

**B.    General Background Regarding the Defendants**

The District currently operates eighteen schools (twelve elementary, three middle, and three high schools) serving over 10,200 students, with the assistance of about 1,300 employees. (Declaration of Trent Bahadursingh ("Bahadursingh Decl.") at 7:15-16.) Defendant Don Austin has served as the District Superintendent since July 2018. (Deposition of Don Austin, **Exhibit U** to the Declaration of Benajmin Oreper ("Oreper Decl.") at 12:1-9.) Defendant Trent Bahadursingh has served as the District Deputy Superintendent since February 2021. (Bahadursingh Decl. at 2:4-5.) Lisa Hickey served as the District's Director of Certificated Human Resources from July of 2019 to December of 2023. (Deposition of Lisa Hickey, **Exhibit V** to Oreper Decl. at 25:2-14).

**C.    The Rape Allegation Against Plaintiff**

On January 28, 2022, the District received an email from the husband of a former female District student, Jane Doe, alleging that Colombo, a District employee, had raped Jane Doe in the locker room of Greene Middle School during the 2001-02 school year. (Bahadursingh Decl.. at 2:13-18, **Exhibit A**.) Colombo was a District teacher and coach when this allegation was presented to the District (and he remains a teacher in good standing with the District). (*Id.* at 2:14, 3:13-14.)

In accordance with the California Child Abuse and Neglect Reporting Act ("CANRA," California Penal Code §11166(a)), the District's General Counsel Komey Vishakan promptly reported the allegation to local law enforcement. (*Id.* at 2:13-21.) On January 31, 2022, the District notified Plaintiff that he was being placed on paid administrative leave effective that date, with the notification letter stating that the leave is "not

intended to be disciplinary" and "is intended to avoid any undue disruption at Greene Middle School." (*Id.* at 2:22-26, **Exhibit B**.)

On June 15, 2022, following an independent investigation by the Palo Alto Police Department ("PAPD") and the Santa Clara County District Attorney's Office, Plaintiff was arrested, charged with felony aggravated sexual assault of a child, and booked into the Santa Clara County Main Jail. (*Id.* at 2:27-3:1.)

On June 16, 2022, the District notified Plaintiff that due to his arrest and the charges against him, the District was legally compelled by Sections 45304(b), 44940, and 44010 of the California Education Code to place him on an unpaid leave of absence, to continue until ten days after the date of entry of judgment in the criminal proceeding. (Bahadursingh Decl.. at 3:2-7, **Exhibit C**.) In accordance with California Education Code Section 44940(d)(1), the District also reported Plaintiff's arrest and charging to the California Commission on Teacher Credentialing ("CTC") the same day. (*Id.* at 3:8-13, **Exhibit D**.) Independent of any further action by the District, the CTC (an independent state agency) suspended Plaintiff's teaching credential pursuant to California Education Code Section 44940(d)(2). (*Id.*)

On April 4, 2022, during the pendency of the law enforcement investigation of Plaintiff and prior to charges being brought, General Counsel Vishakan responded via email to an inquiry from investigating PAPD Detective Yolanda Franco-Clausen, stating that no records related to Jane Doe had been located in the District's digital databases with the exception of a "yearbook which shows the student attended Jordan Middle." (*Id.* at 3:14-19, **Exhibit E**.) After being apprised of Ms. Vishakan's communication, Deputy Superintendent Bahadursingh performed a search of the District's physical repository of student records pending digitization, which are in a District warehouse, and located the District's copy of the student victim's file. (*Id.* at 3:20-26.) The file did not contain the student's "grade report for 6th grade," nor any information from which a conclusion could be drawn that Plaintiff was or was not the student's PE teacher, or whether Plaintiff was at a different school during the class period the student alleged the rape occurred. (*Id.*) This file was subsequently provided to law enforcement. (*Id.*)

Ultimately, the Santa Clara District Attorney's office announced that it intended to dismiss the criminal case against Plaintiff, which dismissal occurred in late June 2023. (*Id.* at 3:27-28.) On May 24, 2023, the District notified Plaintiff that it had been informed that the CTC had reinstated Plaintiff's teaching credential effective May 2, 2023, and that he was being returned to paid administrative leave pending an

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

internal investigation. (*Id*. at 4:2-6, **Exhibit F**.) However, the District subsequently received notification from the CTC that Plaintiff's credential had expired, and that the CTC had not approved its renewal. (*Id*. at 4:7-8.) Accordingly, on August 4, 2023, the District advised Plaintiff of the CTC's correspondence; that, as a result, he did not at that time possess a valid teaching credential; that per the CTC, the status of his renewal application was listed as "Notice of Delay List;" that the District could not lawfully issue a pay warrant to a certificated employee without a valid credential in accordance with Education Code Section 45034; and that he was being returned to unpaid leave effective August 7, 2023, pending the renewal of his credential. (*Id*. at 4:7-16, **Exhibit G**.) The District was not involved in Plaintiff's application being placed on the "Notice of Delay List." (*Id*.) Ultimately, Plaintiff's teaching credential was reinstated effective October 20, 2023, and on November 1, 2023, the District notified Plaintiff that he was being returned to paid administrative leave effective October 23, 2023. (*Id*. at 4:17-20, **Exhibit H**.) Plaintiff's salary and benefits which could not be paid during the pendency of his criminal proceeding were subsequently fully reimbursed by the District. (*Id*. at 7:1-6.)

Plaintiff testified that on or around September of 2022, general counsel for the District, Jabari Willis, contacted Plaintiff's criminal defense counsel, Joshua Bentley, "and said, 'you know, your client, he can retire early if he'd like. He's eligible. He's 55.'" Plaintiff was eligible for early retirement, and was aware of the District's annual offering of an early retirement program, which was available to all employees who meet the criteria. (Deposition of P. Colombo, **Exhibit S** to Oreper Decl. at 215:18-217:4.) This was the only conversation Plaintiff is aware of in which anyone from the District had a conversation with him or his counsel pertaining to early retirement. (*Id*. at 217:5-15.) The District had an early retirement incentive that was offered to all teachers above a certain age and that had served a certain number of years within the District, and that the incentive was first offered "right after" or around "COVID" with "close to 30 employees" at the District ultimately taking advantage of it. (**Exhibit V** at 30:9-12; 31:12-18.)

The 2022-2023 school year ended on June 1, 2023, and the 2023-2024 school year began on August 9, 2024. (Bahadursingh decl. at 4:6, 4:22-23.) Once the District returned from its summer recess, it initiated an independent personnel investigation into the allegations of rape against Plaintiff. (*Id*. at 4:21-5:4.) The District did not initiate its independent investigation prior to this date in order not to interfere with the criminal investigation and Plaintiff's pending criminal proceeding. (*Id*.) This investigation was not initiated

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

pursuant to any of the District's internal complaint procedures, board policies, or administrative regulations because none specifically applied to this situation. (*Id.*) Rather, the District was compelled to initiate the investigation due to the gravity of the allegations against Plaintiff, regardless of the outcome of his criminal proceedings, and further given the District's potential exposure to civil liability for failing to perform an independent investigation of the allegations. (*Id.*) The scope of the investigation was expressly limited to the rape allegation against Plaintiff, which was communicated to him prior to his interview. (*Id.*, **Exhibit I**.)

