EVAN C. NELSON, ESQ. (SBN 172957)
JONATHAN D. MCDOUGALL, ESQ. (SBN 212359)
LAW OFFICE OF JONATHAN D. MCDOUGALL
1640 Laurel Street
San Carlos, CA  94070
Telephone: (650) 594-4200
Email:  jonathan@mcdlaw.net; evancnelson.law@gmail.com

*Attorneys for Plaintiff Peter Colombo*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PETER COLOMBO,<br><br>                                   Plaintiff,<br><br>          v.<br><br>PALO ALTO UNIFIED SCHOOL DISTRICT, DON AUSTIN, Individually and as Superintendent for PAUSD, LISA HICKEY, Individually and as Director of Certificated Human Resources for PAUSD, and TRENT BAHADURSINGH, Individually and as Deputy Superintendent and Chief of Staff for PAUSD,<br><br>                                   Defendants. | Case No. 5:24-cv-00909-NC<br><br>**PLAINTIFF PETER COLOMBO'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT WITH STATEMENT OF MATERIAL FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**FED. R. CIV. P. 56, L-R 56**<br><br>DATE:          December 17, 2025<br>TIME:          10:00 a.m.<br>LOCATION:  COURTROOM 5, 4th FLOOR<br>                      ROBERT F. PECKHAM FEDERAL<br>                      BUILDING & UNITED STATES<br>                      COURTHOUSE<br>                      280 SOUTH 1ST STREET<br>                      SAN JOSE, CA 95113<br><br>**HON. NATHANAEL M. COUSINS** |

# Table of Contents

TABLE OF AUTHORITIES..................................................................................... iii

*NOTICE OF MOTION AND MOTION*.................................................................... *1*

*MATTERS ON WHICH PARTIAL SUMMARY JUDGMENT is sought*....................... *1*

*MEMORANDUM OF POINTS AND AUTHORITIES*....................................................... *2*

*I.    INTRODUCTION*.............................................................................................. *2*

*II.    STATEMENT OF FACTS*................................................................................. *3*

A.    Title IX, the Office of Civil Rights, District Board Policies and Regulations and the District Memorandum of Understanding with the PAPD Mandates that the District complete an immediate, thorough and impartial Title IX investigation process (an investigation process with protections for Plaintiff)................................... 3

B.    Defendants Repeatedly Misrepresented that the Title IX Investigation was Ongoing, Immediate, Thorough and Impartial, Upon Which Plaintiff Reasonably Relied.................................................................................... 4

C.    Plaintiff Would Have Been Exonerated and Never Arrested if Defendants Properly Conducted the Mandated and Pledged Impartial Investigation................................................................................... 5

D.    The District Began Retaliating Against Plaintiff Immediately Upon Receipt of the Unsubstantiated Claim .............................................................................................. 6

E.    Austin, Hickey and Bahadursingh Actively Participated in the Section 1983 Stigma Plus Liberty Interest Violations while Retaliating Against Plaintiff.............................................................. 10

F.    Austin, Hickey and Bahadursingh Each Participated in a Common Plan ..................................... 11

G.    Defendants Failed to Timely Disclose Evidence and Facts to Support their Forty-one (41) Defenses Listed as "Affirmative Defenses" in their Answer ............................................................... 11

*III.    LEGAL DISCUSSION* ..................................................................................... *11*

A. Austin, Hickey and Bahadursingh are Liable for Section 1983 Malicious Prosecution.................................. 11

    1.    Hickey, Bahadursingh and Austin Were Actively Involved in Causing Plaintiff's Arrest and Prosecution and the Continuation Thereof ............................................................ 12

    2. All Prosecutions, Investigations and Processes Terminated in Plaintiff's Favor ......................................... 14

    3. No Reasonable Person Would Have Believed There Were Grounds for the Arrest and Prosecution Absent Defendants' Cancellation of the Title IX Investigation and Concealment of Exonerating Evidence ............. 14

    4. As in *Myles*, Defendants' Acted Primarily to Remove Plaintiff from His Employment ............................ 15

B. The District Has Retaliated Against Plaintiff Continuously Since January 31, 2022....................................... 16

    1.    The District Retaliated Against Plaintiff Pursuant to Title VII/IX and FEHA by Maliciously Bringing Prosecution.............................................................................................. 16

    2.    The District Retaliated Against Plaintiff By Placing Plaintiff on Leave After Charges Against Him Were Dismissed for Failure to Substantiate the Accuser's Claim ................................................ 17

    3.    The District Retaliated Against Plaintiff by Reporting Plaintiff to CTC Without Any Evidence to Support Such Report ............................................................................................. 18

    4. The District Retaliated by Forcing Plaintiff Into a Sham TOSA Position ................................................ 19

    5. Not supporting Plaintiff with a Proper Transition Plan is Proven Retaliation ............................................ 20

-i-

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

C.    Austin, Hickey and Bahadursingh Actively Participated in the Section 1983 Stigma Plus Liberty Interest Violations While Retaliating Against Plaintiff ................................................................. 22

D. Austin, Hickey and Bahadursingh Each Participated in a Common Plan ........................................ 23

E.    Defendants Failed to Timely Disclose Evidence and Facts to Support their Forty-one (41) Defenses Listed as "Affirmative Defenses" in their Answer ......................................................................... 24

**IV.     CONCLUSION** ........................................................................................................... **25**

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

# TABLE OF AUTHORITIES

### CASES

*Albertson v. Raboff*, 46 Cal. 2d 375, 383, 295 P.2d 405 (1956) ----------------------------------------------- 16

*Anderson v. City and Cnty. of S.F.*, 169 F. Supp. 3d 995, 1026 (N.D. Cal. 2016) --------------------------- 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ------------------------------------------------ 11

*Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ----------------------------------------- 12

*Blount v. Morgan Stanley Smith Barney LLC*, 982 F. Supp. 2d 1077 (E.D. Cal. 2013) -------------------- 16

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ------------------------------------- 16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986 -------------------------------------------------- 11, 24

*Myles v. United States*, 47 F.4th 1005, 1014-1015 (2022) --------------------------------------------- 15

*Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843 (9th Cir. 2014) ------------------------------ 16, 25

*Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022) --------------------------------------------------- 23

*People of City of L.A. Who Are Un-Housed v. Bass*, No. 2:24-cv-09320-DOC-MAA, 2025 LX 74674 *13 (C.D. Cal. Jan. 24, 2025) ------------------------------------------------------------------ 12

*Stretten v. Wadsworth General Hospital*, 537 F.2d 361, 365 (9th Cir. 1976) -------------------------- 22

*Thompson v. Clark*, 596 U.S. 36, 43 (2022) -------------------------------------------------------- 11, 14

*Ulrich v. City and Cnty. of S.F.*, 308 F.3d 968, 982 (9th Cir. 2002) ---------------------------------- 22

*Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982) ------------------------------ 22

### STATUTES

42 U.S.C. § 2000e–3(a) ("Title VII") ---------------------------------------------------------------- 16

20 U.S.C. §1681 et seq. ("Title IX") ---------------------------------------------------------------- 16

Cal. Gov. Code § 12900, *et seq.* California Fair Employment and Housing Act ("FEHA") -------------- 16

-iii-

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE that on December 17, 2025 at 10:00 a.m.** or as soon thereafter as the Court may hear this matter in Courtroom 5, 4th Floor of the United States Courthouse located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Peter Colombo will, and hereby does, move for summary judgment pursuant to Federal Rule of Civil Procedure 56 based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the concurrently filed Declaration of Evan C. Nelson and Exhibits, the court files in this matter and other matters properly presented to the Court.

## MATTERS ON WHICH PLAINTIFF SEEKS PARTIAL SUMMARY JUDGMENT

The matters on which Plaintiff seeks partial summary judgment are as follows, including any sub-issues to the extent this Court does not grant summary judgment as to the entire issue:

1. Defendants Austin, Bahadursingh, and Hickey are each liable for the due process violation of malicious prosecution under Section 1983 through their direct participation in causing the arrest and prosecution of and/or extending the prosecution of Plaintiff.

2. Austin, Bahadursingh and Hickey are jointly and severally liable for their participation in the common plan or conspiracy with others that caused and/or extended the malicious prosecution.

3. Austin, Bahadursingh and Hickey are each liable under Section 1983 for actively participating in the stigma plus liberty interest violation of Plaintiff's federal and constitutional rights.

4. Austin, Bahadursingh and Hickey are jointly and severally liable for their participation in the common plan or conspiracy with others that resulted in a stigma plus liberty interest violation.

5. Palo Alto Unified School District ("The District") is liable for retaliation against Plaintiff as a respondent participant in a Title IX-related claim, by Defendant's malicious prosecution, abuse of administrative process, removal of due process and numerous other actions and omissions.