The investigation was overseen by the District's outside legal counsel, who retained the services of an independent third-party investigator, Nicole Miller of Miller & Associates. (*Id.* at 5:5-10.) The District's investigation of Plaintiff concluded in Spring 2024. (*Id.* at 5:25.) Once complete, Plaintiff was notified of the completion of the investigation; it was reiterated that the scope of the investigation had been exclusively regarding potential misconduct based on information received by the District from an anonymous source regarding a report of an alleged sexual assault of a student by Plaintiff on District property during the 2001-- 2002 school year; and that the investigator "determined that the allegation was not substantiated due to a lack of evidence, including but not limited to, the absence of a direct statement from the alleged victim to support the claim." (*Id* at 5:25-6:4, **Exhibit L**.)

Lisa Hickey's employment with the District ended in December 2023, and she was accordingly neither present for, nor participated in, Plaintiff's assignment or reassignment following the conclusion of the District's personnel investigation. (Hickey Depo. at 25:2-14., **Exhibit V**) Prior to her departure, she was at no time involved in any investigation of Plaintiff or any decision-making relating to any investigation, nor was such involvement within her role. (*Id.* at 72:19-73:4; 74:13-21; 79:2-15 90:21 -91:11; 93:4-7; 106:10-18). During her employment with the District, she did not come to learn or discuss anything regarding any investigation of Plaintiff, including the scope of, or authority for, any investigation. (*Id.* at 78:16-25; 116:3-11). She was not involved in any decision-making regarding Plaintiff's assignment or reassignment, and it was neither her decision or within her purview as to whether Plaintiff would be placed back in a classroom. (*Id.* at 120:2-8.) On June 13, 2023, in her capacity as the HR director, Hickey received correspondence from the California Commission on Teacher Credentialing ("CTC") informing her that the CTC was reviewing Plaintiff "for alleged misconduct that was reported to our office" and requesting Ms. Hickey provide several specifically-delineated items of information, including "Notice of Intent to Dismiss/Suspend" and "Statement

of Charges/Accusation." (District's Exhibit 505, **Exhibit Q** to Oreper Decl.) On June 26, 2023, Hickey directed responsive correspondence to CTC stating, *inter alia*, that Plaintiff was "back on paid administrative leave and the District intends to conduct our own investigation, but that has not been complete yet, therefore there is not currently a Statement of Charges or Intent to Dismiss/Suspend." (Plaintiff's Exhibit 90, **Exhibit P** to Oreper Decl.**.**) Hickey specifically referenced these items because they were marked on CTC's list of requested materials. (Hickey Depo. at 117:21-118:18, **Exhibit V.**)

On May 29, 2024, Plaintiff's counsel sent a letter to the District's General Counsel, Jabari Willis, in which he stated that "it would be unconscionable, if not criminal, to attempt to assign [Plaintiff] to a school site without completely dispelling the false light created to the public by PAUSD, and as again intimated through the recent 'Investigation Report,'" which the District understood to constitute Plaintiff's refusal to accept an assignment from the District at that time. (Bahadursingh Decl. at 6:5-10, **Exhibit M.**)

Subsequently, on May 30, 2024, Plaintiff's counsel sent another letter to Mr. Willis in which he stated that "Colombo will now need to work until age 72," and that Plaintiff "will be ready to report back to his PE teaching assignment at Greene Middle School beginning with District Day on August 12, 2024 and to resume his baseball coaching role at Paly." (*Id.* at 6:7-17, **Exhibit N**.) However, the letter stated Plaintiff's return would be contingent on the District meeting several demands by Plaintiff, including that the District make a "public announcement" inclusive of specified factual contentions proffered by counsel; that the District provide Plaintiff with a "security detail" to "accompany" him on campus; and that Plaintiff be provided with "a much heightened level of mental health support." (*Id.* at 6:11-21.) The District understood this communication to constitute Plaintiff's refusal to accept an assignment from the District absent the District meeting Plaintiff's demands. (*Id.*)

Nevertheless, with the exception of the time period from August 4, 2023, to October 23, 2023, during which time Plaintiff was without a valid teaching credential and the District could not issue a pay warrant to him in accordance with Education Code Section 45034, Plaintiff has received, and is continuing to receive, his full salary and health and welfare benefits. (*Id.* at 7:1-6.) This is inclusive of the District's full reimbursement of Plaintiff's salary and benefits which could not be paid during the pendency of his criminal proceeding when he was on mandatory unpaid leave. (*Id.*) Plaintiff has no legal claim of entitlement to summer school and coaching stipends he alleges he would have, and did not, earn during the time period that

1   he has been on leave from the District, as these assignments are discretionary. (*Id*. at 7:10-12.) Finally,

2   Plaintiff has no legal entitlement to be returned to his particular prior assignment. (*Id*. at 7:7-9.) Rather, the

3   District retains the right to assign Plaintiff to an assignment based on what is in the "best interest" of the

4   District. (*Id*.)

5   **D.      Plaintiff's TOSA Position**

6          Following Plaintiff's placement on leave in January 2022, an interim teacher covered his classes for

7   the remainder of that school year. (*Id*. at 7:17-18). Plaintiff's leave extended into the 2022-23 school year due

8   to the pendency of his criminal case. (*Id*. at 7:18-19). For the 2022-23 school year, due to declining

9   enrolment, Greene Middle School did not offer the same number of PE classes and only had 2, not 3, male PE

10  instructors at the school site for that school year, both of whom had been previously assigned to that school

11  site. (*Id*. at 7:19-22; P. Depo. at 358:1 – 359:16) Therefore, from the 2022-23 through the 2024-2025 school

12  years, Plaintiff's prior assignment at Greene Middle School was no longer available. (*Id*. at 7:22-23).