6. The District is liable for retaliation against Plaintiff by taking adverse employment actions against him based on an arrest without any finding of wrongdoing.

7. The District is liable for retaliation against Plaintiff by taking adverse employment actions against him based on Plaintiff's filing of a discrimination claim.

8. Defendants failed to provide timely disclosed evidence-based facts to support any of their "Affirmative Defenses" in their Answer to the Third Amended Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants Austin (Superintendent), Bahadursingh (Deputy Superintendent over Human Resources, Title IX, and student records) and Hickey (Director of Human Resources and usual point of contact for investigations involving teachers) are responsible for the miscarriage of justice Plaintiff has suffered by their actions in concert with one another and with others. Each of them not only failed to cease or ameliorate violations to Plaintiff's federal rights, but also Defendants actively participated in the perpetuation of the violations.

Austin admitted during his deposition that Defendants' conduct towards Plaintiff was the result of carrying out a community member's personal agenda that included ruining a man's life as collateral damage. The community member's close association with the then-District Board President and her influence over the assigned detective led directly to each Defendants' active involvement in a concert of action including retaliations, deprivations of due process, malicious prosecution, creation of stigma and other misconduct that caused Plaintiff irreversible damage to his reputation, career and mental health.

The District is responsible for the retaliatory conduct by its administrators and the District's Board was aware of, directed, approved, ratified and/or acquiesced in the misconduct.

On April 10, 2025, Defendants filed their Answer to the Third Amended Complaint with forty-one (41) conclusory defenses labeled "Affirmative Defenses." On May 15, 2025, in response to Plaintiff's written discovery, Defendants did not provide any facts or evidence to support each, or any, of the defenses they listed as "Affirmative Defenses." On the day that fact discovery closed, August 29, 2025, Austin and Bahadursingh first set forth any facts or evidence to support their 41 listed defenses. Hickey and the District first set forth facts or evidence to support their listed defenses on August 23, 2025, less than a week before discovery closed. Their intentionally delayed disclosure is not timely and was deliberately and improperly designed to gain advantage and/or force a trial continuance.

Accordingly, unless each Defendant presents timely disclosed admissible evidence sufficient to create any triable issues, Plaintiff's Motion should be granted in each of its particulars. These pleadings also provide the Court with clear grounds on which to deny Defendants' competing Motions for Summary Judgment and allow these claims to proceed to jury trial and be decided on their merits.

## II.    STATEMENT OF FACTS

On or about January 28, 2022, the District's Title IX Coordinator received a claim that a former Jordan Middle School student was sexually assaulted during the 2001-2002 school year. (Exh. 21.) The claim specified that the assault occurred in the Jordan girls' locker room immediately after her 6th grade PE class during the beginning of the lunch period. (Id.) The accuser stated she neither saw nor heard her attacker, but she still proclaimed that Plaintiff was her 6th grade PE teacher and alleged attacker. (Id.)

A.    **Title IX, the Office of Civil Rights, District Board Policies and Regulations and the District Memorandum of Understanding with the PAPD Mandates that the District complete an immediate, thorough and impartial Title IX investigation process (an investigation process with protections for Plaintiff)**

In 2017, the Department of Education Office of Civil Rights ("OCR") audited the District for failure to follow Title IX compelling the District to comply with Title IX going forward. (Exhs. 2, 3, 15, 105, 163[1], 173.) OCR required the District to change its board policies and administrative regulations to ensure that the District would complete an immediate, thorough and impartial Title IX investigation process for any allegation of sexual misconduct. (Id.) OCR also mandated that the District implement a specific, OCR-approved Memorandum of Understanding ("MOU") with the Palo Alto Police Department ("PAPD") to ensure proper collaboration relating to any allegation of on campus sexual misconduct, including that law enforcement would not interfere with the required District Title IX investigation process and a 60-day completion timeline. (Exhs. 2, 3, 105, 163.)

The District changed its board policies and administrative regulations in compliance with OCR mandates. (See e.g., Exhibits 8, 14.) OCR approved an MOU with PAPD; the District represented to OCR that the MOU was adopted; and the Palo Alto City Council adopted the OCR-approved MOU on August 13, 2018. (Exhibits 2, 3, 105, 163.) The operational term for the MOU is indefinite, allowing for amendments or changes to ensure it always comports with any changes in the law. (Exh. 105, p. 12, ¶3.) Neither the District nor the Palo Alto City Council has taken action to modify or revoke the MOU. It remains exactly as it was adopted on August 13, 2018. (Exhs. 105, 163.)

---

[1] Expert witness report by Saundra Schuster, President of ATIXA (Association of Title IX Administrators) a leading provider of professional development resources and community support for Title IX practitioners in California and nationwide. She is recognized as one of the top, if not the top, authorities and experts in Title IX administration. Her CV is attached with her report.

### B. Defendants Repeatedly Misrepresented that the Title IX Investigation was Ongoing, Immediate, Thorough and Impartial, Upon Which Plaintiff Reasonably Relied

Or about January 31, 2022, Hickey and Bahadursingh assured Plaintiff of a proper, immediate, thorough and impartial investigation process. (Exh. 11 at p. 2; Exh. 127 at pp. 48:21-25, 50:25-51:13; Exh. 129, pp. 101:3-102:3; Exh. 132 at pp. 65:6-10, 66:8-68:14). They specified that an outside investigator would conduct the investigation. (See id.) General Counsel Vishakan confirmed in testimony that a Title IX investigation was required and an outside Title IX investigator had been immediately assigned. (Exhibit 126 at pp. 75:20-76:22, 162:1-16.) Hickey, Bahadursingh and Vishakan to whom Hickey and Bahadursingh directed inquiries made on Plaintiff's behalf, continually represented to Plaintiff through at least May of 2022, that the due process protective investigation process was ongoing. (Exh. 11 at p. 2; Exh. 25 at pp. 1-2 (reads from bottom of page 2 to top of page 1); Exh. 125 at p. 1; Exh. 124 at pp. 109:18-115:10; see also Exh. 105 at pp. 25-28, and see Exhs. 2, 3, 8 and 14.) Plaintiff reasonably relied upon Defendants' representations of the continuation, fairness and thoroughness of the investigation process as essential to his protection and exoneration. (Exh. 132, pp. 65:6-10; 66:8-68:14.) Contrary to their word, the investigation process was improper, delayed, cut-off, incomplete and biased in favor of the accuser, leaving Plaintiff entirely unprotected and unaware. (Id.; Exhs. 163, 68, 173, 168.)

Despite assuring the contrary, Defendants omitted exonerating evidence from the investigation process. The District's General Counsel expressly stated that any information or evidence Plaintiff gave to the District would be provided to the investigator. (Exh. 25.) In reliance, Plaintiff communicated directly to Hickey regarding the exculpatory evidence in Defendants' readily accessible possession. (Exh. 44.) Plaintiff advised Hickey of the fact that his work assignments would show that during 2001-2002 he taught 6th grade PE at Terman Middle School not Jordan where the accuser claimed she had been assaulted by her 6th grade PE teacher. (Id.) Plaintiff also informed Hickey that Cindi Ahern, his evaluator in 2001-2002, worked with him at Terman and could corroborate that he would not have been at Jordan during the time of the alleged assault. (Id.; Exhibits 30, 45.) Nevertheless, Hickey made a conscious decision to withhold the exculpatory evidence Plaintiff provided. (Exh. 127, pp. 88:23-89:7; 91:12-93:7.)

Hickey and Bahadursingh claim they were not involved in the investigation yet their active participation in conscious concealment of critical evidence establishes their direct impact on the

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

investigation. (Exh. 127 at pp. 88:23-89:7, Exh. 108 ¶10; Exh. 129, pp. 82:1-85:24; see Exhs. 32, 34, 36, 6, 128 at pp. 19:7-22:1.) Hickey testified that Bahadursingh removed her from her role for investigation of a certificated teacher  leaving Bahadursingh and Austin to handle the investigation responsibilities. (Exh. 127 at p. 27:15-25, pp. 135:20-136:5.) On June 19, 2022, in preparation for addressing the District's Board of Education after Plaintiff's arrest on June 15, 2022, Defendant Austin demanded to see everything concerning Plaintiff, emphasizing the need to see "absolutely everything." (Exh. 65). Hickey, Bahadursingh and those under their authority could have provided, but chose not to provide Austin with the information relating to Plaintiff's assignment to Terman during 2001-2002 and Ahern's exonerating testimony. (Id; Exh. 129, pp. 147:10-150:11.) Further, they chose not to direct anyone to consider it. (Id.)