13         Following the conclusion of the District's personnel investigation of Plaintiff in May of 2024 (days

14  prior to the conclusion of the 2023-24 school year), Plaintiff was provided with a work assignment for the

15  2024-2025 school year. Because there was no PE teaching position available, a decision was reached by a

16  District team inclusive of legal counsel to place Plaintiff in a Teacher on Special Assignment ("TOSA")

17  position, which is a certificated teaching position, for the 2024-25 school year. (Bahadursingh Depo. at

18  274:11-19., **Exhibit T**) Plaintiff's TOSA position did not negatively impact Plaintiff's seniority, tenure or

19  compensation at the District, and he remained a certificated teacher and continued to accumulate years of

20  service. (*Id*. at 257:18-259:21., **Exhibit T**) TOSA positions were required to be advertised "internally" within

21  the District, and this position was in fact so advertised. (Bahadursingh Depo at 276:4-8; 277:1-3; 277:16-20;

22  278:10-16; **Exhibit T**, Hickey Depo. at 61:21-24, **Exhibit V**.) In the TOSA position, Plaintiff performed

23  work including running steering committee meetings for PE; planning and leading instruction leads' release

24  days and the District's professional development day for teachers; developing common and/or substitute PE

25  lesson plans and a common make-up policy for student work; planning of coursework for use in public

26  schools, including creation of courses and course description; supporting professional development of

27  instructors; creating and presenting educational materials related to District educational events and guidance

28  documents relating to middle school and high school health education and physical education; creating

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

District-wide guidance documents relating to physical education safety and behavior best practices; restructuring of the District's science resource center; working on swimming pool and water safety for students; and planning and attending meetings of the Unity/Futures Physical Education program, the Equity Futures District Committee, and the Middle School Equity/Futures Physical Education program. (Defendants' Exhibit 513, **Exhibit X**; P. Depo. at 417:3-418:6., **Exhibit S**) During the 2024-25 school year, Plaintiff also coached varsity baseball at Palo Alto High School. (P. Depo at 344:16-25., **Exhibit S**)

For the 2025-2026 school year, Plaintiff has served (and is currently serving) in a position teaching PE at a District middle school, for which he applied. (*Id.*, **Exhibit S**, Deposition of Peter Colombo ("Colombo Depo.") at 340:19-20; **Exhibit U**, Austin Depo. at 92:8-15.) Plaintiff remains a tenured teacher in good standing with the District. (Bahadursingh Decl. at 7:15-16.)

In addition, Plaintiff's responses (dated June 6, 2025) to Defendants' requests for admission for evidence that the Administrators' engaged in affirmative acts depriving Plaintiff of due process provide no facts about the TOSA position, and merely allege "Hickey… failed to properly account for Plaintiff's state-defined property rights in his tenured and senior, middle school PE teacher position when making assignments for 2024-2025… which was her responsibility." (Oreper Decl., **Exhibit R,** p. 102-107, 106:20-22.) Plaintiff's responses also raise a whole host of other matters that the Court previously rejected in its dismissal Orders. (*Compare Id.* dated June 6, 2025, with Order (ECF 128) dated March 27, 2025.)

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (FRCP 56(a).) The moving party bears the initial burden of demonstrating entitlement to summary judgment. (FRCP 56(a),(b) &(c).) Where the non-moving party bears the burden of proof on an issue at trial, the moving party may prevail by presenting evidence negating an essential element of the non-moving party's claim or by pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. (See *James River Ins. Co. v. Schenk, P.C.*, 519 F.3d 917, 925 (9th Cir. 2008).) If the moving party meets its initial burden, the burden then shifts to the opposing party to establish the existence of a genuine issue as to any material fact pertaining to each cause of action alleged in order to survive a motion for summary judgment on that claim. (FRCP 56(e); See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).) While the Court must view all

1    evidence in the light most favorable to the non-moving party, evidence that is "merely colorable" or is not

2    significantly probative cannot defeat defendant's motion. There must be "evidence on which the jury could

3    reasonably find for" the opposing party. (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250, 252

4    (1986).)

## IV.    LEGAL ARGUMENT

### A.    Plaintiff's §1983 Claim(s) Against HICKEY in her Official Capacity is Subject to Dismissal

7         The Court has ruled that Plaintiff's Section 1983 claims against the individual Defendants in their

8    *official* capacities were dismissed with prejudice on the basis of sovereign immunity. (Dkt. 68 at 1:22-26.) To

9    the extent that Plaintiff's Third Amended Complaint continues to contain allegations and caption language

10   asserting that Hickey is sued in her official capacity, those claims are subject to dismissal.

### B.    Lisa Hickey Is Entitled to Summary Judgment as to Plaintiff's §1983 Property Deprivation Claims

13        To state a procedural due process claim, a plaintiff must establish "(1) a deprivation of a

14   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."

15   (*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).) As a preliminary

16   matter, in allowing Plaintiff to proceed with this claim against the individuals, the Court expressly recognized

17   that "Plaintiff will have to present facts better connecting each individual Defendant to the alleged violation

18   of this property right without due process to succeed on his Section 1983 claim on this basis." (Dkt. 128 at

19   13:14-17). The evidence establishes Hickey was no longer an employee of the District at the time Plaintiff

20   returned to a teaching role at the District, and was not involved in any way in his placement as a TOSA. Thus,

21   even assuming *arguendo* that Plaintiff could establish a deprivation occurred, Plaintiff presents no evidence –

22   nor can do so – that Hickey, in her individual capacity, deprived Plaintiff of his due process right to a

23   "position of the same nature as his tenured teaching role," neither by "refus[ing] to return him to his

24   permanent certificated PE teaching position" upon his return from mandatory leave, nor his placement in the

25   TOSA position. (*Id.* at 9:12-18.)

#### 1.    Plaintiff Cannot Establish the Deprivation of a Property Interest by Hickey

27        To state a procedural due process claim, a plaintiff must establish "(1) a deprivation of a

28   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

1    (*Brewster*, 149 F.3d at 982.) Because Section 1983 does not provide for vicarious liability, an individual's

2    liability under Section 1983 arises only if she "personally participated" in the alleged constitutional

3    deprivation. (*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)*; Ortez v. Washington* Co., 88 F.3d 804, 809

4    (9th Cir. 1996).) An official can only be liable under Section 1983 "for his or her own misconduct." (*Ashcroft*

5    *v. Iqbal*, 556 U.S. 662, 677 (2009).) Furthermore, "when a named defendant holds a supervisory position, the

6    causal link between h[er] and the claimed constitutional violation must be specifically alleged." (*Sherman v.*

7    *Lake County Jail*, 2021 WL 3773604, *2 (N.D. Cal. 2021), citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th

8    Cir. 1979) [Alleged liability against Department director based on position and supervisory power over the

9    entity was insufficient].) "Vague and conclusory allegations concerning the involvement of supervisory

10   personnel in civil rights violations are not sufficient." (*Id.* at *2.)