### C.    Plaintiff Would Have Been Exonerated and Never Arrested if Defendants Properly Conducted the Mandated and Pledged Impartial Investigation

Sometime in August or September of 2023 Defendants finally appointed Miller, an outside Title IX investigator, to investigate the accuser's claim. (Exh. 124, p. 46:11-16.) Despite Miller's expertise as a Title IX investigator (Exhs. 104, p. 7; 124 at p. 102:10-24), she did not follow Title IX, board policies or clearly established protocols (Exh. 124 at pp. 38:23-40:15.) She did not even follow the investigation protocols for a student-related complaint as published by the former General Counsel for the Orange County Department of Education, who is also a partner at the law firm that hired Miller for this investigation. (Id.; Exhs. 103; 124 at p. 34:17-25.)

The investigation process that law and board policy required, and of the nature promised to Plaintiff, would have uncovered evidence showing that the accuser's claim could not have occurred as she stated. (See Exhs. 30, 43, 44, 45, 48, 49, 50.) A proper investigation would have revealed Plaintiff's work assignments placing Plaintiff at Terman for 6th grade PE classes during 2001-2002, a different school from where the alleged assault occurred. (Exhs. 30, 43, 44, 45, and Exh. 128 at pp. 8:4-13:13, 48:6-49:19, 60:8-61:8.) The investigation would have generated corroborating evidence from Plaintiff's supervisor/evaluator in 2001-2002 at Terman Middle School that Plaintiff was not at Jordan Middle School during the time of the alleged assault. (Id.) The investigation would have revealed three female PE teachers assigned to the Jordan girls' locker room during the relevant time period who testify Plaintiff could not have assaulted the accuser as she claims. (See Exhs. 48, 49, 50 and 127 at pp. 97:24-104:24 –

1    Hickey knew exactly how to gather relevant evidence, including student records, HR work assignments

2    and to identify and locate the three female PE teacher witnesses currently employed by the District.)

3         Even without reviewing the exonerating evidence and without following protective policies and

4    protocols, instead reviewing only information Defendants chose to provide her, Miller could not find that

5    a sexual assault occurred under the lesser preponderance of the evidence standard. (Exh. 107; 124 at pp.

6    59:17-61:23; 85:14-86:7.) In response, Defendants concealed her report and complete investigative

7    findings under purported attorney-client privilege. (Exh. 124 at pp. 77:2-12; 80:15-81:1; 81:13-21.)

8         The evidence showing Plaintiff teaching at a different school at the time of the alleged assault,

9    that Plaintiff was not the accuser's 6th grade PE teacher, and that three female PE teachers stated that

10   Plaintiff could not have been in the girl's locker room at Jordan as the accuser described in addition to

11   the timely and complete findings of the Title IX outside investigator would have made it impossible to

12   prove Plaintiff responsible for the alleged attack. (Ibid.)

13        Hickey's and Bahadursingh's failure to provide law enforcement the evidence and information

14   that a proper investigation process would have yielded greatly contributed to Plaintiff's arrest and

15   prosecution. (Exh. 168.)  Austin, Bahadursingh and Hickey then further extended the prosecution by

16   failing to provide the exculpatory evidence after the arrest, when the evidence was once again brought to

17   their attention. (See Exhs. 43; 129, pp. 147:10-150:11; and 168; see Exhs. 30, 45, and 49.) Taking yet

18   another opportunity to ignore the exculpatory evidence and aided by Bahadursingh's collaborations

19   regarding public communications (Exhs. 129, pp. 41:12-25; 108), Austin extended the prosecution even

20   further by making improper stigmatizing comments implicating Plaintiff's guilt to the media (Exh. 75.)

21        **D.    The District Began Retaliating Against Plaintiff Immediately Upon Receipt of the Unsubstantiated Claim**

22        The District's malicious prosecution is retaliation. Upon receiving the accuser's unsubstantiated

23   claim, Plaintiff became an unwilling participant as a respondent. (Exh. 11, Exh. 126 at p. 75:20-76:22

24   and 162:1-16; Exh. 163.) Proper application of Title IX mandates would have provided Plaintiff with

25   required due process protections. (Exhs. 163; 11 at p. 2; 25 at pp. 1-2; 125 at p. 1; 124 at pp. 109:18-

26   115:10; see also Exh. 105 at pp. 25-28, and Exhs. 2, 3, 8 and 14.) Hickey and Vishakan knew the

27   protections were required. (Exhs. 11; 126 at p. 75:20-76:22 and 162:1-16.)  Nevertheless, Defendants

28

1   removed said protections but continued to misrepresent to Plaintiff that the protective Title IX

2   investigation (or similarly protective process) was ongoing (Exhs. 11, 25, 124 at pp. 109:18-115:10; see

3   also Exh. 105 at pp. 25-28, and Exhs. 2, 3 (Exh. 105 – Palo Alto City Council adopted the MOU), 8 and

4   14.) The District improperly sided with the accuser and engaged in the unfair process described above

5   that caused the wrongful prosecution against Plaintiff. (Exhs. 163, 173.) The District then made improper

6   public comments in the press to stigmatize Plaintiff and extend the wrongful prosecution. (Exh. 75; Exh.

7   169:17-172:19 – **The Board knew about everything significant relating to the case**.)

8       The District Attorney's Office dropped the criminal charges against Plaintiff for failure to

9   substantiate the accuser's claim. (Exh. 78). Testimony obtained during the Preliminary Hearing

10  established the claim completely lacked credibility. (Exh. 123). The accuser admitted that she did not see

11  nor hear her alleged attacker yet identified Plaintiff despite having also identified Mr. Giordano as her

12  alleged attacker to "fresh complaint" witnesses. (Id. at pp. 44:17-20; 45:3-6; 46:4-9 – Jane Doe's

13  testimony.  Also, id. at p. 118:1-22 – Detective's testimony; see Exh. 124 at pp. 121:19-125:5.) Mr.

14  Giordano was a 6th grade PE teacher at Jordan during 2001-2002, the time at issue, who was convicted in

15  2006 for sexual misconduct with Jordan students. (Exh. 124 at pp. 121:19-125:5.)  The Palo Alto Police

16  Department had record of two additional related claims against Mr. Giordano, one filed in 2003 and one

17  filed in 2020. (Exh. 124 at p. 129:16-21.) The accuser testified that she could not recall if penetration

18  occurred. (Exh. 123 at pp. 49:22-50:1.) She stated that she did not experience injuries, including

19  bleeding. (Exhs. 123 at pp. 49:22-50:1; 124 at pp. 125:25-126:8.) She acknowledged that she did not seek

20  medical treatment. (Id.) Instead, she did not tell anyone about the attack going straight to her next classes

21  and to competitive swim practice without complaint or concern. (Id.) Thus, the District Attorney's Office

22  could not substantiate the accuser's claim and declined to pursue the case further. (Exh. 78.)

23      The District ignored the exonerating evidence Plaintiff provided, evidence easily accessible to

24  them (Exh. 129, pp. 121:5-122:6; 147:10-150:11), findings of the Title IX outside investigator, and the

25  evidence and findings brought forth in the Preliminary Hearing. (Exh. 124 at pp. 119:19-25, 120:12-

26  121:8; Exh. 78.) They chose not to publicize the implausibility of the accuser's claim, that no credible

27  evidence supported her claim and that objective evidence corroborated Plaintiff's assertions he did not

28  commit the alleged attack. (Exhs. 123, 30, 49.) Instead, Defendants wrongly sided with accuser to cause

1   malicious prosecution of Plaintiff. (Exh. 168; Exh. 129, pp. 82:1-85:24; 147:10-150:11.) The Board,

2   which had heightened interest in the case, was kept apprised. (Exh. 129, pp. 169:17-172:19.)

3          The District retaliated against Plaintiff by placing him on leave after the District Attorney's

4   Office dropped the unsubstantiated criminal charges. (Exh. 88.) After the criminal charges were dropped,

5   the District continued to stigmatize Plaintiff in the press and treat him as though he was guilty, without

6   any finding of misconduct and ignoring exonerating evidence. (Exhs. 78, 88, 90.) The District refused to

7   return Plaintiff to his previous employment and further used artifice to refuse to return Plaintiff to a

8   student facing teaching position for an additional year and a half. (Id., Exhs. 88, 109, 124, pp. 49:4-20.)

9          The District retaliated against Plaintiff by reporting him to the California Commission on Teacher

10  Credentialing ("CTC") without any supporting evidence and strategically delaying the closing of the

11  outside investigation forcing Plaintiff into a sham Teacher on Special Assignment classification

12  ("TOSA"). The District conveyed to CTC that Plaintiff would be subject to discipline through a

13  statement of charges or intent to dismiss/suspend based on its investigation of the sexual assault claim.