11          Plaintiff's §1983 procedural due process claim was allowed to proceed predicated solely on his

12   allegation that he had been deprived of a property right in a position of the same nature as the credentialed

13   teaching position he held when accused – specifically, the allegation Plaintiff was improperly placed in a

14   TOSA position rather than being returned to a classroom PE teaching role. In addition to the fact that Hickey

15   was no longer a District employee at the time of Plaintiff's return from administrative leave or TOSA

16   placement, Plaintiff alleges no specific facts and offers no specific evidence, whether direct or circumstantial,

17   of Hickey's personal participation or involvement in his assignment or in any attendant alleged deprivations

18   of process. Rather, the uncontroverted evidence establishes that Hickey left her employment with the District

19   in December of 2023, when Plaintiff remained on paid administrative leave pending completion of the

20   District's investigation, and that she was not involved in the investigation or any decision-making regarding

21   Plaintiff's assignment.

22          **2.      Plaintiff Did Not Suffer Deprivations of Property or Process**

23          In allowing Plaintiff's claims to proceed at the pleadings stage, the Court found that "California courts

24   have long recognized that the state's education code establishes a property right in a tenured teacher's

25   continued employment in a position of the same nature," and that "[a] school district may, within reason,

26   reassign a permanent teacher to a different position "so long as the work assigned is of a rank and grade

27   equivalent to that by which the permanent status was acquired and so long as the assignment is one for which

28   the teacher in question is qualified," citing, *inter alia*, *Thompson v. Modesto City High Sch. Dist.*, 19 Cal.3d

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

620, 623. (Dkt. 128 at 8:21-9:11). Applying this standard, the Court held Plaintiff had plausibly pled infringement of a property right for purposes of due process based on his allegations that Defendants removed him from his position and "placed him in a special assignment position, the job duties for which 'do not involve use of his credential or teaching experience.'" (Dkt. 128 at 16-19.) However, the undisputed evidence establishes that the TOSA position was a certificated teaching position, under which Plaintiff retained the same job classification as a teacher; incurred no loss of salary or benefits; and continued to accumulate years of service and build tenure. Plaintiff's own documentation and testimony support that his duties in the TOSA position were, in fact, within the scope of his teaching credential and expressly controvert his allegation that he was "prohibited from engaging in any of the functions the California Education Code considering in directing when an employee must 'hold a valid teaching credential.'" (Dkt. 113 at ¶¶111-112.) "It is well established that school districts in the normal course of administration have broad powers to reassign their permanent employees to different positions, including positions involving a reduction in pay and prestige, subject only to two requirements: (1) reasonableness and (2) that the reassigned position be 'within the scope of the certificate under which tenure was acquired' *or* 'the work assigned is of a rank and grade equivalent to that by which the permanent status was acquired.'" (*Malynn v. Morgan Hill Unified School Dist*, 137 Cal.App.3d 785, 789 (Ct.App 1982).) Here, the undisputed evidence establishes that Plaintiff was qualified for the TOSA position, which was expressly a certificated teaching position; that the assignment was reasonable under the circumstances given that no open teaching position was available for Plaintiff's placement (further supported by the fact that, when a position became available, Plaintiff applied and was selected for the position for the 2025-26 school year); that the position did not involve any reduction in pay or prestige (and, as Plaintiff admits in fact offered the opportunity to engage in administrative work); and which involved performing duties within the scope of Plaintiff's teaching certificate. The undisputed facts establish that no deprivation occurred.

Assuming *arguendo* that Plaintiff could establish the infringement of a property right, the evidence similarly establishes that Plaintiff was not denied procedural due process. The Court found that "the specific procedure due depends on the facts of a given case as analyzed under the *Mathews v. Eldrige* three-part balancing test . . . but at minimum, due process requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful matter.'" (Dkt. 128 at 12:21-13:1.) Here (although the District's

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

1   personnel investigation was not disciplinary nor conducted in connection with the deprivation of any rights) it

2   is undisputed that prior to Plaintiff's assignment, he was in fact provided with notice of the scope of the

3   allegation against him and the District's investigation into that allegation, and was interviewed by the

4   District's investigator, who concluded the allegation could not be substantiated. As above, there is no

5   evidence of Hickey's involvement in the investigation.

6   **C.    Hickey Is Entitled to Summary Judgment as to Plaintiff's "Stigma-Plus" Claim**

7          The Supreme Court has stated that damage to reputation - without more - is insufficient to implicate

8   the Fourteenth Amendment's Due Process Clause. (*Paul v. Davis*, 424 U.S. 693, 706 (1976).) In order to state

9   a "stigma-plus" claim for deprivation of a constitutional liberty interest under §1983 against a state actor in

10  their individual capacity, Plaintiff must establish that he was "stigmatized in connection with the denial of a

11  more tangible interest" by showing either that "the injury to [his] reputation" either caused, or was inflicted in

12  connection with, the deprivation of "a federally protected right." (*Hart v. Parks*, 450 F.3d 1059, 1069-70 (9th

13  Cir.2006).) In either case, Plaintiff is required to assert that "he has lost something tangible" ***in connection***

14  with the stigmatizing statements, "like his employment." (*Magassa v.* Mayorkas, 52 F.4th 1156, 1169 (9th

15  Cir. 2022) [emphasis added].) Further, "a *sine qua non* of a "stigma-plus" suit is that the "plus" must be the

16  result of state action directly affecting the plaintiff's rights or status under the law . . . that state action may be

17  involved in the "stigma" (*i.e.,* defamation) is not of itself sufficient to maintain the action." (*WMX*

18  *Technologies, Inc. v. Miller*, 80 F.3d 1315, 1320 (9th Cir. 1996).) Under the stigma-plus test, "a plaintiff must

19  show" (1) "the public disclosure of a stigmatizing statement by the government;" (2) "the accuracy of which

20  is contested;" (3) "*plus* the denial of 'some more tangible interest[ ] such as employment'." (*Ulrich v. City &*

21  *Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002), quoting *Paul,* 424 U.S. at 701.) Finally, in order to

22  prevail on the stigma-plus claim, "plaintiff[] must prove that the defendants' statements were substantially

23  false." (*Chaudhry v. Smith,* 2020 WL 869115, *6 (E.D. Cal. 2020), citing *Campanelli v. Bockrath*, 100 F.3d

24  1476, 1484 (9th Cir. 1996); *See also Clay v. County of Contra Costa Bd. of Sups.*, 2014 WL 12691950 *1

25  (N.D. Cal. 2013) ("[P]laintiff must allege facts showing that there was factually false information about him"

26  and "that the false information satisfied the "stigma-plus" test.").) If a plaintiff can meet all of the above

27  requirements then the plaintiff "is entitled to notice and a hearing to clear his name." (*Ulrich,* 208.F.3d at

28  982.)

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

The undisputed facts pertaining to this claim as to Hickey are straightforward. On June 13, 2023, after the criminal charges against Plaintiff had been dropped but prior to the District's independent personnel investigation, Hickey received correspondence from the CTC dated June 13, 2023, informing her that the CTC was investigating Plaintiff "for alleged misconduct that was reported to our office" and requesting Hickey provide several specifically-delineated items of information, including a "Notice of Intent to Dismiss/Suspend" and "Statement of Charges/Accusation." (District's Exhibit 505.) On June 26, 2023, Hickey directed responsive correspondence to CTC stating, *inter alia*, that Plaintiff was "back on paid administrative leave and the District intends to conduct our own investigation, but that has not been complete yet, therefore there is not currently a Statement of Charges or Intent to Dismiss/Suspend." (Plaintiff's Exhibit 90.) Subsequently (and after Hickey's departure), the District's personnel investigation of the allegation against Plaintiff concluded in May of 2024 with a finding that the allegation could not be substantiated.