14  (Exhibit 90). Due to recent legislation, the District's notification to CTC relating to a "disqualifying

15  offense" without any of the exonerating evidence that should have been included in the promised Title IX

16  investigation renders Plaintiff unemployable as a teacher outside the District. (Exh. 173.) Miller reported

17  her investigation findings to the District in February of 2024. (Exh. 124 at p. 49:4-20.) The District

18  strategically waited to close Miller's investigation until May of 2024 after making their 2024-2025

19  teaching assignments (Exh. 109).  This delay coupled with the encumbrance of the improper CTC

20  reporting forced Plaintiff into further extended leave and a sham TOSA position that excluded him from

21  a student facing teaching assignment. (Exhs. 132. pp. 218:6-219:1; 220:15-221:19.)

22         The District Retaliated against Plaintiff by failing to support him with a proper transition plan.

23  Standard human resources administration practices and procedures for California K-12 schools required a

24  supportive "return to work" transition plan for Plaintiff that would prioritize his success and comfort.

25  (Exhs. 173, 242). Providing a safe, supportive and positive working environment for Plaintiff is also

26  mandated by District board policies. (Exh. 243.) As set forth above, the District failed to provide

27  transparency and supportive communication throughout the purported investigative processes taking

28  place while Plaintiff was on leave. (See Exh. 242 ¶8.) They delayed closing the investigation to avoid

-8-

1   providing Plaintiff a student facing teaching position. (Exh. 124 p. 49:4-20; 109; Exh. 132 p. 221:1-9.)

2   They stigmatized Plaintiff through the media and to CTC, making clear they did not want Plaintiff

3   returning to the District all while ensuring that he would be unable to work elsewhere. (Exhs. 78, 88, 90,

4   173).  The District then transferred Plaintiff to a school different from where he spent almost all of his

5   25+ years with the District (the only exception ironically being 2001-2002 when he was assigned to teach

6   6th grade PE at Terman), even though there was a vacant position at Greene where Plaintiff would have

7   been more comfortable returning from 3.5 years of involuntary absence. (Exhs. 43, 195, 158, 173.) The

8   District concealed the fact that the vacant position was at Greene. (See Exh. 195, pp. 6-8.)

9        The District sustained its lack of support by promoting negative communications regarding

10  Plaintiff to the school community and public in general. The District continued maligning Plaintiff to

11  parents at Fletcher Middle School where Plaintiff was forced to transfer, telling them that Plaintiff was

12  assigned to Fletcher not because claims against Plaintiff were unsubstantiated, but because the District's

13  "hands were tied." (Exhs. 40, 130, 194, 197). The complete lack of transparency and supportive

14  communication to Plaintiff concerning the investigations and processes being negatively leveraged

15  against him for 3.5 years (see Exh. 129, pp. 165:5-19 – leave of more than 1 year without completing an

16  investigation is not proper) evolved into a lack of transparency and compassion with parents and students

17  at Fletcher, resulting in protests and petitions against Plaintiff in large part because the District refuses to

18  clear Plaintiff's name after stigmatizing him in the press. (Id.; Exh. 128, pp. 25:6-32:10.)

19       As part of its deficient transition plan, the District misconstrued the Court's Order in this matter

20  (ECF #128, p. 9, lns. 4-7) stating The District might assign Plaintiff away from Greene "within reason",

21  to constitute free rein to transfer Plaintiff away from the vacant position at Greene without reason, to

22  continue retaliating against him. (Exhs. 195, 158, 173.) Plaintiff requested to remain at Greene as

23  reasonable accommodation for his known disability (AUD) and related anxieties, as well as to calm his

24  recently caused/exacerbated PTSD and Anxiety Disorder. (Exhs. 195, 158.) Allowing Plaintiff to return

25  to Greene would have been the most reasonable of all accommodations because it would have created no

26  discernible burden for the District – the new male PE teacher being assigned to the vacant position at

27  Greene could have been assigned to Fletcher. (Id.; Exh. 173.) The District's failure to allow Plaintiff to

28  return to Greene without at least engaging in the mandatory interactive process with Plaintiff to

-9-

1   determine whether remaining at Greene was a reasonable accommodation are also violations of FEHA

2   and the ADA. (Id.; and see Exh. 129, p. 175:8-24.) Dr. Chaudhary opines the District should have

3   supported Plaintiff's mental health by clearing his name and by allowing him to remain at Greene. (Exh.

4   158.) But the District did neither.

5        Forcing Plaintiff to transfer to Fletcher even though his position at Greene was vacant adversely

6   impacted Plaintiff's mental health; it significantly increased his daily commute times; and it necessitates

7   the most undesirable weekly work schedule imaginable for a PE teacher (Id., Exh. 132 at p. 353:15-24;

8   Exh. 128 at pp. 35:5-37:18.) Significantly, Plaintiff was forced to walk through protestors and listen to

9   affronts by some of the approximately 200 parents who have signed petitions against him, all without the

10  slightest amount of support or proper transparency and communication from the District. (Exhs. 40, 194,

11  197, and expert opinions at Exhs. 158, 173). The District has precluded Plaintiff's ability to obtain work

12  as a teacher anywhere else in California (Exhs. 90, 173), so he has no choice but to endure the District's

13  continued retaliation and harassment with its substantial deleterious impact on his mental/emotional

14  status, reputation, and psychiatric conditions. (Id.; Exh. 158). He is left with two awful choices, (1) return

15  to an extremely hostile work environment with the daily ramifications of everything the District has put

16  him through for almost 4 years; or (2) return to house arrest reminiscent of the year he spent on ankle

17  monitoring waiting for a malicious prosecution to end. (Id.) He wants to work, but this is unconscionable.

18        E.   **Austin, Hickey and Bahadursingh Actively Participated in the Section 1983 Stigma
             Plus Liberty Interest Violations while Retaliating Against Plaintiff**

19
20        Austin made inflammatory comments to the press that wrongfully created stigma when standard

21  practices dictate he make no comment. (Exhs. 75, 78; expert opinions at Exhs. 163, 173.) Hickey actively

22  participated in creating the wrongful stigma of guilt by reporting to CTC that Plaintiff would be subject

23  to discipline following completion of the District's investigation of the sexual assault claim. (Exhs. 90,

24  173.) Bahadursingh participated in both Austin's and Hickey's creation of stigma through his position as

25  Superintendent of Human Resources and his District communications role. (Exh. 129, pp. 41:12-25; Exh.

26  108.) Bahadursingh is directly responsible for the continuing stigma-producing communications to

27  parents suggesting that Plaintiff was transferred to Fletcher only to comply with the CBA and not

28  because Plaintiff is qualified to teach and legally cleared. (Exhs. 40; 108; 128 at pp. 25:6-32:10; 244.)

-10-

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

**F.    Austin, Hickey and Bahadursingh Each Participated in a Common Plan**

On March 6, 2025, Austin commented that "there are members of this community who are willing to ruin a man's life to advance their own personal agenda." (See Exh. 130 at pp. 102:24-105:10; 168.) Austin admitted his statement could explain what happened to Plaintiff. (Id.; see Exhs. 133-141.)

**G.    Defendants Failed to Timely Disclose Evidence and Facts to Support their Forty-one (41) Defenses Listed as "Affirmative Defenses" in their Answer**

Defendants' Answer sets forth forty-one (41) defenses listed as "Affirmative Defenses." (ECF #130.) The defenses are stated in conclusory fashion without facts in support. (Id.) Plaintiff served written discovery aimed at determining the facts and evidence Defendants rely upon for asserting those defenses. (Exh. 245.) On May 15, 2025, Defendants objected to the written discovery without disclosing any facts or evidence. (Exhs. 246, 247, 248, 249.) Bahadursingh and Austin first disclosed facts or evidence to support the 41 defenses on August 29, 2025, the same date that fact discovery closed (Exh. 251), and The District and Hickey did so less than one week before close of fact discovery (Exh. 250).

## IV.    LEGAL DISCUSSION

A party may move for summary judgment on a "claim or defense" or "part of… a claim or defense." Fed. Rules Civ. Proc. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *Ibid.*

**A.    Austin, Hickey and Bahadursingh are Liable for Section 1983 Malicious Prosecution**

In *Thompson v. Clark*, 596 U.S. 36, 43 (2022), the Supreme Court discussed malicious prosecution under section 1983 and explained that "[t]o determine the elements of a constitutional claim under §1983, this Court's practice is to first look to the elements of the most analogous tort as of 1871 when §1983 was enacted." Plaintiff proves his Section 1983 claim for malicious prosecution with evidence supporting the elements of the requisite state law claim and by demonstrating that Defendants

-11-

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

1    were acting for the purpose of denying Plaintiff a specific federal right. *Awabdy v. City of Adelanto*, 368

2    F.3d 1062, 1066 (9th Cir. 2004); *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987).

3            Under California law, malicious prosecution is proven by showing: (1) a defendant was actively

4    involved in causing an arrest/prosecution or continuation of such, (2) the proceeding ended in Plaintiff's

5    favor, (3) no reasonable person would have believed there were grounds for the arrest and prosecution

6    absent Defendants' conduct, and (4) Defendants acted for an improper purpose. (CACI 1500.)