Summary judgment is merited on these facts for several reasons. First, Hickey's response to a direct inquiry from the commission on teacher credentialing, in which she utilized, verbatim, the identical language of the CTC's request in her response, simply does not qualify as a stigmatizing public disclosure of what plaintiff has alleged to be the underlying "charge" against him (namely, his alleged rape of a student). Moreover, her statement – that the District's investigation was not yet complete, and that no statement of charges or intent to dismiss currently existed – was objectively true. Second, as discussed in detail in section B(2) above, Plaintiff did not suffer the deprivation of any right. However, even if Plaintiff had established such a deprivation, no evidence in this case supports that Hickey's response to CTC caused, or was in any way made "in connection with" any alleged deprivation. At the time of the correspondence, the criminal charges against Plaintiff had been dropped and the District's investigation had not yet commenced. Any independent investigation by the CTC (which the evidence demonstrates predated both CTC's correspondence to Hickey and her response) is not properly imputed to any defendant, including Hickey. No evidence supports any connection between Hickey's response to CTC and the outcome of either the CTC or the District's investigation, neither of which Plaintiff alleges concluded in a manner adverse to him. To the extent that Plaintiff alleges the underlying deprivation in this matter was his placement on administrative leave, such placement pre-dated Hickey's correspondence to CTC and was mandated by the California Education Code. To the extent that he alleges the deprivation was comprised of his placement in the TOSA

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

position following the conclusion of the District's investigation, no evidence connects that placement with Hickey's correspondence to CTC, and Hickey had not been employed by the District for several months at the time the investigation concluded and Plaintiff received his work assignment for the 2024-25 school year. Finally, to the extent that Plaintiff alleges the deprivation was constituted by Hickey's correspondence's theoretical appearance in response to theoretical requests from theoretical future employers to CTC seeking Plaintiff's file, theoretically resulting in his theoretical loss of theoretical opportunities, such alleged deprivation is neither an injury in fact nor certainly impending and is entirely speculative, in addition to the fact that the source of the deprivation in that instance would be the third party employer, rather than the District or Hickey. As in *Paul*, arguing an allegedly stigmatizing statement would "damage his reputation and 'seriously impair his future employment opportunities'" is insufficient to state a claim for violation of procedural due process rights. (*Paul*, 616 F.3d at 697, 711-12.) Accordingly, even if Plaintiff could establish that the communication itself was "stigmatizing," he cannot establish any connection between the correspondence and any deprivation he alleges he suffered.

Finally, even in the case where Plaintiff could establish that all of the above elements were met, the undisputed evidence establishes that he was provided with notice and the process required by law. Pointedly, all relevant case law pertaining to "name-clearing" hearings in connection with stigma-plus claims relates to employees alleging termination in connection with a stigmatizing disclosure. (*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) [Due process requires that a person be given notice of his impending termination and a pre-termination hearing.]; *Walker v. City of Berkeley*, 951 F.2d 182, 184 (9th Cir.1991) [[A]n impartial decision maker at a pre-termination hearing does not necessarily violate due process as long as the decision maker at a post-termination hearing is impartial].) Here, Plaintiff was never terminated, remained an employee of the District at all relevant times, and is currently employed within the District as a physical education teacher. No law requires that Plaintiff be accorded a hearing prior to being placed in a new certificated assignment. However, it is undisputed that, prior to Plaintiff's reassignment and the conclusion of the personnel investigation, he was provided with notice of the charge against him; that the District's investigator, whom Plaintiff does not dispute was a neutral, competent, independent and unbiased third party, conducted an interview of Plaintiff in which he was provided with the opportunity to present his position; that the investigator concluded that the allegation was unsubstantiated; and that no investigation by CTC,

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

1  correspondence to whom is at the center of this allegation against Hickey, resulted in an adverse outcome.

2  **D.**    **Hickey is Entitled to Qualified Immunity as to Plaintiff's §1983 Claims**

3       Plaintiff's entire Section 1983 claim against the Administrators as individuals, under both the property

4  interest and the stigma-plus liberty interest, should be dismissed for the additional reason that they are barred

5  by the doctrine of qualified immunity.

6       Under the doctrine of qualified immunity, government officials are not subject to damages liability for

7  the performance of their discretionary functions when "their conduct does not violate clearly established

8  statutory or constitutional rights of which a reasonable person would have known." (*Harlow v. Fitzgerald*,

9  457 U.S. 800, 818 (1982).) Whether an official may prevail in his qualified immunity defense depends upon

10  the "objective reasonableness of [his] conduct as measured by reference to clearly established law[.] No other

11  "circumstances" are relevant to the issue of qualified immunity. (*Davis v. Scherer*, 468 U.S. 183, 191 (1984).)

12  The plaintiff shoulders the burden of proving that the rights he claims were "clearly established" at the time of

13  the conduct at issue. (*Id.* at 197.)

14       "The Supreme Court has made clear that qualified immunity provides a protection to government

15  officers that is quite far-reaching. Indeed, it safeguards 'all but the plainly incompetent or those who

16  knowingly violate the law.... [I]f officers of reasonable competence could disagree on th[e] issue [whether a

17  chosen course of action is constitutional], immunity should be recognized.'" (*Brewster*, 149 F.3d at 977.) "[I]f

18  the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing

19  test, the right can rarely be considered "clearly established" at least in the absence of closely corresponding

20  factual and legal precedent." (*Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989).) "A Government

21  official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours

22  of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he

23  is doing violates that right.'" (*Doe v. White*, 440 F. Supp. 3d 1074, 1082 (N.D. Cal. 2020), aff'd, 859 F.

24  App'x 76 (9th Cir. 2021).) To be clearly established, "existing precedent must have placed the statutory

25  or constitutional question beyond debate." (*White v. Pauly*, 580 U.S. 72, 78-79 (2017).) "The right must

26  be settled law, meaning that it must be clearly established by controlling authority or a robust consensus

27  of cases of persuasive authority." (*Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).) Where

28  no binding precedent addresses the issue in question and other circuits' decisions are in conflict,

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

1  qualified immunity is appropriate because the law was not "clearly established." (*Doe v. White*, *supra*,

2  440 F. Supp. 3d at 1083.)