7            Section 1983 "[m]alicious prosecution actions are not limited to suits against prosecutors but may

8    be brought, as here, against other persons who have wrongfully caused the charges to be filed" or

9    continued. *Awabdy, supra,* 368 F.3d at 1066 (9th Cir. 2004); *People of City of L.A. Who Are Un-Housed*

10   *v. Bass*, No. 2:24-cv-09320-DOC-MAA, 2025 LX 74674 *13 (C.D. Cal. Jan. 24, 2025) (Citing *Awabdy*.)

11          Defendants actively participated in malicious prosecution and abuse of administrative processes

12   in retaliation against Plaintiff resulting in the denial of Plaintiff's federal due process rights protected by

13   Title IX mandates. (Exh. 163). The District's General Counsel Vishakan admitted law and board policies

14   required a Title IX investigation and represented that a Title IX investigator was immediately assigned.

15   (Exh. 126, pp. 75:20-76:22; 162:1-16.) Hickey and Bahadursingh continually misled Plaintiff and further

16   allowed Vishakan to mislead him into believing and relying upon the misrepresentations that the due

17   process protective Title IX investigation was ongoing from January 31, 2022 through May of 2022.

18   (Exhs. 11; Exh. 25 at pp. 1-2; 125; Exh. 124, pp. 109:18-115:10; 105, pp. 25-28;  Exh. 129, pp. 101:3-

19   102:3; Exhs. 2, 3, 8 and 14.) But Defendants stopped the Title IX investigation during the same general

20   timeframe as when the accuser's 6th grade student record was reportedly removed or lost, which record

21   should show Plaintiff was not her 6th grade PE teacher during 2001-2002 at Jordan. (Id.) By stopping the

22   Title IX investigation, additional exculpatory and/or exonerating evidence was concealed thus clearing

23   the way for the unfair law enforcement investigation to focus on allegations favoring the accuser without

24   being encumbered with exculpatory or exonerating evidence. (See expert opinions at Exhs. 168, 163.)

25        **1.**     **Hickey, Bahadursingh and Austin Were Actively Involved in Causing Plaintiff's**
                 **Arrest and Prosecution and the Continuation Thereof**

26

27          Before Plaintiff was arrested, he presented Hickey exonerating evidence showing that he would

28   not have been at the location where the accuser was allegedly attacked. (Exhs. 43, 44, 45, 30.) Plaintiff

1    directed Hickey to the Plaintiff's 2001-2002 teaching assignment documents in which The District

2    assigned Plaintiff to teach 6th grade PE at Terman, not Jordan, during 2001-2002. (Id.) Plaintiff also

3    identified Ahern, his evaluator at Terman, as a source of corroborating testimony to Plaintiff's Terman

4    assignment. (Id.) This exculpatory evidence could have served to replace the accuser's 6th grade student

5    record Defendants abruptly reported missing leading to the sudden cancelation of the Title IX

6    investigation – suppressing the fact that Plaintiff was not the accuser's 6th grade PE teacher at Jordan.

7    (Id.) General Counsel Vishakan assured Plaintiff's counsel that any evidence or information he gave to

8    the District would be provided to the investigator, but Hickey denied Vishakan, law enforcement and any

9    investigator(s) access to the exonerating evidence substituting the missing grade record, furthering the

10   common plan to sponsor wrongful prosecution. (Exhs. 25; 127, pp. 88:23-89:7, 91:12-93:7.)

11        Hickey and Bahadursingh continued to ignore evidence that Plaintiff was not Jane Doe's 6th grade

12   PE teacher and that he was assigned to a different School than the accuser's during the applicable

13   timeframe. On August 2, 2022, after police arrested Plaintiff but several months before the Preliminary

14   Hearing that led to the District Attorney dropping the criminal charges, Hickey and Bahadursingh again

15   faced the decision to ignore evidence that Plaintiff was assigned to teach 6th grade PE at Terman during

16   2001-2002. (Exh. 43.) When the actual 2001-2002 work assignment was printed specifying that Ahern

17   was Plaintiff's evaluator for 2001-2002, Hickey and Bahadursingh would have known that Ahern could

18   attest to Plaintiff's assignment at Terman, particularly because Plaintiff previously informed them. (Exh.

19   45.) Again, Hickey and Bahadursingh failed to ensure this exculpatory and/or exonerating evidence was

20   provided to any investigator(s), including law enforcement, to show Plaintiff was not the accuser's 6th

21   grade PE teacher during 2001-2002 at Jordan. (Exh. 124, pp. 139:20-145:23; Exh. 127, pp. 88:23-89:7;

22   Exh. 129, pp. 147:10-150:11; Exh. 30.)

23        Similarly, cancelation of the Title IX investigation process prevented thorough and impartial

24   development of the exculpatory and/or exonerating evidence. The investigation process that law and

25   board policy required, and of the nature promised to Plaintiff, would have uncovered evidence showing

26   that the accuser's claim could not have occurred as she stated. A proper investigation would have

27   revealed Plaintiff's work assignment documents placing Plaintiff at Terman for 6th grade PE classes

28   during 2001-2002, including during the period right before lunch, at a different school from where the

-13-

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*

1   alleged assault occurred. (Exhs. 30, 43, 44, 45.) The investigation would have generated corroborating

2   evidence from Plaintiff's supervisor/evaluator in 2001-2002 at Terman Middle School that Plaintiff

3   would not have been at Jordan Middle School during the time in question. (Id.; Exh. 45.) The

4   investigation would have revealed testimony of three female PE teachers assigned to the Jordan girls'

5   locker room during the relevant time period that the Plaintiff could not have assaulted the accuser as she

6   claims. (Exhs. 48, 49, 50 and 127, pp. 97:24-104:24; Exh. 129, pp. 71:12-77:1; 82:1-85:24; Exh. 30.)

7   Defendants' active involvement in causing these violations of investigative integrity directly caused

8   Plaintiff's wrongful arrest and prosecution. (Exh. 168.)

9        **2.      All Prosecutions, Investigations and Processes Terminated in Plaintiff's Favor.**

10       The Supreme Court made clear element (2) for a Section 1983 claim of malicious prosecution,

11  showing a termination in Plaintiff's favor, is satisfied by simply showing the criminal prosecution ended

12  without a conviction. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Here, the District Attorney's office

13  dropped the criminal charges because the accuser's claim against Plaintiff could not be substantiated.

14  (Exh. 88.) CTC also dropped its formal review and renewed Plaintiff's teaching credential without

15  restriction and the District concluded its investigation without any finding of wrongdoing. (Exh. 109.)

16       **3.      No Reasonable Person Would Have Believed There Were Grounds for the Arrest
             and Prosecution Absent Defendants' Cancellation of the Title IX Investigation and
17           Concealment of Exonerating Evidence**

18       No reasonable person would have believed the evidence supported an arrest and prosecution had

19  Defendants not concealed exonerating evidence Plaintiff made known to Defendants prior to his arrest

20  and which Defendants should have amassed as part of their Title IX investigation process that was both

21  mandated and commenced by assignment of a Title IX investigator, but inexplicably not completed. The

22  suppressed evidence included: (1) the accuser's 6th grade record showing Plaintiff was not her 6th grade

23  PE teacher, whom she baselessly stated was her attacker; (2) work assignments and related information

24  proving Plaintiff taught his 6th grade PE classes at Terman, not Jordan, during 2001-2002; and (3) three

25  eyewitness still employed at the District, female PE teachers in charge of the girls' locker room at Jordan,

26  who all testify the accuser's claim is false because the attack could not have occurred in the girls' locker

27  room as claimed. The attesting PE teachers also declare that Plaintiff has no history of inappropriate

28

-14-

sexual conduct with students. Further, one of the three eyewitness teachers as Plaintiff's evaluator during 2001-2002 corroborates that Plaintiff was teaching his 6th grade PE classes at Terman. (Exhs. 30, 48-50.)