3  "While the right to due process is 'clearly established' by the Due Process Clause, this level of

4  generality was not intended to satisfy the qualified immunity standard." (*Sinaloa Lake Owners Ass'n v. City*

5  *of Simi Valley,* 70 F.3d 1095, 1100 (9th Cir. 1995).) Rather, "because procedural due process analysis

6  essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims "can

7  rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal

8  precedent." (*Brewster,* 149 F.3d 971 at 983.) In *Brewster*, the Ninth Circuit found that "[p]recisely what

9  procedures the Due Process Clause requires in any given case is a function of context" and necessitates the

10  application of the test in *Mathews v. Eldridge*. (*Brewster*, 149 F.3d 971 at 983.) The Ninth Circuit observed

11  that the application of the *Mathews* test was "perhaps even less amenable to the discovery of clearly

12  established law than are the *Pickering* test and other multifactor balancing tests that arise in constitutional

13  jurisprudence," and "[n]ot only does the *Mathews* inquiry require a delicate balancing of several competing

14  interests, it requires that balancing at several separate stages of the procedural due process calculus." (*Id*; See

15  also *Kissner v. Loma Priesta Joint Union Sch. Dist.,* 2024 WL 347911, *1, 6-7 (N.D. Cal. 2024)

16  [summary judgment granted where district administrators' disclosure in response to PRA request of statement

17  of charges against teacher, which included allegation teacher had engaged in "potential grooming behavior"

18  with a minor, was not violative of clearly established rights where disclosure did not effectuate termination or

19  extinguish other cognizable interest even where harmful to reputation].)

20  Here, the operative inquiry with respect to the application of qualified immunity is whether Hickey's

21  actions were objectively reasonable with respect to clearly established law, and whether an official of

22  reasonable competence in her position could disagree that it is "beyond debate" these actions would violate

23  Plaintiff's "clearly established rights" based on binding precedent. Plaintiff has not been terminated from his

24  position or from the District, nor can he so allege, and he has remained a District employee in good standing.

25  He complains about the assignment to the TOSA position during the 2024-25 school year and his assigned

26  duties in that position, as to which Hickey cannot be shown to have a role. Even if this were not the case,

27  given that the determination of what process Plaintiff was due is subject to the *Eldridge* balancing inquiry, as

28  in *Brewster* Plaintiff's claims are definitionally not clearly established. Finally, with respect to Plaintiff's

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

stigma-plus claim, any official of reasonable competence could disagree that Hickey's correspondence to the CTC was stigmatizing in nature, or that it violated any clearly-established rights. Accordingly, Hickey is subject to qualified immunity as to Plaintiff's §1983 claims in their entirety, and the Court should dismiss the claim on that basis.

**E.**    **The District is Entitled to Summary Judgment as to Plaintiff's Retaliation Claims**

As with Plaintiff's other claims, the Court has specifically delineated the scope of Plaintiff's retaliation claims against the District which survived Defendants' motions to dismiss. The Court held that Plaintiff alleged retaliation claims against the District only, under Title IX, Title VII, and FEHA, based on his engagement in two alleged "protected activities" under those statutes: his filing of the initial complaint in this matter on February 15, 2024; and his "resisti[ing] a discriminatory attempt to force his early retirement" in September 2022. (Dkt. 110 at; Dkt. 128 at 22:12-23:11.)

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee ... because he 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" (*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. §2000e-3(a)).) Similarly, "[r]etaliation against a person because that person has complained of sex discrimination is a form of intentional sex discrimination encompassed by Title IX's private cause of action." (*MacIntyre v. Carroll Coll.*, 48 F.4th 950, 954 (9th Cir. 2022).) Both types of retaliation claims "follow the ... burden-shifting framework described in *McDonnell Douglas*." (*Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014) [Courts in the Ninth Circuit apply to Title IX retaliation claims "the familiar framework used to decide retaliation claims under Title VII"].) Thus, "[t]o establish a prima facie case, the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two." (*Dawson*, 630 F.3d at 936.) "If a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." (*Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).) "If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating by preponderance of the evidence that the reason was merely a pretext for a discriminatory motive." (*Id.*; *Ruggles v. California Polytechnic State University*, 797 F.2d 782, 786 (9th Cir. 1986).) If Plaintiff succeeds, a

1    rebuttable presumption is created that a given adverse employment decision was the product of retaliatory

2    intent, and Defendant may rebut this presumption by showing by preponderance of evidence that the same

3    decision would have been made regardless of any retaliatory motives of defendants. (*Ruggles,* 797 F.2d at

4    786, citing *Mt. Healthy v. Doyle*, 429 U.S. 274, 287 (1977).)

5            **1.**         **Plaintiff's "Resisting" an Offer of Early Retirement is not a Protected Activity**

6          A protected activity in the Title VII retaliation context is delineated into two separate categories –

7    making a charge, testifying or participating in proceedings or hearings under the statutes (the "participation

8    clause"), or opposing acts made unlawful by the statutes (the "opposition clause"). (42 USC §2000e-3(a).)

9    The purpose of the participation clause "is to protect the employee who utilizes the tools provided by

10   Congress to protect his rights," and the statutory language expressly limits the participation clause to

11   participation in proceedings "under this subchapter." (*Vasconcelos v. Meese,* 907 F.2d 111, 113 (9th Cir.

12   1990).) Here, no evidence supports that Plaintiff's allegedly "resisting" the District's offer of early retirement

13   was in any way made in the context of participation in a "proceeding" under Title VII, Title IX, or FEHA.

14   After the allegation against him, he was informed that he was eligible for the same early retirement program

15   as anyone else with his years of service, and he declined the offer.

16         To the extent that Plaintiff would contend he "participated" in a proceeding under Title IX based on

17   the allegation against him, this is unsupportable as a matter of law because it is undisputed that no Title IX

18   proceeding took place in this case. To the extent that Plaintiff contends that the District's not initiating a Title

19   IX proceeding was itself retaliatory, in addition to the circular nature of the contention, this is similarly

20   unsupportable. The Department of Education has unambiguously stated that the 2020 Title IX regulations as

21   amended August 14, 2020 (which were in effect at the time the allegation was received, and upon which

22   Plaintiffs allegations are predicated – see Dkt. 113 at 44:16-46:23) do not retroactively apply to schools'

23   responses to sexual harassment occurring prior to August 14, 2020, such as the circa-2001 allegation against

24   Plaintiff. (Exhibit Z to Oreper Decl. at pg. 20). In that guidance, the department specifically states that "[p]rior

25   to 2020, the regulations . . did not include specific requirements related to sexual harassment . . . the 2020

26   amendments added specific, legally binding steps that schools must take in response to notice of alleged

27   sexual harassment," (*Id.* at pg. 13); and "if the conduct at issue in the complaint took place prior to August 14,

28   2020, the 2020 amendments do not apply even if the complaint was filed with a school on or after August 14,

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.,* Case No.: 5:24-cv-00909-NC

2020." (*Id.* at pg. 20). Further, the anonymous accuser was neither participating or attempting to participate in the District's education program when her husband reported the allegation, and no formal complaint was submitted by the accuser nor required to be on her behalf. Rather, the applicable contemporaneous guidance from January 2001 mandates only a "prompt, thorough, and impartial inquiry" and contains no retaliation provision. (COLOMBO_002909, attached as **Exhibit Y** to Oreper Decl.). Based on these undisputed facts, neither the August 2020 Title IX regulations, inclusive of the grievance procedures under 34 CFR §106.45, nor the District's Title IX policies (inclusive of A.R. 5145.71) applied to the allegation against Plaintiff, nor did the District understand them to apply, and cannot serve as a basis for his retaliation claims. (Andrade Depo. at 68:24 – 69:16). This would also be tantamount to Plaintiff's re-alleging his §1983 due process claim premised on Title IX, which the Court has already found improper. (Dkt. 110 at 10:2-11; Dkt. 128 at 8:3-5.)