No reasonable person would have believed there were grounds for Plaintiff's arrest or prosecution (or administrative actions) absent concealment of the evidence above from the outside investigator and/or absent concealment of the outside investigator's findings. Miller, the outside investigator the District dilatorily tasked with what should have been a Title IX investigation concluded on the lower preponderance of the evidence standard that there was no way she could find a sexual assault or any sexual impropriety had taken place (Exhs. 107; 124 at pp. 85:14-86:7.) Miller found that Plaintiff had no "motive," that there was no evidence that any grooming took place, and that Plaintiff was not the accuser's PE teacher making highly improbable any interactions leading to such a brutal attack. (Id.; Exh. 124, pp. 119:19-25, 120:12-121:8.) In response, Defendants concealed her report and complete investigative findings under purported attorney-client privilege. (Exh. 124, pp. 77:2-12; 80:15-81:1; 81:13-21.) Any "grounds" for arrest or prosecution would have been further deemed unbelievable had Defendants provided Miller with the concealed evidence. Such evidence would show that Plaintiff could not have had means, as he would not even have been on the Jordan campus at the beginning of lunch when the alleged assault occurred (Exhs. 30; 124, pp. 144:15-145:23.) and his presence in the girls locker was implausible, and certainly would not have been unnoticed (Exhs. 48-50; 126, pp. 8:4-13:13.) Such concealed evidence would have also shown that Plaintiff had no opportunity as he was not the accuser's PE teacher, so he wouldn't have been in proximity to her at the end of her PE class (Id.); and he certainly was not a 6th grade PE teacher at Jordan for a period right before the alleged attack took place. (Id.)  No reasonable person could believe this evidence supported Plaintiff's arrest and prosecution.

**4.  As in *Myles*, Defendants' Acted Primarily to Remove Plaintiff from His Employment**

The evidence shows Defendants maliciously prosecuted Plaintiff in retaliation primarily to remove Plaintiff from his tenured teaching position and to create stigma all without providing Plaintiff his due process. In *Myles*, the Ninth Circuit made clear, "Malice in this context 'is not limited to actual hostility or ill will toward [the] plaintiff,' but also 'exists when proceedings are instituted primarily for an improper purpose' such as when 'the person initiating [the charges] does not believe that his claim may be held valid.'" *Myles v. United States*, 47 F.4th 1005, 1014-1015 (2022) (citing *Albertson v. Raboff*, 46

1    Cal. 2d 375, 383, 295 P.2d 405 (1956)). In keeping with the common plan, Hickey, Bahadursingh and

2    Austin would have continued the Title IX investigation and would have located and produced the

3    concealed evidence to law enforcement had they believed it would have been helpful to the accuser.

4    Because the Title IX investigation, 6th grade student record, Plaintiff's 2001-2002 work assignment

5    teaching 6th grade PE at Terman, and the testimony of Ahern, Naylor and Becker regarding locker room

6    procedures, etc. were perceived to be favorable to Plaintiff, Defendants canceled all of it.

7         **B.**    **The District Has Retaliated Against Plaintiff Continuously Since January 31, 2022**

8         Retaliation claims under both Title IX and Title VII apply the same framework. *Ollier v.*

9    *Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014) (citation omitted). "Both Title VII

10   and FEHA make it an unlawful employment practice for an employer to discriminate against any person

11   because the person participated in proceedings under the statutes by making a charge, testifying, assisting

12   or participating in any manner, or opposed acts made unlawful by the statutes." *Anderson v. City and*

13   *Cnty. of S.F.*, 169 F. Supp. 3d 995, 1026 (N.D. Cal. 2016) (citing 42 U.S.C. § 2000e–3(a), Cal. Gov.

14   Code § 12940(h)). Plaintiff proves his claims for retaliation under Title IX and/or Title VII by showing

15   "1) []he was engaged in protected activity; 2) defendant took an adverse employment action; and 3) a

16   causal connection existed between plaintiff's protected activity and defendant's adverse employment

17   action." *Id.* (citation omitted). Plaintiff proves an adverse employment action for a Title VII or Title IX

18   retaliation claim, by showing "that the alleged retaliatory act 'might well have dissuaded a reasonable

19   worker from making or supporting a charge of discrimination.'" *Id.* at 1027 (quoting *Burlington N. and*

20   *Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see Blount*, 982 F. Supp. 2d at 1086.)

21        Plaintiff proves adverse employment actions for FEHA retaliation where such actions "materially

22   affect[] the terms, conditions, or privileges of employment." *Anderson*, 169 F. Supp. 3d at 1027.

23        The third element of a retaliation claim is but-for causation. *Id.*; *Blount*, 982 F. Supp. 2d at 1087.

24        **1.**    **The District Retaliated Against Plaintiff Pursuant to Title VII/IX and FEHA by**
25                 **Maliciously Bringing Prosecution**

26        After Plaintiff was made a participant (respondent) to the claim, all the due process protections

27   mandated by the Title IX process were removed even though Hickey and District General Counsel knew

28   the protections were required while they continued misrepresenting to Plaintiff that the protective Title

-16-

IX investigation (or similarly protective process) was ongoing (Exhs. 11 at p. 2; 25 at pp. 1-2; 125 at p. 1; 124 at pp. 109:18-115:10; see also Exhs. 105 at pp. 25-28; 2, 3, 8 and 14, 126, pp. 75:20-76:22.) The District improperly sided with the accuser and engaged in the unfair process described above that caused the malicious prosecution against Plaintiff. (Exhs. 163, 173.) The District then made improper public comments to stigmatize Plaintiff and extend the wrongful prosecution. (Exh. 75.)

Plaintiff's participation as an unwilling participant to the claim, as a respondent, is a protected activity. (Exh. 163.) Defendants removed Plaintiff from his employment without due process. (Id.) But for Plaintiff's participation in the claim, Defendants would not have removed him from his employment and would not have taken other adverse actions. Plaintiff has proven the District's malicious prosecution is clear actionable retaliation under Title VII/Title IX and FEHA.

## 2. The District Retaliated Against Plaintiff By Placing Plaintiff on Leave After Charges Against Him Were Dismissed for Failure to Substantiate the Accuser's Claim

The District Attorney's Office dropped the criminal charges against Plaintiff for failure to substantiate the accuser's claim. (Exh. 78.) Testimony obtained during the Preliminary Hearing established the claim completely lacked credibility. (Exh. 123.) The accuser admitted that she did not see nor hear her alleged attacker yet identified Plaintiff despite having also identified Mr. Giordano as her alleged attacker to "fresh complaint" witnesses. (Id. at pp. 44:17-20; 45:3-6; 46:4-9 – Jane Doe's testimony. Also id. at p. 118:1-22 – Detective's testimony; see Exh. 124 at pp. 121:19-125:5.) Mr. Giordano was a 6th grade PE teacher at Jordan during 2001-2002, the time at issue, who was convicted in 2006 for sexual misconduct with Jordan students. (Exh. 124 at pp. 121:19-125:5.) The Palo Alto Police Department had record of two additional related claims against Mr. Giordano, one filed in 2003 and one filed in 2020. (Exh. 124 at p. 129:16-21.) The accuser further testified that she could not recall if penetration had occurred. (Exh. 123 at pp. 49:22-50:1.) She stated that she did not experience injuries, including bleeding. (Exhs. 123 at pp. 49:22-50:1; 124 at pp. 125:25-126:8.) She acknowledged that she did not seek medical treatment and did not tell anyone about the attack going straight to her next classes then to competitive swim practice without complaint or concern. (Id.) Thus, the District Attorney's Office could not substantiate the accuser's claim and declined to pursue the case further.

The District ignored the exonerating evidence Plaintiff provided, evidence easily accessible to them, findings of the Title IX outside investigator, and the evidence and findings brought forth in the Preliminary Hearing. (Exhs. 124 at pp. 119:19-25, 120:12-121:8; Exh. 78.) They chose not to publicize the implausibility of the accuser's claim, that no credible evidence supported her claim and that objective evidence corroborated Plaintiff's assertions he did not commit the alleged attack. (Exhs. 123, 30, 49.) Instead, Defendants wrongly sided with accuser to cause malicious prosecution of Plaintiff. (Exh. 168.)

The District retaliated against Plaintiff by Placing him on leave after the District Attorney's Office dropped the criminal charges for lack of a substantiated claim.  After the criminal charges were dropped, the District continued to stigmatize Plaintiff in the press and treat him as though he was guilty based on the wrongful arrest, without any finding of misconduct and ignoring exonerating evidence. (Exhibits 78, 88, 90.) The District refused to return Plaintiff to his previous employment and further used artifice to refuse to return Plaintiff to any student facing teaching position for an additional year and a half. Miller reported her investigation findings to the District in February of 2024. (Id.; Exh. 124 at p. 49:4-20.) The District strategically waited to close Miller's investigation until May of 2024 after making their 2024-2025 teaching assignments (Exh. 109.)  This delay coupled with the encumbrance of the improper CTC reporting forced Plaintiff into further extended leave and a sham TOSA position that excluded him from a student facing teaching assignment. (Exh. 132. pp. 218:6-219:1; 220:15-221:19.)