Turning to the opposition clause, an individual engaging in such "opposition" must have an objectively reasonable, good faith belief that an actionable Title VII or Title IX violation has occurred for the complaint to qualify as a protected activity. (*Clark Cty Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *Trent v. Valley Electric Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994); *Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 548-49 (8th Cir. 2008).) This objective reasonableness assessment is made in light of the applicable substantive law, albeit with an allowance for the "limited knowledge" of most Plaintiffs about the legal bases of their claims. (*Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994).) The opposition itself must identify the allegedly illegal employment practice "if not specifically, at least by context." (*Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.*, 450 F.43d 130, 135 (3rd Cir. 2006).) Further required is a cognizable expression of opposition, such as a communication disclosing the employee's belief that the employer has engaged in discrimination. (*Crawford v. Met. Gov. of Nashville et al.*, 555 US 271, 276 (2009); *Jaburek v. Foxx*, 813 F3d 626, 633 (7th Cir. 2016).)

Here, Plaintiff admits that "the attempt to force his early retirement" he allegedly opposed was comprised solely of a conversation between counsel for the District and Plaintiff's criminal legal counsel in September of 2022; that the communication from the District amounted, in essence, to "you know, your client, he can retire early if he'd like. He's eligible. He's 55;" that Plaintiff was in fact eligible for early retirement, and that he was further aware that the District offered an annual retirement incentive for all eligible employees who met the criteria; and that this attorney-to-attorney conversation encompassed the

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

totality of the discussion between the parties pertaining to Plaintiff's early retirement. The following conclusions must be drawn from these facts as a matter of law: that no evidence supports that the communication of the District's early retirement incentive, nor the incentive itself, was in fact conduct violative of Title IX, Title VII, or FEHA; that there was no objectively reasonable or good-faith basis for Plaintiff to believe that it was a violation, given his admitted awareness of the District's annual retirement incentive offered to all eligible employees regardless of class membership; and that there is no evidence of any material expression of cognizable "opposition" by Plaintiff responsive to the allegedly discriminatory action, such as any responsive communication to the District from Plaintiff. Accordingly, summary udgment is appropriate as to his claims to the extent they are predicated on the alleged September 2022 early retirement offer[1].

### 2. Plaintiff Cannot Establish a Causal Retaliatory Nexus, and the District's Actions were Legitimate, Non-Retaliatory, and Non-Pretextual

The third element Plaintiff must satisfy to establish a rebuttable prima-facie retaliation claim is the existence of a causal link between his protected activity and the alleged adverse employment action(s). (*Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F3d 493, 506 (9th Cir. 2000).) As the Court has noted, this third element "requires but-for causation," as the causation standard in retaliation claims is higher than that required for a discrimination claim." (Dkt. 110 at 17:6-8, citing *Blount v. Morgan Stanley Smith Barney LLC,* 982 F. Supp. 2d 1077, 1087 (N.D. Cal. 2013).) Accordingly, Plaintiff must establish that retaliatory motive was a "but for" reason for any adverse employment action. (*Nieves v. Bartlett*, 587 U.S. 391, 391 (2019).) In assessing causation, courts "are mindful of avoiding "the logical fallacy of post hoc, ergo propter hoc . . . [A] specified time period cannot be a mechanically applied criterion[, and] a rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." (*Howard v. City of Coos Bay*, 871 F.3d 1032, 1046 (9th Cir. 2017).) Because "there is no set time ... [w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." (*Id.*) "[T]he mere fact that an adverse employment decision occurs after a charge of

---

[1] For the purposes of this motion, Defendants do not contest that Plaintiff's filing of the operative complaint in February 2024 constituted a protected activity under the statutes.

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." (*Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir.1989).)

### i.    The Filing of Plaintiff's Complaint

With respect to the filing of Plaintiff's operative complaint in February 2024, the Court delineated Plaintiff's claimed adverse employment actions in retaliation as follows: that the District "delay[ed] the close of its internal investigation and Plaintiff's return from administrative leave for several months;"  that it "fail[ed] to provide a complete report of the internal investigation's findings and conclusions;" and the "plac[ement] of Plaintiff in a non-teaching position upon his return." (Dkt. 110 at 17:12-17.) With respect to the first action, the undisputed evidence shows that Plaintiff cannot establish but-for causation. There is no evidence that the District's investigator, Nicole Miller, was even aware of the filing of Plaintiff's complaint, nor is there any evidence that Ms. Miller was directed to withhold the outcome of the her investigation for any reason, let alone in relation to the filing of Plaintiff's complaint. Plaintiff presents no evidence beyond conclusory speculation from which a jury could conclude that, but for his filing of the complaint, the conclusion of the District's investigation would not have been delayed. To the extent that Plaintiff relies on temporal proximity to illustrate causation, this presents an example of precisely why temporal proximity alone, sans circumstantial context, lacks sufficient probative value to establish but-for causation in most cases. Had the investigation concluded one or two months earlier, but nonetheless after Plaintiff's complaint was filed, Plaintiff's causation argument based on temporal proximity would have been identical, if not stronger; indeed, had the outcome been disclosed the same day or the day after Plaintiff's complaint was filed, he would have argued that this was indicative of the District sitting on the investigation and pretextually attempting to avoid claims of retaliation. Put simply, absent any additional circumstantial or direct evidence of retaliatory motive, the mere fact that the District's investigation findings were delivered to Plaintiff some time after the filing of his complaint lacks sufficient probative value to support a jury's finding a causal nexus exists.