Plaintiff's participation as an unwilling participant to the claim, as a respondent, is a protected activity. (Exh. 163.) The District placed Plaintiff back on leave for another fourteen months purportedly to conduct less of an investigation than what should have been completed as a Title IX investigation before Plaintiff was arrested. (Exh. 124.) But for Plaintiff's participation in the claim, Defendants would not have placed him back on leave. Under Title VII/IX and FEHA, such is also actionable retaliation.

### 3.    The District Retaliated Against Plaintiff by Reporting Plaintiff to CTC Without Any Evidence to Support Such Report

The District retaliated against Plaintiff by reporting him to the California Commission on Teacher Credentialing ("CTC") without any supporting evidence and strategically delaying the closing of the outside investigation forcing Plaintiff into a sham Teacher on Special Assignment classification ("TOSA").  The District conveyed to CTC that Plaintiff would be subject to discipline through a

-18-

statement of charges or intent to dismiss/suspend based on its investigation of the sexual assault claim. (Exhibit 90.) Due to recent legislation, the notification to CTC relating to a "disqualifying offense" without any of the exonerating evidence that should have been included in the promised Title IX investigation (or similarly thorough and protective process) renders Plaintiff unemployable as a teacher outside the District. (Exh. 173.)  Miller reported her investigation findings to the District in February of 2024, but the District strategically waited to close Miller's investigation until May of 2024 after making their 2024-2025 teaching assignments (Exh. 124, p. 49:4-20, 109.)  This delay coupled with the encumbrance of Defendant's improper CTC reporting forced Plaintiff into a sham TOSA position that kept him from a student facing teaching assignment. (Exh. 132, pp. 218:6-219:1 and 220:15-221:19.)

Plaintiff's participation as an unwilling participant to the claim, as a respondent is a protected activity.  The District's conveyance to CTC that Plaintiff would be subject to discipline through a statement of charges or intent to dismiss/suspend based on its improper investigation of the sexual assault claim forced Plaintiff to take a TOSA position in the District. But for Plaintiff's participation in the claim, Defendants would not have rendered Plaintiff unemployable outside the District. Contemplating a clearer case for retaliation would be hard pressed under Title VII/IX and FEHA than the District's proven malicious prosecution and abuse of CTC administrative process that leaves Plaintiff unemployable outside the District and subject to the whims of continued District retaliation.

**4.    The District Retaliated Against Plaintiff by Forcing him Into a Sham TOSA Position**

Miller completed her investigation for the District in February of 2024 (Exh. 124, p. 49:4-20), but the District inexplicably waited to close the investigation until May of 2024, after making their 2024-2025 teaching assignments, so they could force Plaintiff into a sham TOSA position and exclude him from a student facing teaching assignment. (Exh. 109, 132, pp. 218:6-219:1; 220:15-221:19.)

Plaintiff's participation as an unwilling participant to the claim, as a respondent, is a protected activity.  The District's conveyance to CTC that Plaintiff would be subject to discipline by a statement of charges or intent to dismiss/suspend based on its improper investigation of the sexual assault claim forced Plaintiff to take a TOSA position. But for Plaintiff's participation in the claim, Defendants would not have forced Plaintiff to take a TOSA position in the District that excluded him from a student facing teaching assignment. This retaliation is clearly actionable retaliation under Title VII/Title IX and FEHA.

**5.      Not supporting Plaintiff with a Proper Transition Plan is Proven Retaliation**

The District Retaliated against Plaintiff by failing to support him with a proper transition plan. Standard human resources administration practices and procedures for California K-12 schools required a supportive "return to work" transition plan for Plaintiff that would prioritize his success and comfort. (Exhs. 173, 242). Providing a safe, supportive and positive working environment for Plaintiff is also mandated by District board policies. (Exh. 243.) As set forth above, the District failed to provide transparency and supportive communication throughout the purported investigative processes taking place while Plaintiff was on leave. (See Exh. 242 ¶8.) They delayed closing the investigation to avoid providing Plaintiff a student facing teaching position. (Exhs. 124 p. 49:4-20; 109; 132 p. 221:1-9.) They stigmatized Plaintiff through the media and to CTC, making clear they did not want Plaintiff to return to the District all while ensuring that he would be unable to work elsewhere. (Exhs. 78, 88, 90, 173.)  The District then transferred Plaintiff to a school different from where he spent almost all of his 25+ years with the District (the only exception ironically being 2001-2002 when he was assigned to teach 6th grade PE at Terman), even though there was an open position at Greene where Plaintiff would have been more comfortable returning from 3.5 years of involuntary absence. (Exhs. 43, 195, 158, 173.) Bahadursingh concealed the fact that the open position was at Greene. (See Exh. 195, pp. 6-8.)

The District sustained its lack of support by promoting negative communications regarding Plaintiff to the school community and public in general. The District continued maligning Plaintiff to parents at Fletcher Middle School where Plaintiff was forced to transfer, telling them that Plaintiff was assigned to Fletcher not because claims against Plaintiff were unsubstantiated, but because the District's "hands were tied." (Exhs. 40, 130, 194, 197; see also Exh. 130, pp. 91:6-92:7.) The complete lack of transparency and supportive communication to Plaintiff concerning investigations and processes being negatively leveraged against him for 3.5 years evolved into a lack of transparency and compassion with parents and students at Fletcher, resulting in protests and petitions against Plaintiff because the District refuses to clear Plaintiff's name after stigmatizing him. (Id.; Exh. 128, pp. 25:6-32:10.)

As part of its deficient transition plan, the District misconstrued the Court's Order in this matter (ECF #128, p. 9, lns. 4-7, Plaintiff could be assigned away from Greene "within reason") to constitute free rein to transfer Plaintiff away from the vacant position at Greene without reason, to continue

retaliating against him. (Exhs. 195, 158, 173.) Plaintiff requested to remain at Greene as reasonable accommodation for his known disability (AUD) and related anxieties, as well as to calm his PTSD and Anxiety Disorder caused and/or exacerbated by the Defendants' misconduct discussed above. (Exhs. 195, 158.) Allowing Plaintiff to stay at Greene would have been the most reasonable of all accommodations because it would have created no discernible burden for the District – the new male PE teacher assigned to Greene could have been assigned to Fletcher. (Id.; Exh. 173.) The District's failure to allow Plaintiff to return to Greene without at minimum engaging in the mandatory interactive process with Plaintiff to determine whether remaining at Greene was a reasonable accommodation are also violations of FEHA and the ADA. (Id.) Dr. Chaudhary opines the District should have supported Plaintiff's mental health by clearing his name and by allowing him to remain at Greene. (Exh. 158.) But the District did neither. (Id.)

Forcing Plaintiff to transfer to Fletcher even though his position at Greene was vacant adversely impacted Plaintiff's mental health; it significantly increased his daily commute times (Id., Exh. 132 at p. 353:15-24); and it necessitates the most undesirable weekly work schedule imaginable for a PE teacher (Exh. 128 at pp. 35:5-37:18.) Significantly, Plaintiff was forced to walk through protestors and listen to affronts by some of the approximately 200 parents who have signed petitions against him, all without the slightest amount of support or proper transparency and communication from the District. (Exhs. 194, 40, 197, 158, 173.) The District has precluded Plaintiff's ability to obtain work as a teacher anywhere else in California, leaving him no choice but to endure the District's continued retaliation and harassment with its substantial deleterious impact on his mental/emotional status, reputation, and psychiatric conditions. (Exhs. 90, 173, 158.) He is left with two awful choices, (1) return to an extremely hostile work environment with the daily ramifications of everything the District has put him through for almost 4 years; or (2) return to house arrest reminiscent of the year he spent on ankle monitoring waiting for the malicious prosecution to end. (Id.) He chooses to work as long as he can tolerate the hostile environs.

Plaintiff's participation as an unwilling participant to the claim, as a respondent, is a protected activity. The District adversely failed to support him with a proper transition plan. But for Plaintiff's participation in the claim, Defendants would not have returned Plaintiff to an extremely hostile work environment. This retaliation is clearly actionable retaliation under Title VII/Title IX and FEHA.

1

**C.    Austin, Hickey and Bahadursingh Actively Participated in the Section 1983 Stigma Plus Liberty Interest Violations While Retaliating Against Plaintiff**

2

The evidence shows Plaintiff has suffered a tangible loss with a liberty interest implicated by a

3

"charge against him that might seriously damage his standing and associations in his community."