With respect to Plaintiff's contention that the District retaliated against him for filing the complaint by not providing "a complete report of the investigation findings and conclusions," this is similarly unsupported by any competent evidence in this case. Plaintiff's allegations were premised on the assertion that District

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

policies required such a report, and that retaliation is therefore the only explanation why the District did not adhere to its own policies. However, no such policies have been demonstrated to be applicable to this case as a matter of law. To the extent that Plaintiff contends the District's Title IX or UCP policies mandated such process, neither is applicable to the District's investigation, which was not conducted pursuant to those policies.[2] Further, Plaintiff's contention that Title IX policies applied is based on his assertion that an immediate Title IX investigation and report should have been completed immediately in January of 2022; accordingly, to the extent Plaintiff claims the non-provision of a report in February of 2024 or thereafter is predicated on Title IX retaliation, there is no demonstrable causal relationship between the non-provision and the filing of Plaintiff's complaint. The District's legitimate, non-retaliatory justification is self-evident – as the Court has found (Dkt. 87 at 2:6-13; Dkt. 180 at 2:1-3) the investigation was conducted subject to privilege, and no law or regulation compelled its disclosure. While Plaintiff has no evidence to establish this justification is pretextual, assuming he could do so, the uncontroverted evidence establishes that the District would have taken the same action in the absence of the filing of Plaintiff's complaint, as the privileged nature of Ms. Miller's report was unchanged by that action and the same considerations remained in play, including the absence of any policy compelling disclosure.

Finally, in finding Plaintiff's contention that he was assigned to the TOSA position in retaliation for filing his complaint plausible, the Court also found that Plaintiff's own allegations "suggest" the assignment was made "because [the District] had too many physical education teachers on staff." (Dkt. 110 at 1:2-19:2.) The uncontroverted evidence in fact establishes that, upon Plaintiff's return from administrative leave, there was not a suitable teaching position available for him within the District for the 2024-25 school year; the TOSA position was created specifically for Plaintiff to provide him with a certificated teaching position; that once a PE teaching position became available, Plaintiff applied, was selected, and is currently employed in that PE teaching position for the 2025-26 school year; that, within the certificated TOSA teaching position, Plaintiff incurred no loss of salary or benefits and continued to accumulate seniority and tenure; and that, while employed as a TOSA during the 2024-25 school year, Plaintiff also coached varsity baseball at Palo Alto High School. Plaintiff adduces no probative, non-conclusory evidence connecting this assignment with

---

[2] As discussed, the 2020 Title IX regulations and the District's policies implementing them do not retroactively apply to the circa-2001 allegation against Plaintiff as a matter of law.

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

his filing of the complaint. The same temporal proximity analysis applicable to the release of Ms. Miller's findings applies here. All of the above serve both to establish the District's legitimate, nonretaliatory reasons for the assignment, and to rebut any imputation of pretext. Plaintiff's prior position no longer existed at the time of his return from leave, and no authority mandated its preservation in his absence. As noted by the Court, Plaintiff's contention that the District was required to remove existing employees or initiate a layoff to create an opening for him is unsupported by the Ed. Code provisions he cites or any other authority: "Plaintiff alleges California Education Code § 44955 'guarantees him a PE teaching position at the District ahead of all PE teachers with less seniority . . . and that Defendants improperly placed him in a non-teaching position after reducing the number of PE teachers due to decreased enrollment. California courts have held that where, like here, a permanent employee is reassigned, or even demoted, rather than terminated or dismissed, §§ 44955(b) and (c) do not apply." (Dkt. 128 at 11:14-28.) Similarly, even if Plaintiff could establish pretext, that the District would have made the same decision absent the filing of the complaint is inescapable given the absence of alternative placements for Plaintiff at the time, including the nonexistence of his original position, and the fact that Plaintiff is now in a teaching role.

### ii. Plaintiff's "Opposition" to Early Retirement

If, *arguendo*, Plaintiff's alleged opposition to the District's early retirement program was found to constitute a protected activity for the purposes of a prima facie retaliation case, the above analysis would apply to the same claimed adverse acts, with the additional distinction that any reliance on temporal proximity to establish causation is rendered even less probative and more tenuous. In addition to the above actions, the TAC alleges a slew of allegedly adverse employment actions in relation to this claim which the District addresses in brief here. (Dkt. 113 at 58:7-59:17). With respect to Plaintiff's assertion that the District retaliated by "not stop[ping] the malicious prosecution," Plaintiff presents no evidence that the District was in any position to control the operation of the independent criminal proceeding against Plaintiff; furthermore, the Court has previously held that Plaintiff has no basis to assert any right to evidence was violated by the District or that the District "jointly" conducted the criminal process with PAPD. The District was required to cooperate with law enforcement and no evidence supports that Plaintiff's non-retirement bore any causal connection to the conduct of the criminal process. With respect to the publication of the "Unfit to Teach" article, Plaintiff stipulated at deposition that he was not pursuing any claims relating to the District's

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC

disclosure of materials in response to public records act requests, including any claims that anything was improperly disclosed, and further testified that he had no information or belief that the "Unfit to Teach" article was sponsored in any way by the District or that anyone from the District requested the article be published (Plaintiff's Depo. at 230:12-232:9; 243:14-244:5.) Plaintiff presents no evidence that the District hired a "replacement" for his position or that, if any hiring took place during the pendency of his leave, it was retaliatory, illegitimate, or would not have occurred absent his protected activity. As discussed above, Plaintiff presents no evidence to support his assertion that upon the dismissal of the criminal charges against him, the District was required to displace any current employee to place him in a PE teaching position, and that its failure to do so was presumptively retaliatory; that its failure to terminate other employees was retaliatory or illegitimate; or that it would in fact have terminated those employees absent Plaintiff's protected activity. With respect to Plaintiff's placement on unpaid leave for a brief period following the dismissal of the charges, as discussed in Defendants' uncontroverted facts, this was predicated on CTC's determination that Plaintiff was without a valid teaching credential during that period and accordingly could not be paid pursuant to the education code. Lisa Hickey's letter to CTC, which is discussed in substantial detail *infra*, is likewise demonstrably non-retaliatory in nature, took place before either of his allegedly protected activities, was provided in response to a direct inquiry from CTC; no evidence supports any causal link between the letter and Plaintiff's alleged protected activity; and any prior, concurrent, or resultant conduct by CTC is outside of the District's scope of responsibility. Plaintiff similarly can provide no evidence to support his conclusory allegation that the District "conspired" with CTC to refuse to backdate his credential.

## V.    CONCLUSION

The District and Lisa Hickey respectfully request that the Court grant summary judgment as to each of Plaintiff's claims against them in this matter; or, in the alternative, partial summary judgment.

Dated:  November 3, 2025             BERTRAND, FOX, ELLIOT, OSMAN & WENZEL

                                     By:  ____*/s/ Benjamin I. Oreper*_____
                                           Eugene B. Elliot
                                           Ethan M. Lowry
                                           Benjamin I. Oreper
                                           Attorneys for Defendants
                                           PALO ALTO UNIFIED SCHOOL DISTRICT and
                                           LISA HICKEY

DEFENDANT DISTRICT AND HICKEY'S MOTION FOR SUMMARY JUDGMENT
*Colombo v. Palo Alto Unified School District, et al.*, Case No.: 5:24-cv-00909-NC