4

*Stretten v. Wadsworth General Hospital*, 537 F.2d 361, 365 (9th Cir. 1976). Charges impairing Plaintiff's

5

"reputation for honesty or morality" sufficiently implicate a liberty interest. *Vanelli v. Reynolds Sch.*

6

*Dist. No. 7*, 667 F.2d  773, 777 (9th Cir. 1982). "The procedural protections of due process apply if the

7

accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in

8

connection with the termination of employment or the alteration of some right or status recognized by

9

state law." *Id.* at 777–78; *see Ulrich v. City and Cnty. of S.F.*, 308 F.3d 968, 982 (9th Cir. 2002).

10

Austin made inflammatory comments to the press that wrongfully created stigma when standard

11

practices dictate he make no comment. (Exhs. 75, 78, 163, 173.) Hickey actively participated in creating

12

the wrongful stigma of guilt by reporting to CTC that Plaintiff would be subject to discipline following

13

completion of the District's investigation of the sexual assault claim. (Exhs. 90, 173.) Bahadursingh

14

participated in both Austin's and Hickey's creation of stigma through his position as Superintendent of

15

Human Resources and through his communications role assisting with communications. (Exh. 129, pp.

16

41:12-25; Exh. 108.) Bahadursingh is directly responsible for the continuing stigma-producing

17

communications to parents suggesting that Plaintiff was transferred to Fletcher because the District's

18

"hands are tied" and not because Plaintiff has been cleared of wrongdoing and is qualified to teach.

19

(Exhibits 40; 244.) Bahadursingh was made aware of the stigma being created by his and others' actions

20

and omissions, but he has chosen to do nothing to correct it. (See Exhs. 128 at pp. 28:3-29:22; 40; 244.)

21

In connection with the public disclosure of stigma-producing statements, Plaintiff was placed on

22

involuntary leave for 2.5 years, forced into a non-student facing sham TOSA position for another year

23

(using the artifice of not timely closing out Miller's investigation until after teaching assignments had

24

been made for 2024-2025) and now forced to Fletcher instead of being allowed to resume in the vacant

25

position at Greene, which transfer violated the ADA and FEHA due to its impact on Plaintiff's mental

26

health and gives the appearance to parents that Plaintiff is unfit to teach. The report to CTC by Hickey,

27

overseen by Bahadursingh, makes Plaintiff unemployable outside the District. (See Exhs. 40; 173.)

28

-22-

**D.    Austin, Hickey and Bahadursingh Each Participated in a Common Plan**

An actor may be deemed to have caused a constitutional violation under the integral-participant doctrine, when: (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury. *Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022).

On March 6, 2025, Austin commented that "there are members of this community who are willing to ruin a man's life to advance their own personal agenda." (See Exh. 130 at pp. 102:24-105:10; 168.) Austin admitted his statement could explain what happened to Plaintiff. (Id.; see Exhs. 75 (comments), 133-141.) Members of the District's community including Austin, Bahadursingh, Hickey and pointedly, a community member-spouse of the District Board's then-President aligned themselves with and advanced the accuser's baseless though dramatic and sympathetic claims while concealing Plaintiff's straight-forward, exonerating evidence, even if it meant removing due process protections that the law and board policies required and that Defendants promised to Plaintiff, destroying Plaintiff's reputation, devastating his career, harming his mental-health and causing his arrest and prosecution all to advance their personal agendas of appearing righteous or moral, or worse.  (Id.; See Exh. 135, p. 2.)

Each knew about and acquiesced in the common plan to advance their own and, significantly, a community member's agenda even though it involved constitutionally defective, due process violative, conduct. They each claim to have not been involved in the investigations, even though ensuring proper conduct of the investigations was within their clearly defined roles and responsibilities as Superintendent (Austin), Deputy Superintendent over Human Resources, Title IX and student records (Bahadursingh) and Director Certificated Human Resources who typically was point of contact to run the District's part of investigations involving a certificated teacher (Hickey), respectively.  In these roles they were also responsible to ensure Plaintiff's due process was protected both: (1) as required by the law included in the OCR-mandated processes and (2) as was promised and continually misrepresented to Plaintiff as being fulfilled. (Exh. 173.) They absolutely involved themselves in the investigation by assuring Plaintiff they would disclose the exonerating evidence he provided then recklessly and deliberately chose to conceal it, causing the unfair law enforcement investigation and wrongful arrest/prosecution. (Exh. 168.)

Denying the promised, protective Title IX investigation, in violation of their assurances to Plaintiff and the OCR mandates, including as set forth in the still operable MOU with the Palo Alto Police Department, exemplifies knowledge of and acquiescence in a common plan involving constitutionally defective conduct. (Exh. 168.) Bahadursingh's introduction of the purported outside investigator Miller to law enforcement investigator Detective Clausen as "a great partner throughout this process" illustrates knowledge of and acquiescence in their common plan. (Exh. 95 at p. 1.) Similarly, Bahadursingh and Austin demonstrated their participation in a common plan when they emphasized that "PAUSD and PAPD worked collaboratively throughout the investigation." (Exh. 95 at p. 2; See also Exh. 38, PAPD Press Release stating, "Detectives launched an investigation, working in *collaboration with district officials.*" Emphasis added.) The personal and political influence over the assigned detective and her wife by the community member-spouse of the District Board's then-President reveals a vested interest and as such, a conflict. (Exhs. 133-135.)  When combined with the community member's views and reported appearance of collusion between the community member and PAPD, the "common plan" vaguely described by Austin takes clear shape. (Exh. 75 (comments) and Exhs. 136-141.)

Austin, Bahadursingh and Hickey continued the common plan after the criminal charges were dismissed by stigmatizing Plaintiff to the media, CTC and Fletcher parents in association with adverse employment actions wrongly impugning Plaintiff's guilt without providing him a reasonable opportunity to clear his name. Austin, Bahadursingh and Hickey each set things in motion through their direct participation in actions and omissions relating to treatment of Plaintiff beginning as early as January 30, 2022 and continuing to present day. (Exhs. 11, 194, 195, 40, 158, 163, 168, 173.) Each Defendant is liable to Plaintiff for setting things in motion. *See Peck v. Montoya*, 51 F.4th 877, 891 (9th Cir. 2022).

### E. Defendants Failed to Timely Disclose Evidence and Facts to Support their Forty-one (41) Defenses Listed as "Affirmative Defenses" in their Answer

Factually devoid discovery responses are appropriately used to shift the burden on a motion for summary judgment, requiring the opposing party to come forward with admissible evidence to support claims or defenses upon which they bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In addition to Defendants' factually devoid discovery responses, Plaintiff has submitted

admissible evidence supporting his claims, which would also place upon Defendants the burden of production to come forward with admissible evidence sufficient to create triable issues.  (See id.)

To be admissible at trial in federal court, facts and evidence must be timely disclosed. Fed. R. Civ. P. 26; see also Fed. R. Civ. P. 37. In *Ollier v. Sweetwater Union High Sch. Dist.*, the Ninth Circuit upheld exclusion of evidence not timely disclosed by defendants. *Ollier, supra,* 768 F.3d 867.

Defendants' Answer sets forth forty-one (41) defenses listed as "Affirmative Defenses." (ECF #130). The 41 defenses are stated in conclusory fashion and fail to set forth evidence-based facts to support them. (Id.) Fittingly, Plaintiff served detailed written discovery on Defendants aimed at ascertaining the facts and evidence Defendants rely upon for asserting those defenses. (Exh. 245.) On May 15, 2025, Defendants responded to the written discovery again without disclosing any facts or evidence to support the 41 defenses. (Exhs. 246, 247, 248, 249.) Bahadursingh and Austin first disclosed any facts or evidence to support the 41 defenses on August 29, 2025, the same date that fact discovery closed. (Exh. 251.) The District and Hickey similarly delayed disclosure of any facts or evidence to support their 41 defenses until less than one week before close of fact discovery. (Exh. 250.)

The burden is now on Defendants to show that evidence and facts were timely disclosed and that such timely produced evidence and facts create triable issues sufficient to defeat Plaintiff's summary judgment requests. *Ollier* 768 F.3d 867.  Absent such showing and production, summary judgment should be granted in all the particulars as requested by Plaintiff.  See id.

## V.    CONCLUSION

For the reasons set forth above, summary judgment in Plaintiff's favor is warranted and should be granted unless Defendants come forward with evidence they can show to have been timely disclosed, that is sufficient to meet their burden of production and create triable issues.

Respectfully submitted,

Dated:  November 3, 2025        LAW OFFICES OF JONATHAN D. MCDOUGALL

By: _____*/s/ Evan C. Nelson*_____
EVAN C. NELSON
Attorneys for Plaintiffs

PLTF.'S MOTION FOR PARTIAL SUMMARY JUDGMENT; STATEMENT OF FACTS; MEMORANDUM
*Colombo v. Palo Alto Unified School District, et al. Case No.: 5:24-cv-00909-NC*